**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Tarik F. Ajami (TA 5922)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| CARLOS TORRES, RUBEN MORA,<br>BOBBY IRIZARRY, LEWIS CHEWNING,<br>GILBERTO SANTIAGO,<br>WILLIAM HELWIG, ROBERT MISURACA,<br>JOSEPH CREMA, MARIO DIPRETA,<br>VICTOR PHELPS, JOSELITO AROCHO,<br>ALFRED CROKER, DANIEL SALEGNA,<br>FRANK DELEON, and ROBERT PASTORINO,<br>on behalf of themselves and all others similarly situated, | No. 04 CV 3316 (RMB)(AJP)<br><br>**THIRD AMENDED CLASS<br>ACTION COMPLAINT** |
| Plaintiffs, | |
| -against- | **JURY TRIAL DEMANDED** |
| GRISTEDE'S OPERATING CORP.; NAMDOR, INC.;<br>GRISTEDE'S FOODS, INC.; CITY PRODUCE<br>OPERATING CORP.; GRISTEDE'S FOODS NY, INC.,<br>JOHN CATSIMATIDES, JAMES MONOS, and<br>GALO BALSECA, | |
| Defendants. | |

---

Plaintiffs Carlos Torres ("Torres"), Ruben Mora ("Mora"), Bobby Irizarry ("Irizarry"),

Lewis Chewning ("Chewning"), Gilberto Santiago ("Santiago"), William Helwig ("Helwig"),

Robert Misuraca ("Misuraca"), Joseph Crema ("Crema"), Mario DiPreta ("DiPreta"), Victor

Phelps ("Phelps"), Joselito Arocho ("Arocho"), Alfred Croker ("Croker"), Daniel Salegna

("Salegna"), Frank DeLeon ("DeLeon"), and Robert Pastorino ("Pastorino") (collectively

"Plaintiffs"), individually and on behalf of all others similarly situated as class representatives, by

their attorneys Outten and Golden LLP, allege, upon personal knowledge as to themselves and

upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1.       GRISTEDE'S OPERATING CORP., NAMDOR, INC., GRISTEDE'S FOODS,

INC., PRODUCE OPERATING CORP., GRISTEDE'S FOODS NY, INC., (collectively,

"Gristede's") own and operate a chain of over 50 grocery stores throughout New York City,

Westchester County, and Long Island.  Upon information and belief, Gristede's employs

thousands of workers in these stores.

2.       Defendants JOHN CATSIMATIDES, JAMES MONOS, and

GALO BALSECA ("Individual Defendants") are high ranking corporate officials with

Gristede's.  Gristede's and the Individual Defendants (collectively "Defendants") are jointly

responsible for the unlawful conduct detailed herein.

3.       Upon information and belief, it has been Defendants' policy to deprive its grocery

store workers, including Plaintiffs, of wages to which they are entitled under the law.

Defendants' unlawful conduct includes, but is not limited to, requiring its workers, including

Plaintiffs, to work without compensating them, and requiring its workers, including Plaintiffs, to

work extensive overtime without paying them at a premium rate.

4.       Upon information and belief, in an attempt to avoid paying some of its workers

their earned wages, Defendants have given some of their employees titles that include the word

"manager."  However, many of these purported "managers," including Plaintiffs, have performed

few or no "managerial" duties.  Instead, in some cases, for 80% or more of their work time, these

2

purported "managers" have worked as cashiers, worked in the dairy department, built displays, stocked shelves, unpacked boxes, stacked merchandise, cleaned stores, unloaded trucks, taken out garbage, helped to prepare stores for grand openings, and performed other non-managerial duties.  Moreover, Defendants paid many of these purported "managers" only between $8.00 and $11.00 per hour.

5.      Plaintiffs were victims of Defendants' unlawful conduct.  Plaintiffs worked more than 10 hours per day, five or six days per week, for much of their employment at Gristede's but were not paid overtime premium pay of time and a half for most of the hours that they worked in excess of forty hours per week.  Moreover, Plaintiffs were not compensated at all for some of the time that they worked in excess of forty hours in the workweek.

6.      By the conduct described in this Complaint, Defendants have willfully committed widespread violations of the Fair Labor Standards Act and the New York Labor Law by failing to pay their employees, including Plaintiffs, for overtime hours that they have worked in excess of 40 hours per week at a rate of one and one half times their regular rate of pay.

7.      By the conduct described in this Complaint, Defendants have committed fraud by intentionally making misrepresentations or omissions of material fact in time and attendance records and payroll records and paychecks.  Upon information and belief, management-level employees routinely altered time, attendance, and payroll records to understate its employees' true earnings. These edits to the computerized payroll system did not reflect the actual hours worked by the employees and represent millions of dollars in lost wages to the class.  These practices are described in more detail in the accompanying declarations of Antonio Marcano and Tomas C. Daly, annexed as Exhibits A and B to this pleading.

## NATURE OF THE ACTION

8.      This action is brought to recover unpaid wages owed to Plaintiffs and all other similarly situated current and former employees of Defendants as well as injunctive and declaratory relief against Defendants unlawful actions, and attorneys' fees and costs.

9.      Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees of Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically the collective action provision of FLSA 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants, that have deprived Plaintiffs and others similarly situated of their lawful wages.

10.      Plaintiffs also bring this action on behalf of themselves, and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. Proc. 23, for fraud and unpaid wages, including but not limited to unpaid overtime premium wages, pursuant to the New York Labor Law Article 6 §§ 190 et seq. and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law").

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

12.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

### The Plaintiffs

14.     Torres is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.  Torres is a resident of New York City.

15.     Torres was an hourly employee of Defendants from approximately October 2002 through approximately February 20, 2004.

16.     Mora is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.  Mora is a resident of New York City.

17.     Mora was an hourly employee of Defendants from approximately November 2002 through approximately December 2003.

18.     Irizarry is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.  Irizarry is a resident of New York City.

19.     Irizarry was an hourly employee of Defendants from approximately October of 2003 through approximately February 2004.

20.     Chewning is an adult individual who is a resident of Gold Canyon, Arizona.

21.     Chewning was an hourly employee of Defendants in New York State from approximately February 2003 through approximately March 2003.

22.     Santiago is an adult individual who is a resident of Bronx, New York.

23.     Santiago was an hourly employee of Defendants in New York State from approximately April 1999 through approximately March 2004.

24.     Helwig is an adult individual who is a resident of St. Peterburg, Florida.

25.     Helwig was an hourly employee of Defendants in New York State from approximately September 2003 through approximately July 2004.

26.     Misuraca is an adult individual who is a resident of Elmsford, New York.

27.     Misuraca was an hourly employee of Defendants in New York State from approximately October 1987 through approximately July 2004.

28.     Crema is an adult individual who is a resident of Sound Beach, New York.

29.     Crema was an hourly employee of Defendants in New York State from approximately September 1954 through approximately December 2001.

30.     DiPreta is an adult individual who is a resident of Bronx, New York.

31.     DiPreta was an hourly employee of Defendants in New York State from approximately July 1966 through approximately October 2001.

32.     Phelps is an adult individual who is a resident of Bronx, New York.

33.     Phelps has been an hourly employee of Defendants in New York State from approximately November 1974 through the present.

34.     Arocho is an adult individual who is a resident of Bronx, New York.

35.     Arocho was an hourly employee of Defendants in New York State from approximately January 2003 through approximately March 2003.

36.     Croker is an adult individual who is a resident of New York, New York.

37.     Croker was an hourly employee of Defendants in New York State from approximately October 2003 through approximately January 2004.

38.     Salegna is an adult individual who is a resident of Jim Thorpe, Pennsylvania.

39.     Salegna was an hourly employee of Defendants in New York State from approximately December 2001 through approximately March 2003.

6

40.    DeLeon is an adult individual who is a resident of Bronx, New York.

41.    DeLeon has been an hourly employee of Defendants in New York State from approximately January 2002 through the present.

42.    Pastorino is an adult individual who is a resident of Boca Raton, Florida.

43.    Pastorino was an hourly employee of Defendants in New York State from approximately September 1983 through approximately July 2003.

### The Defendants

44.    Upon information and belief, Gristede's is a domestic corporation doing business within the City and County of New York, and maintains corporate headquarters within the City and County of New York at 823 Eleventh Avenue, New York, NY 10019.

45.    Upon information and belief, Gristede's and the Individual Defendants maintain control, oversight, and direction over the operation of its facilities, including its employment practices.

46.    Upon information and belief, Defendant Catsimatides is a resident of the State of New York.

47.    Upon information and belief, Defendant Catsimatides is the owner of Gristede's.

48.    Upon information and belief, Defendant Catsimatides is the President of Gristede's.

49.    Upon information and belief, Defendant Catsimatides is the CEO of Gristede's.

50.    Upon information and belief, Defendant Catsimatides is an agent of Gristede's.

51.    Upon information and belief, Defendant Catsimatides has power over personnel decisions.

52.    Upon information and belief, Defendant Catsimatides has power over payroll

7

decisions.

53.     Upon information and belief, Defendant Catsimatides maintains an office in the City of New York, County of New York at 823 Eleventh Avenue, New York, NY 10019.

54.     During relevant times, Defendant Castimatides has been Plaintiffs' employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

55.     Upon information and belief, Defendant Monos maintains offices in the State of New York.

56.     Upon information and belief, Defendant Monos is the District Manager of Gristede's.

57.     Upon information and belief, Defendant Monos is an agent of Gristede's.

58.     Upon information and belief, Defendant Monos has power over personnel decisions.

59.     Upon information and belief, Defendant Monos has power over payroll decisions.

60.     During relevant times, Defendant Monos has been Plaintiffs' employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

61.     Upon information and belief, Defendant Balseca maintains offices in the State of New York.

62.     Upon information and belief, Defendant Balseca is the Vice President of Gristede's.

63.     Upon information and belief, Defendant Balseca is an agent of Gristede's.

64.     Upon information and belief, Defendant Balseca has power over personnel decisions.

65.     Upon information and belief, Defendant Balseca has power over personnel

decisions.

66.     During relevant times, Defendant Balseca has been Plaintiffs' employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

## CLASS AND COLLECTIVE ALLEGATIONS

67.     Plaintiffs bring FLSA claims on behalf of themselves and all similarly situated persons who work or have worked for Defendants as department managers, night managers, assistant managers, co-managers, or other similar job titles in Gristede's retail grocery stores (the "FLSA Class"). Gristede's "store managers" are excluded from the FLSA Class definition.

68.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate plaintiffs, and as such, notice should be sent to the FLSA Class. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA who would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable and can be located through Gristede's records.

69.     Plaintiffs also bring New York Labor Law claims and a fraud claim on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of "all persons who work or have worked for Defendants as department managers, night managers, assistant managers, co-managers, or other similar job titles, in Defendants' retail grocery stores, between April 30, 1998 and the date of judgment in this action (the "Rule 23 Class"). Gristede's "store managers" are excluded from the Rule 23 Class definition.

70.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

71.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class.

72.     Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class.

73.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

74.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

(a)     whether Defendants have failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class;

(b)     what proof of hours worked is sufficient where employers fail in their duty to maintain true and accurate time records;

(c)     whether Defendants have failed to compensate Plaintiffs and the Rule 23 Class for all of the work that they required and permitted them to perform;

(d)     whether Defendants have failed to compensate Plaintiffs and the Rule 23 Class for work performed in excess of 40 hours per workweek with overtime premium wages;

(e)     whether Defendants have engaged on a pattern, practice, or policy of encouraging Plaintiffs and the Rule 23 Class to work "off the clock" and/or failing to pay Plaintiffs and the Rule 23 Class for all hours worked in excess of 40 hours per workweek.

(f)      whether Defendants have failed and/or refused to pay Plaintiffs and the Rule 23 Class overtime pay for hours worked in excess of 40 hours per work week within the meaning of the New York Labor Law Article 6 §§ 190 et seq. and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

(g)      the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class; and

(h)      whether Defendants intentionally and pursuant to a standard policy or practice made misrepresentations or omissions of material fact by altering time, attendance, and payroll records to understate its employees' true earnings.

75.      The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the Rule 23 Class work or have worked for Defendants in its retail grocery stores and have not been fully compensated for all of the work that they have performed for the benefit of Defendants.  Plaintiffs and the Rule 23 Class have not been paid a premium for the hours that they have worked in excess of forty hours per week.  Plaintiffs and the Rule 23 Class have suffered damages, including but not limited to lost regular and overtime compensation, resulting from Defendants' wrongful conduct.  Defendants has acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

76.      Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

77.      Plaintiffs have retained counsel competent and experienced in complex class actions and in labor and employment litigation.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of a wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## CLASSWIDE FACTUAL ALLEGATAIONS

79.     When Plaintiffs and the members of the Rule 23 Class and the FLSA Class ("Class Members") accepted employment with Defendants, they were hired to work at fixed hourly wage rates.

80.     All of the work that Plaintiffs and the Class Members have performed has been assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiffs and the Class Members have performed.

81.     As part of its regular business practice, Defendants have regularly required, suffered, or permitted its employees to work prior to and after their scheduled shifts without compensation.  This work has been integral to Defendants' business.

82.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the New York Labor Law.  This pattern or practice includes but is not limited to:

      a.      willfully failing to record all of the time that its employees, including Plaintiffs and the Class Members, have worked for the benefit of Defendants.

      b.      willfully failing to fully compensate and/or credit its employees, including Plaintiffs and Class Members, for all of the hours that they have worked for the benefit of Defendants.

      c.      willfully failing to pay its employees, including Plaintiffs and the Class Members, a premium for hours that they worked in excess of 40 hours per week.

83.      Upon information and belief, Defendants unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of attempting to minimize labor costs by violating the FLSA and the New York Labor Law.

84.      Defendants' unlawful conduct has been widespread, repeated, and consistent.

85.      Defendants have intentionally made misrepresentations or omissions of material fact in its time and attendance records and payroll records.

86.      Defendants systematically and regularly, and intentionally, altered time-clock data in its records, deleted hours worked, and falsified payroll records in a way that understated the wages earned by its employees, with the intent to mislead its employees and induce them into accepting less in wages than they were otherwise legally entitled to.

87.      Defendants knew that the misrepresentations or omissions of material fact in the time and attendance records and payroll records were false.

88.      Plaintiffs and the Rule 23 Class reasonably relied on the time and attendance and payroll records as accurate accountings of time worked and wages earned.

89.     Plaintiffs and the Rule 23 Class Members were injured as a result of their reliance on the misrepresentations or omissions of material fact in time and attendance records and payroll records because they were not paid wages for all hours that they had worked.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### A. Carlos Torres

### Background, Duties, and Compensation

90.     Torres was hired by Gristede's in approximately October 2002 as an hourly, non-union employee.

91.     Torres worked for Gristede's from approximately October 2002 through approximately February 20, 2004.

92.     Torres worked in Gristede's stores in New York City at 21st Street and Eighth Avenue, 172nd Street and Grand Concourse, 96th Street and Third Avenue, 74th Street and Broadway, 28th Street and Eighth Avenue, 65th Street and West End Avenue, and other locations.

93.     Torres's primary duties included, but were not limited to helping to prepare stores for their grand openings, working as a cashier, working in the dairy department, building displays, stocking shelves, unpacking boxes, stacking merchandise, counting money, cleaning, and unloading trucks.

94.     At one point during Torres's tenure at Gristede's he was given the keys to a store and was required to lock the store at night.

95.     Although he was sometimes referred to as an "assistant manager or co-manager," Torres' primary job duties remained essentially the same as they were before he was given the keys to the store.

96.     Even after Torres was given the keys to the store, he spent the great majority of his work time stocking shelves, unpacking boxes, taking out garbage, building displays, counting money, and performing other non-managerial tasks.

97.     Torres did not receive a raise when he was given the keys to the store.

98.     When representatives of the union were in one of the stores in which Torres worked, Torres's supervisors told him to stay in the office so that the union representatives would not see a non-union member doing union work.  When the union representatives left the store, the supervisors then told Torres to go back to performing his duties.

99.     During his entire tenure at Gristede's, Torres's effective hourly rate was $11.00.

100.    In approximately April 2003, Torres requested a raise.  Instead of increasing his hourly rate, Gristede's began to pay him a $100.00 bonus for most (but not all) pay periods.

101.    The $100.00 bonus was not linked to the number of hours that Torres worked.

**Torres was Not Paid for Many of the Hours that he Worked**

102.    During his tenure at Gristede's, Torres worked in at least 5 Gristede's stores.

103.    Without compensation, Torres was regularly required to arrive at work prior to the beginning of his scheduled shift to help prepare stores for grand openings.  He was also required to work approximately an extra 15 to 45 (or more) unpaid minutes per day after his scheduled shifts.  These examples are illustrative and are not intended to exhaustively catalogue the unpaid time that Defendants required Torres to work for their benefit.

104.    Defendants pattern or practice of violating the FLSA and the New York Labor Law, as described in this Complaint, affected Torres in each store in which he worked.

105.    Consistent with Defendants pattern or practice described in this Complaint, Torres was not paid for many of the hours that he worked.

106.    Between approximately May 2003 and November 2003, Torres was required to work double shifts on many Wednesdays, from 6:00 AM through 10:00 PM. Some of the time that Torres worked often did not appear in his next paycheck. Only after repeated complaints, and sometimes weeks of waiting, was Torres compensated for some of this time.

107.    Defendants' failure to pay Torres for all hours that he worked was willful. Indeed, one of Torres's managers commented that even if Torres worked 90 hours in a week, Defendants would only pay him for the hours for which he was scheduled to work.

### Gristede's Failed to Keep Accurate Records

108.    Upon information and belief, consistent with its pattern or practice, Defendants did not keep accurate records of the hours that Torres worked.

109.    Defendants intentionally made misrepresentations or omissions of material fact in Torres' time and attendance records and payroll records.

110.    Defendants systematically and regularly understated the actual hours that Torres had worked.

111.    Defendants falsified its payroll records so as to mislead Torres and induce him into accepting less in wages than he was otherwise legally entitled to for the hours that he had worked.

112.    Torres reasonably believed the payroll records to be accurate and relied upon them as accurate accountings of wages earned, when in fact they had been intentionally falsified.

113.    As a direct and proximate result of this intentional fraud, Torres suffered the loss of wages he had earned for work he had performed.

**Torres was Not Paid a Premium for Overtime**

114.    Consistent with Defendants' pattern or practice, Torres was regularly required to work in excess of 40 hours per week without being paid an overtime premium.

115.    Defendant Balseca told Torres that Defendants does not pay overtime premiums to its workers except for work performed on Sundays.

116.    Defendants' failure to pay Torres an overtime premium for his work in excess of 40 hours per week was willful.

**B.  Ruben Mora**

**Background, Duties, and Compensation**

117.    Mora was hired by Gristede's in approximately November 2002 as an hourly, non-union employee.

118.    Mora worked for Gristede's from approximately November 2002 through approximately January 2004.

119.    Mora worked in Gristede's stores in New York City at 65th Street and West End Avenue, 26th Street and Eighth Avenue, and 78th Street and Third Avenue.

120.    Mora's primary duties included, but were not limited to helping to prepare stores for grand openings, building displays, stocking shelves, unpacking boxes, stacking merchandise, cleaning, and taking out garbage.

121.    At one point during Mora's tenure at Gristede's he was given the title "night manager."

122.    Even with the title, "night manager," Mora's job duties remained almost the same; he spent the great majority of his work time stocking shelves, unpacking boxes, taking out garbage, building displays, and performing other non-managerial tasks.

123.   Sometime after Mora was given the title "night manager," he was transferred to another store.  At this store, Mora did almost nothing but unpack boxes and stock shelves.

124.   Sometime thereafter, Mora was transferred to yet another store.  In this store, Mora worked by himself on the night shift unpacking boxes and stocking shelves.

125.   During his entire tenure at Gristede's, Mora's effective hourly rate was never more than $9.00.

126.   During his tenure at Gristede's, Mora worked in at least 3 Gristede's stores.

127.   Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this Complaint, affected Mora in each store in which he worked.

128.   Consistent with Defendants' pattern or practice described in this Complaint, Mora was not fully paid for many of the hours that he worked for Defendants' benefit.

129.   Defendants' failure to fully pay Mora for all hours that he worked was willful.

### Gristede's Failed to Keep Accurate Records

130.   Upon information and belief, consistent with its pattern or practice, Defendants did not keep accurate records of the hours that Mora worked.

131.   Defendants intentionally made misrepresentations or omissions of material fact in Mora's time and attendance records and payroll records.

132.   Defendants systematically and regularly understated the actual hours that Mora had worked.

133.   Defendants falsified its payroll records so as to mislead Mora and induce him into accepting less in wages than he was otherwise legally entitled to for the hours that he had worked.

134.    Mora reasonably believed the payroll records to be accurate and relied upon them as accurate accountings of wages earned, when in fact they had been intentionally falsified.

135.    As a direct and proximate result of this intentional fraud, Mora suffered the loss of wages he had earned for work he had performed.

**Mora was Not Paid a Premium for Overtime**

136.    Consistent with Defendants' pattern or practice, Mora was regularly required to work in excess of 40 hours per week without being paid an overtime premium.

137.    Defendants' failure to pay Mora an overtime premium for his work in excess of 40 hours per week was willful.

### C.  Bobby Irizarry

**Background, Duties, and Compensation**

138.    Irizarry was hired by Gristede's in approximately October 2003 as an hourly, non-union employee in its store at 26th Street and Eighth Avenue in New York City.

139.    Irizarry worked for Gristede's for approximately five months.

140.    Irizarry's primary duties included, but were not limited to unpacking boxes, stocking shelves, stacking merchandise, cleaning the store, cleaning bathrooms, unloading trucks, taking out garbage, checking freezers and fire exits, and maintaining the basement.

141.    During his entire tenure at Gristede's, Irizarry's effective hourly rate was $9.00.

**Irizarry was Not Paid for Many of the Hours that he Worked**

142.    Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this Complaint, affected Irizarry.

143.    Without compensation, Irizarry was regularly required to work between 2 and 4 hours (sometimes more) after his scheduled shifts.  This work was for the benefit of Defendants.

144.    Consistent with Defendants' pattern or practice described in this Complaint, Irizarry was not paid for many of the hours that he worked.

145.    Defendants' failure to pay Irizarry for all hours that he worked was willful.

146.    Indeed, one of Irizarry's managers, Dave Peters ("Peters"), asked Irizarry to "bear with him" and told Irizarry that he was keeping a "chronicle" of the time that Irizarry worked outside of Irizarry's scheduled shifts so that Irizarry could get paid for this time.  Peters also told Irizarry that Defendant Balseca said that Irizarry had to wait to be paid for some of the time that he worked.

147.    Peters also told Irizarry that Defendant Balseca did not want the store's budget to "run over" and that "we all have to pitch in."

### Gristede's Failed to Keep Accurate Records

148.    Upon information and belief, consistent with their pattern or practice, Defendants did not keep accurate records of the hours that Irizarry worked.

149.    In fact, Peters told Irizarry not to punch out at the end of his workday.  Instead, Peters told Irizarry that Peters would "take care of it."

150.    Upon information and belief, Defendants did not record all of the time that Irizarry worked.

151.    Moreover, upon information and belief, Defendants modified the time records of employees, including Irizarry, by eliminating time that they worked for Defendants' benefit.

152.    Defendants intentionally made misrepresentations or omissions of material fact in Irizarry's time and attendance records and payroll records

153.    Defendants systematically and regularly understated the actual hours that Irizarry had worked.

20

154.    Defendants falsified their payroll records so as to mislead Irizarry and induce him into accepting less in wages than he was legally entitled to for the hours he had worked.

155.    Irizarry reasonably believed the payroll records to be accurate and relied upon them as accurate accountings of wages earned, when in fact they had been intentionally falsified.

156.    As a direct and proximate result of this intentional fraud, Irizarry suffered the loss of wages he had earned for work he had performed.

**Irizarry was Not Paid a Premium for Overtime**

157.    Consistent with Defendants' pattern or practice, Irizarry was regularly required to work in excess of 40 hours per week without being paid an overtime premium.

158.    Defendants' failure to pay Irizarry an overtime premium for his work in excess of 40 hours per week was willful.

**D. All Plaintiffs**

159.    Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this Complaint, affected Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino.

160.    Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino regularly worked in excess of 40 hours per week without being paid at a rate of time and a half for all hours (and partial hours) that they worked for Defendants' benefit in excess of 40 hours in a workweek.

161.    Indeed, in many instances, Plaintiffs were not compensated at all for many hours (and partial hours) that they worked for Defendants' benefit in excess of 40 hours in a workweek.

162.    Defendants did not keep accurate records of the time worked by Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino.

163.    Defendants intentionally made misrepresentations or omissions of material fact in the time and attendance records and payroll records of Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino.

164.    Defendants systematically and regularly understated the actual hours that Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino had worked.

165.     Defendants falsified their records so as to mislead Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino and induce them into accepting less in wages than they were legally entitled to for the hours they had worked.

166.    Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino reasonably believed the payroll records to be accurate and relied upon them as accurate accountings of wages earned, when in fact they had been intentionally falsified.

167.    As a direct and proximate result of this intentional fraud, Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and Pastorino suffered the loss of wages they had earned for work they had performed.

168.    Defendants' violations of the FLSA and the New York Labor Law, as described in this complaint, were willful with respect to Torres, Mora, Irizarry, Chewning, Santiago, Helwig, Misuraca, Crema, DiPreta, Phelps, Arocho, Croker, Salegna, DeLeon, and , and Pastorino.

169.    At times relevant to this Complaint, Plaintiffs have held the titles of department managers, night managers, assistant managers, co-managers, or other similar job titles in Gristede's retail grocery stores.

### FIRST CAUSE OF ACTION
**(Fair Labor Standards Act)**
**(Brought on Behalf of Plaintiffs and all FLSA Class Members)**
**(Against All Defendants)**

170.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

171.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

172.    Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

173.    At all times relevant, Plaintiffs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

174.    The overtime wage provisions set forth in § 206 and § 207 of the FLSA apply to Defendants – Gristede's, Catsimatides, Monos, and Balseca – as employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

175.    Defendants have willfully failed to record, credit, or compensate Plaintiffs and the FLSA Class Members for work performed in excess of 40 hours per workweek.

176.    Defendants have failed to pay Plaintiffs and the FLSA Class the overtime wages to which they were entitled under the FLSA.

177.    Defendants' violations of the FLSA, as described in this Complaint have been willful and intentional.  Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former employees.

178.    Because of Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

179.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and all others similarly situated have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 206 et seq.

180.    As a result of Defendants' unlawful acts, Plaintiffs and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(New York Labor Law: Unpaid Overtime Premium Hourly Wages)**
**(Brought on Behalf of Plaintiffs and all Rule 23 Class Members)**
**(Against All Defendants)**

181.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

182.    At times relevant to this action, Plaintiffs were employees and Defedants – Gristede's, Catsimatides, Monos, and Balseca – were employers within the meaning of the New York Labor Law.

183.    Defendants have willfully failed to record, credit, or compensate Plaintiffs and the Rule 23 Class Members for all hours worked in excess of 40 hours per workweek.

184.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

185.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members an overtime premium for hours worked in excess of 40 hours per week, it has willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

186.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime premium wages, reasonable attorneys' fees and costs of the action, pre-judgment and post-judgment interest, and  notice and an opportunity for class members, after the determination of class-wide liability and of individual back pay and interest, to intervene in this action or to file their own suits and petition individually for liquidated damages, and other relief pursuant to New York Labor Law Article 19, §§ 650 et seq.

### THIRD CAUSE OF ACTION
#### (Fraud)
**(Brought on Behalf of Plaintiffs and all Rule 23 Class Members)**
**(Against Gristede's Only)**

187.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

188.    Gristede's has intentionally, knowingly, regularly, and systematically made misrepresentations or omissions of material fact in its time, attendance, and payroll records by understating the hours its employees worked and the amounts its employees earned.

25

189.    Gristede's falsified its payroll records so as to mislead employees and induce them into accepting less in wages than they were legally entitled to and had earned.

190.    Plaintiffs and the Rule 23 Class Members reasonably relied on Gristede's representations about the total hours they worked and wages they earned, believing them to be accurate when in fact they routinely had been falsified.

191.    As a direct result of Gristede's fraudulent misrepresentations, Plaintiffs and the Rule 23 Class Members suffered harm, namely, the loss of earned wages for work they had performed.

192.    Having been harmed by Gristede's fraudulent misrepresentations, Plaintiffs and the Rule 23 Class Members are entitled to recover from Gristede's their unpaid wages and costs of the action, pre-judgment and post-judgment interest, and Class Members should be allowed an opportunity, after the determination of class-wide liability and of individual damages and interest, to intervene in this action or to file their own suits and petition individually for punitive damages.

### FOURTH CAUSE OF ACTION
**(Fair Labor Standards Act: Retaliation )**
**(Brought on Behalf of Plaintiffs Torres and Chewning)**
**(Against Gristede's Only)**

193.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

194.    Plaintiffs Torres and Chewning filed the instant lawsuit to enforce their rights to receive overtime under the FLSA and the New York Labor Law.

195.    Torres' and Chewning's lawsuit is a protected activity under 29 U.S.C. § 215(3).

196.    In response to Torres' and Chewning's lawsuit, Gristede's filed counterclaims against Torres and Chewning ("Counterclaims").

197.    The Counterclaims are frivolous.

198.    Gristede's knew that the Counterclaims were frivolous when it filed them.

199.    Gristede's brought the Counterclaims because Torres and Chewning filed this action to enforce their rights under the FLSA.

200.    Gristede's brought the Counterclaims against Torres and Chewning in retaliation for Torres and Chewning bringing this action to enforce their rights under the FLSA.

201.    Gristede's brought the Counterclaims in against Torres and Chewning in order to harass and intimidate Torres and Chewning, and/or to otherwise interfere with Torres' and Chewning's attempts to vindicate their rights under the FLSA.

202.    The filing of the Counterclaims constitutes retaliation and discrimination in violation of 29 U.S.C. § 215(3).

203.    Torres and Chewning have suffered damage including but not limited to harm to their reputation, legal costs, and delay as a result of Gristede's retaliation.

204.    Torres and Chewning are entitled to equitable relief, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## FIFTH CAUSE OF ACTION
### (New York Labor Law: Retaliation )
### (Brought on Behalf of Plaintiffs Torres and Chewning)
### (Against Gristede's Only)

205.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

206.    Torres' and Chewning's lawsuit against Gristede's is a protected activity under New York Labor Law § 215.

207.     By filing Counterclaims against Torres and Chewning, Gristede's has retaliated against them, discriminated against them, and penalized them in violation of New York Labor Law § 215.

208.     Gristede's brought the Counterclaims because Torres and Chewning filed this action to enforce their rights under the New York Labor Law.

209.     Gristede's brought the Counterclaims against Torres and Chewning in retaliation for Torres and Chewning bringing this action to enforce their rights under the New York Labor Law.

210.     Gristede's brought the Counterclaims in against Torres and Chewning in order to harass and intimidate Torres and Chewning, and/or to otherwise interfere with Torres' and Chewning's attempts to vindicate their rights under the New York Labor Law.

211.     Torres and Chewning have suffered damage including but not limited to harm to their reputation, legal costs, and delay as a result of Gristede's retaliation.

212.     Notice of this claim has been served upon the Attorney General pursuant to New York Labor Law § 215(2).

213.     Torres and Chewning are entitled to equitable relief, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, prays for the following relief:

A.       That, at the earliest possible time, Plaintiffs be directed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have

28

at any time during the three years immediately preceding the filing of this suit, up through and including the date of the issuance of court-supervised notice, been employed by Defendants as department managers, night managers, assistant managers, co-managers, or other similar job titles in Gristede's retail grocery stores. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages.

B.     An order requiring Defendants to pay all unpaid overtime wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.     Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

F.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations;

G.     An order requiring Defendants pay all unpaid overtime pay pursuant to N.Y. Lab. Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations and New York common law (Plaintiffs do not seek liquidated damages under the New York Labor Law or New York common law);

H.     Pre-judgment interest;

I.     An injunction requiring Defendants to pay all wages required by law;

29

J.      After the determination of class-wide liability, of individual damages, and of Defendants' liability for back pay, notice to class members of the opportunity to intervene in this action or to file separate actions to recover liquidated damages under Article 19, § 681(1) of the New York Labor Law and punitive damages under New York common law;

K.      Attorneys' fees and costs of the action; and

L.      Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:        May 3, 2005

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

By:

/s/ Justin M. Swartz
Justin M. Swartz (JS 7989)

Adam T. Klein (AK 3293)
Tarik F. Ajami (TA 5922)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
**Attorneys for Plaintiffs and the Putative Class**

# EXHIBIT A

# EXHIBIT A

## DECLARATION OF ANTONIO MARCANO

I, Antonio Marcano, hereby state, upon personal knowledge, as follows:

1.     I reside at 107-53 125th St., Queens, NY 11419.

2.     I worked for Gristede's from approximately August 18, 2003 until November 9, 2003 as a trainee and as a store manager. I was the store manager at Gristede's Store # 53 at 1644 York Avenue & 87th Street from approximately September 2003 through November 9, 2003.

3.     For a few weeks at the beginning of my employment, I trained as a store manager at the Gristede's Store # 562 at 26th Street and 8th Avenue ("26th Street"). The store manager there was named was David Peters.

4.     As part of my training, Mr. Peters told me that, in order to make my payroll budget, I would have to alter the attendance records and delete hours from employees' payroll records. Mr. Peters showed me how to do this in the payroll program, which only the store manager had access to. Mr. Peters told me that this was a common practice throughout the entire company.

5.     Mr. Peters told me that he deleted hours from employees' payroll records on a regular basis. In fact, I watched as Mr. Peters altered the payroll records of employees in his store.

6.     During my last week working at Store #562, my own time records were altered. On my final pay period for that store, I was denied my pay for an entire Sunday of work, which amounted to approximately $350. I complained about this to Mr. Peters, to Jim Monos, to Denise Imperiolo, and to Galo Balseca, to no avail.

7.     Gristede's erased hours from the time records of many hourly employees and did not pay the employees for these hours.

8.     In the store that I managed, Store # 53, department managers and other hourly employees consistently worked off-the-clock without compensation. I know that department managers and other hourly employees did not get paid for all of the hours that they worked, even when they were "punched in."

9.     The payroll decisions at Gristede's were made in a centralized way. Galo Balseca was the director of operations for Gristede's and was in charge of payroll for all Gristede's stores. Denise Imperiolo assisted Mr. Balseca in doing payroll for all of the stores. Jim Monos and Chris Lang were the district managers. I believe that Ms. Imperiolo, Mr. Monos and Mr. Lang assisted Mr. Balseca in making payroll decisions.

1

10. As a store manager, I was placed under great pressure to "make my numbers" by Gristede's management, including Mr. Balseca and Mr. Monos. My "numbers" were my labor budget. Because of this pressure, I sometimes cut hours from hourly employees' records and they were not paid for these hours. Mr. Baseca and Mr. Monos encouraged me to do so. My payroll budget was set by Mr. Balseca and Mr. Monos.

11. Mr. Monos, my supervisor, regularly instructed me to edit the time records of my hourly employees and erase hours they had worked in order to meet my labor budget. I did so every week that I managed the 86th Street store.

12. When I resisted or refused to cut employees' hours to the extent that Mr. Monos requested, Mr. Monos retaliated against me by cutting my pay. In addition, Mr. Monos edited my employees' time records himself, without my consent, and erased hours that they worked.

13. Also, approximately once a month, Mr. Balseca instructed me, over the phone and in person, to cut employees' hours even further than I had cut them already. He threatened that, if I did not comply, I would be out of a job. Therefore, I often cut employees' time records even more.

14. At my store, the over-night manager, who worked only when the store was closed, was not much more than a clerk. His primary duty was to "pack out" and perform other manual labor overnight. Packing out means taking merchandise out of boxes and placing it on the shelves and unloading trucks.

15. The night manager in my store had almost no discretion in performing his job. He did not decide the amount of groceries that were ordered or what was to be put on the shelves. He did not schedule employees. He did not keep track of inventory. He did not assign employees to particular workstations. He did not order supplies. He was not responsible for inventory irregularities. The night manager could not hire, fire, promote, or demote employees or set their pay. He had no significant influence over whether other employees were hired, fired, promoted, or demoted or what the employees were paid. His most frequent and most critical duties were manual-labor type duties like stocking shelves, unpacking boxes, taking out garbage, building displays, and performing other non-managerial tasks. He was not free from supervision. Even if the store manager was not present in the store while they were working, the store manager was always in charge of the store.

16. During my tenure, my night manager consistently worked more than 40 hours per week, usually more than 50 hours per week. He was not paid time and a half for the time that he worked over 40 hours per week.

17. I was never given any training at Gristede's on the requirements of the Fair Labor Standards Act or the New York Labor Law.

2

18.     While I was store manager, nobody from Gristede's upper management ever asked me what duties the night managers actually performed in my store.  As far as I know, nobody from Gristede's kept any records of the actual tasks of any night manager. As far as I know, Gristede's never conducted a study of how my night manager spent their work time.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this ⏼⏼ day of  14   , 2004.

Antonio Marcano

3

# EXHIBIT B

# EXHIBIT B

## DECLARATION OF THOMAS C. DALY

I, Thomas C. Daly, hereby state, upon personal knowledge, as follows:

1.    I reside at 33 Cornwall Road, Norwalk, CT 06850.

2.    I worked for Gristede's from approximately July 2002 through March 2004. I was the store manager in the Gristede's store in Scarsdale, NY and the Gristede's store on 96th Street and Third Avenue in Manhattan.

3.    In my stores, department managers and assistant managers consistently worked off-the-clock without compensation. I know that department managers and assistant managers did not get paid for all of the hours that they worked, even when they were "punched in."

4.    I believe, based on my observations, that Gristede's erased hours from the time records of department managers and assistant managers, and did not pay the employees for these hours. People from the main Gristede's office on Eleventh Avenue in Manhattan ("Main Office") "pulled the payroll" from the computer system approximately once per week. Usually, the time reports that they pulled indicated that the department managers and assistant managers worked through their lunch breaks and worked beyond their scheduled shifts. When I received reports back from the Main Office, they were usually altered to indicate that the employee(s) in question actually took a lunch break or worked only eight hours. Their pay was docked accordingly.

5.    It was Gristede's policy that hourly employees who were scheduled for forty hours per week would not be paid for time that they worked in excess of forty hours per week, unless the time was specifically approved in advance by upper management.

6.    Department managers and assistant managers routinely had lunch periods deducted from their pay even when they worked through lunch (which happened on a regular basis).

7.    When employees worked over forty hours per week, I sometimes cut their hours back down to forty. They were not paid for these hours. Even if I did not do this, they would not have been paid for this time. When I did not cut the hours that employees worked in excess of forty hours per week, the hours over forty were usually cut down to forty at the Main Office.

8.    For example, my deli manager in Scarsdale, almost never took a lunch break. He almost never got paid for the time that he worked during what was supposed to be his lunch break. I sometimes cut out the hours that the deli manager worked in excess of forty hours per week. If I did not cut his hours, his hours were cut at the Main Office.

1

9.    The payroll decisions at Gristede's were made in a centralized way.  Galo Balseca, vice president of operations, worked out of the Main Office.  Mr. Balseca was in charge of the payroll.  Jim Monos was a district manager.  Mr. Monos also made payroll decisions.

10.    For example, Mr. Monos called me to ask why my meat manager worked more than forty hours in a particular week.  I told him that the meat manager worked through lunch.  The meat manager's hours were then adjusted down to forty hours per week.

11.    As a store manager, I was placed under great pressure to "make my numbers" by Gristede's management, including Mr. Balseca and Mr. Monos.  My "numbers" were my labor budget.

12.    I know that Galo Balseca altered payroll records in order to "make numbers" because he altered my own records – he charged me for a personal day when I did not take one.

13.    I was never given any training at Gristede's on the requirements of the Fair Labor Standards Act or the New York Labor Law.

14.    While I was store manager, nobody from Gristede's Main Office ever asked me what duties my employees actually performed in my stores.  As far as I know, nobody from Gristede's kept any records of the actual tasks of any employees.  As far as I know, Gristede's never conducted a study of how any employees spent their work time.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this __15__ day of __Oct__, 2004.

_____
Thomas C. Daly

2