Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Anjana Samant (AS 5163)
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CARLOS TORRES, RUBEN MORA,
BOBBY IRIZARRY, LEWIS CHEWNING,
GILBERTO SANTIAGO,
WILLIAM HELWIG, ROBERT MISURACA,
JOSEPH CREMA, MARIO DIPRETA,
VICTOR PHELPS, JOSELITO AROCHO,
ALFRED CROKER, DANIEL SALEGNA,          **No. 04 CV 3316 (PAC)**
FRANK DELEON, and ROBERT PASTORINO,
on behalf of themselves and all others similarly
situated,

                         Plaintiffs,

            -against-

GRISTEDE'S OPERATING CORP.; NAMDOR,
INC.; GRISTEDE'S FOODS, INC.; CITY PRODUCE
OPERATING CORP.; GRISTEDE'S FOODS NY,
INC., JOHN CATSIMATIDES, JAMES MONOS, and
GALO BALSECA,

                         Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................. 1

OVERVIEW OF GROUNDS FOR SUMMARY JUDGMENT ....................................... 1

STATEMENT OF FACTS ....................................................................................... 3

  I. Procedural Posture............................................................................................ 3

  II. Factual Background ......................................................................................... 5

    A. The Class ....................................................................................................... 5

    B. Gristede's Did Not Pay Class Members on a Salary Basis ..................................... 6

    C. Gristede's Company-Wide Policy Was To Delete "Unauthorized Overtime" from Department  Managers' Time Records ........................................................................ 7

    D. Gristede's Did Not Maintain Accurate Records...................................................... 8

ARGUMENT ........................................................................................................ 9

  I. Gristede's Cannot Prove that It Was Entitled to the Executive Exemption................. 9

    A. Gristede's Cannot Prove that the Class Members were Paid on a Salary Basis ... 11

      1. Actual Practice – Gristede's Own Payroll Data Demonstrate Its Actual Practice of Making  Deductions from Wages........................................................................ 13

      2. Policy – It Was Gristede's Admitted Policy To Make Impermissible Deductions from Class  Members' Wages................................................................................... 14

  II. The Co-Manager Plaintiffs and Class Members Are Entitled to Summary Judgment on Liability Because Gristede's Admits They Worked More than 40 Hours Per Workweek Without Overtime Compensation ............................................................... 15

  III. The Department Manager Plaintiffs and Class Members Are Entitled to Summary Judgment on Gristede's "Unauthorized Overtime" Policy............................................. 16

    A. Gristede's Unauthorized Overtime Policy Was Unlawful .................................... 17

    B. Gristede's Has Engaged in a Pattern or Practice of Violating the FLSA and the NYLL ................................................................................................................. 19

IV. Plaintiffs Are Entitled to Summary Judgment on Defendants' Affirmative Defenses of Laches, Unclean Hands, and Waiver and Estoppel....................................................... 22

   A. Laches................................................................................................................ 22

   B. Unclean Hands................................................................................................. 23

   C. Waiver and Estoppel........................................................................................ 23

V. Gristede's Is Liable for Liquidated Damages............................................................. 24

VI. A Three-Year Statute of Limitations Applies ........................................................... 27

VII. Gristede's Failed To Maintain or Preserve Accurate Records of Time ................. 30

   A. Gristede's Violated the Record Keeping Requirements........................................ 30

   B. Plaintiffs are Entitled to a Presumption at Trial .................................................. 31

VIII. The Counterclaims Against Plaintiffs Torres and Chewning Should Be Dismissed ........................................................................................................................................ 32

   A. The Counterclaims Fail To Plead Any Actionable Wrong ................................... 33

   B. The Counterclaims Lack Subject Matter Jurisdiction ........................................... 34

IX. Gristede's Filed the Counterclaims To Punish Plaintiffs Torres and Chewning .... 35

CONCLUSION............................................................................................................. 40

## TABLE OF AUTHORITIES

### CASES

*A.H. Phillips, Inc. v. Walling*,
    324 U.S. 490 (1945)............................................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................. 9

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)........................................................................................... 31, 32

*Ansoumana v. Gristede's Operating Corp.*,
    255 F. Supp. 2d 184 (S.D.N.Y. 2003)..................................................................... 1, 28

*Auer v. Robbins*,
    519 U.S. 452 (1997)............................................................................................... 13

*Barfield v. N.Y. City Health & Hospitals Corp.*,
    432 F. Supp. 2d 390 (S.D.N.Y. 2006)................................................................... 15, 24

*Barrentine v. Arkansas-Best Freight System, Inc.*,
    450 U.S. 728 (1981)............................................................................................... 10

*Bazemore v. Friday*,
    478 U.S. 385 (1986)............................................................................................... 16

*Bell v. Farmers Insurance Exch.*,
    9 Cal. Rptr. 3d 544 (Cal. Ct. App. 2004) ............................................................... 20

*Bill Johnson's Restaurants, Inc., v. NLRB*,
    461 U.S. 731 (1983)............................................................................................... 37

*Bilyou v. Dutchess Beer Distributings, Inc.*,
    300 F.3d 217 (2d Cir. 2002)................................................................................... 10

*Block v. City of Los Angeles*,
    253 F.3d 410 (9th Cir. 2001) ................................................................................. 14

*Bongat v. Fairview Nursing Care Ctr., Inc.*,
    341 F. Supp. 2d 181 (E.D.N.Y. 2004) ................................................................. 12, 15

*Bowman v. City of Indianapolis*,
    133 F.3d 513 (7th Cir. 1998) ........................................................................... 12, 13, 14

iii

*Brennan v. General Motors Acceptance Corp.*,
    482 F.2d 825 (5th Cir. 1973) .......................................................................... 16, 17, 20

*Brock v. Casey Truck Sales, Inc.*,
    839 F.2d 872 (2d Cir. 1988)........................................................................................ 36

*Brock v. Claridge Hotel & Casino*,
    846 F.2d 180 (3d Cir. 1988)........................................................................................ 11

*Brock v. Wilamowsky*,
    833 F.2d 11 (2d Cir. 1987)..................................................................................... 24, 25

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)................................................................................................... 23

*Brooks v. Village of Ridgefield Park*,
    185 F.3d 130 (3d Cir. 1999)........................................................................................ 25

*Bruker v. City of New York*,
    92 F. Supp. 2d 257 (S.D.N.Y. 2000)........................................................................... 22

*Bruschini v. Board of Education of Arlington Central Sch. District*,
    911 F. Supp. 104 (S.D.N.Y. 1995)................................................................................. 9

*Burlington Northern & Santa Fe Ry. Co. v. White*,
    126 S.Ct. 2405 (2006)................................................................................................. 36

*Cantu v. Owatonna Canning Co.*,
    No. 3-76-Civ. 374, 1980 WL 2174 (D. Minn. Jul. 14, 1980) ........................................ 31

*Carnegie v. Household International, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ...................................................................................... 20

*Caserta v. Home  Lines Agency, Inc.*,
    273 F.2d 943 (2d Cir. 1959)................................................................................... 23, 24

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................... 9

*Chao v. A-One Medical Services, Inc.*,
    346 F.3d 908 (9th Cir. 2003) ...................................................................................... 28

*Chao v. Vidtape, Inc.*,
    196 F. Supp. 2d 281 (E.D.N.Y. 2002) ......................................................................... 28

*Chung v. New Silver Palace Restaurant, Inc.*,
246 F. Supp. 2d 220 (S.D.N.Y. 2002) .......................................................................... 15

*Cox v. Town of Poughkeepsie*,
209 F. Supp. 2d 319 (S.D.N.Y. 2002) .......................................................................... 28

*Cozzi v. Pepsi-Cola Gen. Bottlers, Inc.*,
No. 96 C 7228, 1997 WL 312048 (N.D. Ill. June 6, 1997) .......................................... 36

*Damassia v. Duane Reade, Inc.*,
04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ......................................... 10

*Danesh v. Rite Aid Corp.*,
39 F. Supp. 2d 7 (D.D.C. 1999) ....................................................................... 12, 13, 14

*Debejian v. Atlantic Testing Laboratories, Ltd.*,
64 F. Supp. 2d 85 (N.D.N.Y. 1999) ...................................................................... 12, 25

*Donovan v. Kaszycki & Sons Contractors, Inc.*,
599 F. Supp. 860 (S.D.N.Y.1984) ............................................................................... 26

*Dukes v. Wal-Mart Stores, Inc.*,
222 F.R.D. 137 (N.D. Cal. 2004), *aff'd*, 474 F.3d 1214 (9th Cir. 2007) ...................... 19

*EEOC v. O & G Spring & Wire Forms Spec. Co.*,
38 F.3d 872 (7th Cir. 1994) ........................................................................................ 20

*EEOC v. Outback Steakhouse of Florida, Inc.*,
75 F. Supp. 2d 756 (N.D. Ohio 1999) ......................................................................... 36

*EEOC v. Virginia Carolina Veneer Corp.*,
495 F. Supp. 775 (D.C. Va. 1980) .............................................................................. 37

*Franks v. Bowman Transport Co.*,
424 U.S. 747 (1976) .................................................................................................... 20

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
82 F. Supp. 2d 126 (S.D.N.Y. 1999) ........................................................................... 22

*Gliatta v. Tectum, Inc.*,
211 F. Supp. 2d 992 (S.D. Ohio 2002) ........................................................................ 36

*Goldman Marcus, Inc. v. Goldman*,
No. 99 Civ. 11130, 2000 WL 297169 (S.D.N.Y. Mar. 21, 2000) ................................. 35

*Gonzalez v. Rite Aid of N.Y., Inc.*,

199 F. Supp. 2d 122 (S.D.N.Y. 2002)........................................................................ 17

*Gustafson v. Bell Atlantic Corp.*,
171 F. Supp. 2d 311 (S.D.N.Y. 2001)........................................................................ 25

*Hameed v. International Association of Bridge Workers, Local 396*,
637 F.2d 506 (8th Cir. 1980) ..................................................................................... 20

*Hameli v. Nazario*,
930 F. Supp. 171 (D. Del. 1996).......................................................................... 34, 35

*Hens v. ClientLogic Operating Corp.*,
No. 05-Civ- 381s, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) ............................. 10

*Herman v. RSR Sec. Services Ltd.*,
172 F.3d 132 (2d Cir. 1999)................................................................................. 24, 27

*Hilbert v. District of Columbia*,
784 F. Supp. 922 (D.D.C. 1992) ........................................................... 6, 7, 11, 14

*Holzapfel v. Town of Newburgh, N.Y.*,
145 F.3d 516 (2d Cir. 1998)................................................................................. 18, 24

*Huntington Dental & Medical Co. v. Minnesota Mining & Manufacturing Co.*,
No. 95 Civ. 10959, 1998 WL 60954 (S.D.N.Y. Feb. 13, 1998) ..................................... 33

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005)..................................................................................................... 17

*Ikelionwu v. U.S.*,
150 F.3d 233 (2d Cir. 1998)....................................................................................... 22

*International Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977).................................................................................. 16, 17, 19, 20

*Jacques v. DiMarzio, Inc.*,
200 F. Supp. 2d 151 (E.D.N.Y. 2002) ................................................................... 36, 39

*Jacques v. DiMarzio, Inc.*,
216 F. Supp. 2d 139 (E.D.N.Y. 2002) ............................................................. 34, 36, 39

*Jones v. Ryder Services Corp.*,
No. 95 C 4763, 1997 WL 158329 (N.D. Ill. Mar. 31, 1997) ................................... 36, 37

*Kinney v. District of Columbia*,
994 F.2d 6 (D.C. Cir. 1993) ....................................................................................... 11

*Kissel v. U.S. Steakhouse Bar & Grill, Inc.*,
No. 6:05-cv-58, 2006 WL 2850105 (M.D. Fla. 2006) .................................................. 18

*Klein v. London Star Ltd.*,
26 F. Supp. 2d 689 (S.D.N.Y. 1998) ........................................................................ 34

*Klem v. County of Santa Clara*,
208 F.3d 1085 (9th Cir. 2000) ................................................................................. 14

*Klinedinst v. Swift Investments, Inc.*,
260 F.3d 1251 (11th Cir. 2001) ............................................................................... 10

*Kosakow v. New Rochelle Radiology Associates*,
274 F.3d 706, 718 (2d Cir. 2001) ........................................................................ 18, 19

*Kreinik v. Showbran Photo, Inc.*,
No. 02 Civ. 1172, 2003 WL 22339268 (S.D.N.Y. Oct. 14, 2003) ......................... 37, 38

*Lama Holding Co. v. Smith Barney*,
668 N.E.2d 1370 (1996) ......................................................................................... 34

*Lee v. ABC Carpet & Home*,
236 F.R.D. 193 (S.D.N.Y. 2006) ............................................................................ 10

*Lopez v. Children's Mem'l Hospital*,
No. 02-3598, 2002 WL 31898188 (N.D. Ill. Dec. 31, 2002) ................................... 29

*Lopez v. Silverman*,
14 F. Supp. 2d 405 (S.D.N.Y. 1998) ....................................................................... 12

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*,
263 F.3d 208 (2d Cir. 2001) .................................................................................... 37

*Marshall v. Sam Dell's Dodge Corp.*,
451 F. Supp. 294 (N.D.N.Y. 1978) .......................................................................... 29

*Martin v. Cooper Electric Supply Co.*,
940 F.2d 896 (3d Cir. 1991) .................................................................................... 25

*Martin v. Malcolm Pirnie, Inc.*,
949 F.2d 611 (2d Cir. 1991) ......................................................................... 10, 12, 14

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128 (1988) ............................................................................................... 27

*Moon v. Kwon,*
    248 F. Supp. 2d 201 (S.D.N.Y. 2002)..................................................................... 18, 29

*Oscar Gruss & Son, Inc. v. Hollander,*
    337 F.3d 186 (2d Cir. 2003)..................................................................................... 35

*PenneCom B.V. v. Merrill Lynch & Co.,*
    372 F.3d 488 (2d Cir. 2004)..................................................................................... 23

*Pettway v. America Cast Iron Pipe Co.,*
    494 F.2d 211 (5th Cir. 1974) .................................................................................... 20

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,*
    486 F. Supp. 414 (S.D.N.Y. 1980)........................................................................... 23

*Pollis v. New Sch. for Social Research,*
    132 F.3d 115 (2d Cir. 1997)................................................................................ 27, 28

*Reich v. Department of Conservation & Natural Resources, State of Alabama,*
    28 F.3d 1076 (11th Cir. 1994) .................................................................................. 18

*Reich v. S. New Eng. Telecommunication Corp.,*
    121 F.3d 58 (2d Cir. 1997)........................................................................... 20, 25, 32

*Reich v. Waldbaum, Inc.,*
    833 F. Supp. 1037 (S.D.N.Y. 1993), *rev'd on other grounds,* 52 F.3d 35,
    41 (2d Cir.1995)......................................................................... 26, 27, 28, 29, 31

*Rivera-Flores v. Puerto Rico Telegraph Co.,*
    64 F.3d 742 (1st Cir. 1995)........................................................................................ 9

*Robinson v. Metropolitan-North Commuter R.R. Co.,*
    267 F.3d 147 (2d Cir. 2001)........................................................................... 17, 19, 20

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997)................................................................................................ 36

*Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink International Corp.,*
    401 F.3d 28 (2d Cir. 2005)....................................................................................... 16

*Settlement Home Care, Inc. v. Industrial Board of Appeals of Department of Labor,*
    542 N.Y.S.2d 346 (App. Div. 1989) ........................................................................ 10

*Spencer v. Banco Real, S.A.,*
    623 F. Supp. 1008 (S.D.N.Y. 1985)......................................................................... 34

*Sperling v. Hoffmann-La Roche, Inc.*,
    924 F. Supp. 1346 (D.N.J. 1996) ............................................................ 21

*Stewart v. General Motors Corp.*,
    542 F.2d 445 (7th Cir. 1976) .................................................................. 20

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................... 33

*Takas v. Hahn Automobile Corp.*,
    246 F.3d 776 (6th Cir. 2001) .................................................................. 14

*Tennessee Coal, Iron & R.R. Co. v. Muscoda Local Number 123*,
    321 U.S. 590 (1944) ............................................................................... 17

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000) ................................................................... 16

*Tony & Susan Alamo Foundation v. Sec'y of Labor*,
    471 U.S. 290 (1985) ............................................................................... 10

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ...................... 4-7, 9-15

*Treglia v. Town of Manlius*,
    313 F.3d 713 (2d Cir. 2002) ................................................................... 36

*Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.*,
    17 F.3d 38 (2d Cir. 1994) ...................................................................... 22

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................... 34

*U.S. v. Board of Education for Sch. District of Philadelphia*,
    911 F.2d 882 (3d Cir. 1990) ................................................................... 21

*Williams v. United Credit Plan of Chalmette, Inc.*,
    526 F.2d 713 (5th Cir. 1976) ................................................................... 9

*Wright v. Aargo Sec. Servs., Inc.*,
    No. 99 Civ. 9115, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001) ................................... 12

*Wright v. Stern*,
    450 F. Supp. 2d 335 (S.D.N.Y. 2006) ....................................................... 36

*Yang v. ACBL Corp.*,

427 F. Supp. 2d 327 (S.D.N.Y. 2005)...................................................................28, 30, 32

*Yourman v. Giuliani*,
    229 F.3d 124 (2d Cir. 2000).......................................................................11, 12, 13, 14

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003)...............................................................................................12

## REGULATIONS

29 C.F.R. § 516.2(a)(7)............................................................................................................30

29 C.F.R. § 541.100...................................................................................................................9

29 C.F.R. § 541.118.................................................................................................................12

29 C.F.R. § 541.118(a)............................................................................................................11

29 C.F.R. § 541.602........................................................................................................9, 12, 13

29 C.F.R. § 541.602(a)............................................................................................................12

29 C.F.R. § 541.602(b)(1).................................................................................................12, 14

29 C.F.R. § 541.602(b)(4)........................................................................................................14

29 C.F.R. § 541.602(b)(5)........................................................................................................14

29 C.F.R. § 541.603(a)............................................................................................................12

29 C.F.R. § 578.3(c)(1)............................................................................................................27

29 C.F.R. § 578.3(c)(3)............................................................................................................27

29 C.F.R. § 778.223.................................................................................................................17

29 C.F.R. § 779.101.................................................................................................................10

29 C.F.R. § 785.11............................................................................................................17, 18

29 C.F.R. § 785.13.................................................................................................................18

29 § C.F.R. 785.15.................................................................................................................17

12 N.Y.C.R.R § 142-2.2.....................................................................................................12, 15

12 N.Y.C.R.R § 142-2.14(c)(4)(i)(e) ..................................................................... 12

12 N.Y.C.R.R § 142-2.6(a)(4) ............................................................................... 30

**RULES**

C.P.L.R. 3016(b)..................................................................................................... 34

Fed. R. Civ. P. 9(b) ............................................................................................... 34

Fed. R. Civ. P. 56(c) .......................................................................................... 9, 15

Fed. R. Civ. P. 56(d) .............................................................................................. 9

**STATUTES**

28 U.S.C. § 1367(a) ............................................................................................... 34

29 U.S.C. § 202(a) ................................................................................................. 10

29 U.S.C. § 202(b) ................................................................................................. 10

29 U.S.C. § 203(e)(1) ............................................................................................ 18

29 U.S.C. § 203(g) ................................................................................................. 18

29 U.S.C. § 207(a)(1) ............................................................................................ 15

29 U.S.C. § 211(c) ................................................................................................. 30

29 U.S.C. § 215(a)(3) ............................................................................................ 35

29 U.S.C. § 215(a)(5) ............................................................................................ 31

29 U.S.C. § 216(c) ................................................................................................. 24

29 U.S.C. § 255(a) ................................................................................................. 27

29 U.S.C. § 260..................................................................................................... 24

29 U.S.C. § 2611(2)(C)..................................................................................... 18, 19

N.Y. Lab. Law § 2(7)............................................................................................. 18

N.Y. Lab. Law § 215 ............................................................................................. 35

N.Y. Lab. Law § 650 ......................................................................................................... 10

N.Y. Lab. Law § 662(1).................................................................................................... 35

Plaintiffs respectfully submit this memorandum of law in support of their Motion for Partial Summary Judgment on nine distinct issues.

## PRELIMINARY STATEMENT

Plaintiffs and the Class are grocery store manual laborers who have worked long hours without proper compensation.  Defendants are a supermarket chain and its officers, who are notorious for flouting the wage and hour laws.  *See, e.g., Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003).  In this case, Gristede's[1] fraudulently altered workers' time records, deleting actual hours worked in order to save money on wages; paid workers a sham salary and misclassified them as exempt company "executives;" and filed mean-spirited, baseless counterclaims against two low-wage workers who had dared to bring Gristede's unlawful conduct to light.  Plaintiffs and the Class move for partial summary judgment with respect to nine legal claims on which there are no material factual issues to be tried.

## OVERVIEW OF GROUNDS FOR SUMMARY JUDGMENT

*First*, Plaintiffs and the Class move for partial summary judgment on Gristede's Fifth Affirmative Defense – the "executive exemption" to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") claims.  It is Gristede's burden to prove its entitlement to this exemption.

*Second*, Plaintiffs and the Class move for partial summary judgment on liability for the overtime claims of the Co-Manager Plaintiffs and Class Members.  Gristede's

---

[1] Plaintiffs move for summary judgment against Defendants Gristede's Operating Corp., Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc. (collectively, "Gristede's").  Plaintiffs reserve the right to move separately for a determination that Defendants John Catsimatides, James Monos, and Galo Balseca are individually liable as joint employers.

admits that Co-Managers regularly worked 50 hours per workweek without receiving overtime premium pay.

*Third*, Plaintiffs and the Class move for partial summary judgment on the claim that Gristede's policy of deleting "unauthorized overtime" from Class Members' time records was unlawful and that, by implementing this policy, Gristede's engaged in a pattern or practice of violating the FLSA and the NYLL.

*Fourth*, Plaintiffs and the Class move for partial summary judgment on Gristede's Second, Third, and Fourth Affirmative Defenses of laches, unclean hands and improper conduct, and waiver and estoppel, respectively.  It is Gristede's burden to prove these affirmative defenses.

*Fifth*, Plaintiffs and the Class move for partial summary judgment on the claim that Gristede's is liable for liquidated damages under the FLSA because it cannot prove that its unlawful conduct was in "good faith" <u>and</u> that it had "reasonable grounds" for believing that its conduct was lawful.  It is Gristede's burden to prove that liquidated damages are not appropriate.

*Sixth*, Plaintiffs and the Class move for partial summary judgment on the claim that the FLSA statute of limitations should be three years because Gristede's FLSA violations were "willful."

*Seventh*, Plaintiffs and the Class move for partial summary judgment on the claim that Gristede's failed to keep accurate records of Class Members' time worked in violation of the FLSA and the NYLL, that Plaintiffs and the Class should therefore benefit from appropriate presumptions and instructions, and that Defendants should be prohibited from using their own statutory noncompliance as a shield at trial.

*Eighth*, Plaintiffs Torres and Chewning move for summary judgment on Gristede's frivolous counterclaims over which this Court lacks jurisdiction.

*Ninth*, Plaintiffs Torres and Chewning move for summary judgment on the claim that Gristede's retaliated against them by filing the counterclaims because they had sued Gristede's, as Gristede's lawyer admits.

Summary judgment, if granted, will substantially streamline this case for trial.[2]

## STATEMENT OF FACTS[3]

### I.    Procedural Posture

On April 30, 2004, Plaintiff Carlos Torres filed a class action complaint alleging violations of federal and state wage and hour laws.  (Declaration of Linda A. Neilan ("Neilan Dec.") ¶ 2 & Ex. YYY.)  On June 29, 2004, Plaintiff Torres amended the complaint adding two more named plaintiffs.  (Neilan Dec. ¶ 3 & Ex. ZZZ.)  On March 25, 2005, Plaintiffs amended their complaint again, adding Defendants John

---

[2] Plaintiffs respectfully suggest the following structure for the disposition of this matter post-summary judgment if Plaintiffs prevail on this motion.  There should be a short period of discovery limited to damages (the number of hours Class Members worked in excess of the hours for which Gristede's credited them and the proper rate at which Class Members' overtime pay should be calculated) and liability of the individual defendants. If appropriate, the parties can then file dispositive motions on these issues before trial. Subsequent proceedings may then be necessary to determine:  (1) damages for the Co-Manager Class Members for time they worked but for which they were not compensated; (2) whether Gristede's can prove that it deleted time from individual Department Manager Class Members' records for lawful reasons; (3) whether Gristede's is liable for class-wide fraud; (4) class-wide damages for fraud, including punitive damages; and (5) damages for retaliation against Plaintiffs Torres and Chewning, including punitive damages.  If Plaintiffs win a class-wide liability finding on their fraud claim, the Court can hold a second phase proceeding at which individual Class Members can intervene and prove their damages either before a special master or jury.

[3] Pursuant to Local Rule 56.1(a), Plaintiffs have filed a Statement of Material Facts ("SOF") that sets out the facts in greater detail and provides citations to evidence supporting each fact.

Catsimatides, James Monos, and Galo Balseca, alleging a cause of action for fraud against Gristede's, and joining twelve more named plaintiffs, including Lewis Chewning. (Neilan Dec. ¶ 8 & Ex. AAAA.)

On April 22, 2005, Defendants answered Plaintiffs' initial pleadings for the first time, denying all claims and asserting frivolous and retaliatory counterclaims against Plaintiffs Torres and Chewning.  (Neilan Dec. ¶ 9 & Ex. BBBB.)  Plaintiffs then filed a Third Amended Complaint adding retaliation claims on May 3, 2005.[4]  (Neilan Dec. ¶ 10 & Ex. CCCC.)  Discovery on the merits closed on August 15, 2005.  (Neilan Dec. ¶ 19.) On September 29, 2006, the Court granted Plaintiffs' motion for class and collective action certification.  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *11, 17 (S.D.N.Y. Sept. 29, 2006).

At a conference on November 17, 2006, the Court granted Plaintiffs' request to file this motion for summary judgment.  (Neilan Dec. ¶ 22.)  Immediately following that court conference, and again by letter dated November 21, 2006, Plaintiffs requested that Defendants withdraw the affirmative defenses at issue here, urged Defendants to withdraw their frivolous and retaliatory counterclaims, and asked Defendants to concede that the FLSA statute of limitations should be three years.  (Neilan Dec. ¶ 23 & Ex. HHH.)  Defendants refused all of these requests, forcing Plaintiffs to engage in the instant motion practice.  (Neilan Dec. ¶ 24.)

---

[4] Also in response to Defendants' frivolous counterclaims, Plaintiffs filed a Motion for an Order to Show Cause.  (Neilan Dec. ¶ 11 and Ex. IIII.)  Magistrate Judge Andrew J. Peck declined to enter Plaintiffs' proposed order, but noted that the counterclaims appeared to be retaliatory.  (Neilan Dec. ¶ 12 & Ex. III; SOF ¶ 280.)

II.     **Factual Background**

    A.     <u>The Class</u>

The Class consists of "all persons employed by defendants as <u>Department Managers</u> or <u>Co-Managers</u> who were not paid proper overtime premium compensation for all hours that they worked in excess of forty in a workweek any time between April 30, 1998 and the date of final judgment in this matter." *Torres*, 2006 WL 2819730, at *11, 17 (emphasis added).

    The <u>Department Manager</u> Plaintiffs and Class Representatives (Arocho, Crema, DiPreta, Pastorino, Misuraca, Phelps, Salegna, and Succart), (SOF ¶ 1), were, by Gristede's admissions and according to its policies, hourly workers entitled to overtime compensation throughout the class period.  (SOF ¶¶ 17, 19, 20, 85, 86, 154-162.)  In this litigation, however, Gristede's claims that the Department Managers were exempt executives.  (SOF ¶ 18.)  Although Gristede's scheduled the Department Manager Plaintiffs and Class Members to work 40 hours per week,[5] (SOF ¶ 13), they routinely worked more than their scheduled time.  (SOF ¶ 14.)  Instead of paying them for this time, however, Gristede's routinely shaved hours from their time records pursuant to its "Unauthorized Overtime Policy," (SOF ¶¶ 185-247), and failed to pay them for compensable work time.  (SOF ¶¶ 166-169, 177-183.)

    The <u>Co-Manager</u> Plaintiffs and Class Representatives are Messrs. Croker, Chewning, Helwig, Mora, Santiago, and Torres.  (SOF ¶ 2.)  Gristede's scheduled the Co-Manager Plaintiffs and Class Members to work at least 50 hours per week.  (SOF ¶ 31.)  Despite the fact that the Co-Manager Plaintiffs and Class Members spent the

---

[5] Gristede's also scheduled Department Managers to work Sundays, on occasion, (SOF ¶ 15), and paid them for the time they worked at a premium rate.  (SOF ¶ 16.)

majority of their work time performing manual labor, (SOF ¶ 47), and that Gristede's did not pay them on a true salary basis, (SOF ¶ 104-141), Gristede's classified them as exempt company "executives" based on their titles alone.  (SOF ¶¶ 40-42.)  Gristede's did not examine their duties or compare them to the duties required for a statutory exemption.  (SOF ¶¶ 43-45.)  Gristede's paid the Co-Manager Plaintiffs and Class Members <u>no overtime compensation</u>.  (SOF ¶ 34.)  Further, Gristede's paid the Co-Manager Plaintiffs and Class Members absolutely <u>nothing</u> for the hours they worked beyond 50 per week.[6]  (SOF ¶ 35); *see also Torres*, 2006 WL 2819730, at *3.

**B.    <u>Gristede's Did Not Pay Class Members on a Salary Basis</u>.**

Although Gristede's now claims that all Class Members were exempt "executives," Gristede's did not pay them like exempt "executives."  Rather, Gristede's paid them on an hourly basis, for their precise hours worked.  Or, more accurately, for the precise number of hours Gristede's chose to pay them.

Gristede's own records demonstrate that it routinely made deductions from Class Members' pay when they worked fewer than their scheduled hours.  (SOF ¶¶ 86-103, 105-132, 134.)  Most of these deductions were for partial-day absences.  (SOF ¶¶ 99, 119.)  Gristede's own expert, Dr. Mark Berkman, admits that Gristede's routinely docked Class Members for working fewer than their scheduled hours.[7]  (SOF ¶¶ 106, 107.)

---

[6] Like Department Managers, Gristede's occasionally scheduled Co-Managers to work on Sundays and paid them at a premium rate.  (SOF ¶¶ 37, 38.)

[7] Dr. Berkman's conclusion that Co-Managers and Department Managers were sometimes compensated *above* their weekly salaries is not relevant to this analysis. (Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 2(a), 5-6; Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c).)  In fact, although hourly payments in addition to a weekly "salary" do not by themselves destroy exempt status, they are evidence of an employer's intent to pay workers based on the quantity of their work.  *See Hilbert v. District of Columbia*, 784 F.

It was Gristede's company-wide policy to dock Class Members' salaries when they were absent for part of a workday.  (SOF ¶¶ 133-141.)  Deborah Clusan ("Clusan"), Gristede's Fed. R. Civ. P. 30(b)(6) payroll witness and other Gristede's witnesses, repeatedly admitted to this policy.  (SOF ¶¶ 136-141.)  *See also Torres*, 2006 WL 2819730, at *2.

Moreover, after reviewing some Class Member time records, Clusan illustrated the policy in practice.  She repeatedly explained that Gristede's paid particular Class Members less than their "salaries" because they worked fewer than their scheduled hours.  (SOF ¶¶ 124-132.)

Indeed, Gristede's did not even *label* many of the Class Members as salaried employees.  It routinely called them "hourly" employees.  (SOF ¶¶ 154-164.)  *See also Torres*, 2006 WL 2819730, at *2.

**C.     Gristede's Company-Wide Policy Was To Delete "Unauthorized Overtime" from Department Managers' Time Records.**

Throughout the class period, it was Gristede's policy that Department Managers were not to be paid for time they worked that had not been authorized in advance.  (SOF ¶¶ 170, 172-176, 184, 188, 229.)  When Department Managers worked "unauthorized" overtime, Gristede's simply deleted it from the time records.  (SOF ¶¶ 171, 177-183, 185-247.)  At virtually every stage of its payroll process, Gristede's directed, encouraged, and permitted its management personnel to delete overtime hours from employee time records.  (SOF ¶ 186.)  And delete they did.  Store managers did it.  (SOF ¶¶ 187-216.)  Bookkeepers did it.  (SOF ¶¶ 217-228.)  The Payroll Department did it.  (SOF ¶¶ 229-

Supp. 922, 924-25 (D.D.C. 1992) (granting plaintiffs' motion for summary judgment due to salary basis violations).

239.)  And some of Gristede's highest level executives directed employees to do it.  (SOF ¶¶ 233-236, 239.)  Each Department Manager Plaintiff testified (and Gristede's does not rebut) that it happened to him.  (SOF ¶¶ 166, 177-183.)

Gristede's own payroll records confirm that it regularly shaved time from Department Managers' time records.  Gristede's deletions from employee time records were so regular and so extensive that, in just five years of the class period, beginning February 2, 2000 and ending April 14, 2005, Gristede's eliminated and avoided paying overtime wages for over 42,000 hours worked by Department Managers, approximately 3.4 hours per workweek per Department Manager.  (SOF ¶ 244.)  These lost hours – which translate into hundreds of thousands of unpaid dollars  – are a conservative estimate given that Gristede's failed to maintain accurate payroll records (or any payroll records at all) for a significant part of the Class Period.  (SOF ¶¶ 248, 250-257.)

### D.      Gristede's Did Not Maintain Accurate Records.

In addition to the widespread falsification of time records, Gristede's engaged in further recordkeeping violations.  First, Gristede's did not maintain and preserve *any* Class Members' time records from April 30, 1998 (the beginning of the class period), through December 31, 1999, when it installed its electronic timekeeping system.  (SOF ¶ 248.)  Further, Gristede's admits that, throughout the entire class period, it failed to maintain records of the hours worked by the Co-Manager Plaintiffs and Class Members.  (SOF ¶¶ 250-257.)

**ARGUMENT**

Plaintiffs and the Class are entitled to partial summary judgment under Fed. R.

Civ. P. 56(c) because no material facts are in genuine dispute.[8] *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Even viewing the evidence in a light most

favorable to Gristede's, it cannot establish the elements essential to its claims and

defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Its own admissions and

Plaintiffs' unrebutted testimony mandate judgment in favor of Plaintiffs and the Class.

**I.      Gristede's Cannot Prove that It Was Entitled to the Executive Exemption.**

Plaintiffs and the Class Members are entitled to summary judgment on Gristede's

Fifth Affirmative Defense because Gristede's cannot prove that it was entitled to classify

Plaintiffs and the Class Members as exempt company "executives."  Under the FLSA and

the NYLL, an employer claiming the executive exemption must prove two elements:

"the duties test" and "the salary basis test."  *Torres*, 2006 WL 2819730, at *6 (citing 29

C.F.R. §§ 541.100, 541.602).  Although Gristede's cannot meet either test, this motion

primarily focuses on the "salary basis test."[9]

---

[8] The Federal Rules of Civil Procedure authorize courts to grant partial summary judgment on liability, Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."), and on discrete legal and factual issues.  Fed. R. Civ. P. 56(d).  Partial summary judgment will significantly narrow the issues and streamline this case for trial.  *See Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 911 F. Supp. 104, 106-07 (S.D.N.Y. 1995); *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 747 (1st Cir. 1995); *Williams v. United Credit Plan of Chalmette, Inc.*, 526 F.2d 713, 714 (5th Cir. 1976).

[9] Gristede's cannot prove the elements of the duties test either.  *See* 29 C.F.R. § 541.100. There is no evidence that Plaintiffs or the Class Members had the primary duty of management, that they directed the work of at least two or more full-time employees, that they had the authority to hire or fire other employees, or that their suggestions and recommendations as to the hiring, firing, advancement, promotion or change of status of other employees were given particular weight.  (SOF ¶¶ 21-30, 47-63.)  *See also*

The executive exemption is an affirmative defense and the burden of proving it is

on Gristede's.  *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991);

*Damassia v. Duane Reade, Inc.*, 04 Civ. 8819, 2006 WL 2853971, at *2 (S.D.N.Y. Oct.

5, 2006).  Courts construe exemptions narrowly, against the employer asserting them,

because the FLSA is a "remedial act."  *Martin*, 949 F.2d at 614; *Damassia,* 2006 WL

2853971, at *2.[10]  Consequently, Gristede's bears the burden of proving by "clear and

affirmative evidence" that Plaintiffs and the Class Members were not entitled to a time-

and-one-half premium for all overtime they worked.  *Klinedinst v. Swift Invs., Inc.*, 260

F.3d 1251, 1254 (11th Cir. 2001); *see A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493

(1945); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

---

*Torres*, 2006 WL 2819730, at *10 n.9.  Accordingly, the duties test is an alternate
grounds for summary judgment in Plaintiffs' favor.

[10] "Congress intended the [FLSA] to be broad in its scope."  29 C.F.R. § 779.101.  It was
enacted to eliminate "labor conditions detrimental to the maintenance of the minimum
standard of living necessary for health, efficiency, and the general well-being of
workers[.]"  29 U.S.C. § 202(a), (b).  A key purpose of the FLSA is to protect employees
from "the evil of overwork," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S.
728, 739 (1981) (internal quotation marks omitted), by eliminating "low wages and long
hours."  *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2006 WL 2795620, at
*3 (W.D.N.Y. Sept. 26, 2006) (quoting *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 196
(S.D.N.Y. 2006)).  Courts construe the FLSA "liberally to apply the furthest reaches
consistent with congressional direction."  *Tony & Susan Alamo Found. v. Sec'y of Labor*,
471 U.S. 290, 296 (1985) (internal quotation marks omitted).  The NYLL is similarly
worker-friendly.  New York adopted its labor law in order to eliminate inequitable wages,
declaring that "it is the policy of the state of New York that such conditions be eliminated
as rapidly as practicable."  N.Y. Lab. Law § 650.  It is remedial legislation designed to
relieve the financial hardships experienced by employees whose employers pay "wages
insufficient to provide adequate maintenance for themselves and their families."  *Id.*  Like
the FLSA, the NYLL should be construed liberally, so as to permit as many individuals
as possible to take advantage of its benefits.  *See Settlement Home Care, Inc. v. Indus.
Bd. of Appeals of Dep't of Labor*, 542 N.Y.S.2d 346, 347-48 (App. Div. 1989).

**A.**     **Gristede's Cannot Prove that the Class Members were Paid on a
            Salary Basis.**

Workers must be paid on a *bona fide* salary basis to be properly classified as

exempt from FLSA or NYLL coverage.[11]  *Yourman v. Giuliani*, 229 F.3d 124, 127 (2d

Cir. 2000); *Torres*, 2006 WL 2819730, at *6.  Under the FLSA, this means that they must

"regularly receive[] each pay period . . . a predetermined amount . . . not subject to

reduction because of variations in the quality or quantity of the work performed," and

receive their "<u>full salary</u> for any week in which [they] perform any work <u>without regard

to the number of days or hours worked</u>."  *Yourman*, 229 F.3d at 127-28 (quoting 29

---

[11] The salary basis test is not a mere technicality – it is an important part of the statutory
scheme.  It was designed to "distinguish 'true' executive . . . employees from non-exempt
employees . . . ."  *Yourman*, 229 F.3d at 130 (citations omitted).  The salary basis test has
a special significance vis-à-vis the executive exemption because "[t]he term 'executive'
implies a certain prestige, status and importance."  U.S. Dep't of Labor, Wage & Hour
Div., Report & Recommendations of the Presiding Officer at Public Hearings on the
Proposed Revisions of Regulations, Part 541, at 19 (Oct. 10, 1940).  The term
"executive" also implies a certain level of freedom to structure one's day as one chooses.
"Payment on a salary basis is thought to identify executive . . . personnel precisely
because it indicates employees who are given discretion in managing their time and their
activities and who are not answerable merely for the number of hours worked or number
of tasks accomplished."  *Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C. Cir. 1993);
*see also Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir. 1988) ("Salary is
a mark of executive status because the salaried employee must decide for himself the
number of hours to devote to a particular task."); *Hilbert v. District of Columbia*, 784 F.
Supp. 922, 924 (D.D.C. 1992) (the purpose of the salary basis test is "to determine
whether employees are fulfilling a job on an hour to hour basis or a job function basis
without regard to the time the employee is expending to perform his or her
responsibilities").  The salary basis test also serves another important function.  It
prevents employers from having it both ways – refusing to compensate workers for hours
that they work beyond their scheduled time, but docking their pay when they work less
than their scheduled time.  Gristede's benefited from this "heads I win, tails you lose"
scenario throughout the class period.  *See Torres*, 2006 WL 2819730, at *10 ("Gristede's
clearly sought to treat workers as 'hourly' for some purposes (<u>i.e.</u>, docking them for
hours not worked during the workweek), but 'salaried' for other purposes (<u>i.e.</u>, not paying
them overtime for hours worked in excess of the workweek).")  This is precisely what the
salary basis test was intended to prevent.

C.F.R. § 541.118(a)) (emphasis added); *Torres*, 2006 WL 2819730, at *6 (citing 29

C.F.R. § 541.602).[12]   The requirements are substantially the same under the NYLL.[13]

    To pass the salary basis test, an employer must prove – by clear and affirmative

evidence – that its workers' wages were not subject to impermissible deductions from

pay.  *Yourman*, 229 F.3d at 128 (citing 29 C.F.R. § 541.118); 29 C.F.R. § 541.602(a).

One type of impermissible deduction is a deduction of a partial day's pay for a partial

day's absence, which automatically destroys the exempt status.[14]  Gristede's admits that it

subjected Plaintiffs and the Class Members to this type of impermissible deduction.

_____

[12] The U.S. Department of Labor, Wage and Hour Division, issued revisions to the
regulations interpreting the salary basis test, effective August 23, 2004.  Although there
are some minor modifications and codifications of existing case law that are not relevant
here, the new regulations retain the salary basis test, including the subsection that an
employer who has an actual practice of making improper deductions will lose the
exemption.  29 C.F.R. § 541.603(a) (providing that "[a]n employer who makes improper
deductions from salary shall lose the exemption").

[13] New York's overtime provisions expressly incorporate the FLSA exemptions.  12
N.Y.C.R.R. § 142-2.2.  Courts regularly look to the FLSA when considering the scope of
overtime exemptions under the NYLL.  *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61,
78 (2d Cir. 2003); *Debejian v. Atl. Testing Labs., Ltd.*, 64 F. Supp. 2d 85, 87 n.1
(N.D.N.Y. 1999); *Lopez v. Silverman,* 14 F. Supp. 2d 405, 411 n.4 (S.D.N.Y. 1998).
Like the FLSA, the NYLL executive exemption requires a "salary of not less than . . . [a
fixed amount]."  12 N.Y.C.R.R. § 142-2.14(c)(4)(i)(e) (emphasis added).
In its opinion granting class certification and collective action status in this case, this
Court held that, under the NYLL, "salary" means "receipt of fixed, regular
compensation" that is "not subject to weekly variation by hours worked."  *Torres*, 2006
WL 2819730, at *13 (emphasis added); *see also Bongat v. Fairview Nursing Care Ctr.,
Inc.*, 341 F. Supp. 2d 181, 187 (E.D.N.Y. 2004) ("Since plaintiffs *were not always paid a
salary* . . . defendant cannot show that [they] are exempt as executive or administrative
employees.") (emphasis added); *Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115,
2001 WL 1035139, at *5 n.5 (S.D.N.Y. Sept. 7, 2001) ("[A]n employee is
'administrative' if he earns more than a certain amount per month on a salary basis . . . .")
(emphasis added).  The New York State Department of Labor, in an opinion letter dated
March 30, 2006, also held that the NYLL executive exemption requires payment of a
salary, which means "compensation paid in an unvarying, predetermined amount."
(Neilan Dec. Ex. JJJJ (NYSDOL Letter).)

[14] 29 C.F.R. § 541.602(b)(1); *Martin*, 949 F.2d at 615; *Bowman v. City of Indianapolis*,

The Supreme Court has held that an employee is "subject to" improper deductions – and therefore non-exempt from FLSA and NYLL coverage – when "there is either an actual practice of making [pay] deductions or an employment policy that creates a significant likelihood of [pay] deductions." *Yourman*, 229 F.3d at 127 (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (emphasis added).  At Gristede's, there were both.

## 1.    Actual Practice – Gristede's Own Payroll Data Demonstrate Its Actual Practice of Making Deductions from Wages.

In determining whether an employer has an "actual practice" of making impermissible deductions from workers' wages, "the object of the inquiry [is] whether the employer's practices reflect an 'objective intention' to pay its employees on a salaried basis." *Yourman*, 229 F.3d at 130.

A simple examination of Gristede's payroll records belies any notion that it intended to pay Class Members a "fixed, regular compensation," *Torres*, 2006 WL 2819730, at *13, "without regard to the number of days or hours worked." *Id.* at *6 (quoting 29 C.F.R. § 541.602).  Indeed, Class Members' wages varied widely from week to week.  (SOF ¶¶ 85-132.)  Gristede's payroll records demonstrate a company-wide practice of paying Class Members based on the number of hours they worked when they worked fewer than their scheduled weekly hours (50 for Co-Managers and 40 for Department Managers).  (SOF ¶¶ 86-103, 105-132.)  Gristede's own expert admits to a large number of unlawful partial and full-day deductions from almost every Class Member during almost every workweek.  (SOF ¶¶ 86, 87, 91-98, 100, 105, 106, 110-120.)  Courts routinely find that employers with many fewer payroll deductions than

---

133 F.3d 513, 517-18 (7th Cir. 1998); *Danesh v. Rite Aid Corp.*, 39 F. Supp. 2d 7, 11-12 (D.D.C. 1999) (employer failed the salary basis test where employee was subject to pay reductions for tardiness).

Gristede's readily fail the FLSA salary basis test.[15]  Therefore, Gristede's cannot meet its affirmative burden to prove that it did not have such an actual practice.  *See Martin*, 949 F.2d at 615.

### 2.    Policy – It Was Gristede's Admitted Policy To Make Impermissible Deductions from Class Members' Wages.

A "significant likelihood" of impermissible deductions requires a "particularized policy . . . that deductions will be made in specified circumstances."  *Yourman*, 229 F.3d at 129 (emphasis added) (internal quotation marks omitted).

Gristede's admits that its policies required impermissible deductions.[16]  It was Gristede's policy to dock Class Members' "salaries" for partial days' absences.  (SOF ¶¶ 133-141.)  This policy did not merely "creat[e] a significant likelihood of" impermissible deductions," as required by *Auer*, it required them.  (SOF ¶¶ 133-141.) This policy alone violates the salary basis test.[17]  *Martin*, 949 F.2d at 615; 29 C.F.R. § 541.602(b)(1); *Bowman*, 133 F.3d at 517-18; *Danesh*, 39 F. Supp. 2d at 11-12.

---

[15] *See, e.g., Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (thirteen impermissible deductions); *Takas v. Hahn Auto. Corp.*, 246 F.3d 776, 781 (6th Cir. 2001) (seven); *Klem v. County of Santa Clara*, 208 F.3d 1085, 1095 (9th Cir. 2000) (fifty-three); *c.f, Yourman*, 229 F.3d at 130-31 (vacating district court decision that four impermissible deductions did not defeat exemption).

[16] It was also Gristede's policy to pay Class Members hourly overtime when they worked additional shifts and days.  (SOF ¶¶ 16, 19-20.) *See also Torres*, 2006 WL 2819730, at *2.  Although this alone is not dispositive of the salary basis question, the fact that Plaintiffs and the Class Members were in some circumstances eligible for hourly overtime "is a powerful indicator" that they are "not paid on a salary basis."  *Hilbert*, 784 F. Supp. at 925 (emphasis in original).

17 It was also Gristede's policy to suspend Class Members without pay for violations of non-safety rules.  (SOF ¶¶ 142-144.)  There are "thousands of reasons" that Class Members could be suspended without pay, (SOF ¶ 145), including violations of Gristede's loss prevention policies, (SOF ¶ 147), employee theft (SOF ¶ 148), safe and cashier shortages, (SOF ¶ 149), violations of emergency procedures, (SOF ¶ 150), and

14

**II.    The Co-Manager Plaintiffs and Class Members Are Entitled to Summary Judgment on Liability Because Gristede's Admits They Worked More than 40 Hours Per Workweek Without Overtime Compensation.**

Because Gristede's cannot prove its executive exemption affirmative defense, *see* Section I, *supra*, all Class Members, including the Co-Manager Plaintiffs and Class Members, are non-exempt workers entitled to an overtime premium of one and one-half times their regular rate of pay for all the hours they worked over 40 in a workweek.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; *Torres*, 2006 WL 2819730, at *11, 14. Gristede's is therefore liable to the Co-Manager Plaintiffs and Class Members for overtime compensation on a class-wide basis.

Gristede's does not dispute that the Co-Manager Plaintiffs and Class Members worked more than 40 hours during many workweeks.  (SOF ¶¶ 14, 33.)  And it does not even claim to have paid Co-Managers at a rate of one and one-half their regular rate for hours they worked over forty each workweek.  (SOF ¶ 34.)  Thus, the Co-Manager Plaintiffs and Class Members are entitled to summary judgment on liability.[18]

---

dissemination of confidential information.  (SOF ¶ 151.)  Further, in December 2006, long after Gristede's was placed on notice of its salary basis violations, it suspended a Class Member, Hector Rosario, without pay, for allegedly failing to give proper notice of his upcoming jury duty.  (SOF ¶¶ 152, 153.)  This also violates the salary basis test.  29 C.F.R. § 541.602(b)(4) (violations of non-safety policies); 29 C.F.R. § 541.602(b)(5) (violations of unwritten workplace conduct rules).

[18] This motion does not seek to resolve the amount of damages Gristede's owes the Co-Managers for failing to pay their earned overtime premiums.  It is appropriate for this Court to grant summary judgment on liability on this issue without determining the precise amount of damages, which can be determined through further proceedings. Fed. R. Civ. P. 56(c); *see, e.g., Barfield v. N.Y. City Health & Hosps. Corp.,* 432 F. Supp. 2d 390, 395 (S.D.N.Y. 2006) (granting summary judgment on liability and directing counsel to submit an estimate of unpaid wages for purposes of damages award); *Bongat,* 341 F. Supp. 2d at 186 (granting plaintiffs summary judgment on issues of employer liability under FLSA where employer "failed to compensate plaintiffs, as non-exempt employees, at one and one-half times the regular rate for overtime work"); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 222 (S.D.N.Y. 2002) (discussing grant of

**III.   The Department Manager Plaintiffs and Class Members Are Entitled to Summary Judgment on Gristede's "Unauthorized Overtime" Policy.**

Gristede's admits that its company-wide policy was to not pay the Department Manager Plaintiffs and Class Members for overtime hours they worked without prior authorization (the "Unauthorized Overtime Policy").  (SOF ¶¶ 170, 172-176, 184, 188, 229.)  "If somebody works unauthorized overtime, they won't be paid for it."  (SOF ¶ 172.)  Pursuant to the Unauthorized Overtime Policy, Gristede's simply deleted overtime it had not previously approved from Class Members' time records.  (SOF ¶¶ 171, 177-183, 185-247.)  Gristede's admits that this policy applied to all Class Members in all stores throughout the entire relevant period.  (SOF ¶¶ 170, 171.)

The Unauthorized Overtime Policy clearly violates the FLSA and the NYLL. Accordingly, Plaintiffs and the Class Members seek a declaration that (1) the Unauthorized Overtime Policy was Gristede's company-wide policy throughout the class period, and (2) the Unauthorized Overtime Policy was unlawful.

Plaintiffs and the Class are also entitled to partial summary judgment that Gristede's engaged in a pattern or practice of violating the FLSA and the NYLL – that it was Gristede's "standard operating procedure" to deny employees compensation for time they actually worked.  *See Bazemore v. Friday*, 478 U.S. 385, 398 (1986) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977)); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973) (applying pattern or practice burden-shifting framework in FLSA case).  Under the traditional pattern or practice

---

summary judgment on liability in FLSA suit); *c.f. Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005) (reversing and remanding lower court's damages award but preserving ruling on liability); *Terwilliger v. Terwilliger*, 206 F.3d 240, 242 (2d Cir. 2000) (affirming summary judgment on liability, but reversing and remanding question of damages).

burden-shifting framework, a pattern or practice ruling would establish a presumption of unlawful conduct in favor of the Class and place the burden of rebuttal on Gristede's at the remedial stage of the trial. *See Teamsters,* 431 U.S. at 357-60; *Brennan*, 482 F.2d at 829. At that juncture, Gristede's may, if it chooses, attempt to prove that the Unauthorized Overtime Policy was not the reason that it deleted recorded work time for any particular individual(s). *See id.* at 362; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001).

### A.    Gristede's Unauthorized Overtime Policy Was Unlawful.

Neither the FLSA nor the NYLL permits an employer to deny wages because work was "unauthorized."  Under both laws, if you work, you are entitled to be paid. Consistent with the "remedial and humanitarian" purpose of the FLSA, *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944), the definition of "hours worked" is broad. *See generally, IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).  It includes "all time during which an employee is suffered or permitted to work <u>whether or not he is required to do so</u>." 29 C.F.R. § 778.223 (emphasis added).  An employer cannot sit back and "reap the benefits of an employee's overtime hours without compensating for them." *Gonzalez v. Rite Aid of N.Y., Inc.*, 199 F. Supp. 2d 122, 133 (S.D.N.Y. 2002). On the contrary, management must "exercise control and <u>see that overtime work is not performed</u> if [it] does not want [the] work to be performed." *Id.* (citing 29 C.F.R. § 785.15) (emphasis added).  In any event, the reason that a worker works overtime is "immaterial." 29 C.F.R. § 785.11.  Where "[t]he employer knows or has reason to

believe" that a worker is working, it must pay the worker.  *Id.*; *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998).[19]

Courts uniformly reject the "unauthorized overtime" defense.  In *Moon v. Kwon*, the court squarely rejected the employer's argument that the worker was not entitled to overtime compensation because he had violated a policy against working unauthorized overtime.  248 F. Supp. 2d 201, 228 (S.D.N.Y. 2002) (citing 29 C.F.R. §§ 785.11, 785.13).  Likewise, in *Reich v. Department of Conservation & Natural Resources, State of Alabama,* the Eleventh Circuit held that the employer could not insulate itself from liability simply by promulgating a maximum 40-hour workweek policy.  28 F.3d 1076, 1083 (11th Cir. 1994).  Similarly, in *Kissel v. U.S. Steakhouse Bar & Grill, Inc.*, the court clearly stated that "[a] rule against compensating for unauthorized overtime is not enough to avoid liability where the employer knows of the hours worked and takes no action to enforce its rules."  No. 6:05-cv-58, 2006 WL 2850105, at *2 (M.D. Fla. 2006).

The Second Circuit has also ruled that all work time must be counted.  In *Kosakow v. New Rochelle Radiology Associates*, the Second Circuit applied 29 C.F.R. § 785.11 in holding that if the employer "knew or had reason to know that [the worker] arrived early each morning in order to work, and permitted her to do so," the work should have been counted, "regardless of whether anybody specifically instructed [her] to arrive early."  274 F.3d 706, 718 (2d Cir. 2001).[20]

---

[19] The FLSA defines an employee as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The statutory definition of the term "'employ' includes to suffer or permit to work."  29 U.S.C. § 203(g).  New York law essentially tracks this definition, defining "employed" as "permitted or suffered to work."  N.Y. Lab. Law § 2(7).

[20] Although *Kosakow* was a Family Medical Leave Act ("FMLA") case, the Second Circuit looked to the FLSA standards for calculating hours of service to determine whether the employee had worked the requisite number of hours to qualify for FMLA

**B.     Gristede's Has Engaged in a Pattern or Practice of Violating the FLSA and the NYLL.**

Gristede's time shaving policy easily lends itself to a "pattern or practice" burden-shifting analysis.  Under this framework, a class action trial is divided into two stages, a liability stage and a remedial stage.  *Robinson,* 267 F.3d at 158 (2d Cir. 2001) (citing *Teamsters,* 431 U.S. at 360-62 (1977)).  At the liability stage, "the plaintiffs must produce sufficient evidence to establish a . . . policy, pattern, or practice of" unlawful conduct – in other words, that the unlawful conduct was the company's "standard operating procedure."  *Id.* at 158 (citing *Teamsters*, 431 U.S. at 336, 360).  Typically, at this stage, the plaintiffs offer evidence "detailing specific instances" of unlawful conduct and argue that, combined, they demonstrate the employer's regular procedure or policy.  *Id*. at 158.

If the plaintiffs are successful in establishing a pattern or practice of unlawful conduct, next comes the remedial stage.  The remedial stage does not begin "on a blank slate."  *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 175 (N.D. Cal. 2004) (citing *Teamsters,* 431 U.S. at 361), *aff'd*, 474 F.3d 1214 (9th Cir. 2007).  Instead, having met their burden to establish an unlawful policy or practice, the plaintiffs benefit from a presumption "that any particular employment decision, during the period in which the [unlawful] policy was in force, was made in pursuit of that policy."  *See Teamsters*, 431 U.S. at 362; *Robinson*, 267 F.3d at 160.  "If the employer is unable to establish a lawful

---

coverage.  29 U.S.C. § 2611(2)(C); *Kosakow*, 274 F.3d at 717.

reason for an adverse employment action, the employee is entitled to . . . relief."

*Robinson*, 267 F.3d at 160.[21]

In *Brennan v. General Motors Acceptance Corp.*, the Fifth Circuit applied the *Teamsters* burden-shifting framework in a FLSA case and affirmed the district court's pattern or practice finding.  482 F.2d 825, 829 (5th Cir. 1973).  The court held that all employees, including employees who had not testified at trial, were presumed to be owed overtime compensation.  *Id.*  It was the defendant's burden at the remedial stage to prove that it had paid employees for all overtime worked.  *See id.*

This case is a good fit for a *Teamsters* burden shifting approach, consistent with its application in FLSA cases.  Plaintiffs must first prove that Gristede's had an objectively verifiable pattern or practice of violating the FLSA and the NYLL – that not compensating workers for "unauthorized" overtime was Gristede's "standard operating procedure."  *Robinson,* 267 F.3d at 158.  If Plaintiffs are successful at the first stage, all Class Members will benefit from a presumption in their favor at the remedial stage.  *See Teamsters*, 431 U.S. at 362.  Any edited time records will be presumed to have been

---

[21] At the remedial stage, the Court has discretion to be flexible and to "fashion such relief as the particular circumstances of a case may require to effect restitution."  *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 764 (1976); *see also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.").  There are numerous mechanisms the Court can employ to determine which Class Members are entitled to damages and the amount of damages, including individual hearings, claims procedures, and formulas.  *See Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 66-71 (2d Cir. 1997) (representative testimony); *EEOC v. O & G Spring & Wire Forms Spec. Co.,* 38 F.3d 872, 879-80 & n. 9 (7th Cir. 1994) (formula); *Hameed v. Int'l Ass'n of Bridge Workers, Local 396,* 637 F.2d 506, 520, 521 & n.18 (8th Cir. 1980) (formula); *Stewart v. Gen. Motors Corp.,* 542 F.2d 445, 452-53 (7th Cir. 1976) (formula); *Pettway v. Am. Cast Iron Pipe Co.,* 494 F.2d 211, 261 (5th Cir. 1974) (formula); *Bell v. Farmers Ins. Exch.*, 9 Cal. Rptr. 3d 544, 571-76 (Cal. Ct. App. 2004) (statistical evidence).

edited pursuant to the Unauthorized Overtime Policy. Class Members will be entitled to damages unless Gristede's proves otherwise. *Brennan*, 482 F.2d at 829.

There is no need to hold the first stage of the trial in this case because Gristede's has already admitted to its objectively verifiable pattern or practice of violating the FLSA and the NYLL. (SOF ¶¶ 170-176.) In other words, the Court does not need to infer that Gristede's had a "regular procedure or policy" of not compensating "unauthorized" overtime because Gristede's readily admits to it. (SOF ¶¶ 170-176.) *See also* Section III(A), *supra.* It is rare for an employer to admit to an unlawful policy, but when one does, the court need not look further to find a "pattern or practice." *U.S. v. Bd. of Educ. for Sch. Dist. of Philadelphia*, 911 F.2d 882, 892 (3d Cir. 1990) (holding that an openly declared policy of [unlawful conduct] was sufficient to establish a pattern or practice); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1346, 1358 (D.N.J. 1996) (same).

Moreover, even beyond Gristede's admissions, there is abundant, unrebutted evidence "detailing specific instances" in which Gristede's actually applied its Unauthorized Overtime Policy to Plaintiffs and Class Members. Gristede's own store managers testified that they eliminated hours from Department Managers' time records because the time was "unauthorized overtime." (SOF ¶¶ 187-216.) Employees in Gristede's headquarters testified that they did the same thing. (SOF ¶¶ 299-239.) Gristede's also fails to rebut Plaintiffs' own testimony that they worked overtime without compensation. (SOF ¶¶ 166-169.)

*    *    *

There is no genuine dispute as to whether Gristede's Unauthorized Overtime Policy existed, whether it was unlawful, or whether Gristede's actually applied it.

21

Summary judgment, therefore, is appropriate on all of these issues.  There is also no

genuine dispute that Gristede's engaged in a pattern or practice of violating the FLSA and

the NYLL.  Accordingly, a summary judgment finding to that effect is appropriate.

**IV.    Plaintiffs Are Entitled to Summary Judgment on Defendants' Affirmative Defenses of Laches, Unclean Hands, and Waiver and Estoppel.**

Gristede's has the burden of proving their affirmative defenses of laches, unclean

hands, and waiver and estoppel.  *Bruker v. City of New York*, 92 F. Supp. 2d 257, 271

(S.D.N.Y. 2000) ("As with all affirmative defenses, defendants have the burden of

proving . . . estoppel."); *Ikelionwu v. U.S.*, 150 F.3d 233, 238 (2d Cir. 1998) (laches);

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999)

(unclean hands).  Gristede's cannot meet its burden even when the evidence is viewed in

the light most favorable to it.  In any event, none of these affirmative defenses bars

Plaintiffs' claims for damages; they are defenses to equitable claims only.

**A.    Laches**

Plaintiffs are entitled to summary judgment on Gristede's Second Affirmative

Defense, laches.  Laches "is an equitable defense that bars a plaintiff's equitable claim

where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to

the defendant."  *Ikelionwu*, 150 F.3d at 237 (internal quotation marks and citation

omitted).  To prevail on this affirmative defense, a defendant must prove that (1) the

plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in

taking action; and (3) the defendant was prejudiced by the delay.  *See Tri-Star Pictures,*

*Inc. v. Leisure Time Prod., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994).  "When a limitation on

the period for bringing suit has been set by statute, laches will generally not be invoked to

shorten the statutory period."  *Ikelionwu*, 150 F.3d at 238 (internal quotation marks

22

omitted).  Plaintiffs brought their claim within the statutory limitations period and
Gristede's has no evidence to support any element of this defense.

### B.   <u>Unclean Hands</u>

Plaintiffs are entitled to summary judgment on Gristede's Third Affirmative
Defense, unclean hands.  Unclean hands is a defense "only when a plaintiff otherwise
entitled to relief has acted so improperly with respect to the controversy at bar that the
public interest in punishing the plaintiff outweighs the need to prevent defendant's
tortious conduct."  *Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*, 486 F. Supp. 414,
435 (S.D.N.Y. 1980).  The Second Circuit has repeatedly emphasized that application of
this doctrine is limited to situations where a plaintiff "has committed some
unconscionable act that is 'directly related to the subject matter in litigation' and has
injured" the defendant.  *PenneCom B.V. v. Merrill Lynch & Co.,* 372 F.3d 488, 493 (2d
Cir. 2004) (internal citation omitted).  Here, there is no evidence that Plaintiffs engaged
in any misconduct or that Gristede's has been injured in any way.

### C.   <u>Waiver and Estoppel</u>

Plaintiffs are entitled to summary judgment on Gristede's Fourth Affirmative
Defense, waiver and estoppel.   There is no question that employees cannot waive their
FLSA rights.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can
doubt but that to allow waiver of statutory wages by agreement would nullify the
purposes of the [FLSA].").  Thus, Defendants' affirmative defense of waiver is
inapplicable.

As for estoppel, the Second Circuit rejected such a defense to claims brought
under the FLSA, drawing on long-standing public policy grounds.  *Caserta v. Home*

*Lines Agency, Inc*., 273 F.2d 943, 946 (2d Cir. 1959) (finding the defense of estoppel

"inconsistent with both the language and the policy of the Fair Labor Standards Act");

*see also Holzapfel*, 145 F.3d at 524 (citing *Caserta,* 273 F.2d at 946); *Barfield v. N.Y.*

*City Health & Hosps. Corp*., 432 F. Supp. 2d 390, 394 (S.D.N.Y. 2006).

**V.      Gristede's Is Liable for Liquidated Damages.**

Plaintiffs and the Class are entitled to a judgment that any damages they are

awarded should be liquidated under the FLSA because Gristede's cannot meet its burden

of demonstrating good faith and reasonableness.

An employer who violates the FLSA is liable for unpaid wages "and an additional

equal amount as liquidated damages."  29 U.S.C. § 216(c).  Liquidated damages are not

considered a penalty, but rather "compensation to the employee occasioned by the delay

in receiving wages due caused by the employer's violation of the FLSA."  *Herman v.*

*RSR Sec. Services Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999) (citation omitted).

An employer may avoid an award of liquidated damages only if it can prove that

its failure to pay proper overtime compensation was in "good faith" <u>and</u> that the employer

had "reasonable grounds" for believing that its acts or omissions did not violate the

FLSA.  29 U.S.C. § 260; *Herman*, 172 F.3d at 142.  An employer's burden to show good

faith and reasonableness is "a difficult one" to meet because "double damages [are] the

norm and single damages the exception."  *Herman*, 172 F.3d at 142.

To establish good faith, an employer bears the burden of showing what "active

steps" it took to ascertain the mandates of the FLSA, and then what actions it took to

comply with them.  *Id.*; *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987).  Such

"active steps" include seeking an opinion from counsel or the DOL, or otherwise

24

attempting to determine the lawfulness of its employment practices. *Wilamowsky,* 833 F.2d at 15.  An employer cannot establish "good faith" by simply asserting that it had no intent to violate the FLSA, by arguing that its employees did not complain about its practices, or by claiming that it was acting in conformity with industry practice. *Reich v. S. New England Telecomm.,* 121 F.3d 58, 71 (2d Cir. 1997).[22]

Summary judgment on liquidated damages is appropriate where there is no evidence of good faith.  For example, in *Gustafson v. Bell Atlantic Corp.*, the court granted plaintiff's motion for summary judgment because the employer offered no evidence of any active steps it took to determine the legality of its overtime practice such as seeking an expert or other outside opinion about exemptions under the FLSA.  171 F. Supp. 2d 311, 326-27 (S.D.N.Y. 2001).  Likewise, in *Debejian v. Atlantic Testing Laboratories, Ltd.*, the court granted plaintiff's motion for summary judgment because there was no evidence that the employer had consulted with counsel before determining that the plaintiff was exempt or that the employer had provided counsel with information regarding the duties of the supposedly exempt positions.[23]  64 F. Supp. 2d 85, 91-92 (N.D.N.Y. 1999).

There is no evidence that Gristede's took any active steps to determine or comply with its obligations under the law.  (SOF ¶¶ 258-264.)  For example, Gristede's simply

---

[22] *See also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991) ("To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions.  The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute.").

[23] *See also Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 138-39 (3d Cir. 1999) (although defendants had consulted with counsel during a collective bargaining process about the FLSA generally, defendants failed to show that they had taken any "affirmative steps" amounting to good faith).

classified Class Members as exempt from the FLSA and the NYLL based on their titles and "in accordance with [its] historical practices."  (SOF ¶¶ 41, 42.)  It did not even examine Class Members' job duties before doing so.  (SOF ¶ 43.)  Indeed, Gristede's did not even conduct an investigation into its labor practices *after* Plaintiffs had filed this case.  (SOF ¶¶ 261, 263.)

Moreover, Gristede's actively manipulated Co-Managers' status to its own benefit – it treated them as hourly employees to dock their pay, but then treated them as salaried employees when it wanted free overtime.  This "heads I win, tails you lose" approach alone should preclude Gristede's from demonstrating reasonable grounds for believing it did not violate the FLSA.  *See Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037, 1051 (S.D.N.Y. 1993) (salary basis violation combined with failure to keep accurate records precluded finding of reasonableness), *rev'd on other grounds*, 52 F.3d 35, 41 (2d Cir. 1995) (holding that employer's violations were willful).

Even if Gristede's could establish good faith (which it cannot), it cannot prove under an "objective standard" that its *subjective* belief that it did not violate the FLSA was *objectively* reasonable.  *See Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F. Supp. 860, 871 (S.D.N.Y.1984).  For one thing, no reasonable person could have believed that time shaving is lawful, *see* Section III, *infra*.  This alone demonstrates a lack of reasonableness.[24]

Because no reasonable factfinder could possibly find that Gristede's has met its burden of demonstrating both good faith **and** reasonableness, the Court should grant

---

[24] Moreover, the evidence of willfulness discussed in Section VI, *infra*, is also evidence of lack of good faith and reasonableness.  *Waldbaum,* 833 F. Supp. at 1051.

Plaintiffs' motion for partial summary judgment on their entitlement to liquidated damages.

## VI.   A Three-Year Statute of Limitations Applies.

Plaintiffs and the Class are entitled to a three-year statute of limitations under the FLSA because there are no genuine issues of material fact whether Gristede's violations of the FSLA were willful.

The FLSA's limitations period is three years for "a cause of action arising out of a willful violation."  29 U.S.C. § 255(a).  An employer has committed a "willful" violation of the FLSA where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute [*i.e.*, the FLSA]…."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *RSR Security Servs.*, 172 F.3d at 141; *Waldbaum*, 52 F.3d at 39.  "All of the facts and circumstances surrounding the violation shall be taken into account in determining whether a violation was willful."  29 C.F.R. § 578.3(c)(1).

To establish willfulness, Plaintiffs need not show that Gristede's had actual knowledge of its FLSA violations or that it "acted with intent to discriminate or in bad faith."  *Pollis v. New Sch. for Soc. Research,* 132 F.3d 115, 119 (2d Cir. 1997) (citation omitted).  An employer will be deemed to have recklessly disregarded the statute if it "should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."  29 C.F.R. § 578.3(c)(3).  Although Plaintiffs bear the burden of proving willfulness, it is a light one.  *McLaughlin*, 486 U.S. at 135.  Courts routinely grant plaintiffs' motions for summary judgment on willfulness.

In *Reich v. Waldbaum, Inc.*, which is directly on point, the Second Circuit held

that Waldbaum's violations were willful because, "the law was clear . . . that employees compensated on an hourly basis are subject to the FLSA, and that the 'bona fide executive' exemption is inapplicable to such employees." 52 F.3d at 41. *Reich* is authoritative; Gristede's is liable for the third year of liability under the FLSA.

Courts also find willfulness where there is evidence that the employer was "acquaint[ed] . . . with the general requirements" of the FLSA and ignored them. *Id.* at 41; *see, e.g.*, *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337-38 (S.D.N.Y. 2005) (employer knew he was required to pay employees overtime for hours worked in excess of 40 per week); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 295-96 (E.D.N.Y. 2002) (defendants had knowledge of minimum wage and overtime laws and posted a sign in the break room notifying employees about their rights under the FLSA). Here, it is clear that Gristede's knew about the mandates of the FLSA because another class of low-wage workers, delivery workers, recently had sued it for violations of the FLSA and the NYLL. *See Ansoumana*, 255 F. Supp. 2d at 184.

Inaction in the face of employee complaints can also constitute willfulness. *Pollis*, 132 F.3d at 119-20 (applying FLSA standard in Equal Pay Act case). In *Cox v. Town of Poughkeepsie,* the court granted plaintiffs' summary judgment motion because the employer failed to conduct an investigation after receiving a letter alleging overtime violations. 209 F. Supp. 2d 319, 328 (S.D.N.Y. 2002); *see also Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918-19 (9th Cir. 2003) (summary judgment affirmed where upper management knew of complaints about failure to pay overtime). Here, Class Members complained about Gristede's failure to pay them properly throughout the class period. (SOF ¶ 264.) At least one supervisor contacted the main office about employee

28

overtime complaints.  (SOF ¶ 265.)  Despite these complaints by employees and the

filing of this class action lawsuit, Gristede's failed to conduct *any* investigation into its

wage and hour practices.  (SOF ¶ 261.)

Manipulation of time records also establishes willfulness.  In *Marshall v. Sam*

*Dell's Dodge Corp.*, the district court granted a three-year statute of limitations based on

the employer's falsification of records, the employer's knowledge of the FLSA's

requirements, and the failure to seek advice of counsel following a DOL investigation.

451 F. Supp. 294, 304-05 (N.D.N.Y. 1978).  Here, Gristede's routinely erased Class

Members time entries in accordance with its illegal policy prohibiting compensation for

unauthorized overtime.  (SOF ¶¶ 171, 177-183, 185-247.)  *Cf. Lopez v. Children's Mem'l*

*Hosp.*, No. 02-3598, 2002 WL 31898188, at *6 (N.D. Ill. Dec. 31, 2002) (finding

willfulness where defendant encouraged workers to hide evidence of overtime).

Record keeping violations can also constitute willfulness.  *Waldbaum*, 833 F.

Supp. at 1045-46 ("failure to keep . . . records is reckless, at a minimum").  In *Marshall*,

the court found that the "defendants' practice of knowingly maintaining inaccurate time

records which greatly understated the number of hours worked by their sales personnel

permits only one conclusion; i.e. the violations of the Act were willful."  451 F. Supp. at

301.  Likewise, in *Moon v. Kwon*, the district court found willfulness because, among

other reasons, defendants "flagrantly violated basic recordkeeping requirements."  248

F. Supp. 2d 201, 232 (S.D.N.Y. 2002).  Here, Gristede's failed to maintain the statutorily-

mandated time records for any Class Members for a substantial  portion of the class

period.  (SOF ¶¶ 248-267.)  Further, Gristede's failed to  record any of the hours worked

by Co-Managers.  (SOF ¶¶ 250-257.)  Gristede's management was fully aware that Co-

Managers did not regularly record their hours, but took no action to remedy this situation. (SOF ¶¶ 252, 253.)

As additional evidence that Gristede's recklessly disregarded its FLSA obligations, it never gave Upper Management or store managers any training on the requirements of the FLSA.  (SOF ¶¶ 258-260.)  Indeed, Gristede's never gave its Payroll Director any FLSA training.  (SOF ¶ 260.)  Accordingly, she was not familiar with the FLSA's recordkeeping requirements.

**VII.   Gristede's Failed To Maintain or Preserve Accurate Records of Time Worked.**

Gristede's admits that it violated the recordkeeping provisions of the FLSA and the NYLL.  Therefore, at trial, Plaintiffs should benefit from appropriate presumptions and instructions, and Defendants should be prohibited from using their failure to maintain records to their advantage.

### A.   Gristede's Violated the Record Keeping Requirements.

The FLSA and its implementing regulations require employers to maintain adequate employment records.  Specifically, "[e]very employer subject to any provision of this chapter  . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records . . . ."  29 U.S.C. § 211(c).  These records must include the "[h]ours worked each workday and total hours worked each workweek."  29 C.F.R. § 516.2(a)(7).  The NYLL has similar requirements.  N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.6(a)(4) (requiring employers to keep records of employees' hours worked for six years); *see also Yang,* 427 F. Supp. 2d at 331 n.1.  An employer violates the FLSA and the NYLL by failing to keep such records or by

keeping inaccurate records.  29 U.S.C § 215(a)(5) ([I]t shall be unlawful . . . to violate

any of the provisions of section 211(c) of this title . . . or to make any statement, report,

or record filed or kept pursuant to the provisions of such section . . . knowing such

statement, report, or record to be false . . .").  "The recordkeeping requirements . . . are

fundamental to the Act's effectiveness [because] '[f]ailure to keep accurate records can

obscure a multitude of . . . violations.'"  *Waldbaum*, 833 F. Supp. at 1041.

Gristede's violated these provisions by (1) failing to maintain and preserve <u>any</u>

Class Members' time records from April 30, 1998 (the beginning of the class period)

through December 31, 1999, (SOF ¶¶ 248, 249); and (2) failing to record the actual hours

worked by the Co-Manager Class Members.  (SOF ¶¶ 250-257.)  Both of these failures

are independent recordkeeping violations.  *See Waldbaum*, 833 F. Supp. at 1041-43

(finding recordkeeping violation where evidence suggested that employer's punch in and

out time-card policy did not accurately record actual time worked by employees).

**B.**      <u>**Plaintiffs are Entitled to a Presumption at Trial.**</u>

Although there are generally no individual damages available for recordkeeping

violations like Gristede's, summary judgment on this claim is still appropriate and

meaningful, *Cantu v. Owatonna Canning Co.*, No. 3-76-Civ. 374, 1980 WL 2174, at *4

(D. Minn. Jul. 14, 1980), because employers who do not keep accurate records are

saddled with an adverse inference at trial.

In the absence of adequate records, courts apply the burden-shifting approach

articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which

presumptively credits the workers' best approximation of hours worked.  In *Anderson*,

the Court held:

> [A]n employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that work
> as a matter of just and reasonable inference.  The burden then shifts to the
> employer to come forward with evidence of the precise amount of work
> performed or with evidence to negative the reasonableness of the inference
> to be drawn from the employee's evidence.  If the employer fails to
> produce such evidence, the court may then award damages to the
> employee, even though the result be only approximate.

*Id.* at 687-88.  The Court reasoned that where an employer's violation of its

recordkeeping obligations precludes a worker from establishing damages with specificity,

it would be unfair to deny the employee recovery.  *Id.* at 687.

In applying *Mt. Clemens*, the Second Circuit has held that "when choosing

between an overinclusive estimate by an employee and an underinclusive estimate by an

employer, it is not unreasonable . . . to adopt the employee's estimate, for consistent with

the lessons of *Mt. Clemens* . . . this places the burden of inadequate record keeping on the

employer."  *Yang*, 427 F. Supp. 2d at 338 n.17 (quoting *S. New England Telecomms.*

*Corp.*, 121 F.3d at 70 (internal quotation marks omitted).  Plaintiffs and the Class

Members should benefit from this presumption here.

**VIII.   The Counterclaims Against Plaintiffs Torres and Chewning Should Be
Dismissed**.

Almost a year after the initial complaint had been filed, Defendants asserted

counterclaims against two low-wage workers, Carlos Torres and Lewis Chewning, two

named plaintiffs ("Counterclaims").  (Neilan Dec. ¶ 9; SOF ¶¶ 206, 207.)  The

Counterclaims should be dismissed for two reasons:  (1) they are so broad and unspecific

that no cognizable legal claim can be ascertained; and (2) subject matter jurisdiction is

lacking.  Accordingly, the Court should grant summary judgment in favor of Plaintiffs so

that these claims no longer hang over their heads.

A.    **The Counterclaims Fail To Plead Any Actionable Wrong.**

Neither of the Counterclaims raises a cognizable legal claim or alleges any

actionable wrong.  Although pleading rules are liberal, a claim "must contain allegations

concerning each of the material elements necessary to sustain recovery under a viable

legal theory."  *Huntington Dental & Med. Co. v. Minnesota Mining & Mfg. Co.,* No. 95

Civ. 10959, 1998 WL 60954, at *3 (S.D.N.Y. Feb. 13, 1998); *see also Swierkiewicz v.*

*Sorema* N.A., 534 U.S. 506, 512 (2002) (A complaint must "'give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests'").  Here, it is

impossible to determine the material elements of Defendants' claims because Defendants

have failed to allege *any* recognizable legal theory.

In its First Counterclaim against Plaintiff Torres, Gristede's complains that

Plaintiff Torres must reimburse it for its costs incurred during a purported "internal

investigation" of Mr. Torres's on-the-job conduct and in defending his unemployment

insurance claim.  (SOF ¶ 278.)  Gristede's does not attempt to identify the legal theory

under which this claim arises because there is none.  It baldly asserts that "contrary to the

terms and conditions of his employment," Mr. Torres engaged in "improper activities and

conduct."  (SOF ¶ 268.)  This is too vague to give Plaintiff Torres "fair notice" of the

claim.

The Second Counterclaim against Plaintiff Chewning must be dismissed for the

same reasons.  By this claim, Gristede's seeks to recover "investigation costs" for

Plaintiff Chewning's purported "fraudulent conduct."  (SOF ¶ 271.)  Just like the

counterclaim against Mr. Torres, this claim fails to state a cognizable legal claim, lacks

any factual support, and is too vague to give "fair notice."  No legal theory exists which entitles Gristede's to recover such business expenses.[25]

Gristede's "cryptic, generalized, and ill-defined conclusory claim[s] . . . cannot serve as a substitute" for proper pleading.  *Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139, 142 (E.D.N.Y. 2002).  The Counterclaims should therefore be dismissed with prejudice.

### B.    The Counterclaims Lack Subject Matter Jurisdiction.

If the Counterclaims are appropriate anywhere, which they are not, they should be filed in New York State Supreme Court.  No federal question is alleged, and therefore, there is no independent basis for federal jurisdiction.  For subject matter jurisdiction to exist, the Counterclaims and the underlying FLSA claim must "derive from a common nucleus of operative facts."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *also see* 28 U.S.C. § 1367(a).  There is no common nucleus here.  The Counterclaims are not related at all to Plaintiffs' claims for unpaid wages.

It is not enough for a counterclaim to derive from the same employment relationship that gave rise to the underlying federal claims.  *Klein v. London Star Ltd.*, 26 F. Supp. 2d 689, 698 (S.D.N.Y. 1998) (counterclaim must bear sufficient "logical relationship" to underlying claim, not just assert the same set of facts); *Spencer v. Banco Real, S.A.*, 623 F. Supp. 1008, 1012-13 (S.D.N.Y. 1985) (counterclaims for torts including defamation insufficiently related to underlying Title VII claims); *Hameli v.*

---

[25] To the extent that Defendants attempt to assert a fraud claim, they have failed to plead it with particularity as required by federal and state civil procedure rules.  Fed. R. Civ. P. 9(b); C.P.L.R. 3016(b).  The elements of a fraud claim are that the actor made a material misstatement of fact, knowing that it was false, and intending that the party making the claim would reasonably rely on it.  *See Lama Holding Co. v. Smith Barney*, 668 N.E.2d 1370 (1996).  Defendants have not pled, and cannot plead, these elements.

*Nazario*, 930 F. Supp. 171, 183 (D. Del. 1996) (plaintiff's due process claim insufficiently related to employer's counterclaim that it had terminated plaintiff for "cause.")  The resolution of all claims must depend on the same facts.  *Goldman Marcus, Inc. v. Goldman*, No. 99 Civ. 11130, 2000 WL 297169, at *4 (S.D.N.Y. Mar. 21, 2000).

Here, Defendants' claim that Plaintiffs Torres and Chewning engaged in "misconduct" while employed by Gristede's has nothing to do with the wage and hour claims at issue in this case.  Magistrate Judge Andrew J. Peck raised this very point at an April 27, 2005 court conference, communicating his doubt as to the link between the Counterclaims and this action.  (Neilan Dec. ¶ 13.)  There can be no subject matter jurisdiction over Defendants' Counterclaims because they do not in any way rely on the facts that give rise to the underlying federal cause of action.  Accordingly, subject matter jurisdiction is lacking and dismissal is mandatory.  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003).

## IX.    Gristede's Filed the Counterclaims To Punish Plaintiffs Torres and Chewning.

Gristede's unlawfully retaliated against Plaintiffs Torres and Chewning by filing mean-spirited, patently frivolous Counterclaims against them.  (SOF ¶¶ 266, 267.)  No genuine issues of material fact exist as to whether Gristede's filed the Counterclaims with a retaliatory motive because the Counterclaims are lacking in any legal basis, because Gristede's raised them only after Torres and Chewning had asserted their rights to be paid properly, and because Gristede's lawyer admitted that Gristede's filed the Counterclaims against Torres and Chewning because they had sued Gristede's.

Both the FLSA and the NYLL prohibit retaliation.  29 U.S.C. § 215(a)(3); N.Y. Lab. Law §§ 662(1) and 215.  Retaliation claims are analyzed using a burden-shifting

framework.  A plaintiff must show (1) that he engaged in a statutorily protected activity, (2) the employer was aware of this activity, (3) that the conduct was legally actionable,[26] and (4) that retaliation was a motivating factor in the employer's decision.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

Plaintiffs Torres and Chewning engaged in statutorily protected activity when they filed this lawsuit.  The remaining issues are (1) whether Gristede's conduct was actionable, and (2) whether the retaliation was a motivating factor.[27]

Legal proceedings can be a potent weapon against low-wage workers. Counterclaims and other legal proceedings against employees who assert their statutory rights are actionable retaliation because of their *in terrorem* effect.[28]  The Supreme Court

---

[26] The goal of anti-retaliation provisions in employment laws is to "maintain[] unfettered access to [statutory] remedial mechanisms."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 338 (1997).  As the Supreme Court recently held in *Burlington Northern & Santa Fe Ry. Co. v. White*, actionable retaliatory conduct includes anything that "well might have dissuaded a reasonable worker from making . . . a charge of discrimination."  __ U.S. __, 126 S.Ct. 2405, 2415 (2006).  Therefore, the category of conduct that constitutes actionable retaliation includes more than just "adverse employment actions" or "ultimate employment decisions."  *Wright v. Stern*, 450 F. Supp. 2d 335, 373 (S.D.N.Y. 2006) (citing *Burlington Northern*, 126 S.Ct. at 2414-15).  This standard is properly imported into the FLSA and the NYLL retaliation jurisprudence.  *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988).

[27] It is settled law that anti-retaliation provisions apply to former employees as well as current employees.  *Robinson*, 519 U.S. at 345-46 (holding that Title VII covers former employees).

[28] *See*, *e.g.*, *Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139, 141-44 (E.D.N.Y. 2002) and *Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 162-3 (E.D.N.Y. 2002) (dismissing counterclaims and issuing sanctions *sua sponte*); *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1008-09 (S.D. Ohio. 2002) (finding that Title VII's retaliation provision includes a bad faith counterclaim brought by the employer against former employee) (citing *EEOC v. Outback Steakhouse of Florida, Inc.*, 75 F. Supp. 2d 756 (N.D. Ohio 1999)); *Cozzi v. Pepsi-Cola Gen. Bottlers, Inc.*, No. 96 C 7228, 1997 WL 312048, at *3 (N.D. Ill. June 6, 1997) (defendant's fraud action brought against former employee after she filed with the EEOC is covered under Title VII's retaliation provision); *Jones v. Ryder Servs. Corp.*,

has recognized that, "[a] lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation," and can have a chilling effect on co-workers. *Bill Johnson's Rests., Inc., v. NLRB*, 461 U.S. 731, 740-41 (1983). "[B]y suing an employee who files charges . . . an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit." *Id.* at 741. The chilling effect is even greater where, as here, the employees are low-wage workers who may not have the means to fund a defense. *See id.* at 741. Retaliatory lawsuits can be so damaging to statutory enforcement that even the threat of a retaliatory lawsuit can constitute retaliation. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc*., 263 F.3d 208, 223 (2d Cir. 2001).

Here, Gristede's Counterclaims against Plaintiffs Torres and Chewning easily meet the second element of a successful retaliation claim. By countersuing, Gristede's sent them and other Class Members a clear message: "If you sue us, we'll sue you."

The third element is also clearly met. No reasonable factfinder could conclude that retaliation was not at least part of Gristede's motive for suing Plaintiffs Torres and Chewning.

An employer's counterclaims are presumed to be retaliatory where, as here, the Counterclaims "could have been asserted earlier, but were instead asserted only after the [employee] had initiated the action seeking to vindicate his federal rights." *Kreinik v. Showbran Photo, Inc.*, No. 02 Civ. 1172, 2003 WL 22339268, at *8 (S.D.N.Y. Oct. 14,

---

No. 95 C 4763, 1997 WL 158329, at *5 (N.D. Ill. Mar. 31, 1997) (denying defendant's motion for summary judgment and concluding that defendant retaliated against former employee by withdrawing his workers' compensation settlement offer upon learning of the EEOC charge); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775 (D.C. Va. 1980) (finding that employer retaliated against employee by filing a state court defamation action against employee after she had filed her EEOC charge).

2003).  Here, Plaintiffs' alleged "misconduct" occurred long before the initiation of the Counterclaims, but Gristede's sued Mr. Torres and Mr. Chewning only after they had become named plaintiffs in this case.

Even if the Counterclaims had merit, which they do not, there is no doubt that they were brought, at least in part, as a reaction to this lawsuit.  Gristede's has admitted this on more than one occasion.  At an April 27, 2005 court conference, when Magistrate Judge Peck asked why the Counterclaims were "surfacing for the first time now," Gristede's counsel, Kevin Nash, replied, "[b]ecause the answer was served -- this is the first pleading with the time to counterclaim."  (SOF ¶ 272.)  In other words, Gristede's would not have brought these claims if Plaintiffs Torres and Chewning had not sued it first.  At the same court conference, when Magistrate Judge Peck observed that the Counterclaims seemed to be made for the purpose of "sending a message to people as to opt-in issues, to say hey, you opt in and we will investigate you and bring retaliation claims against you," Mr. Nash replied, "I think it is a fair comment and I thought about it before I filed the counterclaims."  (SOF ¶ 273.)  Even Magistrate Judge Peck commented that the counterclaims seemed to be retaliatory in nature: "Do I think this is somewhat retaliatory . . . ?  Yeah, I agree. . .."  (SOF ¶ 280.)

The fact that Gristede's does not even attempt to state a legal basis for the Counterclaims also betrays its motive.  The message that this sends to other Class Members is clear:  if you participate, Gristede's will sue you too – whether there is a legal basis for suing or not.[29]  It is unconscionable for Gristede's to frighten low-wage

---

[29] Additionally, the amount of damages Gristede's requests underscores the frivolity and retaliatory nature of the Counterclaims.  When Gristede's first lodged the Counterclaims, it requested damages, based on no legal theory at all, of half of Mr. Torres's annual salary

workers by suing them for thousands of dollars.

Plaintiffs Torres and Chewning are entitled to summary judgment on the claim that the Counterclaims are retaliatory.  Moreover, by refusing to withdraw them, (Neilan Dec. ¶ 24), Gristede's risks court-imposed sanctions, *see Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 163 (E.D.N.Y. 2002) ("admonish[ing] the practicing bar against asserting baseless, retaliatory counterclaims" because "[s]uch claims constitute the type of abusive, harassing practices proscribed by Rule 11.") and *Jacques*, 216 F. Supp. 2d at 142 (finding counterclaims "utterly devoid of factual allegations to raise a colorable claim" and imposing sanctions.)

---

and one week of Mr. Chewning's pay.  (SOF ¶¶ 269, 271.)  After Magistrate Judge Peck scolded Gristede's counsel, (SOF ¶ 276), Gristede's amended the Counterclaims to request different but equally unsubstantiated amounts – $13,848.91 from Mr. Torres and $2,000.00 from Mr. Chewning.  (SOF ¶¶ 277-279.)  These evolving requests for relief and relatively small amounts (from Gristede's perspective) at issue are further evidence that Gristede's concern was not to recover on legitimate claims but rather to punish Mr. Torres and Mr. Chewning for suing it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court GRANT

their motion for partial summary judgment.

Dated:          New York, New York
                March 16, 2007

                                    Respectfully submitted,
                                    **OUTTEN & GOLDEN LLP**
                                    By:
                                    /s/ Justin M. Swartz
                                    Justin M. Swartz (JS 7989)

                                    Adam T. Klein (AK 3293)
                                    Justin M. Swartz (JS 7989)
                                    Linda A. Neilan (LN 4095)
                                    Anjana Samant (AS 5163)
                                    **Outten & Golden LLP**
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016
                                    (212) 245-1000

                                    Attorneys for Plaintiffs and the Class