Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Anjana Samant (AS 5163)
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CARLOS TORRES, RUBEN MORA,
BOBBY IRIZARRY, LEWIS CHEWNING,
GILBERTO SANTIAGO,
WILLIAM HELWIG, ROBERT MISURACA,
JOSEPH CREMA, MARIO DIPRETA,
VICTOR PHELPS, JOSELITO AROCHO,
ALFRED CROKER, DANIEL SALEGNA,
FRANK DELEON, and ROBERT PASTORINO,
on behalf of themselves and all others similarly
situated,

                          Plaintiffs,

                 -against-

GRISTEDE'S OPERATING CORP.; NAMDOR,
INC.; GRISTEDE'S FOODS, INC.; CITY PRODUCE
OPERATING CORP.; GRISTEDE'S FOODS NY,
INC., JOHN CATSIMATIDES, JAMES MONOS, and
GALO BALSECA,

                          Defendants.

---

No. 04 CV 3316 (PAC)

**PLAINTIFFS'**
**STATEMENT PURSUANT**
**TO LOCAL CIVIL RULE**
**56.1(a)**

Pursuant to Local Civil Rule 56.1(a), Plaintiffs, by their attorneys, Outten & Golden LLP, hereby state the following facts as to which there is no genuine issue to be tried.

## THE PARTIES

1.     Joselito Arocho, Joseph Crema, Mario DiPreta, Robert Misuraca, Robert Pastorino, Victor Phelps, Daniel Salegna, and Martin Succart are the Department Manager Plaintiffs and Class Representatives.  (**Neilan Dec. Ex. A (Arocho Dec.) ¶ 2; Neilan Dec. Ex. C (Crema Dec.) ¶ 2**; **Neilan Dec. Ex. H (DiPreta Aff.) ¶ 2**; **Neilan Dec. Ex. L (Misuraca Dec.) ¶ 2**; **Neilan Dec. Ex. N (Pastorino Aff.) ¶ 2**; **Neilan Dec. Ex. O (Phelps Aff.) ¶ 2; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 2**.)

2.     Lewis Chewning, Alfred Croker, William Helwig, Ruben Mora, Gilberto Santiago, and Carlos Torres are the Co-Manager Plaintiffs and Class Representatives. (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 2**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 4-8**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 14; Neilan Dec. Ex. R (Santiago Dec.) ¶ 2**.)

3.     Gristede's Operating Corp., Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., Gristede's Foods NY (collectively, "Gristede's") operate a chain of approximately 46 retail grocery stores in and around New York City.  (**Neilan Dec. Ex. T (Balseca Dep.) at 38:20-21; Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶ 1**.)

4.     Gristede's main office is at 823 Eleventh Avenue in New York City ("Main Office").  (**Neilan Dec. Ex. V (Catsimatides Dep.) at 27:20-23**.)

5.     The payroll functions of Gristede's 46 stores are located at the Main Office in the Payroll Department.  (**Neilan Dec. Ex. T (Balseca Dep.) at 38:20-21;**

**Neilan Dec. Ex. V (Catsimatides Dep.) at 36:25-37:3; Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶ 1**.)

6.      The operations functions of Gristede's 46 stores are located at the Main Office.  (**Neilan Dec. Ex. V (Catsimatides Dep.) at 35:13-24; Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶ 1; Neilan Dec. Ex. T (Balseca Dep.) at 38:20-21**.).

7.      Defendant John Catsimatides is Gristede's Chairman, President, and Chief Executive Officer.  (**Neilan Dec. Ex. V (Catsimatides Dep.) at 7:17-19**.)

8.       Defendant Catsimatides wholly owns Gristede's.  (**Neilan Dec. Ex. V (Catsimatides Dep.) at 11:22-12:9**.)

9.      Defendant Galo Balseca is Gristede's Vice President of Operations. (**Neilan Dec. Ex. T (Balseca Dep.) at 23:7-9**.)

10.      Defendant James Monos is Gristede's Regional Director.  (**Neilan Dec. Ex. JJ (Monos Dep.) at 10:10-13**.)

11.      Chris Lang is Gristede's Regional Director.  (**Neilan Dec. Ex. FF (Lang Dep.) at 7:24-8:3**.)

12.      Deborah Clusan is Gristede's Payroll Director.  (**Neilan Dec. Ex. X (Clusan Dep.) at 14:10-15**.)

***The Department Manager Plaintiffs***

13.      From April 30, 1998 to the present (the "class period"), Gristede's scheduled Department Managers to work 40 hours per week.  (**Neilan Dec. Ex. JJ (Monos Dep.) at 91:12-17**; **Neilan Dec. Ex. II (Molina Dep.) at 46:21-47:10; Neilan Dec. Ex. CC (DiPreta Dep.) at 27:7-9; Neilan Dec. Ex. I (Familia Aff.) ¶ 7; Neilan**

3

**Dec. Ex. KK (Montalvo Dep.) at 138:17-21; Neilan Dec. Ex. MM (Paliophilos Dep.) at 44:20-45:4, 45:17-19**.)

14.     During the class period, Department Managers sometimes worked more than 40 hours per week. (**Neilan Dec. Ex. X (Clusan Dep.) at 207:4-16; Neilan Dec. Ex. A (Arocho Dec.) ¶ 5; Neilan Dec. Ex. C (Crema Dec.) ¶ 4; Neilan Dec. Ex. Y (Crema Dep.) at 40:24-41:3, 42:9-15; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 4; Neilan Dec. Ex. L (Misuraca Dec.) ¶ 4; Neilan Dec. Ex. N (Pastorino Aff.) ¶ 5; Neilan Dec. Ex. O (Phelps Aff.) ¶ 5; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 4**.)

15.     Gristede's sometimes scheduled Department Managers to work on Sundays.  (**Neilan Dec. Ex. X (Clusan Dep.) at 255:8-256:1; Neilan Dec. Ex. I (Familia Aff.) ¶ 7**.)

16.     Gristede's paid Department Managers for some of the hours they worked on Sundays at a premium rate.  (**Neilan Dec. Ex. X (Clusan Dep.) at 255:6-256:8**.)

17.     During the class period, Gristede's considered Department Managers to be hourly employees.  (**Neilan Dec. Ex. T (Balseca Dep.) at 300:18-23; Neilan Dec. Ex. X (Clusan Dep.) at 409:13-16; 436:13-22;  Neilan Dec. Ex. FF (Lang Dep.) at 60:13-15; 65:8-10; 298:24-299:21; Neilan Dec. Ex. II (Molina Dep.) at 46:21-25; Neilan Dec. Ex. MM (Paliophilos Dep.) at 44:20-45:4, 45:17-19, 54:23-56:6;  Neilan Dec. Ex. DDD (Forms C-240); Neilan Dec. Ex. VVV (Sample Department Manager Payroll Records; Neilan Dec. Ex. A (Arocho Dec.) ¶ 1; Neilan Dec. Ex. C (Crema Dec.) ¶ 1; Neilan Dec. Ex. Y (Crema Dep.) at 27:6-23, 110:10-15; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 1; Neilan Dec. Ex. CC (DiPreta Dep.) at 24:25-25:4; Neilan Dec. Ex. I (Familia Aff.) ¶ 7; Neilan Dec. Ex. HH (Misuraca Dep.) at 38:2-8; Neilan Dec. Ex. L**

**(Misuraca Dec.) ¶ 1; Neilan Dec. Ex. N (Pastorino Aff.) ¶ 1; Neilan Dec. Ex. O (Phelps Aff.) ¶ 1; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 1.)**

18.     During this litigation, Gristede's claimed that Department Managers were exempt executives.  **(Neilan Dec. Ex. FFFF (Answers to RFAs) Nos. 3-14**.)

19.     During the class period, Department Managers were entitled to an overtime premium for hours worked over 40 per week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 436:13-22; Neilan Dec. Ex. MM (Paliophilos Dep.) at 44:20-45:4, 45:17-19**.)

20.     During the class period, Gristede's paid Department Managers an overtime premium for some of the hours they worked over 40 per week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 207:4-16; Neilan Dec. Ex. VVV (Sample Department Manager Payroll Records**.)

***The Department Manager Plaintiffs' Duties***

21.     During the class period, Department Managers spent the majority of their shifts performing manual labor.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 145:8-1; Neilan Dec. Ex. C (Crema Dec.) ¶ 6; Neilan Dec. Ex. Y (Crema Dep.) at 66:3-10; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 6; Neilan Dec. Ex. HH (Misuraca Dep) at 69:13-15, 85:13-17; 9; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 6, 8, 11; Neilan Dec. Ex. O (Phelps Aff.) ¶¶ 3, 6, 8; Neilan Dec. Ex. NN (Phelps Dep.) at 15:7-10.)**

22.      During the class period, Department Managers' main duties were not managerial.  **(Neilan Dec. Ex. H (DiPreta Aff.) ¶ 6; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 6, 8, 11; Neilan Dec. Ex. O (Phelps Aff.) ¶¶ 3, 6, 8.)**

23.     During the class period, Department Managers did not supervise 2 or more full-time employees.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 145:20-146:7, 147:4-**

**149:24, 150:18-151:4, 151:23-156:2; Neilan Dec. Ex. HH (Misuraca Dep.) at 45:24-46:9; Neilan Dec. Ex. NN (Phelps Dep.) at 13:6-8.)**

24.     During the class period, Department Managers did not have authority to hire employees.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 143:10-12, 144:11-14.)**

25.     During the class period, Department Managers did not have authority to fire employees.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 143:10-12, 144:11-14.)**

26.     During the class period, Department Managers did not have authority to promote employees.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 146:14-19.)**

27.     During the class period, Department Managers did not have authority to schedule employees.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 143:13-144:10; Neilan Dec. Ex. FF (Lang Dep.) at 176:7-15.)**

28.     During the class period, Department Managers did not determine employees' pay.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 146:8-13.)**

29.     During the class period, Department Managers were not invited to the weekly managerial meetings.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 39:12-40:15.)**

30.     During the class period, Department Managers did not assign employees to particular work stations.  **(Neilan Dec. Ex. NN (Phelps Dep.) at 44:11-23.)**

### *The Co-Manager Plaintiffs*

31.     During the class period, Gristede's scheduled Co-Managers to work 50 hours per week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 342:13-19**; **Neilan Dec. Ex. FF (Lang Dep.) at 298:3-20**; **Neilan Dec. Ex. LL (Mora Dep.) at 203:10-204:7**.)

32.     During the class period, it was Gristede's policy to not pay Co-Managers an overtime premium for the hours that they worked over 40 per week.  **(Neilan Dec. Ex.**

**X (Clusan Dep.) at 332:22-333:6, 334:18-335:4, 342:13-19; Neilan Dec. Ex. FF (Lang Dep.) at 296:21-298:23.)**

33.     During the class period, Co-Managers worked more than 40 hours during some workweeks.  **(Neilan Dec. Ex. X (Clusan Dep.) at 342:13-19; Neilan Dec. Ex. B (Chewning Aff.) ¶ 4; Neilan Dec. Ex. W (Chewning Dep.) at 101:2-4; Neilan Dec. Ex. F (Damassia Dec.) ¶ 4; Neilan Dec. Ex. G (DeLeon Dec.) ¶ 5; Neilan Dec. Ex. BB (DeLeon Dep.) at 97:6-14; Neilan Dec. Ex. K (Markiewicz Aff.) ¶¶ 3, 4; Neilan Dec. Ex. LL (Mora Dep.) at 203:10-204:7; Neilan Dec. Ex. OO (Santiago Dep.) at 39:12-13; Neilan Dec. Ex. WWW (Sample Co-Manager Payroll Records).)**

34.     During the class period, Gristede's did not pay Co-Managers an overtime premium for the hours that they worked over 40 per week.  **(Neilan Dec. Ex. T (Balseca Dep.) at 170:25-171:9; Neilan Dec. Ex. X (Clusan Dep.) at 332:22-333:6; 334:18-335:4, 342:13-19, 478:16-18, 480:16-481:16; Neilan Dec. Ex. FF (Lang Dep.) at 296:21-298:23; Neilan Dec. Ex. B (Chewning Aff.) ¶ 4; Neilan Dec. Ex. W (Chewning Dep.) at 101:2-4; Neilan Dec. Ex. D (Croker Aff.) ¶ 6, 14; Neilan Dec. Ex. F (Damassia Dec.) ¶ 4; Neilan Dec. Ex. G (DeLeon Dec.) ¶¶ 5, 14; Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 5, 18; Neilan Dec. Ex. M (Mora Dec.) ¶¶ 4, 26, 31, 34; Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 4, 15; Neilan Dec. Ex. OO (Santiago Dep.) at 71:10-15; Neilan Dec. Ex. S (Torres Dec.) ¶ 3, 13, 16, 19, 23, 27; Neilan Dec. Ex. WWW (Sample Co-Manager Payroll Records).)**

35.     During the class period, Gristede's did not pay Co-Managers at all for hours that they worked over 50 per week (excluding Sundays).  **(Neilan Dec. Ex. X (Clusan Dep.) at 332:22-333:6, 334:18-335:4, 342:13-19; Neilan Dec. Ex. T (Balseca**

**Dep.) at 170:25-171:9; Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 4, 15; Neilan Dec. Ex. D (Croker Aff.) ¶¶ 6, 14; Neilan Dec. Ex. G (DeLeon Dec.) ¶¶ 5, 14; Neilan Dec. Ex. J (Irizarry Aff.) ¶ 18; Neilan Dec. Ex. M (Mora Dec.) ¶¶ 4, 26, 31, 34; Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 4, 15; Neilan Dec. Ex. S (Torres Dec.) ¶¶ 3, 13, 16, 19, 23, 27.)**

36.     Ms. Clusan, Gristede's Fed. R. Civ. P. 30(b)(6) witness, testified as follows:

> Q:   If somebody has the title "co-manager," then they are not paid overtime between 40 hours and 50 hours or more, right?
> A:   Correct.
> Q:   They are paid straight-time for that time, right?
> A:   Correct.

**(Neilan Dec. Ex. X (Clusan Dep.) at 334:18-24.)**

37.     Gristede's sometimes scheduled Co-Managers to work on Sundays.

**(Neilan Dec. Ex. X (Clusan Dep.) at  256:3-14.)**

38.     Gristede's paid Co-Managers for hours worked on Sundays at a premium rate.  **(Neilan Dec. Ex. X (Clusan Dep.) at 255:6-256:8; 448:5-9.)**

39.     During the class period, it was Gristede's policy to pay Co-Managers an hourly premium when they were scheduled to work more than their regularly scheduled 50 hour shifts.  **(Neilan Dec. Ex. X (Clusan Dep.) at 492:24-493:7.)**

40.     During the class period, Gristede's classified all Co-Managers as exempt "executives."  **(Neilan Dec. Ex. X (Clusan Dep.) at 334:13-335:4; 342:13-19; Neilan Dec. Ex. FF (Lang Dep.) at 57:23-60:15; 296:21-297:15; Neilan Dec. Ex. B (Chewning Aff.) ¶ 15; Neilan Dec. Ex. D (Croker Aff.) ¶¶ 8, 14; Neilan Dec. Ex. F (Damassia Dec.) ¶ 14; Neilan Dec. Ex. G (DeLeon Dec.) ¶ 14; Neilan Dec. Ex. FFFF**

**(Answers to RFAs) Nos. 1-2**; **Neilan Dec. Ex. EEEE (Answer to Interrogatories) No. 2**.)

41.     During the class period, Gristede's classified all Co-Managers as exempt "executives" based on their titles.  (**Neilan Dec. Ex. X (Clusan Dep.) at 334:13-335:4**; **Neilan Dec. Ex. FF (Lang Dep.) at 57:23-60:15**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 15**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 8**; **Neilan Dec. Ex. F (Damassia Dec.) ¶ 14**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 14**; **Neilan Dec. Ex. FFFF (Answers to RFAs) Nos. 1-2**.)

42.     During the class period, Gristede's classified Co-Managers as exempt "executives" because of historical practices.  (**Neilan Dec. Ex. FFFF (Answers to RFAs) Nos. 1-2**.)

43.     During the class period, Gristede's did not examine Co-Managers' duties to determine their exempt or non-exempt status.  (**Neilan Dec. Ex. X (Clusan Dep.) at 334:18-335:3**; **Neilan Dec. Ex. Z (Criscuolo Dep.) at 211:23-212:22; Neilan Dec. Ex. GG (McCormick Dep.) at 116:23-117:6, 160:22-161:5**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 15**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 8**; **Neilan Dec. Ex. E (Daly Dec.) ¶ 14**; **Neilan Dec. Ex. F (Damassia Dec.) ¶ 14**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 14**; **Neilan Dec. Ex. R (Santiago Dec.) ¶ 15**.)

44.     During the class period, Gristede's did not compare Co-Managers' duties to the duties required for a statutory overtime exemption.  (**Neilan Dec. Ex. X (Clusan Dep.) at 334:18-335:3**; **Neilan Dec. Ex. Z (Criscuolo Dep.) at 211:23-212:22; Neilan Dec. Ex. GG (McCormick Dep.) at 160:22-161:5**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 15**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 8**; **Neilan Dec. Ex. E (Daly Dec.) ¶ 14**; **Neilan

**Dec. Ex. F (Damassia Dec.) ¶ 14**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 14; Neilan Dec.**

**Ex. R (Santiago Dec.) ¶ 15**.)

45.     During the class period, Gristede's did not conduct an audit of Co-

Managers' duties.  **Neilan Dec. Ex. X (Clusan Dep.) at 334:18-335:3**; **Neilan Dec. Ex.**

**Z (Criscuolo Dep.) at 211:23-212:22**; **Neilan Dec. Ex. GG (McCormick Dep.) at**

**160:22-161:5**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 15**; **Neilan Dec. Ex. D (Croker**

**Aff.) ¶¶ 7-8; Neilan Dec. Ex. E (Daly Dec.) ¶ 14; Neilan Dec. Ex. F (Damassia Dec.) ¶**

**14**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 14; Neilan Dec. Ex. R (Santiago Dec.) ¶ 15**.)

46.     Mr. Lang testified as follows:

> Q:      And at Gristede's, all co-managers are also characterized as exempt
>         employees; is that right?
> MR. NASH:  Objection, calls for a legal conclusion beyond the witness's
>         comprehension.
> A:      I believe so, yes.
> Q:      Do you know of any co-manager at Gristede's who is not
>         characterized at Gristede's as an exempt employee?
> MR. NASH:  Objection.  You can answer.
> A:      Only if I have a floater that's a union assistant.
> Q:      But other than union assistants, you don't know of any co-
>         managers at Gristede's would are not characterized as exempt
>         employees, do you?
> A:      Not that I am aware of.
> Q:      At Gristede's, store managers are not entitled to time-and-a-half for
>         overtime for the hours that they worked over 40 hours a week, are
>         they?
> MR. NASH:  Objection.
> A:      No, because I believe it's based on a 50-hour week for a retail
>         manager.
> Q:      For co-managers, the same policy applies, right?
> MR. NASH:  Objection.
> A:      Yes.
> Q:      Co-managers are not entitled to overtime at Gristede's for time that
>         they worked over 40 hours a week, right?
> MR. NASH:  Objection.
> A:      It's based on a 50-hour week.
> Q:      So at Gristede's, co-managers do not get paid time-and-a-half for
>         the hours that they work between 40 and 50 in a week, right?

MR. NASH:  Objection.
A:     It's based on a 50-hour week.  Like, you know, most every retailer there is, retail managers work 50 hours.
Q:     And that goes for all co-managers at Gristede's, right?
MR. NASH:  Objection.
A:     I would assume so, yes.
Q:     In all stores?
A:     I would assume so, yes.
Q:     During the entire time that you have been there?
A:     Yes.

**(Neilan Dec. Ex. FF (Lang Dep.) at 296:21-298:23.)**

### *The Co-Managers' Plaintiffs' Duties*

47.     During the class period, Co-Managers spent the majority of their shifts performing manual labor.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 9, 10**; **Neilan Dec. Ex. W (Chewning Dep.) at 113:4-7**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 5**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶¶ 7, 8**; **(Neilan Dec. Ex. BB (DeLeon Dep.) at 9:17-21**, **40:17-41:17**, **43:17-19**, **90:7-12**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 6, 8**; **Neilan Dec. Ex. M (Mora Dec.) ¶¶ 5-7, 10, 11, 15, 23, 27, 34**; **Neilan Dec. Ex. LL (Mora Dep.) at 157:6-16**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 5, 6, 7**; **Neilan Dec. Ex. OO (Santiago Dep.) at 13:10-17**; **Neilan Dec. Ex. S (Torres Dec.) ¶¶ 4, 7, 12, 15, 18, 21, 22, 25, 26; Neilan Dec. Ex. RR (Torres Dep.) at 62:9-15**, **76:20-77:8**, **83:7-10**.)

48.     During the class period, Co-Managers' main duties were not managerial.  (**Neilan Dec. Ex. BB (DeLeon Dep.) at 9:12-21, 40:17-41:17**, **43:17-19**, **54:11-20**, **87:5-88:10**, **90:7-12**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 8, 12**; **Neilan Dec. Ex. M (Mora Dec.) ¶¶ 5, 16, 17**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 5, 6, 8**; **Neilan Dec. Ex. OO (Santiago Dep.) at 66:8-18**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 4**.)

49.     During the class period, Co-Managers did not supervise 2 or more full-time employees.  (**Neilan Dec. Ex. D (Croker Aff.) ¶ 9**; **Neilan Dec. Ex. BB (DeLeon**

**Dep.) at 40:17-41:17, 54:11-20**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 12**; **Neilan Dec. Ex. M (Mora Dec.) ¶¶ 12, 29**; **Neilan Dec. Ex. R (Santiago Dec.) ¶ 13**; **Neilan Dec. Ex. RR (Torres Dep.) at 82:19-83:5**.)

50.     During the class period, Co-Managers did not have authority to hire employees.  (**Neilan Dec. Ex. X (Clusan Dep.) at 408:15-410:2**; **Neilan Dec. Ex. FF (Lang Dep.) at 176:16-177:8**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 11, 12**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 10**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 9,10**; **Neilan Dec. Ex. M (Mora Dec.) ¶¶ 8, 18**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 9, 10**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 8**.)

51.     During the class period, Co-Managers did not have authority to fire employees.  (**Neilan Dec. Ex. FF (Lang Dep.) at 186:9-187:21**; **Neilan Dec. Ex. QQ (Squicciarini Dep.) at 97:9-16**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 11, 12**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 10**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 9,10**; **Neilan Dec. Ex. M (Mora Dec.) ¶¶ 8, 18**; **Neilan Dec. Ex. LL (Mora Dep.) at 113:18-115:3**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 9, 10**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 8**.)

52.     During the class period, Co-Managers did not have authority to promote employees.  (**Neilan Dec. Ex. FF (Lang Dep.) at 177:17-21**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 11, 12**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 10**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 9, 10**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 8**; **Neilan Dec. Ex. R (Santiago Dec.) ¶ 9**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 8**.)

53.     During the class period, Co-Managers did not have authority to demote

employees.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 11, 12** ; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 10**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 9, 10**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 8**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 9, 10**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 8**.)

54.    During the class period, Co-Managers did not have authority to schedule employees.  (**Neilan Dec. Ex. FF (Lang Dep.) at 176:7-15**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 10**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 9**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶ 7**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 8**; **Neilan Dec. Ex. R (Santiago Dec.) ¶ 9; Neilan Dec. Ex. S (Torres Dec.) ¶¶ 6, 10**.)

55.    During the class period, Co-Managers did not have authority to determine employees' pay.  (**Neilan Dec. Ex. FF (Lang Dep.) at 190:13-15**; **Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶¶ 11, 12**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 10**; **Dec. Ex. XX (Irizarry Aff.) ¶¶ 9, 10**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 8**; **Neilan Dec. Ex. R (Santiago Dec.) ¶¶ 9, 10**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 8**.)

56.    During the class period, Co-Managers were not invited to managerial meetings.  (**Neilan Dec. Ex. T (Balseca Dep.) at 162:8-163:8; Neilan Dec. Ex. FF (Lang Dep.) at 273:9-274:7; Neilan Dec. Ex. JJ (Monos Dep.) at 68:2-23; Neilan Dec. Ex. KK (Montalvo Dep.) at 15:24-17:3**; **Neilan Dec. Ex. MM (Paliophilos Dep.) at 39:12-40:15**.)

57.    During the class period, Co-Managers were not responsible for store payroll.  (**Neilan Dec. Ex. Z (Criscuolo Dep.) at 151:21-152:9, Neilan Dec. Ex. FF**

**(Lang Dep.) at 190:13-15**; **158:12-159:16**; **Neilan Dec. Ex. S (Torres Dec.) ¶10**.)

58.      During the class period, Co-Managers did not purchase merchandise or supplies.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 12**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 10**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 9**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 7, 14**; **Neilan Dec. Ex. M (Mora Dec.) ¶ 8**; **Neilan Dec. Ex. S (Torres Dec.) ¶ 10**.)

59.      During the class period, Co-Managers did not handle the store budget. (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 13**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶ 15; Neilan Dec. Ex. S (Torres Dec.) ¶ 10**.)

60.      During the class period, Co-Managers did not assign employees to particular work stations.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 11**; **Neilan Dec. Ex. D (Croker Aff.) ¶ 10**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 9**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶ 7**.)

61.      During the class period, Co-Managers did not conduct performance reviews of employees.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 12**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶ 14**.)

62.      During the class period, Co-Managers did not receive any managerial training.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 9, 16**; **Neilan Dec. Ex. G (DeLeon Dec.) ¶ 3**; **Neilan Dec. Ex. J (Irizarry Aff.) ¶ 16**; **Neilan Dec. Ex. RR (Torres Dep.) at 62:20-25, 72:8-73:9**.)

63.      During the class period, Co-Managers did not have the same responsibilities that store managers had.  (**Neilan Dec. Ex. B (Chewning Aff.) ¶ 11; Neilan Dec. Ex. G (DeLeon Dec.) ¶ 9; Neilan Dec. Ex. J (Irizarry Aff.) ¶ 7; Neilan Dec. Ex. M (Mora Dec.) ¶ 17; Neilan Dec. Ex. R (Santiago Dec.) ¶ 8; Neilan Dec. Ex.**

**S (Torres Dec.) ¶ 10**.)

## GRISTEDE'S TIMEKEEPING AND PAYROLL SYSTEM

64.     During the class period, Gristede's central timekeeping and payroll process was uniform throughout the company.   (**Neilan Dec. Ex. X (Clusan Dep.) at 107:6-108:18; Neilan Dec. Ex. FF (Lang Dep.) at 286:10-287:25**.)

65.     During the class period, Gristede's timekeeping and payroll process was centralized.  (**Neilan Dec. Ex. X (Clusan Dep.) at 107:6-108:18; Neilan Dec. Ex. FF (Lang Dep.) at 286:10-287:25.)**

66.     Before 2000, Gristede's employees recorded time through the use of a punch card system.  (**Neilan Dec. Ex. X (Clusan Dep.) at 108:7-15**.)

67.     In 2000, Gristede's equipped each store with a palm-swipe machine that recorded employees' time at work.  (**Neilan Dec. Ex. X (Clusan Dep.) at 111:21-112:5, 125:7-9**.)

68.     Since 2000, Gristede's required Department Managers to swipe in and out using the palm-swipe machine.  (**Neilan Dec. Ex. X (Clusan Dep.) at 107:6-9**; **Neilan Dec. Ex. I (Familia Aff.) ¶ 11**.)

69.     Gristede's electronic time and attendance computer system ("time system") recorded the actual time and date "punches" for all Department Managers on a minute-to-minute, day-by-day basis.  (**Neilan Dec. Ex. X (Clusan Dep.) at 200:3-201:10**.)

70.     The time system recorded original punches and edited punches side-by-side.  (**Neilan Dec. Ex. X (Clusan Dep.) at 106:10-107:21**, **173:12-174:18, 178:2-179:10, 309:6-310:8**; **Neilan Dec. Ex. AAA (Sample Audit Trails)**.)

71.     During the class period, Gristede's executives in the Main Office ("Upper Management") monitored and controlled the stores.  (**Neilan Dec. Ex. FF (Lang Dep.) at 286:10-287:25**.)

72.     During the class period, Upper Management allocated payroll to the stores.  (**Neilan Dec. Ex. T (Balseca Dep.) at 193:8-197:18; Neilan Dec. Ex. FF (Lang Dep.) at 93:12-94:16, 153:17-154:5; Neilan Dec. Ex. JJ (Monos Dep.) at 54:21-57:7**.)

73.     During the class period, Upper Management gave each store a weekly payroll budget.  (**Neilan Dec. Ex. T (Balseca Dep.) at 193:8-197:18; Neilan Dec. Ex. FF (Lang Dep.) at 93:12-94:16, 111:21-25, 153:17-154:5; Neilan Dec. Ex. JJ (Monos Dep.) at 54:21-57:7**; **Neilan Dec. Ex. KK (Montalvo Dep.) at 15:7-11.**)

74.     During the class period, the weekly payroll budget was the same amount every week.  **(Neilan Dec. Ex. JJ (Monos Dep.) at 56:2-5 Neilan Dec. Ex. KK (Montalvo Dep.) at 15:7-11.)**

75.     During the class period, Upper Management regularly compared the weekly payroll budget to the actual store payroll.  (**Neilan Dec. Ex. T (Balseca Dep.) at 218:10-20**; **Neilan Dec. Ex. Z (Criscuolo Dep.) at 135:24-136:9**; **158:12-160:19**; **Neilan Dec. Ex. FF (Lang Dep.) at 33:21-24**; **Neilan Dec. Ex. II (Molina Dep.) at 14:25-16:22**; **Neilan Dec. Ex. JJ (Monos Dep.) at 86:12-86:18**; **Neilan Dec. Ex. PP (Sharif Dep.) at 25:15-20**.)

76.     During the class period, Upper Management reminded store managers to stick to the payroll budget.  (**Neilan Dec. Ex. T (Balseca Dep.) at 174:5-175:12, 176:5-24, 186:2-192:18, 196:18-197:18, 208:11-209:6**; **Neilan Dec. Ex. Z (Criscuolo Dep.) at 146:16-152:9, 158:12-160:19, 200:4-20**; **Neilan Dec. Ex. FF (Lang Dep.) at 278:10-**

281:25; **Neilan Dec. Ex. JJ (Monos Dep.) at 64:16-65:21; Neilan Dec. Ex. II (Molina Dep.) at 15:6-15:25, 27:4-24; Neilan Dec. Ex. MM (Paliophilos Dep.) at 37:15-21, 42:10-44:25, 51:20-52:9**; **Neilan Dec. Ex. PP (Sharif Dep.) at 25:15-20**; **Neilan Dec. Ex. E (Daly Dec.) ¶ 11**; **Neilan Dec. Ex. I (Familia Aff.) ¶¶ 4, 5**; **Neilan Dec. Ex. BBB (Sample Reduce Payroll / Payroll Budget Emails)**; **Neilan Dec. Ex. GGG (Sample Store Managers Meeting Agenda)**; **Neilan Dec. Ex. XX (Monos June 2005 E-Mail.)**

77.   During the class period, Upper Management reminded store managers to avoid paying overtime compensation.  (**Neilan Dec. Ex. T (Balseca Dep.) at 208:11-209:6**; **Neilan Dec. Ex. FF (Lang Dep.) at 278:10-281:25**; **Neilan Dec. Ex. JJ (Monos Dep.) at 86:12-98:18; Neilan Dec. Ex. MM (Paliophilos Dep.) at 42:10-44:25**; **Neilan Dec. Ex. Y (Crema Dep.) at 108:8-22**; **Neilan Dec. Ex. BBB (Sample Reduce Payroll / Payroll Budget Emails**); **Neilan Dec. Ex. GGG (Sample Store Managers Meeting Agenda**).)

### _Edits by Store Managers_

78.   During the class period, store managers regularly reviewed the time records produced by the time keeping system.  (**Neilan Dec. Ex. X (Clusan Dep.) at 106:10-107:21, 173:12-174:18; Neilan Dec. Ex. MM (Paliophilos Dep.) at 63:2-64:20, 80:11-17; Neilan Dec. Ex. KK (Montalvo Dep.) at 72:12-21; Neilan Dec. Ex. WW (Monos June 2003 Email).)**

79.   During the class period, store managers regularly edited time records produced by the time keeping system.  (**Neilan Dec. Ex. X (Clusan Dep.) at 107:6-21, 132:19-133:18, 137:9-25, 173:12-174:18, 178:2-179:10; Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. MM (Paliophilos Dep.) at 68:2-7,**

**69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12; Neilan Dec. Ex. WW (Monos June 2003 Email); Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7; Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9; Neilan Dec. Ex. E (Daly Dec.) ¶ 7; Neilan Dec. Ex. AA (Daly Dep.) at 63:4-5; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 10; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 12, 13; Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 22, 23; Neilan Dec. Ex. XXX (Sample Edited Time Records).)**

80.     After Gristede's changed its time-keeping system and store managers were no longer able to change time records, store managers simply wrote down their edits manually and sent them to the Payroll Department at the Main Office.  **(Neilan Dec. Ex. X (Clusan Dep.) at 173:12-174:10; Neilan Dec. Ex. MM (Paliophilos Dep.) at 63:11-22, 82:5-85:15, 87:3-6.)**

### *Edits by Upper Management*

81.     After editing at the store level, but before the paychecks were cut, the Main Office uploaded Class Members' time records into the central payroll system.  **(Neilan Dec. Ex. X (Clusan Dep.) at 107:9-11.)**

82.     In the Main Office, Upper Management compared the actual payroll to the weekly payroll budget.  **(Neilan Dec. Ex. T (Balseca Dep.) at 218:20-219:2; Neilan Dec. Ex. X (Clusan Dep.) at 107:17-21, 173:12-174:18; Neilan Dec. Ex. FF (Lang Dep.) at 122:16-124:18**; **Neilan Dec. Ex. FFF (Lang Comparison - Budget to Actual); Neilan Dec. Ex. EEE (Comparison – Budget to Actual); Neilan Dec. Ex. CCC (Sample 5-Q Statements and E-Mails).)**

83.     When comparing the actual payroll to the weekly payroll budget, Upper

Management looked for unauthorized overtime.  **(Neilan Dec. Ex. T (Balseca Dep.) at 218:20-219:2; Neilan Dec. Ex. X (Clusan Dep.) at 107:17-21, 173:12-174:18; Neilan Dec. Ex. FF (Lang Dep.) at 122:16-124:18; Neilan Dec. Ex. FFF (Lang Comparison - Budget to Actual); Neilan Dec. Ex. EEE (Comparison – Budget to Actual); Neilan Dec. Ex. CCC (Sample 5-Q Statements and E-Mails).)**

84.     Upper Management directed the Payroll Department to eliminate unauthorized overtime from Department Managers' time records. **(Neilan Dec. Ex. X (Clusan Dep.) at 173:12-23, 174:11-21; Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9; Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12, 73:24-74:3, 74:16-20; Neilan Dec. Ex. XX (Monos June 2005 E-Mail); Neilan Dec. Ex. E (Daly Dec.) ¶¶ 4,7, 10; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 14-19; Neilan Dec. Ex. DD (Helwig Dep.) at 73:4-19, 63:22-64:14.)**

## GRISTEDE'S DID NOT PLAY CLASS MEMBERS ON A SALARY BASIS.

### *Gristede's Did Not Pay Department Managers On A Salary Basis.*

85.     Gristede's did not pay Department Managers on a salary basis.  **(Neilan Dec. Ex. TT (Schneider Report) ¶¶ 27, 28, 34(b); Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c) & Table 4, Column 3); Neilan Dec. Ex. T (Balseca Dep.) at 300:18-23; Neilan Dec. Ex. X (Clusan Dep.) at 409:13-16; 436:13-22;  Neilan Dec. Ex. FF (Lang Dep.) at 60:13-15; 65:8-10; 298:24-299:21; Neilan Dec. Ex. II (Molina Dep.) at 46:21-25; Neilan Dec. Ex. MM (Paliophilos Dep.) at 44:20-45:4, 45:17-19, 54:23-56:6; Neilan Dec. Ex. DDD (Forms C-240); Neilan Dec. Ex. VVV (Sample Department Manager Payroll Records; Neilan Dec. Ex. A (Arocho Dec.) ¶ 1; Neilan Dec. Ex. C (Crema Dec.) ¶ 1; Neilan Dec. Ex. Y (Crema Dep.) at 27:6-23, 110:10-15; Neilan**

**Dec. Ex. H (DiPreta Aff.) ¶ 1; Neilan Dec. Ex. CC (DiPreta Dep.) at 24:25-25:4;**

**Neilan Dec. Ex. I (Familia Aff.) ¶ 7; Neilan Dec. Ex. HH (Misuraca Dep.) at 38:2-8;**

**Neilan Dec. Ex. L (Misuraca Dec.) ¶ 1; Neilan Dec. Ex. N (Pastorino Aff.) ¶ 1;**

**Neilan Dec. Ex. O (Phelps Aff.) ¶ 1; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 1.)**

86.     Gristede's paid Department Managers less than their purported salaries when they worked fewer than their 40 scheduled hours per week.  (**Neilan Dec. Ex. X (Clusan Dep.) at 342:13-344:2, 352:8-21; 448:13-449:2; 502:8-504:12; Neilan Dec. Ex. TT (Schneider Report) ¶¶ 27, 28, 34(b); Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c); Neilan Dec. Ex. VVV (Sample Department Manager Payroll Records).)**

87.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries at least 1,724 times.  (**Neilan Dec. Ex. TT (Schneider Report) ¶ 27; Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 2**.)

88.     From June 1999 to April 2005, Gristede's paid 84% of all Department Managers less than their purported salaries.  (**Neilan Dec. Ex. TT (Schneider Report) ¶ 27.)**

89.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries in 96% of all stores (all but two of Gristede's 50 stores). **(Neilan Dec. Ex. TT (Schneider Report) ¶ 27.)**

90.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries in 97% of all workweeks.  (**Neilan Dec. Ex. TT (Schneider Report) ¶ 27.)**

91.     From June 1999 to April 2005, 6% of Department Managers' paychecks were for less than their purported salaries.  (**Neilan Dec. Ex. UU (Berkman Report) ¶¶**

**5(c), 15.)**

92.    Gristede's paid Department Manager Joseph Crema less than his purported salary during at least 2% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

93.    Gristede's paid Department Manager Robert Misuraca less than his purported salary during at least 12% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

94.    Gristede's paid Department Manager Robert Pastorino less than his purported salary during at least 3% of his workweeks**.  (Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

95.    Gristede's paid Department Manager Victor Phelps less than his purported salary during at least 3% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

96.    Gristede's paid Department Manager Daniel Salegna less than his purported salary during at least 6% of his workweeks. **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

97.    Gristede's paid all Department Managers other than Crema, DiPreta, Misuraca, Pastorino, Phelps, and Salegna less than their purported salaries during at least 6% of all their workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

98.    From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries when they were absent for part of a day**.  (Neilan Dec. Ex. TT (Schneider Report) ¶ 28, 34(b); Neilan Dec. Ex. UU (Berkman Report) ¶ 19 and**

**Table 4.)**

99.     From June 1999 to April 2005, most Department Managers were given paychecks for less than their purported salaries due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 34(b)**.)

100.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries at least 1,218 times due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 28; Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 2; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:15; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5.)**

101.     From June 1999 to April 2005, Gristede's paid 78% of Department Managers less than their purported salaries due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 28.)**

102.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries in 96% of all stores due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 28.)**

103.     From June 1999 to April 2005, Gristede's paid Department Managers less than their purported salaries in 84% of all workweeks due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 28.)**

***Gristede's Did Not Pay Co-Managers On A Salary Basis.***

104.     Gristede's did not pay Co-Managers on a salary basis.  **(Neilan Dec. Ex. X (Clusan Dep.) at 342:13-344:2, 352:8-21, 448:13-449:2, 502:8-504:12; Neilan Dec. Ex. X (Clusan Dep.) at 466:5-467:6; Neilan Dec. Ex. LLL (Sample Payroll Records of Michael Cella); Neilan Dec. Ex. X (Clusan Dep.) at 478:10-15; 483:24-484:22;**

**Neilan Dec. Ex. MMM (Sample Payroll Records of Raul Chavez); Neilan Dec. Ex. X (Clusan Dep.) at 492:6-8; 493:14-494:10; Neilan Dec. Ex. OOO (Sample Payroll Records of Frederick Dixon); Neilan Dec. Ex. FF (Lang Dep.) at 71:24-73:5, 76:22-77:9; Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8; Neilan Dec. Ex. TT (Schneider Report) ¶ 22; (Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 3; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:11; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5; Neilan Dec. Ex. BB (DeLeon Dep.) at 48:12-24, 49:15-50:8, 66:23-67:5; Neilan Dec. Ex. DD (Helwig Dep.) at 88:8-22;  Neilan Dec. Ex. J (Irizarry Aff.) ¶ 1; Neilan Dec. Ex. OO (Santiago Dep.) at 102:5-12; (Neilan Dec. Ex. DDD (Forms C-240).)**

      105.    Gristede's paid Co-Managers less than their purported salaries when they worked fewer than their 50 scheduled hours per week.  (**Neilan Dec. Ex. X (Clusan Dep.) at 342:13-344:2, 352:8-21, 448:13-449:2, 502:8-504:12; (Clusan Dep.) at 466:5-467:6; Neilan Dec. Ex. LLL (Sample Payroll Records of Michael Cella); Neilan Dec. Ex. X (Clusan Dep.) at 478:10-15, 483:24-484:22; Neilan Dec. Ex. MMM (Sample Payroll Records of Raul Chavez); Neilan Dec. Ex. X (Clusan Dep.) at 492:6-8; 493:14-494:10; Neilan Dec. Ex. OOO (Sample Payroll Records of Frederick Dixon); Neilan Dec. Ex. FF (Lang Dep.) at 71:24-73:5, 76:22-77:9; Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8; Neilan Dec. Ex. TT (Schneider Report) ¶ 22; (Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 3; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:11; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5; Neilan Dec. Ex. BB (DeLeon Dep.) at 48:12-24, 49:15-50:8, 66:23-67:5; Neilan Dec. Ex. DD (Helwig Dep.) at 88:8-22;  Neilan Dec. Ex. J (Irizarry Aff.) ¶ 1; Neilan**

**Dec. Ex. OO (Santiago Dep.) at 102:5-12;** (**Neilan Dec. Ex. DDD (Forms C-240).**)

106.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries at least 2,557 times.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 22; Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 2.)**

107.    From June 1999 to April 2005, Gristede's paid 85% of all Co-Managers less than their purported salaries.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 22.)**

108.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries in 96% of all stores (all but two of Gristede's 50 stores).  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 22.)**

109.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries in 97% of all workweeks.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 22.)**

110.    From June 1999 to April 2005, 20% of Co-Managers' paychecks were for less than their purported salaries.  **(Neilan Dec. Ex. UU (Berkman Report) ¶¶ 5(c), 15, 17.)**

111.    Gristede's paid Co-Manager Alfred Croker less than his purported salary during at least 20% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

112.    Gristede's paid Co-Manager Frank DeLeon less than his purported salary during at least 9% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

113.    Gristede's paid Co-Manager Bobby Irizarry less than his purported salary during at least 60% of his workweeks**. (Neilan Dec. Ex. UU (Berkman Report) at**

Table 4, Column 3.)

114.    Gristede's paid Co-Manager Ruben Mora less than his purported salary during at least 25% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

115.    Gristede's paid Co-Manager Gilberto Santiago less than his purported salary during at least 3% of his workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

116.    Gristede's paid Co-Manager Carlos Torres less than his purported salary during at least 3% of his workweeks**.  (Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

117.    Gristede's paid all Co-Managers other than Chewning, Croker, Deleon, Helwig, Irizarry, Mora, Santiago, and Torres less than their purported salaries during at least 20% of all their workweeks.  **(Neilan Dec. Ex. UU (Berkman Report) at Table 4, Column 3.)**

118.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶¶ 24, 34(a); Neilan Dec. Ex. UU (Berkman Report) ¶¶ 16, 18, 19; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5; Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8; Neilan Dec. Ex. X (Clusan Dep.) at 343:22-344:2.)**

119.    From June 1999 to April 2005, most Co-Managers were given paychecks for less than their purported salaries due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶¶ 24, 34(a).)**

120.    From June 1999 to April 2005, Gristede's paid Co-Managers less than

their purported salaries at least 2,059 times due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 24; Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 3; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:15; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5.)**

121.    From June 1999 to April 2005, Gristede's paid 71% of all Co-Managers less than their purported salaries due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 24.)**

122.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries due to partial day absences in 90% of all stores.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 24.)**

123.    From June 1999 to April 2005, Gristede's paid Co-Managers less than their purported salaries due to partial day absences in 92% of all workweeks due to partial day absences.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 24.)**

124.    In May 2002, Gristede's paid Raul Chavez, a Co-Manager earning $10 per hour, only $480 instead of his purported salary of $500 because he had only worked 48 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 483:24-484:22; Neilan Dec. Ex. MMM (Sample Payroll Records of Raul Chavez).)**

125.    In May 2000, Gristede's paid Marcio Navarro, a Co-Manager earning $13 per hour, only $507 instead of his purported salary of $650 because he had worked only 39 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 350:14-19; Neilan Dec. Ex. SSS (Sample Payroll Records of Marcio Navarro).)**

126.    Later in May 2000, Gristede's paid Mr. Navarro only $468 instead of his purported salary of $650 because he had worked only 36 hours that week.  **(Neilan Dec.**

**Ex. X (Clusan Dep.) at 350:20-25; Neilan Dec. Ex. SSS (Sample Payroll Records of Marcio Navarro).)**

127.    In June 2000, Gristede's paid Mr. Navarro only $494 instead of his purported salary of $650 because he had worked only 38 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 351:2-6; Neilan Dec. Ex. SSS (Sample Payroll Records of Marcio Navarro).)**

128.    In July 2000, Gristede's paid Mr. Navarro only $468 instead of his purported salary of $650 because he had worked only 36 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 351:7-11; Neilan Dec. Ex. SSS (Sample Payroll Records of Marcio Navarro).)**

129.    In July 2003, Gristede's paid John F. White, Jr., a Co-Manager earning $15 per hour, only $626 instead of his purported salary of $750 because he had worked only 38 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 352:8-21; Neilan Dec. Ex. UUU (Sample Payroll Records of John F. White, Jr.).)**

130.    In July 2001, Gristede's paid Francisco Aybar, a Co-Manager earning $16 per hour, only $608 instead of his purported salary of $800 because he had worked only 38 hours that week. **(Neilan Dec. Ex. X (Clusan Dep.) at 448:10-449:2; Neilan Dec. Ex. JJJ (Sample Payroll Records of Francisco Aybar).)**

131.    In November 2004, Gristede's paid Michael Cella, a Co-Manager earning $12 per hour, only $459 instead of his purported salary of $600 because he had worked only 38.25 hours that week.  **(Neilan Dec. Ex. X (Clusan Dep.) at 466:5-467:6; Neilan Dec. Ex. LLL (Sample Payroll Records of Michael Cella).)**

132.    In December 2002, Gristede's paid Frederick D., a Co-Manager earning

$11 per hour, only $475.31 instead of his purported salary of $550 because he had worked only 43.21 hours that week.  (**Neilan Dec. Ex. X (Clusan Dep.) at 493:14-494:5; Neilan Dec. Ex. OOO (Sample Payroll Records of Frederick Dixon).**)

**_It Was Gristede's Policy to Pay Class Members' Less Than Their Purported Salaries Due to Partial Day Absences._**

133.    During the class period, it was Gristede's policy to pay Class Members less than their purported salaries due to partial day absences.  (**Neilan Dec. Ex. X (Clusan Dep.) at 342:13-19, 343:8-344:2, 503:12-25**.)

134.    During the class period, Gristede's did not pay Co-Managers their purported salaries for a workweek if they did not work close to their scheduled hours for that workweek.  (**Neilan Dec. Ex. TT (Schneider Report) ¶¶ 24, 34(a); Neilan Dec. Ex. UU (Berkman Report) ¶¶ 16, 18, 19; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:11; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5; Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8; Neilan Dec. Ex. X (Clusan Dep.) at 343:22-344:2, 352:8-21, 448:10-449:2, 466:5-467:6, 483:24-484:22, 493:14-494:5; Neilan Dec. Ex. BB (DeLeon Dep.) at 48:12-24, 49:15-50:8, 66:23-67:5; Neilan Dec. Ex. DD (Helwig Dep.) at 88:8-22; Neilan Dec. Ex. OO (Santiago Dep.) at 102:5-12.**)

135.    Gristede's policy regarding partial day absences applied to all Class Members.  (**Neilan Dec. Ex. X (Clusan Dep.) at 343:22-344:2**.)

136.    Ms. Clusan testified that Gristede's policy regarding partial day absences "applies to all management people.  If they are not putting in the hours close to the hours they are expected to work for that minimum salary, they are not going to continuously get paid that minimum salary."  (**Neilan Dec. Ex. X (Clusan Dep.) at 343:22-344:2**.)

137.    Ms. Clusan testified as follows:

Q:     Are co-managers and night managers guaranteed a weekly
        minimum salary?

MR. NASH:  Objection.

A:     They are put in the system for a 50-hour salary.  They are expected
        to work close to, if not at least the 50 hours to get that salary.

**(Neilan Dec. Ex. X (Clusan Dep.) at 342:13-19.)**

138.   Ms. Clusan testified as follows:

Q:     Actually, I want to know whether they are guaranteed a weekly
        minimum salary.

A:     I don't know what you mean by 'guaranteed.'  They are supposed
        to work at least 50 hours to obtain that minimum salary.

Q:     So what if they don't work 50 hours?

A.     Well, if it's within reason and it's an hour one way or the other,
        they'll still get their 50 hours.  If they're coming in three hours late
        every day, then somebody is going to dock their pay.

Q:     That goes for co-manager[s]?

A:     Yes.

Q:     Does that apply to all co-managers?

A:     It applies to all management people.  If they are not putting in the
        hours close to the hours that they are expected to work for that
        minimum salary, they are not going to continuously get paid that
        minimum salary.

**(Neilan Dec. Ex. X (Clusan Dep.) at 343:8-344:2.)**

139.   Ms. Clusan testified as follows:

A:     I said they would get paid for a half of a sick day or a half of a
        personal day or a half of a vacation day, unless they have no time
        left.

Q:     And then what would happen?

A:     Then they wouldn't get paid.

Q:     For the half day that they missed?

A:     Correct.

Q:     And that goes for co-managers, store managers –

A:     Salaried employees.

Q:     Which includes co-managers and store managers?

A:     Correct.

**(Neilan Dec. Ex. X (Clusan Dep.) at 503:12-25.)**

140.   Mr. Lang testified as follows:

Q:    Is there anything on this document that would indicate to you whether or not George Sierra was paid on an hourly basis or a salary basis?

A:    The only thing is because he's got a .71 in the overtime columns.

Q:    What does that indicate to you?

A:    That he worked more than 40 hours.  He worked almost three-quarters of an hour overtime.

Q:    Does that indicate to that you he was an hourly worker?

A:    It's possible, yes.

Q:    What do you mean it's possible?

MR. NASH:  Objection.

Q:    Was it possible that he wouldn't be an hourly worker if it says .71 under overtime?

A:    Like I said, I don't recall the gentleman so, you know.

Q:    But I'm just asking you to look at this document.  Is there anything on this document that tells you whether somebody is an hourly worker?

A:    I would say he would be -- he was an hourly.

Q:    Because it says .71 under overtime?

A:    Yes.

Q:    It doesn't make any sense for somebody who gets paid on a salary to have something like .71 or an uneven number like that, right?

A:    Uh-hum.

Q:    Is that a right?

A:    Yes.

            *     *     *

Q:    But it's not possible for salaried employees to have an odd number like .71 or 32 or something like that?

A:    No, no, no.

Q:    Because that wouldn't be a salary?

A:    Correct.

Q:    So if a person who is listed in department 65 has a number that's not a nice even number like 50 or 30, but something like 32 or 40.71, that indicates to you that it's an hourly employee, not a salaried employee, right?

A:    Yes.

**(Neilan Dec. Ex. FF (Lang Dep.) at 71:24-73:5, 76:22-77:9.)**

141.    Robert Montalvo, a store manager, testified that Gristede's did not pay

Co-Managers' their purported salaries if they worked fewer than 50 hours per week.

**(Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8.)**

**_It Was Gristede's Policy to Suspend Class Members Without Pay for Violations of_**

### *Non-Safety Rules.*

142.    During the class period, it was Gristede's policy to suspend Class Members without pay for violations of non-safety rules.  (**Neilan Dec. Ex. QQ (Squicciarini Dep.) at 79:14-80:18, 82:13-83:5, 91:14-92:20, 103:5-15.**)

143.    During the class period, it was Gristede's policy to suspend Class Members without pay for violations of security policies.  (**Neilan Dec. Ex. QQ (Squicciarini Dep.) at 79:14-80:18, 82:13-83:5, 91:14-92:20, 103:5-15.**)

144.    During the class period, Gristede's suspended Class Members without pay for violations of non-safety rules.  (**Neilan Dec. Ex. QQ (Squicciarini Dep.) at 79:14-80:18, 82:13-83:5, 91:14-92:20, 103:5-15**; **Neilan Dec. Ex. P (Rosario Aff.) ¶¶ 10-18**.)

145.    Jack Squicciarini, Vice President of Corporate Security for Gristede's, testified that there are "thousands of reasons" why Gristede's would suspend a "salaried" employee without pay.  (**Neilan Dec. Ex. QQ (Squicciarini Dep.) at 79:14-80:8.**)

146.    Mr. Squicciarini testified as follows:

> Q:    Sitting here today, do you know whether any Gristede's employees Since 1998 has ever been suspended without pay for a loss prevention issue?
> A:    Oh, yeah.
> Q:    Can you give me an example of one, not the name of the person, but the issue?
> A:    Improper safe counts, short money in the safe, improper cash control procedures, failing to properly open up a store, secure a store, thousands of reasons.
> Q:    So there are many reasons why a salaried employee will be suspended without pay, correct?
> A:    Everybody.  If they are in violation of a loss prevention policy, whether they are a union employee or nonunion employee, whatever you want to call them, they'll get suspended, yes.
> Q:    I am going to limit my questions right now to salaried employees. Okay?
> A:    Okay.

> Q:      It's true that there are a number of loss prevention issues for which
>         a salaried employee can be suspended without pay; is that right?
> A:      Any employee.
> Q.      Including salaried employees, right?
> A:      Yes.

**(Neilan Dec. Ex. QQ (Squicciarini Dep.) at 79:14-80:18.)**

147.    During the class period, it was Gristede's policy to suspend Class
Members without pay for loss prevention policies.  (**Neilan Dec. Ex. QQ (Squicciarini
Dep.) at 82:13-83:5.**)

148.    During the class period, it was Gristede's policy to suspend Class
Members without pay for employee theft.  (**Neilan Dec. Ex. QQ (Squicciarini Dep.) at
91:14-92:20, 103:13.**)

149.    During the class period, it was Gristede's policy to suspend Class
Members without pay for safe and cashier shortages.  (**Neilan Dec. Ex. QQ
(Squicciarini Dep.) at 103:12.**)

150.    During the class period, it was Gristede's policy to suspend Class
Members without pay for violations of emergency procedures.  (**Neilan Dec. Ex. QQ
(Squicciarini Dep.) at 103:13-14.**)

151.    During the class period, it was Gristede's policy to suspend Class
Members without pay for dissemination of confidential information.  (**Neilan Dec. Ex.
QQ (Squicciarini Dep.) at 103:14-15.**)

152.    During the class period, it was Gristede's policy to suspend Class
Members without pay for failure to give proper notice of jury duty.  (**Neilan Dec. Ex. P
(Rosario Aff.) ¶ 10.**)

153.    In December 2006, Gristede's suspended Class Member Hector Rosario

without pay for allegedly failing to give proper notice of his upcoming jury duty.  (**Neilan Dec. Ex. P (Rosario Aff.) ¶ 10.**)

***The Class Members Were Hourly Employees.***

154.    During the class period, Gristede's treated Department Managers as hourly employees.  (**Neilan Dec. Ex. T (Balseca Dep.) at 300:18-23; Neilan Dec. Ex. X (Clusan Dep.) at 409:13-16, 436:13-22**; **Neilan Dec. Ex. FF (Lang Dep.) at 60:13-15**, **65:8-10, 298:24-299:21**; **Neilan Dec. Ex. II (Molina Dep.) at 46:21-25**; **Neilan Dec. Ex. MM (Paliophilos Dep.) at 44:20-45:4, 45:17-19, 54:23-56:6**; **Neilan Dec. Ex. DDD (Forms C-240)**; **Neilan Dec. Ex. VVV (Sample Department Manager Payroll Records**; **Neilan Dec. Ex. A (Arocho Dec.) ¶ 1; Neilan Dec. Ex. C (Crema Dec.) ¶ 1; Neilan Dec. Ex. Y (Crema Dep.) at 27:6-23, 110:10-15**; **Neilan Dec. Ex. H (DiPreta Aff.) ¶ 1; Neilan Dec. Ex. CC (DiPreta Dep.) at 24:25-25:4; Neilan Dec. Ex. I (Familia Aff.) ¶ 7; Neilan Dec. Ex. HH (Misuraca Dep.) at 38:2-8; Neilan Dec. Ex. L (Misuraca Dec.) ¶ 1; Neilan Dec. Ex. N (Pastorino Aff.) ¶ 1; Neilan Dec. Ex. O (Phelps Aff.) ¶ 1; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 1.**)

155.    Ms. Clusan testified as follows:

> Q:    Just to be clear, department managers are hourly employees?
> MR. NASH:  Objection.
> A:    Yes, that's correct.

(**Neilan Dec. Ex. X (Clusan Dep.) at 409:13-16**.)

156.    Mr. Lang testified as follows:

> Q:    So what about department managers, are they paid hourly?
> A:    Yes.

(**Neilan Dec. Ex. FF (Lang Dep.) at 65:8-10**.)

157.    Mr. Lang also testified as follows, "Union hourly employees [i.e.,

department managers,] were paid hourly.  Nonunion employees, meaning the

management, was paid based on a salary."  (**Neilan Dec. Ex. FF (Lang Dep.) at 59:7-9**.)

158.  Mr. Lang also testified as follows:

> Q:      Department managers are hourly workers, right?
> A:      Yes, they are.
> Q:      Department managers are entitled to overtime at Gristede's for time
>            that they work in excess of 40 hours per week, right?
> MR. NASH:  Objection.
> Q:      Yes?
> A:      Yes.
> Q:      That goes for all department managers, right?
> MR. NASH:  Objection.
> A:      Yes.
> Q:      At Gristede's, right?
> A:      Yes.
> Q:      Throughout all of the stores, right?
> MR. NASH:  Objection.
> A:      Yes.
> Q:      That has been true for the entire time that you have been there?
> MR. NASH:  Objection.
> A:      Yes.

(**Neilan Dec. Ex. FF (Lang Dep.) at 298:24-299:21**.)

159.  Mr. Paliophilos testified as follows:

> Q:      Are department managers hourly employees?
> A:      Yes, they are.
> Q:      So department managers are paid on an hourly basis?
> A:      That's correct.
> Q:      They are paid for the number of hours they work?
> A:      That's correct.
> Q:      At least they are supposed to be, right?
> A:      Correct.
> Q:      So if a deli manager, for instance, works 44 hours in a week, he
>            should be paid 44 hours that week; is that right?
> A:      If he worked 44, yes.
> Q:      If he works 54, he should be paid for 54; is that right?
> A:      There is no way he can work 54 without my approval or 44
>            without my approval.
> Q:      Okay.  Well, putting your approval aside, I'm just saying that a deli
>            manager who works 44 hours in a week, gets paid for 44 hours in a
>            week; is that right?

A:    He has to, yes, that's correct.

Q:    If he works 34 hours in a week, he gets paid for all 34 hours; is that right?

A:    That's correct.

Q:    If he works -- with or without your approval, if he works 64 hours in a week, he should get paid for 64 hours; is that right?

A:    That's correct.

(**Neilan Dec. Ex. MM (Paliophilos Dep.) at 54:23-56:6**.)

160.    Mr. Molina testified as follows:

Q:    These guys are full-time hourly employees, right, the produce managers?

A:    Yes.  They are department heads.

Q:    They are full-time hourly?

A:    Yes, full-time hourly.

(**Neilan Dec. Ex. II (Molina Dep.) at 46:21-25**.)

161.    Mr. Balseca testified as follows:

Q:    At Gristede's department managers are classified as nonexempt; isn't that right?

MR. NASH:  Objection.

MR. AUFSES:  Objection. You may answer.

A:    Yes.

(**Neilan Dec. Ex. T (Balseca Dep.) at 300:18-23**.)

162.    Mr. Familia testified as follows, "Throughout my entire tenure as a store manager, all Department Managers were full-time hourly employees scheduled to work 40 hours per week plus, sometimes, in a few cases, a few hours on Sundays."  (**Neilan Dec. Ex. I (Familia Aff.) ¶ 7.**)

163.    During the class period, Gristede's treated Co-Managers as hourly employees.  (**Neilan Dec. Ex. X (Clusan Dep.) at 342:13-344:2, 352:8-21, 448:13-449:2, 502:8-504:12; (Clusan Dep.) at 466:5-467:6; Neilan Dec. Ex. LLL (Sample Payroll Records of Michael Cella); Neilan Dec. Ex. X (Clusan Dep.) at 478:10-15,**

483:24-484:22; Neilan Dec. Ex. MMM (Sample Payroll Records of Raul Chavez); Neilan Dec. Ex. X (Clusan Dep.) at 492:6-8, 493:14-494:10; Neilan Dec. Ex. OOO (Sample Payroll Records of Frederick Dixon); Neilan Dec. Ex. FF (Lang Dep.) at 71:24-73:5, 76:22-77:9; Neilan Dec. Ex. KK (Montalvo Dep.) at 139:22-140:8; Neilan Dec. Ex. TT (Schneider Report) ¶ 22; (Neilan Dec. Ex. UU (Berkman Report) ¶ 5(c), and Table 4, Column 3; Neilan Dec. Ex. U (Berkman Dep.) at 54:2-57:11; Neilan Dec. Ex. VV (Schneider Rebuttal) ¶¶ 4-5; Neilan Dec. Ex. BB (DeLeon Dep.) at 48:12-24, 49:15-50:8, 66:23-67:5; Neilan Dec. Ex. DD (Helwig Dep.) at 88:8-22; Neilan Dec. Ex. J (Irizarry Aff.) ¶ 1; Neilan Dec. Ex. OO (Santiago Dep.) at 102:5-12; (Neilan Dec. Ex. DDD (Forms C-240).)

164.    Gristede's identified Co-Manager Mora and Department Managers Diaz, Pastorino, Aleman, Barreto, and Badillo as "hourly" employees on forms that it filed with the State of New York Workers' Compensation Board.  **(Neilan Dec. Ex. DDD (Forms C-240).)**

165.    In contrast, Gristede's identified Store Manager Freddy Familia as a "salaried" employee on a form that it filed with the State of New York Workers' Compensation Board.  **(Neilan Dec. Ex. DDD (Forms C-240).)**

## GRISTEDE'S COMPANY-WIDE POLICY WAS TO DELETE UNAUTHORIZED OVERTIME FROM DEPARTMENT MANAGERS' TIME RECORDS.

166.    During the class period, Gristede's did not pay Department Managers an overtime premium for all hours that they worked over 40 per week.  **(Neilan Dec. Ex. A (Arocho Dec.) ¶ 5; Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9; Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7; Neilan Dec. Ex. E (Daly Dec.) ¶ 5; Neilan Dec. Ex. C (Crema Dec.) ¶ 4; Neilan Dec. Ex. Y (Crema Dep.) at 113:23-25; Neilan Dec. Ex. H**

**(DiPreta Aff.) ¶ 4; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 3, 13 ; Neilan Dec. Ex. L (Misuraca Dec.) ¶ 4; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 5, 24; Neilan Dec. O (Phelps Aff.) ¶¶ 5, 12-18**; **Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 4, 19.)**

167.    During the class period, Department Managers worked before their scheduled shifts without being compensated.  **(Neilan Dec. Ex. C (Crema  Dec.) ¶¶ 6 10, 11; Neilan Dec. Ex. Y (Crema Dep.) at 111:19-112:12; Neilan Dec. Ex. H (DiPreta Aff.) ¶¶ 8, 9; Neilan Dec. Ex. I (Familia Aff.) ¶ 10; Neilan Dec. Ex. L (Misuraca Dec.) ¶¶ 6, 10; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 6, 7, 13, 25; Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 6, 12.)**

168.    During the class period, Department Managers worked after their scheduled shifts without being compensated.  **(Neilan Dec. Ex. C (Crema Dec.) ¶¶ 7, 8, 11**; **Neilan Dec. Ex. Y (Crema  Dep.) at 111:19-112:8**; **Neilan Dec. Ex. I (Familia Aff.) ¶ 10; Neilan Dec. Ex. L (Misuraca Dec.) ¶ 10**; **Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 8, 9, 13, 25**; **Neilan Dec. Ex. O (Phelps Aff.) ¶ 8**; **Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 6, 12.)**

169.    During the class period, Department Managers worked during their lunch breaks without being compensated.  **(Neilan Dec. Ex. I (Familia Aff.) ¶ 9; Neilan Dec. Ex. C (Crema Dec.) ¶¶ 5, 9; Neilan Dec. Ex. H (DiPreta Aff.) ¶¶ 6, 7; Neilan Dec. Ex. L (Misuraca Dec.) ¶¶ 5, 8; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 11, 26; Neilan Dec. Ex. O (Phelps Aff.) ¶¶ 6, 7; Neilan Dec. Ex. Q (Salegna Aff.)  ¶¶ 8, 9; Neilan Dec. Ex. E (Daly Dec.) ¶¶ 6, 8, 10.)**

170.    During the class period, it was Gristede's policy to not pay Department Managers an overtime premium for hours worked over 40 in a work week unless they

had received prior authorization to work the overtime (the "Unauthorized Overtime Policy").  **(Neilan Dec. Ex. X (Clusan Dep.) at 141:8-12, 178:23-179:5, 213:12-15, 225:5-7, 235:25-236:14**; **Neilan Dec. Ex. Z (Criscuolo Dep.) at 260:2-23, 262:15-19**; **Neilan Dec. Ex. FF (Lang Dep.) at 113:2-116:24**; **Neilan Dec. Ex. E (Daly Dec.) ¶ 5; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 12, 13**; **Neilan Dec. Ex. KK (Montalvo Dep.) at 25:9-17; Neilan Dec. Ex. ZZ (Loss Prevention Bulletin**); **Neilan Dec. Ex. YY (Memo to All Employees) ¶ 4; Neilan Dec. Ex. XX (Monos June 2005 E-Mail)**.**)**

171.    During the class period, Gristede's failed to pay Department Managers for overtime they worked but that had not been approved in advance ("unauthorized overtime").  **(Neilan Dec. Ex. X (Clusan Dep.) at 173:12-23, 174:11-21, 213:12-15, 225:5-7, 235:25-236:14, 242:5-14**; **Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9; Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12, 73:24-74:3, 74:16-20**; **Neilan Dec. Ex. MM (Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9, 45:3-46:3; Neilan Dec. Ex. A (Arocho Aff.) ¶¶ 12-19**; **Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7**; **Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9**; **Neilan Dec. Ex. Y (Crema Dep.) at 113:23-25**; **Neilan Dec. Ex. H (DiPreta Aff.) ¶ 10**; **Neilan Dec. Ex. I (Familia Aff.) ¶¶ 12-19; Neilan Dec. Ex. DD (Helwig Dep.) at 73:4-19, 63:22-64:14; Neilan Dec. Ex. L (Misuraca Dec.) ¶¶ 8, 9;  Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 17-24; Neilan Dec. Ex. O (Phelps Aff.) ¶¶ 10-13; Neilan Dec. Ex. Q (Salegna Aff.) ¶ 13-17.)**

172.    Ms. Clusan testified as follows:

> Q:     Does Gristede's have any policies or procedures with respect to unauthorized overtime?
>
> A:     If somebody works unauthorized overtime, they won't be paid for it.

**(Neilan Dec. Ex. X (Clusan Dep.) at 141:8-12.)**

173.    Ms. Clusan also testified as follows:

> A:     People are going to be paid for what they work, as long as they were scheduled to work those hours.
>
> Q:     If they were not scheduled to work those hours, then they are not going to be paid for it?
>
> A:     Correct.

**(Neilan Dec. Ex. X (Clusan Dep.) at 178:23-179:5.)**

174.    Ms. Clusan also testified as follows:

> Q.     But what if you work more than the schedule?
>
> A:     If it's unauthorized, then they are not going to be compensated for that.

**(Neilan Dec. Ex. X (Clusan Dep.) at 213:12-15.)**

175.    Ms. Clusan also testified as follows:

> Q.     I think you also testified that sometimes overtime is unauthorized but employees work it anyway.
>
> A:     If the employee decides to just stay in the store and stay on the clock when it's not authorized and the manager didn't tell them there is more work to be done, then it's unauthorized, and they wouldn't be paid for it.
>
> Q.     Even if they're actually working?
>
> A:     If they are doing it on their own and they weren't authorized to do so, then they are working outside of their schedule and they are not authorized, and they are not going to get paid for it.

**(Neilan Dec. Ex. X (Clusan Dep.) at 235:25-236:14.)**

176.    Mr. Lang confirmed that Gristede's company policy prohibited

compensation for overtime hours that were not pre-approved when he testified as follows:

> Q:     So if it's unauthorized, if overtime is unauthorized, the policy is that it's not paid, right?

> A:      Yes.
> Q:      If the overtime is authorized, what's the policy?
> A:      Gets paid.

**(Neilan Dec. Ex. FF (Lang Dep.) at 115:3-9.)**

177.    Victor Phelps' paycheck almost never reflected the time that he actually worked during his "lunch break" and after his shift.  **(Neilan Dec. Ex. O (Phelps Aff.) ¶ 10.)**

178.    Even though Mr. Phelps' scheduled shift started at 8:00 a.m. everyday and even though he usually did not complete his work until about 5:30 p.m., his time records reflected a clock-in time of exactly 9:00 a.m. and clock-out time of exactly 5:00 p.m. every day during that time period.  **(Neilan Dec. Ex. O (Phelps Aff.) ¶ 13.)**

179.    Daniel Salegna's paycheck almost never reflected the time that he actually worked.  **(Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 13-17.)**

180.    On October 21, 2002, Mr. Salegna's daily total was "8.00" hours even though his clock-in time is 6:35 a.m. and his clock-out time was 4:17 p.m. -- a total of 9 hours and 42 minutes. **(Neilan Dec. Ex. Q (Salegna Aff.) ¶ 17.)**

181.    During the weeks of January 27, 2003 and February 1, 2003, Gristede's records indicate that Mr. Salegna worked exactly 8 hours each day.  **(Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 14, 15.)**

182.    On January 28, 2003, the time records state that Mr. Salegna worked from 6:19 a.m. to 12:19 a.m. and again from 1:22 p.m. to 3:22 p.m. with a supposed 63-minute lunch break – a total of exactly 8 hours that day.  **(Neilan Dec. Ex. Q (Salegna Aff.) ¶ 16.)**

183.    As Mr. Salegna noted, it is "very unlikely that [his] clock-in and clock-out

times were exactly eight hours apart." **(Neilan Dec. Ex. Q (Salegna Aff.) ¶ 15.)**

184.    During the class period, it was Gristede's policy to delete from the time records in the timekeeping system unauthorized overtime that Department Managers had worked.  (**Neilan Dec. Ex. X (Clusan Dep.) at 141:8-12, 178:23-179:5, 213:12-15, 225:5-7, 235:25-236:14; Neilan Dec. Ex. Z (Criscuolo Dep.) at 260:2-23, 262:15-19; Neilan Dec. Ex. FF (Lang Dep.) at 113:2-116:24; Neilan Dec. Ex. E (Daly Dec.) ¶ 5; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 12, 13**; **Neilan Dec. Ex. KK (Montalvo Dep.) at 25:9-17; Neilan Dec. Ex. ZZ (Loss Prevention Bulletin); Neilan Dec. Ex. YY (Memo to All Employees) ¶ 4; Neilan Dec. Ex. XX (Monos June 2005 E-Mail)**.)

185.    During the class period, Gristede's deleted from the time records in the timekeeping system unauthorized overtime that Department Managers had worked. (**Neilan Dec. Ex. X (Clusan Dep.) at 173:12-174:23, 213:12-15, 225:5-7, 235:25-236:14**; **Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9**; **Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12**, **73:24-74:3**, **74:16-20**; (**Neilan Dec. Ex. MM (Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12; Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9**, **45:3-46:3**; **Neilan Dec. Ex. A (Arocho Dec.) ¶ 5; Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7**; **Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9**; **Neilan Dec. Ex. C (Crema Dec.) ¶ 4**; **Neilan Dec. Ex. Y (Crema Dep.) at 113:23-25; Neilan Dec. Ex. E (Daly Dec.) ¶ 5; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 4**; **Neilan Dec. Ex. I (Familia Aff.) ¶¶ 3, 13; Neilan Dec. Ex. L (Misuraca Dec.) ¶ 4; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 5, 24;  Neilan Dec. Ex. O (Phelps Aff.) ¶¶ 5, 12-**

**18**; **Neilan Dec. Ex. Q (Salegna Aff.) ¶¶ 4, 13, 19.)**

186.    At virtually every stage of the payroll process, Gristede's directed, encouraged, and permitted store managers and Upper Management to delete overtime hours from time records.  **(Neilan Dec. Ex. X (Clusan Dep.) at 107:6-21, 132:19-133:18, 137:9-25, 173:12-174:18, 178:2-179:10; Neilan Dec. Ex. Z (Criscuolo Dep.) at 260:19-23, 260:2-5, 262:15-19; Neilan Dec. Ex. FF (Lang Dep.) at 113:2-116:24, 134:2-11; Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12, 73:24-74:3, 74:16-20; Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. MM (Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12; Neilan Dec. Ex. WW (Monos June 2003 Email); Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7; Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9; Neilan Dec. Ex. E (Daly Dec.) ¶¶ 4, 7, 10; Neilan Dec. Ex. AA (Daly Dep.) at 63:4-5; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 10;** Neilan Dec. Ex. I (Familia Aff.**) ¶¶ 12-18; (Neilan Dec. Ex. DD (Helwig Dep.) at 63:22-64:14, 73:4-19; Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 22, 23; Neilan Dec. Ex. XXX (Sample Edited Time Records).)**

***Store Managers Eliminated Unauthorized Overtime.***

187.    During the class period, store managers eliminated unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. X (Clusan Dep.) at 107:6-21, 132:19-133:18, 137:9-25, 173:12-174:18, 178:2-179:10; Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. MM (Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12; Neilan Dec.**

**Ex. WW (Monos June 2003 Email); Neilan Dec. Ex. B (Chewning Aff.) ¶¶ 5-7;**

**Neilan Dec. Ex. W (Chewning Dep.) at 101:16-105:9; Neilan Dec. Ex. E (Daly Dec.) ¶**

**7; Neilan Dec. Ex. AA (Daly Dep.) at 63:4-5; Neilan Dec. Ex. H (DiPreta Aff.) ¶ 10;**

**Neilan Dec. Ex. I (Familia Aff.) ¶¶ 12, 13; Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 22, 23;**

**Neilan Dec. Ex. XXX (Sample Edited Time Records)).)**

188.    During the class period, store managers eliminated unauthorized overtime
from Department Managers' time records pursuant to the Unauthorized Overtime Policy.
**(Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. MM**
**(Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-**
**139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24; Neilan Dec. Ex. PP (Sharif Dep.)**
**at 85:23-93:12; Neilan Dec. Ex. E (Daly Dec.) ¶¶ 5,7; Neilan Dec. Ex. I (Familia Aff.)**
**¶¶ 12, 13.)**

189.     Chris Paliophilos, a store manager, eliminated unauthorized overtime
from Department Managers' time records when reviewing time entries.  **(Neilan Dec. Ex.**
**MM (Paliophilos Dep.) at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23,**
**134:24-139:9, 138:21-139:11, 139:12-140:22, 141:3-142:24.)**

190.    Mr. Paliophilos' practice when reviewing time entries was to "just take the
[unauthorized] OT away."  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 80:14-21.)**

191.    Mr. Paliophilos eliminated hours from Department Managers' time
records because it was unauthorized overtime.  **(Neilan Dec. Ex. MM (Paliophilos Dep.)**
**at 68:2-7, 69:25-70:9, 77:18-25, 80-11:21, 132:4-134:23, 134:24-139:9, 138:21-139:11,**
**139:12-140:22, 141:3-142:24.)**

192.    While looking at edited time records for several Department Managers

from his store, Mr. Paliophilos testified that the hours were eliminated because of

"[u]nauthorized overtime.  That's the only reason I can think of."  **(Neilan Dec. Ex. MM**

**(Paliophilos Dep.) at 138:14-139:11.)**

193.    Mr. Paliophilos further testified as follows:

> Q:      At any time in your tenure as store manager of Store number 533,
>         did you ever edit a department manager's time records to eliminate
>         overtime that that department manager worked, for which that
>         department manager had not gotten your approval?
> A:      I don't remember.  Maybe I did if he did the overtime without my
>         approval.  I don't remember, though.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 69:25-70:9.)**

194.    Mr. Paliophilos further testified as follows:

> Q:      Other than a missed punch or inserting a lunch, what are all the
>         other possible reasons that you can think of to make edits to an
>         employee's time record?
> A:      Unauthorized overstay,
> Q:      What else?  When you say "OT," you are talking about overtime,
>         right?
> A:      That's correct.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 77:18-25.)**

195.    Mr. Paliophilos edited the July 26, 2004 time records of Department

Manager Luis Linary and reduced his total hours from 10.5 hours to 8 hours, thereby

eliminating 2.5 hours of overtime.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 132:4-**

**134:23; Neilan Dec. Ex. QQQ (Sample Payroll Records of Luis Linary).)**

196.    While looking at the July 26, 2004 time records for Mr. Linary, Mr.

Paliophilos testified as follows:

> Q:      If you follow the row next to "edit before" all the way over to the
>         column that says "regular hours," you see that before the edit, the
>         regular hours were 10.5?
> A:      I see it.
> Q:      You see that after the edit, the regular hours are 8, right?

> A.    Yes.
> Q.    Can you explain that?
> A.    It looks like to me he put unauthorized overtime.
> Q.    So then what happened?  It was erased, right?
> A.    Sorry?
> Q.    It was edited, right?
> A.    It looks like it.

> **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 133:21-134:12; Neilan Dec.
> Ex. QQQ (Sample Payroll Records of Luis Linary).)**

197.    Mr. Paliophilos edited the July 30, 2004 time records of Mr. Linary and

reduced his total hours from 4.5 to 4 hours, thereby eliminating .5 overtime hours.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 134:24-139:9, 138:21-139:11; Neilan Dec.**

**Ex. QQQ (Sample Payroll Records of Luis Linary).)**

198.    While looking at the July 30, 2004 time records for Mr. Linary, Mr.

Paliophilos testified as follows:

> Q:    Can you explain to me why a half hour was taken off of that
>        employee's time records?
> A:    Unauthorized overtime.  That's the only reason I can think of.

> **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 139:8-11; Neilan Dec. Ex.
> QQQ (Sample Payroll Records of Luis Linary).)**

199.    Mr. Paliophilos edited the August 16, 2004 time records of Mr. Linary and

reduced his total hours from 10 hours to 8 hours, thereby eliminating 2 overtime hours.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 139:12-140:22; Neilan Dec. Ex. QQQ**

**(Sample Payroll Records of Luis Linary).)**

200.    While looking at the August 16, 2004 time records for Mr.Linary, Mr.

Paliophilos testified as follows:

> Q:    How many hours was he credited for originally?
> A:    10.
> Q:    And then after the edit, the employee was -- it still shows a 7:01
>        a.m. punch in and a 4:55 p.m. punch out, right?

A:      Yes, that's what it shows.
Q:      But how many hours was that employee credited for after the edit?
A:      It shows 8 hours.
Q:      Can you explain that?
A:      I can't.
Q:      Is there any explanation you can think of?
A:      As I said before, unauthorized overtime.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 140:7-22; Neilan Dec. Ex. QQQ (Sample Payroll Records of Luis Linary).)**

201.    Mr. Paliophilos edited the time records of Mr. Linary on September 27, 2004 and reduced his total hours from 9.75 to 8 hours, thereby eliminating 1.75 overtime hours.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 141:3-142:24; Neilan Dec. Ex. QQQ (Sample Payroll Records of Luis Linary).)**

202.    While looking at the September 27, 2004 time records for Mr. Linary, Mr. Paliophilos testified as follows:

Q:      What was the punch in time before the edit?
A:      It shows 7:09.
Q:      The punch in time after the edit?
A:      7:09.
Q:      Punch out time before the edit?
A:      It shows 4:54 p.m.
Q:      Punch out time after the edit?
A:      It shows 4:54 p.m.
Q:      Regular hours before the edit?
A:      It shows 9.75.
Q:      Regular hours after the edit?
A:      8.
Q:      It has got your initials, your password next to it?
A:      That's my password.
Q:      Any reason to believe that you didn't make this edit?
A:      I'm sorry, I didn't hear you.
Q:      Do you have any reason to believe that you did not make this edit?
A:      Not to make it?
Q:      Do you have any reason to believe that it wasn't you who made this edit?
A:      No.
Q:      And so, just like the others, is the only explanation you can think of for making that edit unauthorized overtime?

A:      Correct.

**(Neilan Dec. Ex. MM (Paliophilos Dep.) at 141:20-142:24; Neilan Dec. Ex. QQQ (Sample Payroll Records of Luis Linary).)**

203.    Sam Sharif, a store manager, eliminated unauthorized overtime from Department Managers' time records when reviewing time entries.  **(Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12.)**

204.    Mr. Sharif edited the December 24, 2003 time records of Department Manager Anna Garrett and reduced her total hours from 11.5 to 8 hours, thereby eliminating 2.5 overtime hours.  **(Neilan Dec. Ex. PP (Sharif Dep.) at 85:23-93:12; Neilan Dec. Ex. PPP (Sample Payroll Records of Anna Garrett).)**

205.    While looking at the December 24, 2003 time records of Ms. Garrett, Mr. Sharif testified as follows:

> Q:      So if she is scheduled for 40 hours, and she works more than 40 hours –
> MR. NASH:  Let him answer the question.
> Q:       -- should she not get paid for that time?
> A:      Not if it was not authorized work.  Basically, the schedule is what it is.

**(Neilan Dec. Ex. PP (Sharif Dep.) at 91:10-17; Neilan Dec. Ex. PPP (Sample Payroll Records of Anna Garrett).)**

206.    While looking at the December 24, 2003 time records of Ms. Garrett, Mr. Sharif testified as follows:

> Q:      My question to you is:  Was her total amount of time here changed because she wasn't authorized to work those hours?
> A:      I don't recall if she worked those hours.  I honestly don't know.
> Q:      What are all the possible reasons for changing her time from 11.5 to 8 hours?
> MR. NASH:  Objection, speculation, no foundation.
> A:      I don't know.
> Q:      I want you to tell me what all the possible reasons are.  You just mentioned one, which is unauthorized overtime, right?

A:      Yes, it's just one of the possibilities.  Other than that, I don't know.

**(Neilan Dec. Ex. PP (Sharif Dep.) at 92:22-93:12; Neilan Dec. Ex. PPP (Sample Payroll Records of Anna Garrett).)**

207.    Robert Montalvo, a store manager, eliminated unauthorized overtime from Department Managers' time records when reviewing time entries.  **(Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22.)**

208.    Mr. Montalvo edited the November 28, 2003 time records of Department Manager Victor Phelps and reduced his total hours from over 14 hours to 6 hours, thereby eliminating over 8 hours of overtime.  **(Neilan Dec. Ex. KK (Montalvo Dep.) at 150:3-159:22; Neilan Dec. Ex. TTT (Sample Payroll Records of Victor Phelps).)**

209.    Mr. Familia was a store manager at Gristede's from approximately February 1984 to August 2005.  **(Neilan Dec. Ex. I (Familia Aff.) ¶ 2)**

210.    Mr. Familia edited employees' time records.  **(Neilan Dec. Ex. I (Familia Aff.) ¶¶ 2, 13.)**

211.    Editing employees' time records was one of Mr. Familia's managerial responsibilities.  **(Neilan Dec. Ex. I (Familia Aff.) ¶ 12.)**

212.    Mr. Familia described the practice as follows:

> Throughout my tenure, including between April 1998 and August 2005, Gristede's had a policy that Department Managers were supposed to stick to their scheduled shifts, and in order to get paid for overtime, they had to have prior authorization to work the overtime.  Because of this policy, and because of the pressure to make my numbers, during my weekly review of time records, I regularly subtracted overtime from Department Managers' time records.  I did so in order to follow Gristede's policy that Department Managers were not to be credited for working more than their scheduled 40 hours per workweek unless they had prior authorization.  I understood this to be part of my job duties as a Store Manager and consistent with Gristede's policy and practice.

**(Neilan Dec. Ex. I (Familia Aff.) ¶ 13.)**

213.    Thomas Daly was a store manager at Gristede's from July 2002 to March 2004.  **(Neilan Dec. Ex. E (Daly Dec.) ¶ 2.)**

214.    Mr. Daly edited employees' time records.  **(Neilan Dec. Ex. E (Daly Dec.) ¶ 2.)**

215.    When employees worked over 40 hours per week, Mr. Daly "sometimes cut their hours back down to forty.  They were not paid for these hours."  **(Neilan Dec. Ex. E (Daly Dec.) ¶¶ 7, 8.)**

216.    Hourly employees "would not be paid for time that they worked in excess of forty hours per week, unless the time was specifically approved in advance by upper management."  **(Neilan Dec. Ex. E (Daly Dec.) ¶ 5.)**

***Bookkeepers Eliminated Unauthorized Overtime.***

217.    During the class period, bookkeepers eliminated unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9, 44:12-46:3, 57:12-63:8, 64:7-11, 69:15-18.)**

218.    During the class period, Stacey Hilton, a bookkeeper, edited time records.  **(Neilan Dec. Ex. EE (Hilton Dep.) at 21:15-22:17, 28:22-29:6, 39:18-40:9, 44:12-46:3, 57:12-63:8, 64:7-11, 69:15-18.)**

219.    During the class period, Ms. Hilton eliminated unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9, 44:12-46:3, 57:12-63:8, 64:7-11, 69:15-18.)**

220.     During the class period, Ms. Hilton eliminated unauthorized overtime at the direction of management.  **(Neilan Dec. Ex. EE (Hilton Dep.) at 24:16-25:15,**

**39:18-40:9, 45:12-46:3, 64:7-11, 69:15-18**.)

221.     Ms. Hilton edited the October 6, 2003 time records of Department

Manager James Collins and reduced his total hours from 2.87 to 2.37 hours, thereby

eliminating .5 overtime hours.  (**Neilan Dec. Ex. EE (Hilton Dep.) at 57:12-63:8;**

**Neilan Dec. Ex. NNN (Sample Payroll Records of James Collins**).)

222.     Ms. Hilton edited the December 28, 2003 time records of Department

Manager Victor Bennett and reduced his total hours from 10.5 to 8 hours, thereby

eliminating 2.5 overtime hours.  (**Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9;**

**Neilan Dec. Ex. KKK (Sample Payroll Records of Victor Bennett**).)

223.     While looking at the December 28, 2003 edited time records of Mr.

Bennett, Ms. Hilton testified as follows:

> Q:     So do you see that the time was edited from a total of 10.5 regular
>          hours to a total of 8 hours?
> A:     Yes.
> Q:     Do you know why you edited that time?
> A:     Because he was unauthorized to work.
> Q:     So you edited that time because it was an unauthorized -- the
>          employee was not authorized to work?
> A:     Yes.
> Q:     And how did you know that the employee was not authorized to
>          work?
> A:     I asked management.
> Q:     What did management say?
> A:     He was authorized to work his 8 hours.

> (**Neilan Dec. Ex. EE (Hilton Dep.) at 39:18-40:9.**)

224.     Ms. Hilton further testified as follows:

> Q:     Okay.  So you told me a few minutes ago that management told
>          you regarding Victor Bennett that he was not authorized to work;
>          is that right?
> MR. NASH:    Objection, mischaracterizes the testimony. Give your
>          answer that you testified to.
> MS. NEILAN:  Objection.  Don't instruct the witness.  The witness will

answer the question.

Q:      Do you understand my question?

MR. NASH:  What is the question?

Q:      Do you understand my question?

A:      Yes, I do.

Q:      Can you respond to it?

A:      Okay.  You said the question is on Victor Bennett, right?  He
        punched -- he has 10 and a half hours here.  It was edited to 8
        hours.  How do I know he worked normal?  How do I know -- why
        did I adjust his hours to 8 hours?  I asked management, and it was
        not authorized for him to work the 10 and a half hours, so he was
        paid his 8 hours.

Q:      Who in management told you that?

A:      Who in management told me that?  The manager that was on duty
        at that time.

Q:      Do you know who that is?  Was it Mr. Holod?  Well, let me ask
        you this:  Was it one of the store managers you listed before?

A:      Was it Mr. Holod?  No.  Was it one of the managers before?  Yes.

Q:      Just to be clear, one of the store managers told you to change Mr.
        Bennett's time from 10 and a half hours to 8 hours because he  was
        not authorized to work; is that correct?

 MR. NASH:  Objection, mischaracterizes the testimony.

A:      Yes.

**(Neilan Dec. Ex. EE (Hilton Dep.) at 44:12-46:3**.)

225.    Ms. Hilton further testified as follows:

Q:      The store managers told you to deduct time for hours that full-
        timers worked that wasn't authorized; is that correct?

A:      Yes.

**(Neilan Dec. Ex. EE (Hilton Dep.) at 64:7-11**.)

226.    Ms. Hilton further testified as follows:

Q:      When the store managers tell you to make edits to time records,
        you make them, right?

A:      Yes.

**(Neilan Dec. Ex. EE (Hilton Dep.) at 69:15-18**.)

227.     Ms. Hilton further testified as follows:

Q:      Does the store manager ever ask questions if, for example, a full-
        timer has 43 hours in total?

      MR. NASH:  Objection, no foundation, speculative.
A:     If he -- if a full-time employee has 43 hours, and it was on the time sheet, most likely, you know, the manager knew that he worked overtime.
Q:     So it was authorized?
A.     Yes.
Q:     What if it wasn't authorized?
MR. NASH:  Objection.
A:     If it wasn't authorized, he would be paid for his 40 hours.

**(Neilan Dec. Ex. EE (Hilton Dep.) at 71:4-18.**)

228.    Ms. Hilton further testified as follows:

A:     Let me ask you this then:  Looking at these time entries, if you didn't make the change because somebody missed a punch, if you didn't make the change because somebody didn't take a lunch break, then you probably made the change because the person worked unauthorized overtime.  Is that a fair statement?
MR. NASH:  Objection, mischaracterizes the testimony.
Q:     You can answer.
MR. NASH:   If you have something that you want to show the witness, I suggest you show her.
Q:     You can answer.
A:     Yes.

**(Neilan Dec. Ex. EE (Hilton Dep.) at 62:18-63:8**.)

### *Upper Management and the Payroll Department Eliminated Unauthorized Overtime.*

229.    During the class period, Gristede's Payroll Department eliminated unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. X (Clusan Dep.) at 173:12-23, 174:11-21; Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9; Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12, 73:24-74:3, 74:16-20; Neilan Dec. Ex. XX (Monos June 2005 E-Mail); Neilan Dec. Ex. E (Daly Dec.) ¶¶ 4,7, 10; Neilan Dec. Ex. I (Familia Aff.) ¶¶ 14-19; Neilan Dec. Ex. DD (Helwig Dep.) at 73:4-19, 63:22-64:14.)**

230.    During the class period, Denise Washington, Payroll Manager, edited

Department Managers' time records.  **(Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20, 72:11-73:12, 73:24-74:3, 121:17-122:11, 163:11-164:7.)**

231.    During the class period, Ms. Washington eliminated hours from Department Managers' time records.  **(Neilan Dec. Ex. SS (Washington Dep.) at 70:6-20. 72:11-73:12, 73:24-74:34.)**

232.    During the class period, Ms. Washington eliminated hours from Department Managers' time records at the direction of management.  **(Neilan Dec. Ex. SS (Washington Dep.) at 72:11-73:12, 73:24-74:3.)**

233.    During the class period, Mr. Monos told Ms. Washington to eliminate unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. SS (Washington Dep.) at 72:24-73:3.)**

234.    During the class period, Mr. Balseca told Ms. Washington to eliminate unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. SS (Washington Dep.) at 73:4-12.)**

235.    During the class period, Department Supervisor Eddie Selber told Ms. Washington to eliminate unauthorized overtime from Department Managers' time records.  **(Neilan Dec. Ex. SS (Washington Dep.) at 73:24-743.)**

236.    During the class period, Mr. Lang told the Payroll Department to eliminate unauthorized overtime from Department Managers' time records hours after he reviewed time records of the hours worked at the stores in his district.  **(Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9.)**

237.    Mr. Lang did not have personal knowledge that the time he instructed the Payroll Department to delete had not actually been worked.  **(Neilan Dec. Ex. FF (Lang**

**Dep.) at 145:14-146:6, 149:23-150:24.)**

238.    Mr. Lang did not have any way of verifying whether the time he instructed

the Payroll Department to delete had not actually been worked.  **(Neilan Dec. Ex. FF**

**(Lang Dep.) at 145:14-146:6, 149:23-150:24.)**

239.    Mr. Lang testified as follows:

> Q:    Have you ever instructed anyone in the payroll department to
>         eliminate overtime from an employee's time or pay records?
> A:    If it was unauthorized.  Like we said earlier, if they forgot to punch
>         for lunch or something like that.
> Q:    Yes, you have?
> A:    On occasion, not much.  Like I said, I didn't go through much of
>         the department managers and stuff like that so.

**(Neilan Dec. Ex. FF (Lang Dep.) at 134:2-9.)**

*__Gristede's Payroll Records Demonstrate That It Deducted Unauthorized Overtime.__*

240.    From February 2000 until April 2005, Gristede's eliminated Department

Managers' overtime hours and failed to compensate them in at least 8,870 workweeks.

**(Neilan Dec. Ex. TT (Schneider Report) ¶¶ 29-32, 34(c); Neilan Dec. Ex. UU**

**(Berkman Report) ¶ 27.)**

241.    From February 2000 until April 2005, Gristede's eliminated at least 5,449

hours worked by Department Managers.  **(Neilan Dec. Ex. TT (Schneider Report) ¶¶**

**29-32, 34(c); Neilan Dec. Ex. UU (Berkman Report) ¶ 27.)**

242.    From February 2000 until April 2005, Gristede's edited Department

Managers' time records in 79% of the workweeks.  **(Neilan Dec. Ex. TT (Schneider**

**Report) ¶ 30.)**

243.    From February 2000 until April 2005, changes to 78% of the 17,552

edited workweek time records resulted in an overall loss of hours.  **(Neilan Dec. Ex. TT**

**(Schneider Report ¶ 30.)**

244.     From February 2000 until April 2005, the total net loss of hours was 42,175 hours (approximately 3.4 hours per workweek per Department Manager over a five-year period).  **(Neilan Dec. Ex. TT (Schneider Report ¶ 31.)**

245.     From February 2000 until April 2005, Gristede's edits of Department Managers' time records translated into lost overtime hours for 91% of all Department Managers.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 31.)**

246.     From February 2000 until April 2005, Gristede's edits of Department Managers' time records translated into lost overtime hours in 94% of stores covered. **(Neilan Dec. Ex. TT (Schneider Report) ¶ 31.)**

247.     From February 2000 until April 2005, Gristede's edits of Department Managers' time records translated into lost overtime hours in 97 percent of workweeks covered.  **(Neilan Dec. Ex. TT (Schneider Report) ¶ 31.)**

**Gristede's did not Maintain Accurate Records.**

248.     Gristede's did not maintain and preserve any Class Members' time records from April 30, 1998 through December 31, 1999.  **(Neilan Dec. Ex. GGGG (Defendants' Responses and Objections to Plaintiffs' First Set of Document Requests) Nos. 1, 3, 4**.)

249.     In response to Plaintiffs' document request that covered the entire class period, Gristede's only produced time records for the period beginning on January 1, 2000.  **(Neilan Dec. ¶ 15; Neilan Dec. Ex. GGGG (Defendants' Responses and Objections to Plaintiffs' First Set of Document Requests) Nos. 1, 3.)**

250.     During the class period, Gristede's failed to maintain accurate records of

the hours worked by Co-Managers.  **(Neilan Dec. Ex. X (Clusan Dep.) at 356:3-24; Neilan Dec. Ex. RR (Torres Dep.) at 92:13-25; Neilan Dec. Ex. LL (Mora Dep.) at 166:19-167:10; Neilan Dec. Ex. RRR (Sample Payroll Records of Ruben Mora); Neilan Dec. Ex. J (Irizarry Aff.) ¶ 21.)**

251.    During the class period, Gristede's did not ensure that Co-Managers recorded their work on the timeclock.  **(Neilan Dec. Ex. X (Clusan Dep.) at 356:3-24; Neilan Dec. Ex. RR (Torres Dep.) at 92:13-25; Neilan Dec. Ex. LL (Mora Dep.) at 166:19-167:10; Neilan Dec. Ex. RRR (Sample Payroll Records of Ruben Mora); Neilan Dec. Ex. J (Irizarry Aff.) ¶ 21.)**

252.    Gristede's does not have accurate records of Co-Managers' actual hours worked during the class period.  **(Neilan Dec. Ex. X (Clusan Dep.) at 356:3-24; Neilan Dec. Ex. RR (Torres Dep.) 92:13-25; Neilan Dec. Ex. LL (Mora Dep.) at 166:19-167:10; Neilan Dec. Ex. RRR (Sample Payroll Records of Ruben Mora); Neilan Dec. Ex. J (Irizarry Aff.) ¶ 21.)**

253.    Ms. Clusan testified that Gristede's did not maintain records of the hours Co-Managers had actually worked:

> Q:    Are there any records of the actual hours that co-managers worked?
> A:    No.  Most of the co-managers never really punched.  Some of them did, most of them didn't.
> Q:    Can you get me copies of the records of the actual hours the co-managers worked?  Can you produce those?
> A:    I already produced whatever records I have.
> Q:    But you said these are not records of the hours they actually worked.
> A:    I don't have any records of hours that they were actually in the stores.
> Q:    Working?
> A:    I don't know.

> Q:     And Gristede's doesn't have any either.
> A:     No.
> Q:     So if I asked you to produce them, you couldn't because they don't exist?
> A:     Correct.  They're on salary.

**(Neilan Dec. Ex. X (Clusan Dep.) at 356:3-24.)**

254.    Mr. Torres did not regularly record his start time.  **(Neilan Dec. Ex. RR (Torres Dep.) at 92:13-25.)**

255.    The time records of Mr. Mora do not correspond to the actual hours that he worked.  **(Neilan Dec. Ex. LL (Mora Dep.) at 166:19-167:10; Neilan Dec. Ex. RRR (Sample Payroll Records of Ruben Mora).)**

256.     Store Manager Paliophilos did not keep time records because he relied solely on employees' scheduled work hours when doing payroll.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 97:8-19.)**

257.    Gristede's failed to record the actual hours worked by Department Managers in many instances.  **(Neilan Dec. Ex. C (Crema Dec.) ¶ 10; Neilan Dec. Ex. N (Pastorino Aff.) ¶ 17-21; Neilan Dec. Ex. O (Phelps Aff.) ¶ 13-14.)**

**GRISTEDE'S CANNOT DEMONSTRATE GOOD FAITH.**

258.    During the class period, Gristede's did not institute any Fair Labor Standards Act ("FLSA") training.  **(Neilan Dec. Ex. X (Clusan Dep.) at 38:14-17, 69:5-70:8, 71:24-72:5, 394:10-25; Neilan Dec. Ex. E (Daly Dec.) ¶ 13; Neilan Dec. Ex. Z (Criscuolo Dep.) at 171:12-172:8, 203:10-204:22; Neilan Dec. Ex. FF (Lang Dep.) at 57:13-16; Neilan Dec. Ex. GG (McCormick Dep.) at 129:20-25; Neilan Dec. Ex. MM (Paliophilos Dep.) at 98:5-7; 103:18-20; Neilan Dec. Ex. HHHH (Defendants' Responses and Objections to Plaintiffs' Fourth Set of Document Requests) Nos. 22.)**

259.     During the class period, Gristede's did not institute any New York Labor Law training.  **(Neilan Dec. Ex. X (Clusan Dep.) at 38:14-17, 69:5-70:8, 71:24-72:5, 394:10-25; Neilan Dec. Ex. E (Daly Dec.) ¶ 13; Neilan Dec. Ex. Z (Criscuolo Dep.) at 171:12-172:8, 203:10-204:22; Neilan Dec. Ex. FF (Lang Dep.) at 57:13-16; Neilan Dec. Ex. GG (McCormick Dep.) at 129:20-25; Neilan Dec. Ex. MM (Paliophilos Dep.) at 98:5-7; 103:18-20; Neilan Dec. Ex. HHHH (Defendants' Responses and Objections to Plaintiffs' Fourth Set of Document Requests) Nos. 22.)**

260.     Ms. Clusan, Gristede's Payroll Director, never had any FLSA training.  **(Neilan Dec. Ex. X (Clusan Dep.) at 38:14-17, 69:5-70:8, 71:24-72:5, 394:10-25.)**

261.     Gristede's did not conduct a high-level investigation into the complaints raised in this lawsuit.  **(Neilan Dec. Ex. Z (Criscuolo Dep.) at 173:17-174:5, 176:21-180:14; Neilan Dec. Ex. V (Catsimatides Dep.) at 303:11-19; Neilan Dec. Ex. HHHH (Defendants' Responses and Objections to Plaintiffs' Fourth Set of Document Requests) No. 29.)**

262.     Gristede's did not seek an opinion from the federal or state Department of Labor regarding whether Class Members are exempt from overtime.  **(Neilan Dec. Ex. HHHH (Defendants' Responses and Objections to Plaintiffs' Fourth Set of Document Requests) No. 27).**

263.     Gristede's did not inform its store managers and bookkeepers about the lawsuit until the day before their depositions.  **(Neilan Dec. Ex. MM (Paliophilos Dep.) at 24:24-25:9; Neilan Dec. Ex. KK (Montalvo Dep.) at 7:3-11; Neilan Dec. Ex. PP (Sharif Dep.) at 8:11-14; Neilan Dec. Ex. II (Molina Dep.) at 6:19-7:9; Neilan Dec. Ex. EE (Hilton Dep.) at 7:6-16.)**

264.     Class Members complained about Gristede's failure to pay an overtime premium for all hours worked over 40 in a week.  **(Neilan Dec. Ex. B (Chewning Aff.) ¶ 7; Neilan Dec. Ex. C (Crema Dec.) ¶ 9; Neilan Dec. Ex. J (Irizarry Aff.) ¶¶ 20, 23; Neilan Dec. Ex. N (Pastorino Aff.) ¶¶ 14-15; Neilan Dec. Ex. NN (Phelps Dep.) at 54:15-55:25; Neilan Dec. Ex. HH (Misuraca Dep.) at 16:20-17:6, 53:5-55:9, 65:10-21; Neilan Dec. Ex. Y (Crema Dep.) at 108:8-22, 124:3-9; Neilan Dec. Ex. RR (Torres Dep.) at 174:9-175:8; Neilan Dec. Ex. DD (Helwig Dep.) at 83:5-17.)**

265.     At least one supervisor contacted the Main Office regarding employee overtime complaints.  **(Neilan Dec. Ex. DD (Helwig Dep.) at 92:4-11, 93:3-94:12, 106:20-107:3.)**

## GRISTEDE'S RETALIATED AGAINST PLAINTIFFS TORRES AND CHEWNING.

266.     Gristede's filed counterclaims against Plaintiff Torres because Mr. Torres sued Gristede's for FLSA and NYLL violations.  **(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 4-5, 9; Neilan Dec. Ex. BBBB (Answer to Second Amended Complaint) ¶¶ 58-61.)**

267.     Gristede's filed counterclaims against Plaintiff Chewning because Mr. Chewning sued Gristede's for FLSA and NYLL violations.  **(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 4-5, 9; Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶¶ 65, 66.)**

268.     In Gristede's Counterclaim against Plaintiff Torres, Gristede's alleged that "contrary to the terms and conditions of his employment," Mr. Torres engaged in "improper activities and conduct."  **(Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶¶ 65, 66.)**

269. In Gristede's Answer to the Second Amended Complaint, Gristede's requested half of Mr. Torres's annual salary. **(Neilan Dec. Ex. BBBB (Answer to Second Amended Complaint) ¶ 61.)**

270. In its Counterclaim against Plaintiff Chewning, Gristede's alleged that Mr. Chewning engaged in "fraudulent conduct." **(Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶ 73.)**

271. In the Answer to the Second Amended Complaint, Gristede's requested one week of Mr. Chewning's pay for "investigation costs." **(Neilan Dec. Ex. BBBB (Answer to Second Amended Complaint) ¶ 65.)**

272. At an April 27, 2005 court conference, when Magistrate Judge Peck asked why the counterclaims were "surfacing for the first time now," Gristede's counsel, Kevin Nash, replied, "[b]ecause the answer was served -- this is the first pleading with the time to counterclaim." **(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 5.)**

273. At the April 27, 2005 court conference, when Magistrate Judge Peck observed that the counterclaims seemed to be made for the purpose of "sending a message to people as to opt-in issues, to say hey, you opt in and we will investigate you and bring retaliation claims against you," Mr. Nash replied, "I think it is a fair comment and I thought about it before I filed the counterclaims." **(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 4**.)

274. At the April 27, 2005 court conference, Mr. Nash admitted that Gristede's countersued Plaintiffs Torres and Chewning because they had sued Gristede's. **(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 9.)**

275. At the April 27, 2005 court conference, Mr. Nash stated the following:

> THE COURT:  Tell me why for the period between
> February 2003 and middle of '04 when the original
> complaint was [filed] no action was taken against him and
> now all of a sudden in April '05 all of a sudden you are
> deciding a week's worth of his salary, and now you are
> telling me maybe it is two or three days of salary, is worth
> bringing a counterclaim on, which will result in collateral
> litigation in this court having nothing to do with overtime
> policies?
>
> MR. NASH:  The flip side of that, he becomes a plaintiff in
> a lawsuit, never complains about any issues after he leaves
> and abandoned his employment.  He elects to become a
> plaintiff in a lawsuit.  I believe I have counterclaim issues
> here and I brought it.

**(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 9.)**

276.    After Magistrate Judge Peck scolded Gristede's counsel, Gristede's

amended the Counterclaims to request different but equally unsubstantiated amounts.

**(Neilan Dec. Ex. III (Transcript dated 4/27/05) at 3, 4; Neilan Dec. Ex. DDDD**

**(Answer to Third Amended Complaint) ¶¶ 70, 77.)**

277.    In Gristede's Answer to the Third Amended Complaint, Gristede's

requested $13,848.91 from Mr. Torres.  **(Neilan Dec. Ex. DDDD (Answer to Third**

**Amended Complaint) ¶¶ 68, 70.)**

278.    Gristede's requested $13,848.91 for costs incurred during a purported

"internal investigation" of Mr. Torres's on-the-job conduct and in defending his

unemployment insurance claim.  **(Neilan Dec. Ex. DDDD (Answer to Third Amended**

**Complaint) ¶¶ 66-68.)**

279.    In Gristede's Answer to the Third Amended Complaint, Grisetde's

requested $2,000.00 from Mr. Chewning.  **(Neilan Dec. Ex. DDDD (Answer to Third**

**Amended Complaint) ¶¶ 75-77.)**

280.     At the April 27, 2005 court conference, Magistrate Judge Peck stated, "Do I think this is somewhat retaliatory on the defendant?  Yeah, I agree[.]").  (**Neilan Dec. Ex. III (Transcript of dated 4/27/05 at 4, 16.)**