UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
CARLOS TORRES, RUBEN MORA,
BOBBY IRIZARRY, LEWIS CHEWNING,                    No. 04 CV 3316 (PAC)(AJP)
GILBERTO SANTIAGO,
WILLIAM HELWIG, ROBERT MISURACA,
JOSEPH CREMA, MARIO DIPRETA,
VICTOR PHELPS, JOSELITO AROCHO,
ALFRED CROKER, DANIEL SALEGNA,
FRANK DELEON, and ROBERT PASTORINO,
on behalf of themselves and all other similarly situated,

                                        Plaintiffs,

                -against-

GRISTEDE'S OPERATING CORP., NAMDOR, INC.,
GRISTEDE'S FOODS, INC., CITY PRODUCE
OPERATING CORP., GRISTEDE'S FOODS NY, INC.,
JOHN CATSIMATIDIS, JAMES MONOS, and
GALO BALSECA,

                                        Defendants.
-----------------------------------------------------------------------x


## GRISTEDE'S COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE PURSUANT TO LOCAL RULE 56.1(b)

Pursuant to Local Rule 56.1(b), Gristede's, by its attorneys, Finkel

Goldstein Rosenbloom & Nash, LLP, hereby submits the following counter-

statement of material facts in dispute or clarifications, in response to plaintiffs'

statement of purported undisputed facts ("SOF"):

1.      Gristede's clarifies the contentions in ¶ 1 of the SOF as

follows: Martin Succart is not a named plaintiff and is not a proper class

representative.

(See Answers of corporate defendants and individual defendants to Third Amended Complaint - Appendix Exhibit "1".)

      2.     Gristede's clarifies the contentions in ¶ 2 of the SOF as follows: Alfred Croker and Ruben Mora were night managers.
(Nash Dec. ¶¶ 46, 47).

      3.     Gristede's clarifies the contentions in ¶ 3 of the SOF as follows: Namdor Inc is the current operating company for Gristede's supermarkets. The stock of Namdor Inc. is currently owned by Gristede's Foods, Inc.
(See Answers of corporate defendants and individual defendants to Third Amended Complaint - Appendix Exhibit "1".)

      4.     Gristede's clarifies the contentions in ¶ 4 of the SOF as follows: Gristede's corporate offices are located at 823 Eleventh Avenue, New York, New York.  Day-to-day operating decisions were generally made at the store level under the supervision of the two district managers.  For much of the class period, district managers reported to Galo Balseca as vice president of supermarket operations.
(Clusan Dec. ¶ 6).

      5.     Gristede's clarifies the contentions in ¶ 5 of the SOF as follows: Gristede's weekly payroll is processed at the corporate offices at 823 Eleventh Avenue – but individual time entries and punches are reviewed and adjusted at the store level by the respective store managers and then forwarded to the main office.  (Clusan Dec. ¶ 16).

2

6.      Gristede's disputes the contentions in ¶ 6 of the SOF as follows:  The individual supermarkets constitute separate economic units and are managed by store managers, co-managers and department managers under the supervision of various district managers and department supervisors.

(Clusan Dec. ¶¶ 5-6).

7.-8.   Gristede's clarifies the contentions in ¶¶ 7-8 of the SOF as follows: John Catsimatidis is the sole shareholder and chairman of the corporate parent of Gristede's Foods, Inc.

(Nash Dec. footnote no. 1).

9.      Gristede's clarifies the contentions in ¶ 9 of the SOF as follows:  Galo Balseca was employed by Namdor, Inc. and served as vice-president of supermarket operations beginning in April of 2000 through at least the end of the class period.

(Clusan Dec. ¶ 6).

10.     Gristede's clarifies the contentions in ¶ 10 of the SOF as follows: James Monos was employed by Namdor, Inc. as a district manager from 10/23/2000 to present.

(Clusan Dec. ¶ 6).

11.     Gristede's clarifies the contentions in ¶ 11 of the SOF as follows:  Chris Lang was employed by Namdor, Inc. as a district manager from 4/24/2000 to present.

(Clusan Dec. ¶ 6).

3

12.    Gristede's clarifies the contentions in ¶ 12 of the SOF as follows:  Deborah Clusan currently serves as the head of Human Resources for Namdor, Inc.  As part of her duties, she also oversees the payroll department for Gristede's.

(Clusan Dec. ¶¶ 1-2).

13.    Gristede's clarifies the contentions in ¶ 13 of the SOF as follows:  The class period covers April 30, 1998 to April 30, 2004 during which time Department Managers were scheduled for a regular work week of 40 hours in accordance with existing collective bargaining agreements.

(See Plaintiffs' third amended complaint – ECF No. 115; Appendix Exhibits "2", "3" and "4".

14.    Gristede's disputes the contentions in ¶ 14 of the SOF to the extent it suggests Department Managers were not compensated for worked performed in excess of 40 hours.  As union employees, Department Managers received overtime pay in accordance with existing collective bargaining agreements irrespective of their exempt status.

(Clusan Dec. ¶ 9; Nash Dec. ¶¶ 12, 13, 14, 23; Appendix Exhibits "2", "3", "4")

15.    Gristede's does not dispute the contentions in ¶ 15 of the SOF.

16.    Gristede's clarifies the contentions in ¶ 16 of the SOF as follows: All Department Managers are paid for Sunday shifts at premium rates in accordance with existing collective bargaining agreements independent of their exempt status.

4

(Clusan Dec. ¶¶ 9-10; Nash Dec. ¶¶ 12, 13, 14, 23; Appendix <u>Exhibits</u> "2", "3" and "4").

       17.    Gristede's disputes the contentions in ¶ 17 of the SOF as follows:  Department Managers received a "weekly wage" in accordance with existing collective bargaining agreements.  Because of their union affiliations, department managers were regularly eligible for overtime under their respective collective bargaining agreements for work performed in excess of 40 hours per week, eight hours per day and Sundays independent of their exempt status.  For ease of computation, Department Managers' weekly wages were converted into an hourly equivalent so overtime and Sunday pay could be computed.  Hence, Department Managers were commonly referred to as "hourly employees" in light of their union affiliations throughout Gristedes.  This manner of speaking, however, does not negate that a weekly wage should be considered a salary under FLSA.

(Clusan Dec. ¶¶ 9-10; Appendix <u>Exhibits</u> "2", "3", and "4").

       18.    Gristede's does not dispute the contentions in ¶ 18 of the SOF.

       19.    Gristede's clarifies the contentions in ¶ 19 of the SOF as follows:  Under superceding collective bargaining agreements and independent of their exempt status, department managers are eligible for various types of overtime pay for hours worked over 40 per week, eight hours per day, and Sundays.

(<u>See</u> Appendix <u>Exhibits</u> "2", "3" and "4").

5

20.    Gristede's clarifies the contentions in ¶ 20 of the SOF as follows:  Gristede's paid overtime to department managers for hours worked in excess of 40 hours per week based upon existing collective bargaining agreements independent of their exempt status.

(Clusan ¶¶ 9-10; Nash Dec. ¶ 23; Collective Bargaining Agreements – Appendix Exhibits "2", "3" and "4"; Berkman Report – Appendix Exhibit "5").

21.    Gristede's disputes the contentions in ¶ 21 of the SOF as follows:  Department Managers were not manual laborers.

(Clusan ¶ 9; Nash Dec. ¶¶ 48-52;  Depositions of Phelps, Crema and DiPreta - Appendix Exhibits "27", "28" and "29").

22.    Gristede's disputes the contentions in ¶ 22 of the SOF as follows:  Department Managers' main duties were managerial.

(Clusan ¶ 9; Nash Dec. ¶¶ 48-52;  Depositions of Phelps, Crema and DiPreta - Appendix Exhibits "27", "28" and "29").

23.    Gristede's disputes the contentions in ¶ 23 of the SOF as follows:  Department Managers regularly supervised more than two people.

(Nash Dec. ¶¶ 48-52; Depositions of Phelps, Crema and DiPreta – Appendix Exhibits "27", "28" and "29").

24.    Gristede's disputes the contentions in ¶ 24 of the SOF as follows:  Department Managers could recommend individuals for hire.

(Nash Dec. ¶¶ 48-52; Depositions of Phelps, Crema and DiPreta – Appendix Exhibits "27", "28" and "29").

25.     Gristede's disputes the contentions in ¶ 25 of the SOF as follows:  Department Managers had authority to discipline employees.

(Nash Dec. ¶ 50; Phelps Deposition - Appendix <u>Exhibit</u> "27"; Nash Dec. ¶ 51; Crema Deposition - Appendix <u>Exhibit</u> "28"; and Nash Dec. ¶ 52; DiPreta Deposition - Appendix <u>Exhibit</u> "29").

26.     Gristede's disputes the contentions in ¶ 26 of the SOF as follows:   Department Managers had authority to make recommendations for promotions.

(Nash Dec. ¶¶ 48-52; Depositions of Phelps, Crema and DiPreta – Appendix <u>Exhibits</u> "27", "28" and "29").

27.     Gristede's disputes the contentions in ¶ 27 of the SOF as follows: Department Managers scheduled work shifts of employees in their respective departments.

(Nash Dec. ¶ 50; Phelps Deposition - Appendix <u>Exhibit</u> "27"; Nash Dec. ¶ 51; Crema Deposition - Appendix <u>Exhibit</u> "28"; and Nash Dec. ¶ 52; DiPreta Deposition - Appendix <u>Exhibit</u> "29").

28.     Gristede's disputes the contentions in ¶ 28 of the SOF as follows:   In actuality, no one person has the authority to set the pay of non-manager supermarket employees.  The pay of full-time and part-time employees is governed by collective bargaining agreements.  (<u>See</u> Appendix <u>Exhibits</u> "2", "3" and "4").

29.    Gristede's disputes the contentions in ¶ 29 of the SOF: plaintiffs have mischaracterized the referenced testimony of Chris Paliophilos, who spoke generally about manager meetings with district supervisors every month or so without specifying attendees or invitees.

30.    Gristede's disputes the contentions in ¶ 30 of the SOF as follows:  This contention is functionally duplicative of ¶ 27 and the full response thereto applies here.

31.    Gristede's does not dispute the contentions in ¶ 31 of the SOF.

32.    Gristede's disputes the contentions in ¶ 32 of the SOF as follows: It was both Gristede's policy and practice to pay additional compensation to co-managers for work performed in excess of 50 hours per week, plus premium pay for Sunday shifts, including named plaintiffs Torres, Helwig and Santiago. (Clusan Dec. ¶ 7; Nash Dec. ¶ 23; Appendix Exhibits "6", "7", and "8").

33.    Gristede's does not dispute the contentions in ¶ 33 of the SOF.

34.    Gristede's disputes the contentions in ¶ 34 of the SOF as follows:  It was both Gristede's policy and practice to pay additional compensation to co-managers for work performed in excess of 50 hours per week, plus premium pay for Sunday shifts, including named plaintiffs Torres, Helwig and Santiago. (Clusan Dec. ¶ 7; Nash Dec. ¶ 23; Appendix Exhibits "6", "7", and "8").

8

(Clusan Dec. ¶ 24; Nash Dec. ¶ 37).

42.    Gristede's clarifies the contentions in ¶ 42 of the SOF as follows:  The import of the requests for admissions is misstated by plaintiffs – historically co-managers have been classified as exempt by Gristede's consistent with historical practices; not because of historical practices.

43.    Gristede's disputes the contentions in ¶ 43 of the SOF as follows:    Plaintiffs mischaracterize the referenced deposition testimony of Deborah Clusan, Charlie Criscuolo and Michael McCormick who indicated that they were already familiar with the duties of a co-manager based upon their knowledge and personal experience in the supermarket industry.

44.    Gristede's disputes the contentions in ¶ 44 of the SOF as follows:    Plaintiffs mischaracterize the referenced deposition testimony of Deborah Clusan, Charlie Criscuolo and Michael McCormick who indicated that they were already familiar with the duties of a co-manager based upon their knowledge and personal experience in the supermarket industry.

45.    Gristede's disputes the contentions in ¶ 45 of the SOF as follows:    Plaintiffs mischaracterize the referenced deposition testimony of Deborah Clusan, Charlie Criscuolo and Michael McCormick who indicated that they were already familiar with the duties of a co-manager based upon their knowledge and personal experience in the supermarket industry.

57.    Gristede's disputes the contentions in ¶ 57 of the SOF as follows: Plaintiffs mischaracterize the referenced testimony of Charlie Criscuolo and Chris Lang who spoke generally about the payroll responsibilities of store managers without being asked about co-managers.

58.    Gristede's does not dispute the contentions in ¶ 58 of the SOF.

59.    Gristede's does not dispute the contentions in ¶ 59 of the SOF.

60.    Gristede's disputes the contentions in ¶ 60 of the SOF as follows:  Co-managers assigned employees to perform various tasks.

(Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix Exhibits "20", "21", "23" and "24").

61.    Gristede's disputes the contentions in ¶ 61 of the SOF as follows:  Co-managers perform performance review of employees.

(Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix Exhibits "20", "21", "23" and "24").

62.    Gristede's disputes the contentions in ¶ 62 of the SOF as follows:  Co-managers receive managerial training.

(Nash Dec. ¶¶ 44, 69; Santiago Deposition – Appendix Exhibit "23" at pp 71-73).

63.    Gristede's disputes the contentions in ¶ 63 of the SOF as follows:  Co-managers have substantially similar duties to that of store managers.

(Nash Dec. ¶¶ 37-45; Daly and Torres Depositions - Appendix Exhibits "20" and "21").

13

46.    Gristede's clarifies the contentions in ¶ 46 of the SOF as follows:  The testimony of Chris Lang merely established that a co-manager's standard work week was 50 hours.

47.    Gristede's disputes the contentions in ¶ 47 of the SOF as follows:  Co-managers were not manual laborers

(Clusan Dec. ¶ 7; Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig -Appendix <u>Exhibits</u> "20", "21", "23" and "24").

48.    Gristede's disputes the contentions in ¶ 48 of the SOF as follows:  Co-managers' main duties were managerial.

(Clusan Dec. ¶ 7; Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

49.    Gristede's disputes the contentions in ¶ 49 of the SOF as follows:  Co-managers supervised two or more employees.

(Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

50.    Gristede's disputes the contentions in ¶ 50 of the SOF as follows:  Co-managers could recommend individuals for hire.

(Nash Dec. ¶¶ 39-45).

51.    Gristede's disputes the contentions in ¶ 51 of the SOF as follows:  Co-managers had authority to discipline employees.

(Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

52.    Gristede's disputes the contentions in ¶ 52 of the SOF as follows: Co-managers had authority to make recommendations as to promotions. (Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

53.    Gristede's disputes the contentions in ¶ 53 of the SOF as follows:  Co-managers had authority to discipline employees. (Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

54.    Gristede's disputes the contentions in ¶ 54 of the SOF as follows:  Co-managers scheduled work shifts of employees in their store. (Nash Dec. ¶¶ 39-45; Depositions of Daly, Torres, Santiago and Helwig - Appendix <u>Exhibits</u> "20", "21", "23" and "24").

55.    Gristede's disputes the contentions in ¶ 55 of the SOF as follows:  In actuality, no one person has the authority to set the pay of non-manager supermarket employees.  The pay of full-time and part-time employees is governed by collective bargaining agreements.  (<u>See</u> Appendix <u>Exhibits</u> "2", "3" and "4").

56.    Gristede's disputes the contentions in ¶ 56 of the SOF as follows:  Plaintiffs mischaracterize the referenced testimony of Balseca, Lang and Monos who testified generally about meetings with store managers every other month or so without specifying attendees or invitees.

64-65.   Gristede's disputes the contentions in ¶¶ 64 and 65 of the SOF as follows:  Plaintiffs mischaracterize the referenced testimony of Deborah Clusan, who indicated that payroll is processed at 823 Eleventh Avenue by the two person payroll department but most of the editing is done at the store level by store managers.

(Clusan Dec. ¶ 16; Nash Dec. ¶ 38).

66.   Gristede's does not dispute the contentions in ¶ 66 of the SOF.

67.   Gristede's does not dispute the contentions in ¶ 67 of the SOF.

68.   Gristede's does not dispute the contentions in ¶ 68 of the SOF.

69.   Gristede's does not dispute the contentions in ¶ 69 of the SOF.

70.   Gristede's does not dispute the contentions in ¶ 70 of the SOF.

71.   Gristede's disputes the contentions in ¶ 71 of the SOF as follows:  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined, since purported "executives" in the main office are unspecified.  Notwithstanding the foregoing, daily store operations were monitored by district managers.   Plaintiffs otherwise mischaracterized the referenced testimony of Lang who merely indicated that Gristede's attempts to enforce policies evenly without specifying who monitored the stores.

(Clusan Dec. ¶ 6).

72.   Gristede's disputes the contentions in ¶ 72 of the SOF: plaintiffs mischaracterized the referenced testimony of Balseca, Lang and Monos.  Weekly payroll is not allocated to each store; instead, budgets are prepared on a

quarterly basis (13 weeks), based upon historical sale patterns and other factors. Moreover, budgeting projections are merely targets, which district managers hope the stores will achieve, although this does not always occur.

73-74.  Gristede's disputes the contentions in ¶¶ 73 and 74 of the SOF as follows:  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified.  Notwithstanding the foregoing, plaintiffs again mischaracterize the testimony of Balseca, Lang and Monos.  Budgets are prepared on a quarterly basis (13 weeks).

75.    Gristede's disputes the contentions in ¶ 75 of the SOF as follows: The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified. Notwithstanding the foregoing, plaintiffs mischaracterize the referenced testimony of Balseca, Criscuolo and others who indicated that comparisons between actual and budgeted payrolls were informally done by district managers; that Galo Balseca only reviewed aggregate totals and Charlie Criscuolo never makes any weekly comparisons.

76.    Gristede's disputes the contentions in ¶ 76 of the SOF.  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified.  Plaintiffs mischaracterize the referenced testimony of Galo Belseca which relates to a single e-mail directed to store managers around Labor Day

reminding them to keep expenses down because sales were expected to be slow due to the holiday.  Additionally, the balance of the other documents relate to reminders only for slow summer periods.

77.   Gristede's disputes the contentions in ¶ 77 of the SOF as follows: The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified.  Notwithstanding the foregoing, plaintiffs mischaracterize the referenced testimony of Balseca, Lang and Monos who merely indicated they recommended store managers not to schedule overtime during seasonal slow periods, primarily in the summer.

78.   Gristede's does not dispute the contentions in ¶ 78 of the SOF.

79.   Gristede's clarifies the contentions in ¶ 79 of the SOF as follows: Editing was done to remedy incomplete and missed punches by employees.

(Clusan Dec. ¶¶ 15-17; Nash Dec. ¶¶ 17, 38; Berkman Report ¶¶ 10-14 - Appendix Exhibit "5").

80.   Gristede's clarifies the contentions in ¶ 80 of the SOF as follows:  Gristede's did not change its timekeeping system (Novatime remained in place), but revised the mechanical process as to how edits were forwarded to the payroll department by store managers.

(Clusan Dec. ¶ 16).

81.   Gristedes does not dispute the contentions of ¶ 81 of the SOF.

16

82.     Gristede's disputes the contentions in ¶ 82 of the SOF as follows:  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified.   Notwithstanding the foregoing, plaintiffs mischaracterize the referenced testimony of Balseca, Criscuolo and others who indicated that comparisons between actual and budgeted payrolls were informally done by district managers; that Galo Balseca only reviewed aggregate totals and Charlie Criscuolo never made any weekly comparisons.

83.     Gristede's disputes the contentions in ¶ 83 of the SOF as follows:  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are unspecified.   Notwithstanding the foregoing, plaintiffs mischaracterize the referenced testimony of Balseca, Clusan and Lang who indicated in general terms that once a preliminary payroll was run, it is reviewed to eliminate obvious errors.

84.     Gristede's disputes the contentions in ¶ 84 of the SOF as follows:  The contention is made vague and ambiguous because the term "Upper Management" is not clearly defined since purported executives in the main office are   unspecified.   Notwithstanding   the   foregoing,   plaintiffs   continue   to mischaracterize the referenced deposition testimony as Ms. Clusan, who indicated generally that edits were made to correct errors and missed punches, which plaintiffs have improperly labeled as "unauthorized overtime."   Likewise Denne Washington's testimony related to hypothetical deductions of .25 hours or less (15

minutes) which are sometimes edited or rounded.   In her referenced testimony, Ms. Washington also testified that there were typically no deductions by supervisors after they reviewed 5Q statements.

(See Clusan Dec. ¶¶ 13-18).

85.    Gristede's disputes the contentions in ¶ 85 of the SOF as follows:    Department managers earned a weekly wage in accordance with collective bargaining agreements.

(See Appendix Exhibits "2", "3" and "4").

86.    Gristede's disputes the contentions in ¶ 86 of the SOF as follows:  Department managers were paid in accordance with collective bargaining agreements.

(See Appendix Exhibits "2", "3" and "4").

87-91. Gristede's disputes that the contentions of ¶¶ 87, 88, 89, 90 and 91 of the SOF have any direct relevance since they reflect a general analysis without any effort to examine the extent, magnitude or reasons for any limited deductions including an analysis of permissible deductions which can be made by Gristede's under the salary basis test.

(Nash Dec. ¶¶ 3-4, 17, 59-63; Berkman Report ¶¶ 5(f), 23-29 - Appendix Exhibit "5").

92.    Gristede's disputes the contentions in ¶ 92 of the SOF as follows:  Crema was paid less than his regular weekly wage 1 time out of 97 work weeks, or 1.03%.

18

(Nash Dec. ¶ 23; Appendix <u>Exhibit</u> "12").

93.    Gristede's disputes the contentions in ¶ 93 of the SOF as follows:  Misuraca was paid less than his regular weekly wage 4 times out of 209 work weeks, or 1.91%.

(Nash Dec. ¶ 23; Appendix <u>Exhibit</u> "11").

94.    Gristede's disputes the contentions in ¶ 94 of the SOF as follows:  Pastorino was paid less than his regular weekly wage 4 times out of 198 work weeks, or 2.02%.

(Nash Dec. ¶ 23; Appendix <u>Exhibit</u> "18").

95.    Gristede's disputes the contentions in ¶ 95 of the SOF as follows:  Victor Phelps was paid less than his regular weekly wage 15 times out of 377 work weeks, or 3.97%.

(Nash Dec. ¶ 23; Appendix <u>Exhibit</u> "14").

96.    Gristede's disputes the contentions in ¶ 96 of the SOF as follows: Salegna was paid less than his regular weekly wage 2 times out of 38 work weeks, or 5.26%.

(Nash Dec. ¶¶ 23; Appendix <u>Exhibit</u> "17").

97-103.  Gristede's disputes that the contentions of ¶¶ 97, 98, 99, 100, 101, 102 and 103 of the SOF have any direct relevance for purpose of summary judgment since they reflect a general statistical analysis without any effort to examine the extent, magnitude or reasons for any limited deductions including an

analysis of permissible deductions which can be made by Gristede's under the salary basis test.

(Nash Dec. ¶¶ 4, 17; Berkman Report ¶¶ 5(f), 23-29 - Appendix Exhibit "5").

104.    Gristede's disputes the contentions in ¶ 104 of the SOF as follows: Gristede's paid co-managers on a salary basis.

(Clusan Dec. ¶ 7; Nash Dec. ¶ 27; Appendix Exhibit "19").

105.    Gristede's disputes the contentions in ¶ 105 of the SOF as follows:    The limited deductions from co-manager's salary were made in accordance with applicable regulations or were inadvertent.

(Clusan Dec. ¶¶ 17, 19-22).

106-110.    Gristede's disputes that the contentions of ¶¶ 106, 107, 108, 109 and 110 of the SOF having any direct relevance since they reflect general statistical evidence without any effort to examine the extent, magnitude or reasons for any limited deductions including an analysis of permissible deductions which can be made by Gristede's under the salary basis test.

(Nash Dec. ¶¶ 4, 17; Berkman Report ¶¶ 5(f), 23-29 - Appendix Exhibit "5").

111.    Gristede's disputes the contentions in ¶ 111 of the SOF as follows:    Alfred Croker worked 13 weeks for Gristede's and his salary was deducted on two occasions for permissible reasons relating to the first and last week of employment.

(Nash Dec. ¶ 22; Appendix Exhibit "16").

112.    Gristede's disputes the contentions in ¶ 112 of the SOF as follows:  Frank DeLeon is apparently no longer a party.  (See ¶ 2 above).

113.    Gristede's disputes the contentions in ¶ 113 of the SOF as follows:  Bobby Irizarry is apparently no longer a party.  (See ¶ 2 above).

114.    Gristede's disputes the contentions in ¶ 114 of the SOF as follows:  Ruben Mora worked as an overnight manager for 34 weeks before electing not to continue in the position.  During these 34 weeks, his salary was not subject to deductions.

(Nash Dec. ¶ 22; Appendix Exhibit "7").

115.    Gristede's disputes the contentions in ¶ 115 of the SOF as follows:  While Gilbert Santiago's salary was subject to limited deductions, the deductions were inadvertent and repaid by Gristede's in subsequent weeks.

(Nash Dec. ¶¶ 22, 25; Clusan Dec. ¶ 22; Appendix Exhibit "9").

116.    Gristede's can not agree or dispute the contentions of ¶ 116 of the SOF as follows:  Carlos Torres's salary was deducted on two occasions for permissible reasons based on the first and last week of work.

(Nash Dec. ¶¶ 22, 24; Appendix Exhibit "6").

117-123.    Gristede's disputes the contentions of ¶¶ 117, 118, 119, 120, 121,and 123 of the SOF having any direct relevance since they reflect general statistical evidence without any effort to examine the extent, magnitude or reasons for any limited deductions including an analysis of permissible deductions which can be made by Gristede's under the salary basis test.

21

(Nash Dec. ¶¶ 3-4, 17, 59-63).

124.    Gristede's clarifies the contentions in ¶ 124 of the SOF as follows:  The Chavez deduction made in May, 2002 was inadvertent.

(Clusan Dec. ¶ 22).

125.-128. Gristede's disputes the contentions in ¶¶ 125, 126, 127, 128, 129 and 130 of the SOF as follows:  Navarro deductions made in 2000 were inadvertent.

(Clusan Dec. ¶ 22).

129.    Gristede's disputes the contentions in ¶129 of the SOF as follows:  The White deduction made in July, 2003 was inadvertent.

(Clusan Dec. ¶ 22).

130.    Gristede's disputes the contentions in ¶ 130 of the SOF as follows:  The Aybar deduction made in July 2001 was inadvertent.

(Clusan Dec. ¶ 22).

131.    Gristede's disputes the contentions in ¶ 131 of the SOF as follows:  The deductions made to Michael Cella's salary were inadvertent as confirmed by his separate Declaration.

(See Appendix Exhibit "40").

132.    Gristede's disputes the contentions in ¶ 132 of the SOF as follows:  The deduction made to the December salary of Frederic Dixon was inadvertent.

(Clusan Dec. ¶ 22).

133.    Gristede's disputes the contentions in ¶ 133 of the SOF as follows:    Plaintiffs mischaracterize Ms. Clusan's referenced testimony.    She indicated that co-managers are expected to work 50 hours a week and are paid their salary whether or not they precisely work 50 hours.  She also responded to a hypothetical question that if any manager (district manager, store manager, co-manager or department manager) comes in three (3) hours late every day for work, then somebody is going to dock his pay.  This would be an aberrational situation and was meant to indicate that such a situation is so beyond company policy that it would invite scrutiny and disciplinary action whatever the level of the employee involved.

(Clusan Dec. ¶ 14).

134.    Gristede's disputes the contentions in ¶ 134 of the SOF.   This contention is directly contradicted by Deborah Clusan's testimony referenced in paragraph 134 who testified that co-managers are paid from salary even if they do not precisely work 50 hours per week.

(See Clusan Dep. P. 348, lines 14-18).

135.    Gristede's disputes the contentions in ¶ 135 of the SOF. Plaintiffs again mischaracterize Deborah Clusan's referenced testimony which does not mention any policy relating to partial deductions at all.   Instead, she referenced a hypothetical manager of any kind (not necessarily a class member) who shows up late for work three hours everyday and would invite, in her view, scrutiny and disciplinary action.

136.   Gristede's disputes the contentions in ¶ 136 of the SOF. Plaintiffs again mischaracterize Deborah Clusan's referenced testimony; she was not speaking about partial day deductions at all but referenced a hypothetical manager of any kind who showed up three hours late for work every day.

137-140.   The testimony in ¶¶ 137, 138, 139 and 140 of the SOL is quoted accurately, but the testimony is taken out of context and misleading because there was no definition of guarantee as noted by the witness.   Moreover, the quoted testimony of Chris Lang is conjecture since he indicates before the passage began that he did not know George Sierra so it was "hard" for him to "speculate". (Lang Dep. ¶ 71: 20-23).   Likewise Mr. Lang's testimony on page 76 is also irrelevant since he was speaking about a non-class member union assistant, Vinny Didomizio.

141.   Gristede's disputes the contentions in ¶141 of the SOL as follows:   Mr. Montalvo's testimony is taken out of context as he merely referenced a single isolated incident of 49.75 hours for Andres Nunez, which can be attributable to a multiple of factors and likely human error. (Clusan Dec. ¶¶ 19-23).

142-144.   Gristede's disputes the contentions in ¶ 142, 143 and 144 of the SOF.   Plaintiffs mischaracterize the referenced testimony of Jack Squicciarini, who indicated that all employees (salaried and unsalaried) could potentially be suspended (not were suspended) for loss prevention violations without commenting about any specific suspensions.

145-146.       Gristede's disputes the contentions in ¶¶ 145 and 146 of the SOF.    Plaintiffs mischaracterize the referenced testimony of Jack Squicciarini, who obviously did not mean "thousands of times" literally and used the phrase figuratively.

147-151.       Gristede's disputes the contentions in ¶¶ 147, 148, 149, 150 and 151 of the SOF.    Plaintiffs mischaracterize the testimony of Jack Squicciarini for the reasons set forth above with respect to the contentions 145 and 146.

152-153.       Gristede's disputes ¶¶ 152 and 153 of the SOF.   Hector Rosario did not give proper notice of jury duty although the matter was resolved through union grievance procedures and Hector Rosario received pay for jury duty in early 2003 (See Hector Rosario payroll records - Appendix Exhibit "39").

154.   Gristede's disputes the contentions in ¶ 154 of the SOF which is functionally equivalent to the contention in ¶ 85 and the responses thereto apply here.

155.   Gristede's disputes the contentions in ¶ 155 of the SOF which references an objectionable and improper question.   As noted with respect to contention 17 above, Department Manager receive weekly wages in accordance with collective bargaining agreements.

156-158.  Gristede's disputes the contentions in ¶¶ 156, 157 and 158 which references objectionable and improper questions.   As noted throughout,

Department Managers receive weekly wages in accordance with collective bargaining agreements.

159.   Gristede's disputes the contentions in ¶ 159 of the SOF as follows:  Mr. Paliophilos's testimony is quoted correctly, but he is not necessarily familiar with the terms of the collective bargaining agreements and his use of "hourly" is based upon common parlance.

(Clusan Dec. ¶¶ 9-10).

160.   Gristede's disputes the contentions in ¶ 160 of the SOF as follows: Mr. Monila's testimony is quoted correctly, but he is not necessarily familiar with the terms of the collective bargaining agreements and his use of "hourly" is based upon common parlance.

(Clusan Dec. ¶¶ 9-10).

161.   Gristede's disputes the contentions in ¶ 161 of the SOF which references an objectionable and improper question.

162.   Gristede's dispute the contentions in ¶ 162 of the SOF as follows:  Mr. Familia's Declaration is not admissible; it was obtained after the close of discovery without the opportunity for cross-examination, following Mr. Familia's termination for cause.  Notwithstanding the foregoing, Mr. Familia is not necessarily familiar with the terms of the collective bargaining agreements and his use of the term "hourly" is based upon common parlance.

(Clusan Dec. ¶¶ 9-10).

163.    Gristede's disputes the contentions in ¶ 163 of the SOF which is functionally equivalent to contentions of ¶ 104 and the responses thereto apply here.

164-165.    Gristede's disputes the contentions in ¶¶ 164 and 165 of the SOF as follows:    Mora was no longer a salaried employee when he left Gristedes, but the documents are internally inconsistent in any event since compensation is reflected by lump sum salary or weekly wages notwithstanding any "hourly" reference.

(Nash Dec. ¶22, Clusan Dec. ¶¶ 9-10).

166.    Gristede's disputes the contentions in ¶ 166 of the SOF as follows:  Department Managers were paid overtime for hours worked in excess of 40 hours per week.

(Clusan Dec. ¶¶ 9-10).

167.    Gristede's disputes the contentions in ¶ 167 of the SOF as follows:  Department Managers were compensated for their scheduled shifts.

(Clusan Dec. ¶¶ 9-10).

168.    Gristede's disputes the contentions in ¶ 168 of the SOF as follows:    Department Managers received overtime for working beyond the scheduled shifts.

(Nash Dec. ¶ 12; (Clusan Dec. ¶¶ 9-10; Appendix Exhibits "2", "3" and "4").

169.   Gristede's disputes the contentions in ¶ 169 of the SOF as follows:   There is no actual proof that Department Managers worked through lunch.

(Nash Dec. ¶ 55).

170.   Gristede's disputes the contentions in ¶ 170 of the SOF as follows:   Gristede's policy was only that employees could not set their own hours and employees must be authorized prior to working overtime.

(Clusan Dec. ¶¶ 11-14).

171.   Gristede's disputes the contentions in ¶ 171 of the SOF as follows:   Plaintiffs mischaracterize the referenced testimony of Deborah Clusan, Lang and Washington.   Overtime must be approved.   This is not the same as encouraging or allowing employees to work overtime without approval knowing that they will not get paid.

(Clusan Dec. ¶¶ 11-14).

172-175.   Although the testimony is quoted accurately in ¶¶ 172, 173, 174 and 175 of the SOF, it is taken out of context.

(Clusan Dec. ¶¶ 13-18).

176.   Although the testimony is quoted accurately in ¶ 176 of the SOF, Mr. Lang merely reiterated that overtime must be approved.

177-178.   Gristede's disputes the contentions in ¶¶ 177 and 178 of the SOF as follows:   Victor Philips statements that he worked through lunch and before his scheduled shift are not credible.

28

179-183.    Gristede's disputes the contentions in ¶¶ 179, 180, 181, 182 and 183 of the SOF as follows:  Daniel Salegna's statements that he worked through lunch and before his scheduled shift is not credible.  Moreover, the fact that Mr. Salegna's time records were apparently edited to provide him with eight full hour days on January 27, 2003, January 28, 2003 and February 1, 2003 was done to remedy his failure to punch properly and completely and give him the benefit of an eight hour day.

184.    Gristede's disputes the contentions in ¶ 184 of the SOF as follows:  It was Gristede's policy only that overtime be approved – editing was done to rectify the long-standing problems of missed and incomplete punches. (Nash Dec. ¶ 17, 53-63; Clusan Dec. ¶¶ 11-22); Beckman Report ¶¶ 10-14 - Appendix Exhibit "5").

185.    Gristede's disputes the contentions in ¶ 185 of the SOF as follows:  It was not Gristede's practice to delete unauthorized overtime. (Nash Dec. ¶ 2; Clusan Dec. ¶¶ 13-18; Berkman Report ¶¶ 10-14 - Appendix Exhibit "5").

186.    Gristede's disputes the contentions in ¶ 186 of the SOF as follows: It was not Gristede's practice or policy to delete unauthorized overtime. (Nash Dec. ¶ 2; Clusan Dec. ¶¶ 13-18; Berkman Report ¶¶ 10-14 - Appendix Exhibit "5").

187-188.  Gristede's disputes the contentions in ¶¶ 187 and 188 of the SOF as follows:  Store managers made edits to correct missed or incomplete punches, not to eliminate unauthorized overtime.

(Nash Dec. ¶ 2; Clusan Dec. ¶¶ 13-18; Berkman Report ¶¶ 10-14 - Appendix Exhibit "5").

189-194.  Gristede's disputes the contentions in ¶¶ 189, 190, 191, 192, 193 and 194 of the SOF as follows:  Plaintiffs mischaracterized Chris Paliophilos's referenced testimony who indicated that overtime had to be approved by him and he did not recollect ever editing unauthorized overtime from a class member.

195-202.  Gristede's disputes the contentions in ¶¶ 195, 196, 197, 198, 199, 200, 201 and 202 of the SOF as follows:  Although there may have been an inadvertent editing with respect to certain of Mr. Linary's 2004 time records, he has previously submitted a Declaration that editing was a result of missed punches and Gristede's does not owe him any money.  (See Appendix Exhibit "41").

203-206.  Gristede's disputes the contentions in ¶¶ 203, 204, 205 and 206 of the SOF as follows:  Plaintiffs mischaracterized the referenced testimony of Sam Shari as to why an edit was made to Anna Garrett's time on Christmas Eve, December 24, 2003.  Mr. Shari testified that he had no recollection of the matter and could not explain the entry.  However, as a matter of pure common sense, it would be unlikely for anyone to work overtime in a supermarket on Christmas Eve.  If anything, it is more likely Ms. Garrett left the store at some point in the

day, perhaps to do her Christmas shopping and did not punch properly.  In any event, a single Christmas Eve edit is not reflective of any policy or practice.

207-208.  Gristede's disputes the contentions in ¶¶ 207 and 208 as follows:  Plaintiffs mischaracterize Robert Montalvo's referenced testimony regarding the editing of time for Victor Phelps on November 28, 2003.

209-212.  Gristede's disputes the contentions in ¶¶ 209, 210, 211 and 212 of the SOF relating to Mr. Familia for the reasons stated in paragraph 162 above relating to Mr. Familia.  Moreover, any purported "understanding" by Mr. Familia is certainly not reflective of Gristede's practices or policies.

213-216.  Gristede's disputes the contentions in ¶¶ 213, 214, 215 and 216 as follows:  Mr. Daly likewise is not a credible witness.
(Nash Dec. Footnote 17).

217-228.  Gristede's disputes the contentions in ¶¶ 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227 and 228 of the SOF as follows:  Plaintiffs take the referenced testimony of Stacey Hilton out of context, who indicated that editing was largely done to rectify missed punches.  In any event, her statement that an edit was made to reduce the time of Victor Bennett from 10.5 regular hours to 8 hours at the direction of her manager to eliminate purported unauthorized overtime is contradicted by Ms. Hilton's store manager at the time.  (See Declaration of Adrian Ramirez - Appendix Exhibit "42").

229.    Gristede's disputes the contentions in ¶¶ 229 of the SOF as follows: The payroll department only processed edits after they were made by store managers.

(Clusan Dec. ¶ 16).

230-235.    Gristede's disputes the contentions in ¶¶ 230, 231, 232, 233, 234 and 235 of the SOF as follows:  The plaintiffs mischaracterized Ms. Washington's testimony who merely indicated that she was advised on occasion to correct errors, but never to eliminate time for class members who punched properly and actually worked.

236-239.    Gristede's disputes the contentions in ¶¶ 236, 237, 238 and 239 of the SOF as follows:  Plaintiffs mischaracterize the referenced testimony of Chris Lang who indicated that edits resulted from department manager's failing to punch for lunch.

240-247.    Gristede's disputes the contentions in ¶¶ 240, 241, 242, 243, 244, 247, 246 and 247 of the SOF as follows:  Plaintiffs improperly rely upon general statistical evidence which is contradicted and otherwise fails to take into consideration that edits were necessary to remedy missed and incomplete punches.  Accordingly, editing in and of itself does not constitute proper evidence of unauthorized overtime.

(Nash Dec. ¶ 2; Clusan Dec. ¶¶ 13-18; Berkman Report ¶¶ 10-14 - Appendix Exhibit "5").

32

248-257.        Gristede's disputes the contentions in ¶¶ 248, 249, 250, 251, 252, 253, 254, 255, 256 and 257 of the SOF as follows:   Gristede's has submitted hundreds of thousands of payroll records during the case and duly complied with the record keeping obligations under applicable law.

(Clusan Dec. ¶¶ 4, 23).

258-265.        Gristede's disputes the contentions in ¶¶ 258, 259, 260, 261, 262, 263, 264 and 265 of the SOF as follows:   Gristede's has acted in good faith in this matter.  Deborah Clusan has been involved with processing payroll for Gristede's and its predecessor since 1975 and she is well versed in the rules in the FLEA and NIL.  Prior to commencement of this lawsuit, none of the plaintiffs even complained about the alleged failure to receive overtime pay and most testified that they were not owed any money when they left Gristede's.

(Nash Dec. ¶ 56; Clusan Dec. ¶¶ 1-2, 26-27).

266-267.        Gristede's disputes the contentions in ¶¶ 266 and 267 of the SOF as follows:  Counterclaims were filed in this case because of the compulsory counterclaim rules in the federal courts.

268-271.        Gristede's does not dispute the contentions in ¶¶ 268 and 271.

272-275.        Gristede's disputes the contentions in ¶¶ 272, 273, 274 and 275 of the SOF as follows:  Plaintiffs mischaracterize the import of the April 27, 2005 conference which dealt with the fact that counterclaims were filed because they are compulsory under federal rules, not retaliatory.

33

276-280.    Gristede's disputes the contentions in ¶¶ 276, 277, 278, 279 and 280 of the SOF as follows:   Plaintiff mischaracterize the sequence of events.  The undersigned was not scolded by Judge Peck but given the opportunity to amend the counterclaims to itemize the damages sustained by Gristede's as a result of being required to undertake investigations of Torres' and Chewing's wrongful conduct.

Dated:  New York, New York
        July 20, 2007

                            FINKEL GOLDSTEIN
                             ROSENBLOOM & NASH, LLP
                            Attorneys for the Corporate Defendants
                            26 Broadway, Suite 711
                            New York, New York 10004
                            (212) 344-2929

                            By: _____
                                KEVIN J. NASH (KJN-6274)

H:\sylvia\word\Gristedes adv. Torres\Counter-Statement of Material Facts in Dispute (Local Rule 56.1(b)) 7-20-07.doc