Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Anjana Samant (AS 5163)
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CARLOS TORRES, RUBEN MORA,
BOBBY IRIZARRY, LEWIS CHEWNING,
GILBERTO SANTIAGO,
WILLIAM HELWIG, ROBERT MISURACA,
JOSEPH CREMA, MARIO DIPRETA,
VICTOR PHELPS, JOSELITO AROCHO,
ALFRED CROKER, DANIEL SALEGNA,                    **No. 04 CV 3316 (PAC)**
FRANK DELEON, and ROBERT PASTORINO,
on behalf of themselves and all others similarly
situated,

                        Plaintiffs,

            -against-

GRISTEDE'S OPERATING CORP.; NAMDOR,
INC.; GRISTEDE'S FOODS, INC.; CITY PRODUCE
OPERATING CORP.; GRISTEDE'S FOODS NY,
INC., JOHN CATSIMATIDES, JAMES MONOS, and
GALO BALSECA,

                        Defendants.

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 2

I. GRISTEDE'S FAILS TO RAISE AN ISSUE OF FACT ON ITS EXECUTIVE EXEMPTION
DEFENSE ...................................................................................................................... 2

   A. Gristede's Presents No Evidence That it Met the Salary Basis Test ...................... 2

   B. Gristede's Does Not Counter Plaintiffs' Evidence Disproving Salary Basis
   Payment ......................................................................................................................... 5

      1. Smokescreen #1:  Deductions During First or Last Workweeks .......................... 5

      2. Smokescreen #2:  Inadvertent Deductions ........................................................... 6

      3. Smokescreen #3:  Corrections. ............................................................................ 6

      4. Smokescreen #4:  Comparing Apples to Oranges. ............................................... 7

      5. Smokescreen #4:  Mixing Arguments ................................................................. 8

   C. Gristede's Presents No Evidence That It Meets the Hire or Fire Prong of the
   Duties Test ................................................................................................................... 9

II. CO-MANAGER CLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON
LIABILITY. ................................................................................................................... 10

III. THERE IS NO ISSUE OF FACT AS TO THE UNAUTHORIZED OVERTIME POLICY .......... 10

IV. GRISTEDE'S HAS NOT PROVEN GOOD FAITH AND REASONABLENESS ...................... 13

V. GRISTEDE'S DOES NOT REBUT PLAINTIFFS' EVIDENCE OF WILLFULNESS. ................ 14

VI. GRISTEDE'S HAS NOT DEMONSTRATED RECORDKEEPING COMPLIANCE ................... 14

VII. THERE IS NO ISSUE OF FACT REGARDING GRISTEDE'S COUNTERCLAIMS ............... 15

   A. Gristede's Presents No Evidence of Misconduct. ................................................. 16

   B. The Counterclaims Fail as a Matter of Law. ........................................................ 16

   C. The Court Has No Subject Matter Jurisdiction Over the Counterclaims. ............. 18

i

VIII. Gristede's Has Not Justified the Counterclaims. ....................................... 19

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Azrielli v. Cohen Law Offices*,
    21 F.3d 512 (2d Cir. 1994)........................................................................................... 5

*Beyah v. Coughlin*,
    789 F.2d 986 (2d Cir. 1986)........................................................................................ 16

*Bickerstaff v. Vassar College*,
    196 F.3d 435 (2d Cir. 1999)........................................................................................ 12

*Bowrin v. Catholic Guardian Society*,
    417 F. Supp. 2d 449 (S.D.N.Y. 2006)......................................................................... 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................... 2

*Crawford-El v. Britton*,
    523 U.S. 574 (1998).................................................................................................... 12

*Critical-Vac Filtration Corp. v. Minuteman International Inc.*,
    233 F.3d 697 (2d Cir. 2000)........................................................................................ 18

*DeFilippo v. N.Y. State Unified Court System*,
    No. 00-CV-2109, 2006 U.S. Dist. LEXIS 19640 (E.D.N.Y. Mar. 27, 2006)......................... 1

*EEOC v. Alamo Rent-A-Car LLC*,
    432 F. Supp. 2d 1006 (D. Az. 2006)............................................................................ 19

*El v. SEPTA*,
    479 F.3d 232 (3d Cir. 2007)............................................................................ 11, 14, 19

*Feiger v. Iral Jewelry, Ltd.*,
    41 N.Y.2d 928 (1977).................................................................................................. 17

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004)........................................................................................ 19

*Hollander v. American Cyanamid Co.*,
    172 F.3d 192 (2d Cir. 1999)...................................................................................... 2, 7

*Holtz v. Rockefeller & Co., Inc.*,
    258 F.3d 62 (2d Cir. 2001)............................................................................................ 1

*Island Software & Computer Service  v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005)...................................................................................... 12

*Kennedy v. ConEd*,
410 F.3d 365 (7th Cir. 2005) ...................................................................................... 7

*Kulak v. City of New York*,
88 F.3d 63 (2d Cir. 1996) .......................................................................................... 15

*Lamdin v. Broadway Surface Advertising Corp.*,
272 N.Y. 133 (1936) .................................................................................................. 18

*Major Oldsmobile, Inc. v. General Motors Corp.*,
No. 93 Civ. 2189, 1995 U.S. Dist. LEXIS 7418 (S.D.N.Y. May 31, 1995).......................... 2

*Maritime Fish Products, Inc. v. World-Wide Fish Products, Inc.*,
474 N.Y.S.2d 281 (N.Y. App. Div. 1984) ....................................................................... 18

*Martin v. Malcolm Pirnie, Inc.*,
949 F.2d 611 (2d Cir. 1991)........................................................................................ 4, 6

*McPherson v. N.Y. City Department of Education*,
457 F.3d 211 (2d Cir. 2006)........................................................................................ 5

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985)........................................................................................ 5

*Murray v. Beard*,
102 N.Y. 505 (1886) .................................................................................................. 17

*Patterson v. County of Oneida*,
375 F.3d 206 (2d Cir. 2004)........................................................................................ 7, 16

*Perma Research & Development Co. v. Singer Co.*,
410 F.2d 572 (2d Cir. 1969)........................................................................................ 9

*Phansalkar v. Anderson Weinroth & Co., L.P.*,
344 F.3d 184 (2d Cir. 2003)........................................................................................ 17

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997)........................................................................................... 9

*Rodriguez v. Schneider*,
No. 95 Civ. 4083, 1999 U.S. Dist. LEXIS 9741 (S.D.N.Y. June 29, 1999).......................... 1

*Sanders v. Madison Square Garden, L.P.*,
    No. 06 Civ. 589, 2007 U.S. Dist. LEXIS 48126 (S.D.N.Y. July 2, 2007)...........................17

*Satchell v. Dilworth*,
    745 F.2d 781 (2d Cir. 1984)...............................................................................................2

*SEC v. Heartland Advisors, Inc.*,
    No. 03-C-1427, 2006 U.S. Dist. LEXIS 62450 (E.D. Wis. Aug. 31, 2006)...........................4

*Spencer v. Banco Real, S.A.*,
    623 F. Supp. 1008 (S.D.N.Y. 1985)...................................................................................18

*Steinberg v. Nationwide Mutual Insurance Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ..........................................................................................2

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002).........................................................................................................15

*Titan Indemnity Co. v. Triborough Bridge & Tunnel Authority, Inc.*,
    135 F.3d 831 (2d Cir. 1998).............................................................................................10

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) .........................................3

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966).........................................................................................................18

*Watt v. N.Y. Botanical Garden*,
    No. 98 Civ. 1095, 2000 U.S. Dist. LEXIS 1611 (S.D.N.Y. Feb. 16, 2000) ...........................1

*Wechsler v. Bowman*,
    285 N.Y. 284 (1941) ........................................................................................................18

*Yourman v. Giuliani*,
    229 F.3d 124 (2d Cir. 2000)......................................................................................3, 4, 8

## REGULATIONS

29 C.F.R. § 118(a).........................................................................................................................3

29 C.F.R. § 516.2(a)(7).................................................................................................................15

29 C.F.R. §§ 541.100(a)(1)...........................................................................................................2

29 C.F.R. § 541.118......................................................................................................................3

29 C.F.R. § 541.118(a)........................................................................................................3, 4

29 C.F.R. § 541.200(a)(1) ....................................................................................................2

29 C.F.R. § 541.602 .............................................................................................................3

29 C.F.R. § 541.602(a) .........................................................................................................3

29 C.F.R. § 541.603(a)..........................................................................................................6

**RULES**

Fed. R. Civ. P. 13(a) ..........................................................................................................18

Fed. R. Civ. P. 26(a)(1)........................................................................................................2

Fed. R. Civ. P. 56(e) .......................................................................................................1, 16

**PRELIMINARY STATEMENT**

Gristede's has failed to create material issues of fact in support of its affirmative defenses and counterclaims.  Instead, Gristede's own witnesses <u>admit</u> that Gristede's failed to pay Class Members on a salary basis; maintained an unlawful time shaving policy; systematically altered time and payroll records to reduce Class Members' wages; and did not maintain and preserve accurate time records.  Because Gristede's fails to offer admissible evidence to support its position on these and other issues, the Court should grant Plaintiffs' motion for partial summary judgment.

Moreover, Gristede's makes a mockery of Local Rule 56.1, which prescribes an orderly procedure for presenting evidence in support of summary judgment motions, and Federal Rule of Evidence 56(e), which requires that affidavits opposing summary judgment be "made on personal knowledge" and set forth admissible evidence.  Fed. R. Civ. P. 56(e).  Because Gristede's Counter-Statement of Material Facts in Dispute Pursuant to Local Rule 56.1(b) ("Counter SOF") lacks evidentiary foundation for most of its factual assertions, the Court should strike or disregard it.[1]  Worse, Gristede's own lawyer, Kevin Nash, submitted a fact narrative (the "Nash Declaration") that describes

---

[1] *See* Neilan Supp. Dec. Ex. LLLL (Letter dated 8/24/07).  Gristede's (1) fails to cite to <u>any</u> evidence in support of many assertions, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); (2) provides <u>incorrect or inaccurate</u> citations in support of many assertions, *Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095, 2000 U.S. Dist. LEXIS 1611, at *2 n.1 (S.D.N.Y. Feb. 16, 2000); (3) provides inadmissible evidence in support of many assertions, *DeFilippo v. N.Y. State Unified Court Sys.*, No. 00-CV-2109, 2006 U.S. Dist. LEXIS 19640, at *10 (E.D.N.Y. Mar. 27, 2006); and (4) peppers legal arguments and conclusions throughout the Counter SOF, *Holtz* 258 F.3d at 73, *Rodriguez v. Schneider*, No. 95 Civ. 4083, 1999 U.S. Dist. LEXIS 9741, at *4 n.3 (S.D.N.Y. June 29, 1999).

1

his own particular views of the law and the facts in this case, without adequate

foundation.[2]  The Court should strike or disregard the Nash Declaration as well.[3]

**ARGUMENT**

**I.     GRISTEDE'S FAILS TO RAISE AN ISSUE OF FACT ON ITS EXECUTIVE EXEMPTION DEFENSE**

Plaintiffs are entitled to summary judgment because Gristede's fails to identify

evidence proving either prong of the executive exemption affirmative defense ("the

salary basis test" and "the duties test"), on which it bears the burden of proof.  (Pl. Mem.

at 9.)[4]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (Summary judgment is

appropriate where "the nonmoving party has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof").

**A.     <u>Gristede's Presents No Evidence That it Met the Salary Basis Test</u>.**

Gristede's presents no evidence that it paid Department Managers and Co-

Managers (collectively "Class Members") on a salary basis, as defined by the FLSA and

NYLL.[5]  It does not submit any testimony from upper managers, store managers, or

---

[2] *See* Neilan Supp. Dec. Ex. MMMM (Letter dated 8/30/07).  The Nash Declaration (1) is not based on personal knowledge, *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); (2) is riddled with legal arguments and conclusions, *Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 93 Civ. 2189, 1995 U.S. Dist. LEXIS 7418, at *22 n.7 (S.D.N.Y. May 31, 1995); (3) circumvents the Court's page limits, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 71 (E.D.N.Y. 2004); and (4) violates Fed. R. Civ. P. 26(a)(1).

[3] Also, in its Counter SOF and in the Nash Declaration, Gristede's makes legal arguments without citing any caselaw.  The Second Circuit recently sanctioned Gristede's for similar conduct in another case.  (Neilan Supp. Dec. Ex. OOOO (*Ansoumana* Decision).)

[4] Gristede's also attempts to raise the administrative exemption affirmative defense. (Def. Mem. at 10.)  Because Gristede's failed to plead the administrative exemption, (Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint)), it has waived it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984).  Moreover, its failure to meet the salary basis test is fatal to both exemptions.  29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1).

[5] Under both laws, an employer fails the salary basis test unless it can prove that its

2

payroll employees that it paid Class Members the same amount regardless of how many hours they worked.  Nor has its expert analyzed payroll records that demonstrate this.  It does not submit testimony from its current employees that they were paid a true salary. And, critically, it presents no evidence that Gristede's ever paid a Class Member her full salary during a week in which she worked fewer than her scheduled hours.[6]

Gristede's only "evidence" that it paid Department Managers on a salary basis - various collective bargaining agreements ("CBAs") that entitle Department Managers to a "weekly wage" (Counter SOF ¶ 85) - does not create an issue of fact.[7]  The CBAs do not even purport to require Gristede's to pay Department Managers the same "weekly wage" regardless of "the number of days or hours [they] worked."  *Yourman*, 229 F.3d at 128 (quoting 29 C.F.R. § 118(a)).  As Gristede's admits, its duty to pay Department Managers their "weekly wage" is "predicated on a 40 hour, 5 day work week." (Declaration of Deborah Clusan ("Clusan Dec.") ¶ 9.)  This is not a salary under the

---

workers "regularly receive[d] each pay period . . . a predetermined amount . . . not subject to reduction because of variations in the quality or quantity of the work performed," and received their "full salary for any week in which [they] perform . . . any work without regard to the number of days or hours worked."  *Yourman v. Giuliani*, 229 F.3d 124, 128 (2d Cir. 2000) (quoting 29 C.F.R. § 541.118(a)); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *6 (S.D.N.Y. Sept. 29, 2006) (citing 29 C.F.R. § 541.602).  To pass the salary basis test, an employer must prove that its workers' wages were not subject to impermissible deductions from pay.  *Yourman*, 229 F.3d at 128 (citing 29 C.F.R. § 541.118); *see also* 29 C.F.R. § 541.602(a).

[6] In its Counter SOF, Gristede's claims that "co-managers are paid from salary even if they do not precisely work 50 hours per week."  (Counter SOF ¶ 134.)  However, its only "evidence" is a portion of Ms. Clusan's deposition testimony that says nothing of the sort. In the cited testimony, Ms. Clusan claims, based on her "best guess," that Gristede's paid a Co-Manager less than his weekly salary because he "only worked four days instead of his usual five."  (Neilan Dec. Ex. X (Clusan Dep.) 348:12-18.)  She says nothing about paying Co-Managers their full salary when they worked less than their scheduled hours.

[7] Gristede's does not claim that the CBAs applied to Co-Managers.

3

FLSA or the NYLL.[8]  *Yourman*, 229 F.3d at 127-28 (quoting 29 C.F.R. § 541.118(a)).[9]

Gristede's also fails to create an issue of fact as to whether it paid Co-Managers on a salary basis.  It argues that Carlos Torres' employment application, on which he entered his weekly wages under the headings "starting salary" and "ending salary," proves that Mr. Torres and all other Co-Managers were paid on a salary basis.  (Counter SOF ¶ 104.)  This is absurd.  Mr. Torres' employment application has no bearing on whether Gristede's paid him or his co-workers on a "salary basis" as the FLSA and NYLL define the term.[10]  Moreover, Gristede's lawyer is not completely honest in his use of quotes around the words "salary basis." (Nash Dec. ¶ 27 (emphasis in original).) These words are absent from Mr. Torres' application.  (Gr. Ex. 19 (Torres Application).)[11]  Ms. Clusan's testimony that co-managers are "*hired* on a salary basis," (Counter SOF ¶ 104; Clusan Dec. ¶ 7 (emphasis added)), is also insufficient because Ms. Clusan does not claim that Gristede's *actually paid* Co-Managers the same amount regardless of the number of hours they worked.  Indeed, no Gristede's witness makes this claim.[12]

---

[8] Moreover, the CBAs are not evidence of what Gristede's actually paid any Class Member.  Even if the CBAs did require a true salary basis payment, Gristede's actual deductions from Class Members' pay still render them non-exempt. (Pl. Mem. at 11-13.)

[9] If anything, the CBAs are further evidence that Department Managers were hourly employees.  *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 617 (2d Cir. 1991) ("[A] company's general requirement that its employees work at least eight hours in a day strongly suggests that the company views these employees as hourly and not salaried.").

[10] Ironically, Gristede's asks the Court to ignore the testimony of Ms. Clusan, (SOF ¶ 155), and its Regional Director, (SOF ¶¶ 156-158), that Department Managers were "hourly" employees because this is just a "manner of speaking."  (Clusan Dec. ¶ 10.)

[11] *SEC v. Heartland Advisors, Inc.*, 03-C-1427, 2006 U.S. Dist. LEXIS 62450, at 15 n.3 (E.D. Wis. Aug. 31, 2006) ("By putting the word 'tour' in quotes, the SEC indicates that Krueger used that word in his testimony – a misleading indication, at best.").

[12] Likewise, Ms. Clusan's statement that Gristede's currently pays some of its Co-Managers at least $675 per week (Clusan Dec. ¶ 8), is irrelevant because it does not

4

**B.**      **Gristede's Does Not Counter Plaintiffs' Evidence Disproving Salary Basis Payment**.

Although it is not Plaintiffs' burden to disprove salary basis payment, it has clearly done so, and Gristede's fails to rebut Plaintiffs' evidence.  (SOF ¶¶ 85-132.) Instead, Gristede's resorts to smokescreens based on misrepresentations and conjecture. Gristede's presents a laundry list of reasons that <u>might</u> explain its own expert's finding of 4,281 paychecks (SOF ¶¶ 87, 106) for amounts less than Class Members' purported salaries (Def. Mem. at 19; Counter SOF ¶¶ 105, 111, 115, 116, 124-132; Clusan Dec.  ¶¶ 19-22), but never presents evidence of an <u>actual</u> explanation for a single deduction. Gristede's cannot defeat summary judgment through such speculation.[13]

**1.**      **Smokescreen #1:  Deductions During First or Last Workweeks**.

For example, Gristede's guesses that it may have made some partial day deductions in the first or last weeks of Class Members' employment.  (Def. Mem. at 19, 25; Nash Dec. ¶¶ 22-24.)  This guess is contrary to the evidence.  Gristede's expert <u>excluded</u> the first and last weeks of employment from his salary basis analysis (Neilan Dec. Ex. UU (Berkman Report) ¶ 15)[14] yet still found that Gristede's paid all Co-Managers other than Named Plaintiffs less than their purported salaries in at least 20% of

---

address whether Gristede's paid Co-Managers this wage when they worked fewer than their scheduled hours.  (Pl. Mem. at 11-13.)

[13] *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 516 (2d Cir. 1994) (speculation is not sufficient to defeat summary judgment); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations . . . , absent any concrete particulars, would necessitate a trial" in all cases.").

[14] Plaintiffs' expert excluded the first and last weeks of Co-Managers' paychecks only. Neilan Dec. Ex. TT (Schneider Report) ¶ 21, n.10.

workweeks <u>other than the first and last workweeks of employment</u>.  (SOF ¶ 117.)[15]

### 2.      Smokescreen #2:  "Inadvertent" Deductions.

Gristede's also speculates that some of its partial day deductions may have been "inadvertent."  (Counter SOF ¶¶ 105, 115, 124-132; Clusan Dec ¶¶ 19, 21, 22.)  First, Gristede's offers no legal authority (because there is none) for the proposition that "inadvertent" deductions are consistent with salary basis payment.  Second, Gristede's points to no admissible evidence that its deductions were inadvertent.  It could have submitted declarations from witnesses (payroll department employees, store managers, upper managers) with personal knowledge of the reasons for any of the thousands of deductions, but it did not.  Instead it relies on Ms. Clusan's speculation that "deductions can be inadvertently made with respect to salaried based employees, ranging from a few minutes, to a few hours or even on occasion an entire day."  (Clusan Dec. ¶ 21.)

### 3.      Smokescreen #3:  "Corrections"

Gristede's also claims that it may have corrected some of its deductions.  (Clusan Dec. ¶ 21.)  Not only does Gristede's fail to discuss the legal significance, if any, of these imagined corrections,[16] it fails to prove a single one.  Gristede's could have submitted

---

[15] For example, Mr. Nash claims that deductions from Alfred Croker's wages occurred during the first or last weeks of Mr. Croker's employment, (Nash Dec. ¶ 22), but the payroll records on which Mr. Nash relies say otherwise.  One deduction on December 5, 2003 was in the middle of Croker's tenure with Gristede's.  (Def. Ex. 16 (Croker Payroll Records); Neilan Dec. Ex. D (Croker Aff.) ¶ 1; Neilan Dec. Ex. UU (Berkman Report) Table 4, Column 2.)

[16] To the extent that Gristede's attempts to invoke the FLSA "window of correction" (without citing a single case in support thereof), it fails.  The window of correction is available only to employers that have an "objective intention" of paying their employees on a salary basis.  29 C.F.R. § 541.603(a); *see also Martin,* 949 F.2d at 616-17 (denying "window of correction" where employer had policy of docking pay for missing work).  Moreover, if the employees can demonstrate that the "deductions were not merely happenstance, but a routine practice or company policy, the employer may not rely on the

analysis from its expert matching each of its deductions to the purported corrections.  It did not.  It could have submitted declarations from the employees who actually corrected the deductions.  Again, it did not.[17]  Instead, it relies solely on Ms. Clusan's conclusory testimony (Clusan Dec. ¶ 21), and Mr. Nash's attorney declaration  (Nash Dec. ¶¶ 21-23.)  Both are insufficient because they fail to point to a single "correction" of which either declarant has personal knowledge.  *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Hollander*, 172 F.3d at 198.

Moreover, a close examination of the documents on which Mr. Nash relies suggests that Mr. Nash invents these "corrections" after the fact.  (Nash Dec. ¶¶ 22-26.)  The amount of the deduction and the amount of the purported "correction" almost never match, and the purported "correction" is almost never in the week immediately following the deduction.[18]

### 4.    <u>Smokescreen #4:  Comparing Apples to Oranges.</u>

Gristede's also attempts to confuse the Court by asking it to compare the <u>number</u>

---

margin of error tolerated by the regulation."  *Kennedy v. ConEd*, 410 F.3d 365, 372 (7th Cir. 2005).  Gristede's has demonstrated no such intention.  (Pl. Mem. at 13-14; SOF ¶¶ 85-165.)  Further, its 4,281 paychecks for less than their purported salaries are not mere "happenstance."  (SOF ¶¶ 87, 106.)

[17] Gristede's citation to Class Member Michael Cella's declaration is curious.  Mr. Cella simply states that he was "fully compensated for all hours which [he] worked."  (Counter SOF ¶ 131; Def. Ex. 40 (Cella Dec.) ¶ 4.)  He says nothing about whether Gristede's paid him his full salary for weeks in which he did not work his full schedule.  Indeed, Gristede's appears to have paid Mr. Cella for only the hours he worked:  in November 2004, it paid him $459 for 38.25 hours of work instead of his purported salary of $600.  (SOF ¶ 131.)

[18] For example, Mr. Nash claims that Gristede's paid Gilberto Santiago "additional hours in 7 weeks to offset prior deduction[s]."  (Nash Dec. ¶ 22.)  Not only does Gristede's fail to submit evidence as to the reasons for the subsequent payments, they do not match the deductions.  On February 26, 2000, Gristede's paid Mr. Santiago less than his purported salary because he worked 47 hours instead of 50.  (Def. Ex. 9 (Santiago Payroll Records).)  Mr. Nash claims that Gristede's "corrected" this deduction by paying Mr. Santiago for 59 hours a month later on March 25, 2000.  (Nash Dec. ¶ 22.)

of workweeks in which it paid Class Members less than their purported salaries (1,724

weeks for Department Managers and 2,557 for Co-Managers) to the number of days in

the class period (694,200 days).[19]  (Def. Mem. at 24.)  Even Gristede's own expert did not

attempt this sleight of hand.  (Neilan Dec. Ex. UU (Berkman Report) Table 4, Column 2

(expressing the frequency of salary basis violations as a percentage of workweeks).)

### 5.      Smokescreen #4:  Mixing Arguments.

Finally, Gristede's conflates the salary basis issue with the time shaving issue.

(Def. Mem. at 21-22.)  Whether Gristede's shaved time records to deduct unauthorized

overtime is a separate inquiry altogether and is not germane to the salary basis question.

*      *      *

Gristede's does not meet its burden to prove that it paid Class Members on a

salary basis.  This, alone, is enough to entitle Plaintiffs to partial summary judgment.  It

also admits to paying Class Members less than their purported salaries, (Counter SOF

¶¶ 115, 124-132, 141; Clusan Dec. ¶ 22; Neilan Dec. Ex. UU (Berkman Report) Table 4,

Column 2); fails to rebut Plaintiffs' evidence of actual deductions from Class Members'

pay (Pl. Mem. at 13-14; SOF ¶¶ 85-132);[20] and admits to a policy that created a

significant likelihood of such deductions (Pl. Mem. at 13-14; SOF ¶¶ 133-151)[21].  It also

---

[19] Gristede's tries to minimize the significance of these statistics by claiming that, under
*Yourman*, the deductions lack "any direct relevance."  (Def. Mem. at 19-21.)  *Yourman* is
clear, however, that the number of impermissible deductions is just one factor relevant to
the salary basis question, as is "the existence of policies favoring or disfavoring pay
deductions," 229 F.3d at 130.

[20] This evidence includes sworn testimony from Chris Lang, Gristede's Regional
Director, (SOF ¶ 104); Deborah Clusan, Gristede's Payroll Director, (SOF ¶¶ 104-105);
store managers, (SOF ¶¶ 187-216); and Gristede's payroll documents, (SOF ¶¶ 104, 105).
(Pl. Mem. at 13-14.)

[21] Gristede's attempts to rebut this evidence through Ms. Clusan's self-serving declaration
recanting some of her prior testimony.  (Clusan Dec. ¶ 14.)  In her affidavit, Ms. Clusan

admits to a policy of making deductions for routine disciplinary violations.  (Counter SOF ¶¶ 142-151.)

**C.**    <u>**Gristede's Presents No Evidence That It Meets the "Hire or Fire"**</u>
<u>**Prong of the Duties Test**</u>.

Gristede's also fails to point to an issue of fact on an essential element of the duties test – that the Class Members had "the authority to hire or fire other employees or [that their] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given great weight." (Def. Mem. at 10; Pl. Mem. at 9 n.9.)  It is Gristede's burden to meet the duties test and it has not done so.  It attempts to meet the hire or fire prong by citing to deposition testimony of Plaintiffs Phelps, Crema, and DiPreta, (Counter SOF ¶¶ 24, 25, 50, 51), but an examination of the testimony reveals nothing indicating their authority to hire or fire, or their recommendations being given any weight at all.[22]  Gristede's failure to meet the duties test provides an alternate ground for partial summary judgment in Plaintiffs' favor.

---

tries to backpedal by claiming that, in no situation did a Co-Manager or Department Manager ever come in three hours late and that her prior sworn testimony "was intended to indicate that such a situation is so beyond company rules that it would invite scrutiny and disciplinary action whatever the level of the employee involved."  (Clusan Dec. ¶ 14.)  Notably, Clusan does not backpedal all the way.  She merely confirms the policy that employees at any level of the company, including store managers, would be subject to impermissible partial day dockings if they consistently arrived at work three hours late. Moreover, Ms. Clusan had an opportunity to review her deposition transcript and submit an errata sheet in accordance with Federal Rule of Civil Procedure 30(e).  She did not. She cannot create an issue of fact by changing her testimony now.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969).

[22] Although it is not their burden, Plaintiffs have submitted deposition testimony from Ms. Clusan, (SOF ¶ 50), Regional Director Chris Lang, (SOF ¶ 50, 51), Co-Manager Plaintiffs, (SOF ¶¶ 50, 51), and Store Manager Paliophilos, (SOF ¶¶ 24, 25), that the Department Managers and Co-Managers did not have the authority to hire or fire employees.

## II.   CO-MANAGER CLASS MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT ON LIABILITY.

If the Court dismisses Gristede's executive exemption defense, Gristede's is automatically liable to the Co-Manager Plaintiffs and Class Members for overtime compensation.[23]  Gristede's admits that Co-Managers Plaintiffs and Class Members worked more than 40 hours during some workweeks.  (SOF ¶ 33; Counter SOF ¶ 33.)  Gristede's does not rebut Plaintiffs' evidence that it did not pay them an overtime premium for this time.  (SOF ¶ 34.)  Its only response is to claim that it paid "additional compensation to Co-Managers for work performed in *excess of 50 hours* per week, plus premium pay for Sunday shifts."  (Counter SOF ¶ 34 (emphasis added).)  It says nothing about whether it paid overtime compensation for hours 40 to 50, and therefore, admits that it did not.  *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.,* 135 F.3d 831, 835 (2d Cir. 1998).

## III.   THERE IS NO ISSUE OF FACT AS TO THE "UNAUTHORIZED OVERTIME" POLICY.

Plaintiffs present abundant evidence demonstrating Gristede's pattern or practice of editing time records to delete overtime that Gristede's had not approved in advance ("the unauthorized overtime policy").  (Pl. Mem. at 16-22; SOF ¶¶ 166-247.)[24]  The only relevant question is whether Gristede's has come forward with evidence that raises an

---

[23] Gristede's has also failed to prove the elements of its laches, unclean hands, and waiver and estoppel affirmative defenses.  (Pl. Mem. at 22; Def. Mem. at 31.)  Moreover, the cases Gristede's cites are inapplicable because the CBA on which Gristede's relies does not cover Plaintiffs' claims in this matter.  Finally, assuming the CBA did apply to the claims raised, because Plaintiffs and Class Members are not signatories to the CBA, they cannot compel the union to arbitrate claims on their behalf.  Plaintiffs do not believe that these defenses warrant more discussion, but are willing to provide supplemental briefing if the Court so requests.

[24] Gristede's does not dispute that the pattern or practice burden-shifting framework is the appropriate method to resolve Plaintiffs' unauthorized overtime claims.

issue of fact as to the existence of the unauthorized overtime policy.[25]  It has not.

(Counter SOF ¶¶ 170-247.)  Accordingly, there is no need for a trial on this issue.[26]  *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (non-moving party "must point to actual evidence in the record on which a jury could decide an issue of fact its way.").

Gristede's makes a few weak attempts to run from its admissions.  It claims that Plaintiffs have taken Ms. Clusan's testimony "out of context," but it does not contend that the testimony is inaccurate and does not attempt to correct it.  (Counter SOF ¶¶ 172-175.)  It also attempts to muddy the waters by claiming that "unauthorized overtime" was not defined at Ms. Clusan's deposition.  (Clusan Dec. at ¶ 13.)  However, Ms. Clusan repeatedly defined the term herself.  (Clusan Dep. 235:25-236:14; SOF ¶ 175.)

Ms. Clusan also claims that Gristede's employees "can not unilaterally decide to work additional hours on their own," and that it is "improper to infer anything beyond this from [her] deposition testimony."  (Clusan Dec. ¶ 13.)  Her deposition testimony, however, is so clear that no inference needs to be drawn:

> Q:     Does Gristede's have any policies or procedures with respect to unauthorized overtime?
>
> A:     If somebody works unauthorized overtime, they won't be paid for it.

(SOF ¶ 172; *see also* SOF ¶¶ 173-175.)  Finally, Ms. Clusan attempts to recant her prior sworn testimony that it was Gristede's policy not to compensate workers for unauthorized

---

[25] During the liability phase of a *Teamsters* pattern or practice analysis, the Court first determines if there was an objectively verifiable pattern or practice of violating the FLSA and the NYLL – i.e., that not compensating workers for unauthorized overtime was the "standard operating procedure."  (Pl. Mem. at 20.)

[26] At a later damages phase, Gristede's will have the opportunity to present evidence that it made particular edits for lawful reasons. (Pl. Mem. at 20-21.)

overtime.[27]  (Clusan Dec. ¶ 18.)  This tactic cannot defeat summary judgment.[28]

Notably, Ms. Clusan is not the only Gristede's executive who admitted to the unauthorized overtime policy.  District Director Chris Lang did also.  Gristede's offers no evidence to rebut Mr. Lang's testimony.  Instead, Gristede's misrepresents Mr. Lang's testimony by claiming (without submitting an affidavit from Mr. Lang) that "Mr. Lang merely reiterated that overtime must be approved."  (Counter SOF ¶ 176.)  Mr. Lang did much more than that.  He testified that if overtime is unauthorized, the policy is that it is not paid.  (SOF ¶ 176.)  Gristede's also fails to rebut the testimony of its own former store managers, including one who managed Gristede's stores for 21 years.[29]  Both

---

[27] Interestingly, Ms. Clusan acknowledges that "it is possible" that store managers might edit workers time records to eliminate "instances of employees working overtime without authorization" but claims that "if a deduction somehow arose," it would be "a random action" and "would be isolated." (Clusan Dec. ¶ 18.)  Plaintiffs' expert found 42,175 lost hours resulting from these purportedly "isolated," "random action[s]."  (SOF ¶ 244.)  Gristede's also claims, without citing any evidence, that "employee's long-standing failure to punch in and out of work properly and completely" is the reason for the edits and that "most everyone ate lunch and simply forgot to or refused to punch in and out correctly."   (Def. Mem. at 2, 26.)  Not only are these statements unsupported, but they are irrelevant.  In his time shaving analysis, Plaintiffs' expert only examined "complete" payroll records, in which there were no missed punches.  (Neilan Suppl. Dec. Ex. PPPP (Schneider Dep.) at 68:19-69:6.)

[28] *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) ("It is beyond cavil that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.'") (citation omitted).

[29] Gristede's simply claims that Mr. Daly's testimony is not "credible" without submitting any countervailing evidence.  This does not create a factual issue.  *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact") (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).  Gristede's claims that Mr. Familia's declaration is not "admissible" because it was obtained "without the opportunity for cross-examination."  (Counter SOF ¶ 162.)  This is false.  Although Mr. Familia executed his declaration soon after the close of formal discovery, Plaintiffs promptly sent the declaration to Gristede's and offered to facilitate producing Mr. Familia for a deposition.  To date, Gristede's has declined to depose Mr. Familia.  (Neilan Suppl. Dec. Ex. NNNN (James Supp. Dec.) ¶ 2(a).)  Moreover,

testified that Gristede's policy was to delete unauthorized overtime.  (SOF ¶¶ 209-216.)[30]

## IV.   GRISTEDE'S HAS NOT PROVEN GOOD FAITH AND REASONABLENESS

Gristede's has not presented any evidence from which a factfinder could determine that it acted in "good faith" <u>and</u> had reasonable grounds for believing that its acts or omission did not violate the FLSA when it misclassified Plaintiffs and shaved time from their time records.  If Gristede's does not prove good faith and reasonableness, the Court must award Plaintiffs liquidated damages.  (Pl. Mem. at 24-26.)

Rather than attempt to prove good faith and reasonableness, Gristede's simply claims that its human resources director was "well versed in the rules in the FLEA [sic] and NIL [sic]."  (Counter SOF ¶¶ 258-265.)  Ms. Clusan's familiarity with the overtime laws, however, has no bearing on Gristede's good faith or reasonableness.[31]  Although an

---

Gristede's has not moved to strike Mr. Familia's declaration so it remains in the record and Mr. Familia will be a witness at trial, if a trial is necessary.

[30] Plaintiffs also submit, and Gristede's fails to rebut, other significant evidence of unpaid overtime.  For example, Gristede's submits no evidence to refute testimony that it did not pay workers for work they performed <u>before their scheduled shifts</u>.  (SOF ¶ 167.)  Gristede's merely states that "Department Managers were compensated <u>for their scheduled shifts</u>." (Counter SOF ¶ 167 (emphasis added).)  Gristede's also submits no evidence refuting testimony that workers worked through their unpaid lunch breaks. (SOF ¶ 169.)  Instead, Gristede's summarily states that there is "no actual proof that Department Managers worked through lunch." (Counter SOF ¶ 169.)  Gristede's also ignores, and fails to rebut the following: testimony from two former store managers that they deleted unauthorized overtime from workers' time records, (SOF ¶¶ 209-216), (Gristede's claims that it is not admissible or not credible (Counter SOF ¶¶ 209-216)); testimony of its current manager that the only explanation for his edits to workers' time records is "unauthorized overtime," (SOF ¶¶ 198, 200, 202), (Gristede's does not even submit a declaration from this store manager); testimony from the Payroll Manager that she eliminated hours from workers' time records at the direction of management, (SOF ¶¶ 230, 232-235), (Gristede's claims, without citing to evidence, that the Payroll Manager was "advised on occasion to correct errors") (Counter SOF ¶¶ 230-235); and testimony of Plaintiffs that they were not paid for all the hours they worked, (Counter SOF ¶¶ 177-183), (Gristede's simply claims that they are not credible (Counter SOF ¶¶ 177-183)).

[31] It is also demonstrably false.  Gristede's not only fails to cite any proof that Ms. Clusan was "well versed" in overtime laws (she does not make this claim in her declaration), but

employer can prove good faith and reasonableness in a number of ways, *see, e.g., Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 472 (S.D.N.Y. 2006) (reliance on counsel's advice may establish good faith defense if sufficiently specific to jobs at issue), Gristede's does not even attempt to do so.  It also fails to rebut Plaintiffs' evidence to the contrary.  (*Compare* SOF ¶¶ 258-59, 261-63, *with* Counter SOF ¶¶ 258-265.)

## V.   GRISTEDE'S DOES NOT REBUT PLAINTIFFS' EVIDENCE OF WILLFULNESS.

Gristede's does not even address, let alone rebut, Plaintiffs' claim that a three year statute of limitations should apply because Gristede's FLSA violations were willful.  Instead, Gristede's simply denies liability.  (Def. Mem. at 28.)[32]  Obviously, there can be no willful FLSA violation if there is no violation at all.  But, if the Court finds that Gristede's violated the FLSA, it should also find that Gristede's did so willfully, given Plaintiffs' light burden to prove willfulness, (Pl. Mem. at 27), and Gristede's failure to present evidence to the contrary.  (*Compare* SOF ¶¶ 171, 177-183, 185-265, *with* Counter SOF ¶¶ 171, 177-183, 185-265.)  *See El*, 479 F.3d at 238.

## VI.   GRISTEDE'S HAS NOT DEMONSTRATED RECORDKEEPING COMPLIANCE.

Gristede's does not identify an issue of fact as to its violations of the FLSA and the NYLL recordkeeping provisions.  Plaintiffs point to evidence, including Gristede's own admissions, that it did not preserve any Class Member time records from April 30, 1998 through December 31, 1999 (SOF ¶¶ 248-49) and that it did not maintain accurate time records for Co-Manager Class Members at all  (SOF ¶¶ 250-56).  In response,

---

also ignores her own testimony that she never had any FLSA training.  (SOF ¶ 260.)
[32] Gristede's also argues (without legal citation) for a two year limitations period because, it claims, Plaintiffs did not prove "bad faith."  (Def. Mem. at 28.)  "Bad faith," however, is not relevant to the FLSA statute of limitations issue.  The standard is willfulness (Pl Mem. at 27), which Plaintiffs have proved.  (Pl. Mem. at 27.)

Gristede's first refers to the "hundreds of thousands of <u>payroll records</u>" it produced during discovery, but says nothing about time records. (Counter SOF ¶¶ 248-57 (emphasis added).) Moreover, it is not enough that Gristede's maintained some records. The FLSA mandates that Gristede's maintain all records. 29 C.F.R. § 516.2(a)(7) ("total hours worked <u>each</u> workweek") (emphasis added). (Pl. Mem. at 30.)

Gristede's also summarily claims that it "complied with the record keeping obligations under applicable law." (Counter SOF ¶¶ 248-257.) As "evidence," Gristede's cites two paragraphs in Ms. Clusan's declaration, neither of which even addresses recordkeeping. (Clusan Dec. ¶¶ 4, 23.)[33] Such conclusory statements cannot defeat summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## VII. THERE IS NO ISSUE OF FACT REGARDING GRISTEDE'S COUNTERCLAIMS.

More than two years after filing counterclaims against Plaintiffs Torres and Chewning, Gristede's now articulates a cause of action for the first time – the faithless servant doctrine.[34] Gristede's claims that Torres engaged in sexual harassment and that Chewning engaged in credit card fraud but fails to points to any admissible evidence of such conduct. Torres and Chewning are entitled to summary judgment on this ground alone. Moreover, even if Gristede's had produced evidence of misconduct, the Court should still dismiss the counterclaims because the alleged misconduct does not support a cause of action under the faithless servant doctrine. To credit Gristede's counterclaims

---

[33] In paragraph 25 of Ms. Clusan's declaration, which Gristede's does not cite, Ms. Clusan claims that "mainframe <u>payroll</u> information is available and was produced to plaintiffs." (Clusan Dec. ¶ 25.) She does not, however, claim that Gristede's maintained or produced <u>time</u> records from the period before 2000 or for Co-Managers.

[34] For purposes of this motion, Plaintiffs Torres and Chewning assume that Gristede's has sued them for violation of the faithless servant doctrine. Gristede's, however, has not amended the Counterclaims to give them fair notice of its claim and allegations against them. *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002).

would be to stretch the faithless servant doctrine far beyond its broadest application, and would validate a method for employers to intimidate and retaliate against employees who act to protect their rights.  The Court should reject this invitation.  Finally, the counterclaims must be dismissed for lack of subject matter jurisdiction.

### A.     <u>Gristede's Presents No Evidence of Misconduct</u>.

Gristede's does not meet its burden to prove improper conduct underlying its faithless servant claims.  It points to no admissible evidence that Mr. Torres engaged in sexual harassment.  Its only "evidence" is a report of an internal investigation that constitutes hearsay, and double hearsay, under Federal Rule of Evidence 801.[35]  Such hearsay statements cannot defeat a summary judgment motion under Rule 56(e).  *Patterson*, 375 F.3d at 219.  Likewise, Gristede's submits no evidence regarding Mr. Chewning's purported credit card fraud.  (Def. Mem. at 34.)[36]  Gristede's only "evidence" are "cashier checkout" forms and a credit card receipt for $200 (Def. Ex. 37) that are unauthenticated and cannot even be linked to Mr. Chewning.[37]

### B.     <u>The Counterclaims Fail as a Matter of Law</u>.

Even if Gristede's could prove the alleged misconduct, its faithless servant claims fail as a matter of law.  The faithless servant doctrine is a narrow claim that allows an employer to recover an employee's compensation only where the employee breaches the

---

[35] Gristede's has not authenticated the report as a business record or established any other exception to the hearsay rule.  The only admissible evidence on this issue is Mr. Torres's deposition testimony that he did not sexually harass anyone.  (Def. Ex. 21 (Torres Dep.) at 173:2-5; 182:7-183:11; 184:4-186:17; 190:13-17.)

[36] Defense counsel's unsupported declaration (Nash Dec. ¶ 69) and Ms. Clusan's conclusory statements regarding Mr. Chewning (Clusan Dec. ¶ 30) should be stricken because neither establishes that they have personal knowledge of the facts underlying them. Fed. R. Civ. P. 56(e); *Beyah v. Coughlin*, 789 F.2d 986, 989-90 (2d Cir. 1986).

[37] The only admissible evidence on point is Mr. Chewning's deposition testimony that he did not engage in any fraudulent activity.  (Def. Ex. 30 (Chewning Dep.) at 32:9-64:13.)

16

duty of loyalty. *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 928 (1977). An employer

can prove a breach of the duty of loyalty only if (1) "the employee's disloyal activity was

related to 'the performance of his duties,'" and (2) "the disloyalty 'permeated the

employee's service in its most material and substantial part.'"[38] The faithless servant

doctrine applies only where an employee's conduct is disloyal vis-à-vis her employer's

business interests, typically competing with her employer, not where conduct is merely

unethical, or even criminal.[39]

Here, Gristede's fails on both prongs. First, it has not even alleged disloyal

conduct. Gristede's cites no cases to support its position that sexual harassment or credit

card fraud on a customer are disloyal or faithless as contemplated by the doctrine because

no court has ever found as much. Second, Gristede's does not allege, let alone prove, that

the conduct "permeated the employee's service in its most material and substantial

part."[40] Gristede's claim rests on isolated incidents of alleged wrongdoing, which are

insufficient as a matter of law to support application of the faithless servant doctrine.[41]

Finally, the damages Gristede's seeks are not available under the faithless servant

doctrine. The only remedy that courts have awarded for violations of the faithless servant

doctrine is recoupment of wages. *See, e.g., Murray v. Beard*, 102 N.Y. 505, 508 (1886);

---

[38] *Sanders v. Madison Square Garden, L.P.*, No. 06 Civ. 589, 2007 U.S. Dist. LEXIS 48126, at *10 (S.D.N.Y. July 2, 2007) (citations omitted); *see also Phansalkar v. Anderson Weinroth & Co., L.P.*, 344 F.3d 184, 201 (2d Cir. 2003) (applying, alternatively, standard that employee's misconduct must "substantially violate . . . the contract of service" to warrant forfeiture of the employee's salary").

[39] *Sanders*, 2007 U.S. Dist. LEXIS 48126, at *12 ("neither operating an outside business nor unethical conduct unrelated to employment violates the faithless servant doctrine unless such business or behavior adversely affects the employee's job performance.").

[40] *Id.*, 2007 U.S. Dist. LEXIS 48126, at *10 (quoting *Phansalkar*, 344 F.3d at 203).

[41] *Phansalkar*, 344 F.3d at 201-02 & n.12 (summarizing New York cases indicating that single acts of disloyalty do not trigger faithless servant doctrine).

*Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138 (1936); *Wechsler v. Bowman*, 285 N.Y. 284, 292 (1941); *Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc.*, 474 N.Y.S.2d 281, 287 (N.Y. App. Div. 1984).  Gristede's does not seek to recover Plaintiffs' compensation.[42]

### C.   The Court Has No Subject Matter Jurisdiction Over the Counterclaims.

The Court has no subject matter jurisdiction over the Counterclaims because they do not "derive from a common nucleus of operative facts" as Plaintiffs' federal claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  (Pl. Mem. at 34-35.) Gristede's does not dispute this but, instead, claims that the Counterclaims are "compulsory."  They are not.  Under Fed. R. Civ. P. 13(a), a counterclaim is compulsory only "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  This standard is met only where the "essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."[43]  Here, Plaintiffs' claims and Gristede's counterclaims arise out of entirely different transactions. Evidence of Gristede's wage and hour practices and evidence of alleged fraud and sexual harassment do not overlap.

---

[42] Gristede's seeks to recover $13,848.91 from Mr. Torres for the purported costs of investigating sexual harassment allegations and opposing Mr. Torres's unemployment insurance claims, (Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶¶ 67-68, 70), and $2,000 for the purported costs of its investigation of Mr. Chewning.  (Neilan Dec. Ex. DDDD (Answer to Third Amended Complaint) ¶¶ 75-70.)

[43] *Critical-Vac Filtration Corp. v. Minuteman Int'l Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) (emphasis in original) (quotation marks and citation omitted); *see also Spencer v. Banco Real, S.A.*, 623 F. Supp. 1008 (S.D.N.Y. 1985) (dismissing employer's replevin counterclaim for lack of a relationship to plaintiff's employment discrimination claim).

## VIII.   GRISTEDE'S HAS NOT JUSTIFIED THE COUNTERCLAIMS.

Plaintiffs Torres and Chewning are entitled to summary judgment on their retaliation claims because Gristede's has not articulated a legitimate, non-retaliatory reason for suing them, and has failed to rebut Plaintiffs' evidence of retaliation.  Plaintiffs have clearly established a *prima facie* case of retaliation.  (Pl. Mem. at 35.)  Gristede's concedes that Torres and Chewning have met the first two prongs.  (Pl. Mem. at 36; Def. Mem. at 32.)  Legal proceedings initiated in response to protected activity satisfy the third prong.  (Pl. Mem. at 36-37.)  Gristede's has not cited one case to the contrary.

Having established a *prima facie* case, the burden shifts to Gristede's to state a "legitimate non-discriminatory reason."  *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004).  This, Gristede's has not done. Gristede's merely states in conclusory fashion that it filed the Counterclaims "because of the compulsory counterclaim rules in the federal courts."  (Counter SOF ¶¶ 266-267; Def. Mem. at 32.)  As explained above the Counterclaims were not compulsory, *see infra* at 19, and Gristede's has not submitted any evidence that it believed them to be.

Moreover, even assuming Gristede's believed that the Counterclaims were compulsory (that they would have been waived had it not filed them in this lawsuit), Gristede's has submitted no evidence explaining <u>why</u> it filed them.  The only evidence in the record indicates that retaliation was the reason.  (SOF ¶¶ 266- 279.)  Gristede's offers no evidence to rebut it.   (Counter SOF ¶¶ 266-279.)  Where a defendant fails to rebut evidence of unlawful conduct, the plaintiff is entitled to summary judgment.  *See El*, 479 F.3d at 238; *EEOC v. Alamo Rent-A-Car LLC*, 432 F. Supp. 2d 1006 (D. Az. 2006).

Gristede's also fails to rebut Mr. Nash's admission that Gristede's filed the Counterclaims because Torres and Chewning sued Gristede's.  (SOF ¶ 272.)  Instead, Gristede's summarily claims that Plaintiffs "mischaracterize the import of the April 27, 2005 conference" (Counter SOF ¶¶ 272-275), without submitting an affidavit from Mr. Nash explaining his view of its true "import."

Gristede's does not claim that it is its practice to sue former employees accused of sexual harassment or improper conduct, or that it has ever done so before.  It does not even claim that it truly believed it had a valid cause of action.  Indeed, Gristede's does not even seek relief available under its legal theory.  *See infra* at 18-19.  (SOF ¶¶ 278, 279.)  No rational jury could find that the Gristede's was motivated by anything other than retaliation when it sued Torres and Chewning.

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' moving papers, this Court should grant Plaintiffs' motion in its entirety.

Dated:      New York, New York          Respectfully submitted,
            August 31, 2007             **OUTTEN & GOLDEN LLP**

                                        By:
                                        /s/ Justin M. Swartz
                                        Justin M. Swartz (JS 7989)

                                        Adam T. Klein (AK 3293)
                                        Justin M. Swartz (JS 7989)
                                        Linda A. Neilan (LN 4095)
                                        Anjana Samant (AS 5163)
                                        **Outten & Golden LLP**
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        (212) 245-1000
                                        **Attorneys for Plaintiffs and the Class**

20