**MORGAN, LEWIS & BOCKIUS LLP**
Christopher A. Parlo (CP-4310)
Amanda N. Slatin (AS-5070)
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CARLOS TORRES, RUBEN MORA,
BOBBY IRIZARRY, LEWIS CHEWNING,
GILBERTO SANTIAGO, WILLIAM HELWIG,
ROBERT MISURACA, JOSEPH CREMA,
MARIO DIPRETA, VICTOR PHELPS,
JOSELITO AROCHO, ALFRED CROKER,
DANIEL SALEGNA, FRANK DELEON, and
ROBERT PASTORINO, on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

   -against-

GRISTEDE'S OPERATING CORP.; NAMDOR,
INC.; GRISTEDE'S FOODS, INC.; CITY
PRODUCE OPERATING CORP.; GRISTEDE'S
FOODS NY, INC., JOHN CATSIMATIDIS,
JAMES MONOS, and GALO BALSECA,

                    Defendants.

Civil Action No. 04 CV 3316 (PAC)

*ELECTRONICALLY FILED*

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON INDIVIDUAL LIABILITY AS TO JOHN CATSIMATIDIS

Of Counsel:

Christopher A. Parlo (CP-4310)
Amanda N. Slatin (AS-5070)

# TABLE OF CONTENTS

Page

STATEMENT OF MATERIAL FACTS...................................................................... 1

ARGUMENT ............................................................................................................ 1

I.    THE APPLICABLE SUMMARY JUDGMENT STANDARDS ..................................... 1

      A.    Applicable Principles Under Federal Rule Of Civil Procedure 56 .........................1

      B.    The Requirements Of Local Civil Rule 56.1 ........................................................1

      C.    Applicability Of These Standards To This Action ................................................2

II.   Mr. Catsimatidis is not an employer under the flsa .......................................... 2

      A.    Plaintiffs Ignore The Definition Of Employer Under The FLSA...........................2

      B.    Plaintiffs Misstate The Test For Determining Whether An Individual
            Corporate Manager Or Official Is An Employer Under The FLSA .......................4

      C.    Using The Purported Facts They Have Alleged, At Best For Plaintiffs,
            Numerous Disputed Issues Of Material Fact Preclude Summary Judgment
            From Being Granted To Them Under The Economic Realities Test .....................6

            1.    Mr. Catsimatidis Did Not Hire Or Fire Any Co-manager Or
                  Department Manager, And Only Occasionally Hired A Very
                  Senior Level Executive ............................................................................7

            2.    The Record Does Not Contain Any Evidence That Mr.
                  Catsimatidis  Supervised And/Or Controlled The Work Schedules
                  Or Conditions Of Employment Of Any Co-Manager, Department
                  Manager Or Any Other Employee..............................................................9

            3.    The Record Does Not Contain Any Evidence That Mr.
                  Catsimatidis Determined The Rate And Method Of Payment Of
                  Any Co-Manager, Department Manager Or Any Other Employee...........13

            4.    The Record Does Not Contain Any Evidence That Mr.
                  Catsimatidis Maintained, Or Had Anything To Do With, Any
                  Employment Records...............................................................................15

      D.    Summary Judgment Must Be Denied For The Period After 2000 For The
            Additional Reason That Plaintiffs Have Not Submitted Any Evidence At All
            Regarding Any Material Fact That Could Satisfy The Test ................................ 16

E.     The Potential To Control Certain Aspects Of An Enormous Corporation's Activities Which Are Wholly Unrelated To Any Employees At Issue In A Dispute Cannot Give Rise To Individual Liability ........................................................... 18

F.     The Actual, Undisputed Facts Also Cannot Support a Finding of General Operational Control ............................................................................................... 21

III.    Mr. Catsimatidis cannot be held individually liable under the new york labor law ........ 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

APWU, AFL-CIO v. Potter,
    343 F.3d 619 (2d Cir. 2003)........................................................................................4

Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,
    515 F.3d 1150 (11th Cir. 2008) ..........................................................................5, 19

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).....................................................................................................1

Ansoumana v. Gristede's Operating Corp.,
    255 F. Supp. 2d 184 (S.D.N.Y. 2003)......................................................................16

Baystate Alternative Staffing, Inc. v. Herman,
    163 F.3d 668 (1st Cir. 1998).....................................................................................15

Bravo v. Eastpoint International, Inc.,
    No. 99 Civ. 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) ..............................5

Bullock v. Presbyterian Hospital in City of New York,
    No. 95 Civ. 3928, 1996 WL 328740 (S.D.N.Y. June 13, 1996).......................24, 25

Carter v. Dutchess Community College,
    735 F.2d 8 (2d Cir. 1984) ..............................................................................4, 5, 6

Chen v. Street Beat Sportswear, Inc.,
    364 F. Supp. 2d 269 (E.D.N.Y. 2005) ...............................................................8, 25

Donovan v. Agnew,
    712 F.2d 1509 (1st Cir. 1983)...............................................................................3, 5

Donovan v. Grim Hotel Company,
    747 F.2d 966 (5th Cir. 1984) .....................................................................................9

Duncan v. Walker,
    533 U.S. 167 (2001).....................................................................................................3

Falk v. Brennan,
    414 U.S. 190 (1973)...................................................................................................18

Herman v. RSR Security Services Ltd.,
    172 F.3d 132 (2d Cir. 1999)............................................2, 4, 5, 6, 7, 9, 12, 14, 22


iii

Jin v. Mukasey,
    538 F.3d 143 (2d Cir. 2008)................................................................................3

Johnson v. A.P. Products, Ltd.,
    934 F. Supp. 625 (S.D.N.Y. 1996)...................................................................5, 21

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,
    475 U.S. 574 (1986)..........................................................................................1

Mendis v. Filip,
    554 F.3d 335 (2d Cir. 2009)................................................................................3

Moskal v. United States,
    498 U.S. 103 (1990)..........................................................................................3

Patel v. Wargo,
    803 F.2d 632 (11th Cir. 1986) ........................................................................5, 19

Puello v. Bureau of Citizenship & Immigration Services,
    511 F.3d 324 (2d Cir. 2007)................................................................................3

Rubin v. Tourneau, Inc.,
    797 F. Supp. 247 (S.D.N.Y. 1992)...................................................................5, 12

Tablie v. Gonzalez,
    471 F.3d 60 (2d Cir. 2006)..................................................................................4

United States v. Kozeny,
    541 F.3d 166 (2d Cir. 2008)................................................................................3

U.S. Department of Labor v. Cole Enterprises, Inc.,
    62 F.3d 775 (6th Cir. 1995) ..............................................................................15

Wilke v. Salamone,
    404 F. Supp. 2d 1040 (N.D. Ill. 2005) ........................................................15, 20, 21

Wirtz v. Pure Ice Co., Inc.,
    322 F.2d 259 (8th Cir. 1963) ..........................................................................5, 20

Zheng v. Liberty Apparel Company, Inc.,
    355 F.3d 61 (2d Cir. 2003)..............................................................................4, 6

**STATE CASES**

Stoganovich v. Dinolfo,
    473 N.Y.S.2d 972 (1984)...................................................................................25

**FEDERAL STATUTES**

29 C.F.R. § 779.19 ..........................................................................................2

29 C.F.R. § 779.203 ........................................................................................2

29 U.S.C. § 203(d) ......................................................................................2, 14

Fed. R. Civ. P. 56(c) ................................................................................1, 2, 17

Fed. R. Civ. P. 56(e)(1) .................................................................................17

Fed. R. Civ. P. 56(e) ........................................................................................2

Fed. R. Civ. P. 56(e)(2) ...................................................................................1

**MISCELLANEOUS**

L. Civ. R. 56.1(a) ........................................................................................1, 2

L. Civ. R. 56.1(d) ........................................................................................1,2

Defendants submit this memorandum of law in opposition to the motion of the Plaintiffs

to impose individual, personal liability upon John Catsimatidis ("Mr. Catsimatidis").

## STATEMENT OF MATERIAL FACTS

See Defendants' Counterstatement of Material Facts under Fed. R. Civ. P. 56(e)(2).

## ARGUMENT

### I.     THE APPLICABLE SUMMARY JUDGMENT STANDARDS

#### A.      Applicable Principles Under Federal Rule Of Civil Procedure 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate:

> [I]f the pleadings, depositions, answers to interrogatories and admissions on file,
> together with any affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as a matter of
> law.

Fed. R. Civ. P. 56(c).  It is well-settled that a party moving for summary judgment has the

burden of meeting this standard, i.e., establishing that there is no genuine issue of material fact.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Moreover, when viewing all the

evidence, the Court must draw all inferences that can be drawn from the underlying facts "'in the

light most favorable to the party opposing the motion.'"  Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citation omitted).  Here, all such inferences

must be drawn in favor of Mr. Catsimatidis.

#### B.      The Requirements Of Local Civil Rule 56.1

Local Civil Rule 56.1 ("Rule 56.1") provides:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules
> of Civil Procedure, there shall be annexed to the notice of motion a separate, short
> and concise statement, in numbered paragraphs, of the material facts as to which
> the moving party contends there is no genuine issue to be tried.  Failure to submit
> such a statement may constitute grounds for denial of the motion.

L. Civ. R. 56.1(a).  Rule 56.1 furthers provides that "[e]ach statement by the movant . . . must be

followed by citation to evidence which would be admissible, set forth as required by Federal

Rule of Civil Procedure 56(e)."  L. Civ. R. 56.1(d).

### C.   Applicability Of These Standards To This Action

Typically, in determining whether summary judgment should be granted, the only relevant inquiry is whether the moving party has established that no genuine issue of material fact exits.  Fed. R. Civ. P. 56(c).  Here, however, two important summary judgment principles are applicable.  First, for the earlier portion of the time period covered by the statutes of limitation in this case, up until approximately 2000, at best for Plaintiffs a disputed issue of fact exists.  See Section II.C, infra.  Second, for the latter portion of the time period covered by the statutes of limitation, from approximately 2000 to the present, Plaintiffs have not submitted any admissible evidence on any material facts that could establish that Mr. Catsimatidis was their employer.  Accordingly, wholly aside from the question of whether a genuine issue of material fact exists, Plaintiffs' motion must be denied for this latter time period as they have not made any showing at all, and have, therefore, failed to satisfy their initial burden.  See Section II.D, infra.  See also L. Civ. R. 56.1(a) ("Failure to submit such a statement may constitute grounds for denial of the motion."); Fed. R. Civ. P. 56(e); L. Civ. R. 56.1(d).

## II.   MR. CATSIMATIDIS IS NOT AN EMPLOYER UNDER THE FLSA

### A.   Plaintiffs Ignore The Definition Of Employer Under The FLSA

Section 203(d) of the FLSA contains a specific definition of "employer," as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d) (emphasis added).  While they concede that this definition of "employer" is applicable (Plaintiffs' Brief ("Pls. Br.") at 6), Plaintiffs do not devote a single word of their brief to the requirement that the direct or indirect actions of the employer must be "in relation to an employee . . . ."  29 U.S.C. § 203(d) (emphasis added).[1]

---

[1] As the Second Circuit has noted, because it is framed so broadly, the definition of "employer" in the FLSA "offers little guidance on whether a given individual is or is not an employer."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  That is in fact an understatement, as the FLSA provides no guidance on the subject, and the Department of Labor, the entity charged with implementing the FLSA, has not issued any regulations or provided any other guidance to fill the gap.  See, e.g., 29 C.F.R. §§ 779.19, 779.203 (simply repeating the language of the statute).

The Second Circuit, however, has confirmed that the words "in relation to an employee" must have some meaning, noting, in <u>Herman</u>, that one factor in assessing whether an individual or entity is an employer is "whether the alleged employer possessed the power to control <u>the workers in question</u>."  <u>Herman</u>, 172 F.3d at 139 (emphasis added); <u>see also</u> <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1513 (1st Cir. 1983) ("Nor do we think too much weight can be put on the Act's broadly inclusive definition of 'employer.'  Taken literally and applied in this context, it would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees.").  Accordingly, the actions of the "employer" must be directed towards employees, and not towards just "some" workers or "any" workers, but towards the "workers in question."  <u>Id.</u>  <u>See also</u> cases cited in Section II.E, <u>infra</u>.

Plaintiffs' failure to acknowledge this critical aspect of the definition of employer, as explained below, would render the phrase "in relation to an employee" nugatory, and read it out of the FLSA.  Such statutory treatment is not permissible in this Circuit, in which:

> It is 'a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'

<u>Mendis v. Filip</u>, 554 F.3d 335, 341 (2d Cir. 2009) (quoting <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001)); <u>Jin v. Mukasey</u>, 538 F.3d 143, 153 (2d Cir. 2008) (same) (citation omitted).  <u>See also</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" // "We are thus 'reluctan[t] to treat statutory terms as surplusage' in any setting.") (internal quotation marks and citations omitted) (brackets in original)); <u>Moskal v. United States</u>, 498 U.S. 103, 109 (1990) ("a court should 'give effect, if possible, to every clause and word of a statute'"); <u>United States v. Kozeny</u>, 541 F.3d 166, 171 (2d Cir. 2008) ("Statutory  enactments should, moreover, be read so as 'to give effect, if possible, to every clause and word of a statute.'"); <u>Puello v. B.C.I.S.</u>, 511 F.3d 324, 330 (2d Cir. 2007) (recognizing the court's "usual practice of rejecting a reading of a statute that would render a section of it superfluous," and holding that "'[a] statute must, if reasonably possible, be

construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless.'") (citations omitted); <u>Tablie v. Gonzalez</u>, 471 F.3d 60, 64 (2d Cir. 2006) (same); <u>APWU, AFL-CIO v. Potter</u>, 343 F.3d 619, 626 (2d Cir. 2003) (same).

**B.   Plaintiffs Misstate The Test For Determining Whether An Individual Corporate Manager Or Official Is An Employer Under The FLSA**

In addition to ignoring the requirement "in relation to an employee," Plaintiffs also misstate the test to be applied in the Second Circuit to determine whether an individual corporate officer can be personally held jointly and severally liable. Plaintiffs assert that the "primary test" is "the power to control test." Pls. Br. at 9. Plaintiffs cite no authority to support that position. They make reference to <u>Herman</u>, however, and note that in <u>Herman</u> the Court stated that "the 'overarching concern' when determining individual liability is 'whether the alleged employer *possessed the power* to control the workers in question.'" Pls. Br. at 7 (emphasis added by Plaintiffs). However, the Second Circuit in Herman did <u>not</u> say that the "primary test" is a power to control test, nor did it hold that the overarching concern is solely whether an alleged employer had the power to control some group of workers.

Citing its prior ruling in <u>Carter v. Dutchess Community College</u>, 735 F.2d 8, 12 (2d Cir. 1984), the Court in <u>Herman</u> actually held:

> [T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, *see Carter*, 735 F.2d at 12, <u>with an eye to the</u> '<u>economic reality presented by the facts of each case</u>.'

172 F.3d at 139 (emphasis added). The Court in <u>Herman</u> then went on to state the applicable test, the economic reality test, and four of the factors the Courts are to apply under that test. <u>Id.</u>[2]

Accordingly, the Second Circuit in <u>Herman</u> did not hold that "possessing the power" to control employees was a "primary test" or the dispositive factor. <u>Id.</u> Indeed, in its prior decision in <u>Carter</u>, upon which the Court relied in <u>Herman</u>, the Court expressly found error in the actions of a district court which gave "undue weight to the control factor alone." <u>Carter</u>, 735 F.2d at 12-

---

[2] The Second Circuit has also made clear that assessing whether an "entity is an employer . . . involves three types of determinations": (1) historical findings of fact that underlie each of the relevant economic realities factors; (2) findings as to the existence and degree of each factor; and (3) conclusions of law to be drawn from applying the factors. <u>Zheng v. Liberty Apparel Co., Inc.</u>, 355 F.3d 61, 76 (2d Cir. 2003).

13 ("We hold that it was error to have granted defendants' motions on the basis of 'ultimate control' – whether viewed as one factor of the economic reality test or as an independent ground. A full inquiry into the true economic reality is necessary."). Instead, according to the Second Circuit, it is "common ground" that the economic realities test is to be applied to determine whether an employment relationship exists (using the four factors noted below). Id.

Accordingly, the appropriate and only test to apply in determining whether Mr. Catsimatidis can be personally liable is the economic realities test, and not some amorphous possibility of his potential power to control some senior group of executives. Herman, 172 F.3d at 139-40; Carter, 735 F.2d at 12-14; Bravo v. Eastpoint Int'l, Inc., No. 99 Civ. 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) (directing plaintiff's counsel to apply the opinion in Herman, "where the Court applies the 'economic reality' test," and noting that "[i]ndividuals may be liable as joint employers under the FLSA only if they possess the power to control the workers in question") (emphasis added) (citation omitted); Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996) (noting that because the FLSA definition of "employer," if taken literally, "would support liability against any agent or employee with supervisory power over employees," the "economic reality of the relationship" has constrained and guided courts' interpretation); Rubin v. Tourneau, Inc., 797 F. Supp. 247, 252 (S.D.N.Y. 1992) (same). See also Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986) (whether an officer might have played a greater role in day to day operations is not the issue, the relevant test is whether he actually did); Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1161 (11th Cir. 2008) ("Patel instructs us that unexercised authority is insufficient to establish liability as an employer."); Donovan, 712 F.2d at 1514 (applying an "economic reality approach" and holding that only corporate officers "who had operational control of significant aspects of the corporation's day-to-day functions, including compensation of employees" could be held individually liable); Wirtz v. Pure Ice Co., Inc., 322 F.2d 259, 262 (8th Cir. 1963) (holding no employer relationship where majority stockholder could have taken over control and supervised the employees at issue but did not).

Under the economic realities test, the four most commonly recognized factors are whether the individual or entity alleged to be an employer: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Herman, 172 F.3d at 139; Carter, 735 F.2d at 14.[3]  The Court further noted that "[n]o one of the four factors standing alone is dispositive." Herman, 172 F.3d at 139 (citation committed).  Instead, according to the Court, "the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." Id. (citation omitted).

### C.   Using The Purported Facts They Have Alleged, At Best For Plaintiffs, Numerous Disputed Issues Of Material Fact Preclude Summary Judgment From Being Granted To Them Under The Economic Realities Test

A careful review of the testimony cited by Plaintiffs, together with the rest of the record, makes clear that Plaintiffs have no admissible evidence to support any of the elements of the economic realities test, particularly for the period from 2000 to the present.  Instead, Plaintiffs have grossly exaggerated and misstated the content of the testimony and other evidence, and seek unwarranted inferences to which they are not entitled.  As it could take up the full page limit of this brief to set forth all of these issues, Defendants have prepared a detailed chart which points out all of the problems with Plaintiffs' purported proof, which is attached to the Affidavit of Christopher A. Parlo ("Parlo Aff.") as Exhibit ("Ex.") 1.

Moreover, even if all of the "proof" Plaintiffs have offered was actually supported in the record, for the period from 1998 to 2000 other undisputed evidence in the record presents a directly opposite picture.  See Defendants' Counter Statement of Material Facts.  Thus, as to Plaintiffs' motion, at best a genuine issue of material fact exists during this period which precludes a summary judgment.[4]  As to the period after 2000, Plaintiffs have not presented any

---

[3] In listing these four factors, Defendants are not taking the position that only those factors may be considered by the Court as part of the economic realities test.  To the contrary, as the Second Circuit pointed out in Zheng, 355 F.3d at 69, it would be reversible error to say only those factors can rigidly be considered.

[4] Given the individualized, fact intensive nature of the economic realities test, summary judgment on the issue of individual liability has rarely been granted in this Circuit.  Indeed, as the court noted in Zheng, 355 F.3d at 76 n.13, "two of the three leading cases in this circuit were appeals from judgments following

evidence concerning any material facts relevant under the economic reality test, and, so, summary judgment must be denied for that period as well.  See Section II.D, supra.

### 1. Mr. Catsimatidis Did Not Hire Or Fire Any Co-manager Or Department Manager, And Only Occasionally Hired A Very Senior Level Executive

While Plaintiffs claim that "Catsimatidis meets the first prong of the economic reality [sic] test" (Pls. Br. at 10), they present no evidence that Mr. Catsimatidis was involved in the hiring or firing of a single store employee, at any time, in any store, during the entire eleven year period from 1998 to the present.  See Pls. Br.  Not one co-manager.  Not one department manager.  Not even one store or district manager, who make up the next two levels of management above the plaintiffs in this case.  While, under Herman, control of the employees at issue does not have to be continuous, there has to be at least one occasion when that control is exercised.  Herman, 172 F.3d at 139.

In the absence of a single hiring or firing, Plaintiffs claim that the first factor is nevertheless satisfied solely because Mr. Catsimatidis allegedly "has the power to hire and fire Gristede's [sic] and hired top executive and management employees."  Pls. Br. at 10.  Putting aside that the Plaintiffs' claim, as written, appears to be missing words and, therefore, makes no sense, the record evidence does not establish that Mr. Catsimatidis even "hired top executives and management."  For example, despite Plaintiffs' claim, the record indicates that Mr. Catsimatidis did not hire Gristede's Chief Operating Officer, Charles Criscuolo.  Declaration of John Catsimitidis ("JC Decl.") at ¶ 5; Parlo Aff. Ex. 2, Deposition of Charles Criscuolo ("Criscuolo Dep.") at 21:2-12.[5]  Instead, it was Tony Petrillo, who worked with Mr. Criscuolo at a previous employer, who brought him to Gristede's.  Id.  Accordingly, the only senior executive hiring in the record is of Bob Zorn, the executive Vice President and Deputy to the Chairman of

---

bench trials," and, in the third case, it was decided that genuine issues of material fact precluded summary judgment.  Id. (citing Herman, Carter, and Brock v. Superior Care, Inc., 840 F.2d 1054, 1057 (2d Cir. 1988)).  Significantly, the parties in Herman had previously cross-moved for summary judgment on the issue of individual liability, and the district court denied both motions.  Herman, 172 F.3d at 138.  Thus, far from requiring a finding of individual liability here, Herman confirms that summary judgment for Plaintiffs would be inappropriate in light of the current record in this case.

[5] Transcript pages referenced herein are attached to the Parlo Aff. as Exhibits 2 through 10.

Red Apple Group.  JC Decl. ¶ 5; Parlo Aff. Ex. 3, Deposition of Robert Zorn ("Zorn Dep.") at 34:19-23, 136:2-5.  Beyond this one decision there is no evidence that Mr. Catsimatidis played any role in hiring, firing, or disciplining any other executive or manager of Gristede's during the entire period of this lawsuit, and it is undisputed that he did not hire or fire any employee at issue in the case.  See Chen v. Street Beat Sportswear, Inc., 364 F. Supp. 2d 269, 290-91 (E.D.N.Y. 2005) (denying summary judgment where executives hired and fired employees, and set the hours, work schedules and wages for those employees, but those were not the workers in the case who alleged the violations at issue).

Indeed, Mr. Catsimatidis expressly testified, without any dispute or issue, that he cannot fire anyone, except perhaps the four or five high-level executives that report to him directly. Parlo Aff. Ex. 4, Deposition of John Catsimatidis ("Catsimatidis Dep.") at 217:25-218:13, 220:21-228:8; JC Decl. ¶ 5-6.  When asked about his "alleged" power to make firing decisions, Mr. Catsimatidis testified that it is "not the way that our corporate structure works." Catsimatidis Dep. 223:3-4.

> We have a table of organization.  Unless I wanted to run the entire company myself, then the table of organization wouldn't work, so that's why I leave it up to all the people responsible for doing their jobs.

Catsimatidis Dep. 223:12-16.  See also Catsimatidis Dep. 159:6-16 ("A: . . . it's not me that would be giving the [disciplinary] warning . . . I don't -- it's not my job to go in and fire and hire. It's not my job.  Q: But if you wanted a store manager fired, could you make that happen?  A: No."), 216:4-17, 218:20-23, 219:6-22, 220:8-15, 267:11-16; JC Decl. ¶ 5-6; Parlo Aff. Ex. 5, Deposition of Deborah Clusan ("Clusan Dep.") at 408:22-412:10, 617:8-9 (testifying that the Personnel Specialist is responsible for all hiring decisions for all regular hourly personnel and for interviewing and recommending for hire the co-mangers, for which the operations managers – not Mr. Catsimatidis – make the final determination); Defendants' Counter Statement of Material Facts ¶ 10 (collecting testimony from store managers confirming that Mr. Catsimitadis does not hire employees at the store level).

The record here, therefore, bears no relation to the record in Herman, in which it was

established at trial that the executive at issue, inter alia, referred and recruited individuals as potential employees, was involved in reviewing employee application forms, assigned duties to the employees at issue, hired front line managers, set the rates clients were charged, and "frequently gave . . . instructions on conducting [company] business." Herman, 172 F.3d at 136-37, 140. See also Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984) (noting as important evidence that the individual executive "personally selected the manager of every hotel"). Accordingly, Mr. Catsimatidis cannot be an employer under the first prong of the economic realities test.

> ### 2. The Record Does Not Contain Any Evidence That Mr. Catsimatidis Supervised And/Or Controlled The Work Schedules Or Conditions Of Employment Of Any Co-Manager, Department Manager Or Any Other Employee

Plaintiffs also claim that Mr. Catsimatidis "meets the second prong of the economic realities test." Pls. Br. at 11. However, again, they present no evidence that Mr. Catsimatidis was involved in supervising and/or controlling the work schedule or conditions of employment of a single store employee, at any time, in any store, during the entire eleven year period of this lawsuit from 1998 to the present. There is no evidence as to one co-manager or department manager schedule. Indeed, in a telling concession, Plaintiffs note, again without any citation to any record evidence, that "there is no question of fact that he possesses authority to control conditions of employment but delegated actual authority to subordinates who, in turn, reported to him." Pls. Br. at 11 (emphasis added). Thus, Plaintiffs cannot even decide among themselves, in their own brief, whether Mr. Catsimatidis: (1) actually controlled any schedules or conditions of employment; (2) had the power to do so but never did; or (3) delegated any actual authority to do so to others. Pls. Br. at 10-11.

Putting aside Plaintiffs' uncertainty, the evidence Plaintiffs present in an attempt to show some level of involvement has nothing to do with schedules or conditions of employment, is grossly exaggerated, and is taken entirely out of context. For example, in one of their most blatant exaggerations and overstatements, Plaintiffs claim that Mr. Catsimatidis "controlled labor negotiations," signed collective bargaining agreements, and represented Gristede's on the "board

union pension fund" [sic].  Pls. Br. at 11.  Thus, Plaintiffs would have the Court believe and/or conclude that Mr. Catsimatidis himself was in charge of union or employee labor relations at Gristede's, or at least was actively involved.  The record evidence is, however, directly to the contrary.  Mr. Catsimatidis testified that he was not involved in any way, at any time, with the negotiations of any labor agreement or in any labor relations.  Catsimatidis Dep. 47:23-49:24, 51:2-57:21 ("Q: So, as chairman and CEO of Gristede's, you have no involvement whatsoever in negotiating -- A: No.  Q: --the union contracts?  A: No involvement.  // A: I wasn't involved in the union negotiations, full stop.  Q: What do you mean by 'full stop'?  A: That's it.  Q: So you just had nothing to do with them at all?  A: No.").  When Gristede's did have a representative at the bargaining table it was Jack Squicciarini or another Gristede's representative.  Id. at 47:23-49:24, 51:2-57:21.  However, more often than not, Gristede's did not have anyone involved, as the negotiations were conducted on a multi-employer basis by representatives of other supermarkets, and Gristede's just tagged along on what was decided.  Id. at 49:11-17, 52:15-53:3.  While Mr. Catsimatidis did sign one of Gristede's many collective bargaining agreements that is all he did; others were signed by Mr. Squicciarini.  Request for Admission Resp. No. 20 (Docket 301-18, Brooks Decl. Ex. O, p.7); Catsimatidis Dep. 53:11-19; JC. Decl. ¶ 11.

Moreover, as Plaintiffs know but failed to inform the Court, Deborah Clusan, the Director of Payroll and Human Resources, handles all day-to-day issues with union employees -- including grievances, suspensions, terminations, and issues regarding hours.  Clusan Dep. 15:20-25, 16:4-6, 17:23-18:1; JC Decl. ¶ 12.  Ms. Clusan also has been responsible for all union billing and the withholding and payment of any union dues.  Clusan Dep. 16:24, 20:17-25, 21:2-12.  Mr. Catsimatidis was not involved in any such union issues.  Catsimatidis Dep. 241:18-24.

While Mr. Catsimatidis did sit on the board of a union pension fund, there is not a single fact in the record that through that position Mr. Catsimatidis had or exercised any authority to control a single employee in his or her day-to-day work.  Catsimatidis Dep. 45:3-18.  Indeed, pension benefits have nothing to do with employee schedules or conditions of employment.[6]

---

[6] Plaintiffs also assert that Mr. Catsimatidis: (1) receives reports on operations to review; and (2) "possesses control over" the Human Resources Department.  Again, these claims are gross exaggerations

Plaintiffs further erroneously claim that Mr. Catsimatidis had the "ultimate authority to make decisions about payroll issues" and to "establish rules relating to the payment of Gristede's employees." Pls. Br. at 10-11. However, there is no evidence that, at any time, from 1998 to 2009, Mr. Catsimatidis actually made a single decision about, or exercised any authority over, any payroll or payment issue, or established, or even suggested, a single rule in relation to any store employee. JC Decl. ¶ 15-16; Clusan Dep. 90:17-20 ("Q: He doesn't have any idea who gets paid and who doesn't get paid, right? A: Not specifically, no."), 91:21-92:8, 145:9-146:17. In fact, in over 20 years as head of payroll, Ms. Clusan never heard Mr. Catsimatidis have a conversation with anyone about payroll or payroll policies. Clusan Dep. 92:14-16. Moreover, Mr. Catsimatidis and Ms. Clusan never once exchanged a single email regarding payroll, timekeeping, or her duties as Director of Payroll and Human Resources. Id. 624:16-625:1 ("Q: Has there ever been an e-mail that you know of that was either from [ ] or to [Mr.] Catsimatidis regarding payroll or timekeeping? A: No. Q: You have never sent Mr. Catsimatidis an e-mail about your job [as Director of Payroll and Human Resources]? A: No. Q: You never received an e-mail from Mr. Catsimatidis about your job duties [as Director of Payroll and Human Resources]? A: No."). Mr. Catsimatidis did not even have access to the Payroll Department's computer database. Id. at 514:20-515:8.

As to Plaintiffs' claim that Mr. Catsimatidis had authority to "establish rules relating to payment," they ridiculously claim this was so because he had a rule that "if somebody works, they get paid." JC Decl. ¶ 15-16; Clusan Dep. 89:23-90:25. Plaintiffs do not cite a single other piece of evidence on this point. Clusan Dep. 624:16-625:1. Since the law is that every employee is to be paid for their work, and since every company likely has such a rule, Plaintiffs' position would result in every officer in every company in America having personal liability. Clearly that

---

and/or are simply not true. As to the reports Mr. Catsimatidis allegedly receives, the only record evidence is that he received and reviewed, at a high level, certain sales reports. Catsimatidis Dep. 79:15-24, 82:10-15; JC Decl. ¶ 14. Reviewing sales reports cannot, however, make an individual personally liable, or every officer of every company in America would be an "employer." Plaintiffs' claim about control of the Human Resources Department is also simply not true and is a gross distortion of the record. See pp. 15-16, infra.

is not the law.  Indeed, every President, CEO, CFO, COO, etc. may have the authority to make a decision about payroll issues, but that cannot make them individually liable as employers absent some evidence that they actually used such authority at some time in relation to an employee. Rubin, 797 F. Supp. at 252 (the term employer includes individuals with managerial responsibilities and substantial control over the terms and conditions of the employee's work, and does not include those who do not hire and fire employees, control the methods of operation, set hourly wages or control the payroll) (citations omitted). [7]

Finally, as a form of catch-all "evidence," Plaintiffs claim that Mr. Catsimatidis regularly visits stores and instructs employees on day-to-day issues.  Pls. Br. at 4.  The undisputed record evidence, however, is that Mr. Catsimatidis stopped regularly visiting stores in 2000, because of problems he was having with his eyes, and that eventually required surgery in January of 2001. Catsimatidis Dep. 74:5-9; JC Decl. ¶ 8.  Since then, Mr. Catsimatidis visited stores, infrequently, if there was a grand opening or grand re-opening, and then only to serve a public relations function.  Zorn Dep. 136:20-25, 138:17-139:2, 139:11-140:4, 140:17-141:14; Parlo Aff. Ex. 6, Deposition of Yolanda Ferrantino ("Ferratino Dep.") at 27:11-23; Parlo Aff. Ex. 7, Deposition of Kevin Sutorius ("Sutorius Dep.") at 16:9-25.  With those limited exceptions, the record does not contain any evidence of a work-related visit by Mr. Catsimatidis to any store since 2000.

Moreover, when, in the past, Mr. Catsimatidis did visit some stores, those visits were brief (10 minutes) and solely to look at and make comments on the placement of certain merchandise or on general store appearance.  Catsimatidis Dep. 73:4-22, 74:14-77:8; JC Decl. ¶ 8-9; Ferrantino Dep. 28:10-22 (Q: Would he say anything to you about the displays?  A: No, no, he don't talk that much.  He just walk the store.), 29:8-23; Sutorius Dep. 18:11-24; Parlo Aff. Ex. 8, Deposition of Mitchell Moore ("Moore Dep.") at 26:15-27:23; 31:17-32:23; 36:5-37:2, 125:6-126:9, 127:22-128:8; Parlo Af. Ex. 9, Deposition of Richard Wong ("Wong Dep.") at 40:21-41:18.  There is no record evidence that any such visit, on any occasion, had anything to do with

---

[7] The foregoing facts about Mr. Catsimatidis stand in stark contrast to the executive found to be an individual employer in Herman, who assigned and scheduled the employee guards at issue in that case and gave instructions about employee operations.  Herman, 172 F.3d at 136-37.

the schedule or conditions of employment of any store employee.  Catsimatidis Dep. 73:4-22, 74:14-77:8; Moore Dep. 31:17-32:23 (Q: Did he give any instructions to any other employees while he was walking the store with you?  A: No.), 124:16-22; Wong Dep. 40:21-41:18 ("Q: When was the last time he came to the store.  A: . . . probably [ ] five, six years ago. . . . Q:  Did you ever talk [ ] about any of your employees?  A:  No.").  Indeed, it is undisputed that Mr. Catsimatidis has had no involvement with regard to the work schedules of any employees. Criscuolo Dep. 72:8-73:6; JC Decl. ¶ 7.  Accordingly, none of the Plaintiffs' alleged evidence supports the second prong of the economic realities test.

> **3.     The Record Does Not Contain Any Evidence That Mr. Catsimatidis Determined The Rate And Method Of Payment Of Any Co-Manager, Department Manager Or Any Other Employee**

Plaintiffs also do not present a shred of evidence that Mr. Catsimatidis determined a single amount, rate and/or method of payment of a single store employee, at any time, in any store, during the entire eleven year period from 1998 to the present.  Indeed, to the contrary, Mr. Catsimatidis and the Director of Payroll and Human Resources, Deborah Clusan, testified that Mr. Catsimatidis was not involved in any way with respect to any payroll issues.  Catsimatidis Dep. 93:12-94:6, 111:9-112:25, 129:14-21 ("A: I don't deal with payroll.  It doesn't filter up to my level."), 194:11-12 ("A: . . . Like I said, I do not get involved in payroll."), 195:11-13 ("A: Sir, it's not my department, I don't handle payroll.  Q: You are the CEO?  A: Yeah, but I don't handle payroll.  Q: I understand you don't handle payroll.  A: Yeah, I don't handle payroll.  I don't get involved.), 196:4-20, 201:6-8; Clusan Dep. 89:23-90:25 (Q: [Mr. Catsimatidis] doesn't have any idea who gets paid and who doesn't get paid, right?  A: Not specifically, no."), 91:21-92:8 (Q: How is Mr. Catsimatidis involved in the payroll and the policies about payroll?  A: He is not actually involved.  Q: When you say 'he is not actually involved,' do you mean that he doesn't do the hands-on day-to-day payroll?  A: Correct."); JC Decl. ¶ 15-19.

The undisputed fact is that Ms. Clusan handled all payroll and employee payment-related issues from 1985 to the present -- from 1985 to 2003 directly, and, since 2003, by overseeing two payroll clerks that perform the same duties.  Clusan Dep. 15:6-20:16.  Thus, for

more than twenty years, Ms. Clusan and her direct reports have handled all day-to-day issues that arise with Gristede's workforce, including any employee complaints about not getting paid for hours worked, processing weekly production and issuance of paychecks, handling of union billing, running payroll reports, and managing the Payroll Department computer database. JC Decl. ¶ 15-17; Clusan Dep. 15:6-21:12. Further, during this time it was Mr. Criscuolo, not Mr. Catsimatidis, who was involved with formulating and changing any Payroll Department policies. JC Decl. ¶ 18. Clusan Dep. 91:21-92:8, 134:10-135:2, 136:19-21, 526: 8-25. In fact, in her position as Director of Payroll since 1985, not only had she personally never once exchanged an email with Mr. Catismatides regarding any payroll or timekeeping issues (as discussed above), Ms. Clusan <u>never</u> <u>once</u> heard Mr. Catsimatidis <u>discuss</u> <u>any</u> <u>payroll</u> <u>issue</u> <u>with</u> <u>anyone</u> <u>ever</u>. Clusan Dep. 624:16-625:1 (emphasis added); <u>see</u> <u>also</u> Clusan Dep. 92:14-16 ("Q: Have you ever heard Mr. Catsimatidis have a conversation with anybody about payroll? A: No.").

Given these undisputed facts, Plaintiffs' only cited "evidence" in support of the third prong of the economic realities test is that Mr. Catsimatidis had the power to and did sign certain company checks. Pls. Br. at 11. What the Plaintiffs have failed to inform the Court, however, is that the checks Mr. Catsimatidis could sign had nothing to do with any employees. Mr. Catsimatidis never reviewed nor personally signed any payroll checks for Namdor, the entity which employed those who worked at Gristede's supermarkets. Catsimatidis Dep. 270:20-25; JC Decl. ¶ 20.[8] No dispute exists as to that fact. Accordingly, while Mr. Catsimatidis has acted on behalf of the Company in signing checks "in relation to" vendors, the undisputed facts are that he never personally signed a single check "in relation to any employee." 29 U.S.C. § 203(d).[9] As

---

[8] Over 600,000 employee payroll pay checks go out each year. Catsimatidis Dep. 228:24-229:2. Mr. Catsimatidis has nothing to do with any of them.

[9] This record evidence stands in sharp contrast to the facts in <u>Herman</u>. In <u>Herman</u>, the individual Defendant not only signed the Company's payroll checks on three separate occasions, but he established a client payment system and rates, was an "expert" and instructed others on wage and hour issues, and personally ordered a stop to certain illegal wage and hour practices. <u>Herman</u>, 172 F.3d at 136. Such conduct provided direct evidence that the executive in <u>Herman</u> at least knew of, and arguably was involved in, both the rate and method of payment of the employees. <u>Id.</u> No such evidence exists here. Indeed, the undisputed evidence is that Mr. Catsimatidis was not even aware of there being any issues with respect to alleged illegal pay practices at Gristede's. Catsimatidis Dep. 127:18-129:21, 133:17-

there is no evidence at all that Mr. Catsimatidis had any involvement in the compensation of any employees (including as to any amount, rate or method of payment), or that he had any knowledge of the wage and hour issues and alleged violations in this action, he cannot be held individually liable.  Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998) ("At bottom, [the] economic reality analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits"); Wilke v. Salamone, 404 F. Supp. 2d 1040, 1050-51 (N.D. Ill.  2005) (noting that whether an individual can be held liable under the FLSA depends on whether he or she had control over the alleged violation of the FLSA).[10]

### 4. The Record Does Not Contain Any Evidence That Mr. Catsimatidis Maintained, Or Had Anything To Do With, Any Employment Records

Plaintiffs essentially admit that they have no evidence that Mr. Catsimatidis was involved in maintaining any employment records, instead asking the Court to "infer" that he was.  Pls. Br at 12.  Plaintiffs' sole and entire basis for asking that such an inference be drawn in their favor (which is not permitted in deciding a summary judgment motion, see p. 1, supra), is that Mr. Catsimatidis must have had constructive control of the records because he worked in the same building in which the records allegedly were kept.  Pls. Br. at 12.  Plaintiffs, however, cite no authority for such a leap.  In addition, the supposed supporting evidence cited by Plaintiffs does not permit any such connection.  Specifically, while it is undisputed that Mr. Catsimatidis had an

---

134:3; Clusan Dep. 18:12-19:2, 90:20-25, 91:21-92:8, 134:10-135:2, 136:19-21, 143:21-144:3, 145:9-147:8.

U.S. Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775 (6th Cir. 1995), upon which Plaintiffs rely, is also readily distinguishable.  The evidence there established that the individual defendant exercised control over significant aspects of the corporation's day-to-day functions, including determining employee salaries and authorizing pay checks, had custody of and maintained the employee records, and, more importantly, was involved in numerous employment practices, including hiring and firing, and setting rates of pay and hours of work.  Id. at 778.  There was also evidence that the individual defendant himself told employees to record only their scheduled hours, not the actual hours they worked -- thus, he directly participated in the alleged unlawful conduct in relation to the employees in the case.  Id.  No such evidence exists here.

office in the same building as the payroll and human resources departments, it is also undisputed that he rarely interacted with anyone in those departments, and did not exercise any control over them, in any way, at any time. See pp. 13-15, supra; JC Decl. ¶ 22. Thus, there is no evidence that Mr. Catsimatidis controlled any employment records at any time, and no basis for finding that the fourth prong has been met.[11]

>   **D.    Summary Judgment Must Be Denied For The Period After 2000 For The Additional Reason That Plaintiffs Have Not Submitted Any Evidence At All Regarding Any Material Fact That Could Satisfy The Test**

Mr. Catsimatidis was deposed on August 5 and 10, 2005. Parlo Aff. Ex. 4. He testified, without any dispute or issue, that he had not made weekly visits to the stores (Catsimatidis Dep. 74:5-9), sat in on any operations meetings (Catsimatidis Dep. 40:15-41:24), been involved with any day-to-day payroll issues (Catsimatidis Dep. 112:20-25), had any conversations with any store managers related to payroll (Catsimatidis Dep. 77:9-19), had any input with regard to employees' work schedules or hours (Catsimatidis Dep. 40:15-41:24), or promoted, hired, or fired anyone (Catsimatidis Dep. 215:7-14) in many years. He further testified that he had not recommended that any employee be fired since prior to 2000 (Catsimatidis Dep. 216:4-17, 218:20-23, 219:16-25, 220:8-15), and that, in fact, he cannot fire anyone. Catsimatidis Dep. 217:25-218:7, 219:9-15, 222:23-223:16, 226:7-18; JC Decl. ¶ 23.

No evidence exists in the record to directly dispute that testimony. There is no document or testimony placing Mr. Catsimatidis in any Company meeting after 2000. There is no document or testimony showing that he made any decision or took any action in relation to the compensation or conditions of employment of any co-manager or department manager after 2000.

While Plaintiffs submitted declarations from several individuals purporting to have seen

---

[11] Plaintiffs' reliance on Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184 (S.D.N.Y. 2003), is also misplaced. In Ansoumana, the Court did not address the "in relation to" aspect of the definition of "employer," or the need for some nexus between the executives and the employees or alleged violation in question. Id. at 193. Moreover, it was undisputed in that case that the two executives themselves personally oversaw and operated the companies by which the employees were employed, and did so on a daily basis. Id. No such facts exist here.

Mr. Catsimatidis in certain stores, the declarations are glaring in their consistent omission of any dates when Mr. Catsimatidis was allegedly observed.  See Declarations of Patrick Labella at ¶ 7 (Docket No. 301-32); Carlos Martinez at ¶ 7 (Docket No. 301-33); Jose Martinez at ¶ 7 (Docket No. 301-34); Alejandro Morales at ¶ 6 (Docket No. 301-35).  Indeed, there is not a single date identified, for a single visit, to any store.  Id.  Moreover, given the alleged time period during which some of the declarants allegedly worked, they could not have observed Mr. Catsimatidis doing anything through 2009.  See, e.g., Joseph Crema Decl. at ¶ 1 (Docket No. 301-4) (employed only from 1954 to 2001); Jose Martinez Decl. at ¶ 2 (employed only from 1992 to 2002).

The absence of any record evidence of Mr. Catsimatidis having any direct involvement in relation to any employees should not be surprising since he had no such involvement.  In 2000, Mr. Catsimatidis experienced some health problems, that resulted in eye surgery in January of 2001.  Catsimatidis Dep. 74:5-9; JC Decl. ¶ 8.  As a result of those problems, Mr. Catsimatidis stopped the periodic visits he previously made to check on product placement and other marketing aspects.  Catsimatidis Dep. 74:5-9; JC Decl. ¶ 23.

A careful review of the record will thus show that Plaintiffs have not submitted a shred of evidence that in 2009, 2008, 2007, 2006, 2005, 2004, 2003, 2002, 2001 or 2000, Mr. Catsimatidis:

- Attended any meeting of any kind involving Gristede's store employees
- Met with or spoke to any co-manager or department manager about employment issues
- Hired, fired or disciplined any individual, including any co-manager or department manager
- Made any decision of any kind regarding Gristede's store employees
- Had any involvement in the amount, rate or method of compensation of any store employee
- Supervised, controlled or had any involvement at all with the work schedules of any store employee

The complete absence of any evidence concerning any material fact covering the years from 2000 to the present precludes Plaintiffs from being able to carry their burden of proving that Mr. Catsimatidis is liable personally as an employer in any of those years.  See Fed. R. Civ.

P. 56(c), 56(e)(1).[12]  Accordingly, summary judgment must be denied to Plaintiffs for at least those years.

### E.   The Potential To Control Certain Aspects Of An Enormous Corporation's Activities Which Are Wholly Unrelated To Any Employees At Issue In A Dispute Cannot Give Rise To Individual Liability

Despite clear, controlling precedent that the applicable analysis is the "economic reality test," Plaintiffs nevertheless argue that Mr. Catsimatidis is individually liable because he meets "the most important element" – operational control.  Pls. Br. at 8.  However, Mr. Catsimatide's alleged power to control certain limited corporate activities that have absolutely no nexus to either the employees or claims at issue in this case is not the proper legal test, is therefore irrelevant, and cannot give rise to individual liability.

The definition of "employer" contained in the FLSA does not contain the words "in relation to an employee" by accident or as superfluous verbiage.  See pp. 2-3, supra.  Indeed, if effect is not given to those words and the principles they embody, every President, CEO, CFO, COO and other officer of every corporation in America would be automatically liable as an individual for every wage and hour violation by the entities for which they work, as all such individuals clearly at some level have the power to impact some operations at some level.  See Falk v. Brennan, 414 U.S. 190, 195 (1973) (holding that an entity was an "employer" in light of its "managerial responsibilities" which gave it "substantial control of the terms and conditions of the work of these employees") (emphasis added).

In Herman, the Second Circuit noted that the legal inquiry had to be as to "the workers in question," and then analyzed the facts concerning the executive's interaction with those same workers in question.  172 F.3d at 139-40.  Similarly, in Carter, the Second Circuit expressly rejected a decision based upon a potential control factor and remanded the case for "[a] full inquiry into the true economic reality . . . ."  Carter, 735 F.2d at 8.

---

[12] Even if Mr. Catsimatidis made occasional visits to stores after 2000 for promotion or PR reasons, or even to walk around and discuss product placement or general store cleanliness, none of those issues relate to any employee and, therefore, do not concern any material fact relevant to the economic realities test.

The need for some nexus between the alleged individual employer and the employees at issue has been squarely recognized by other Courts of Appeal as well.  In Patel, the plaintiffs sought to establish that Wargo was an employer "by virtue of his status as President, director and principal stockholder."  803 F.2d at 637.  Looking instead to whether there was an actual nexus between the executive and the employees at issue, the Court held:

> To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.

Id. at 638.  Applying the definition of "employer" in the FLSA, the Court further held:

> [T]he facts in this case indicate Wargo did not have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters '<u>in relation to an employee</u>.'

Id. (emphasis added).  Applying the law to the facts, the Eleventh Circuit noted that, as in this case, it was another individual who had contact with the plaintiff at issue, and that while the president could have been involved with the plaintiff at issue, or could have been involved in day-to-day operations, he simply was not.  Id.  Accordingly, the grant of summary judgment as to the president was affirmed.

The Eleventh Circuit applied the same standard and logic last year in Alvarez Perez.  In that case, the plaintiffs sought to have the managing agent and "head boss" held responsible as an employer.  Alvarez Perez, 515 F.3d 1150.  Again, the Court noted that, under the FLSA, individual liability cannot exist unless an officer is involved in the day-to-day operations or has direct responsibility for the supervision of the employees.  Id. at 1160.  Turning to the facts, the Court noted that it was undisputed that, as here, the executive had not been involved in the day-to-day operations for years, had not been involved in the hiring and firing of the employees, and had not determined their compensation.  Id. at 1161.  Notably, while, as here, other individuals testified that they would have complied with any directive the executive gave, the executive simply had not given any such instructions as to any employment matter.  Id.  Holding that such "unexercised authority is insufficient to establish liability as an employer" (citation omitted), the

Court affirmed the granting of a motion for judgment as a matter of law in favor of the executive. Id. at 1162.

The Eighth Circuit Court of Appeals has also acknowledged the importance of a nexus between the "employer" and the employees in question in a case whose facts are largely indistinguishable from those here.  In Wirtz, the plaintiffs sought to have "the corporate defendant's controlling stockholder and dominating figure" held individually liable as an employer.  322 F.2d at 262 (emphasis added).  As Plaintiffs allege in the case here, there was "little question from the record" in Wirtz that the executive could have taken over the relationship between the company and its employees at any time if he had chosen to do so.  Id. However, "a careful reading of the record" made clear that he had not.  Id.

As here, the executive in Wirtz had other business interests, including the ownership of other companies.  Compare 322 F.2d at 262 with Catsimatidis Dep. 30:3-31:15, 32:9-18.  As here, the executive left the matter of compliance with the FLSA to various managers and had nothing to do with the hiring of the employees or the fixing of their wages or hours.  Compare Wirtz, 322 F.2d at 263 with Catsimatidis Dep. 159:6-16, 195:16-196:11, 263:9-21.  Finally, as here, the executive was consulted with issues like mechanical difficulties of a plant, and not with issues involving the employees, their compensation or their hours.  Compare Wirtz, 322 F.2d at 263 with Catsimatidis Dep. 42:15-43:15 (consulted about a crack in a building and the need for a temporary support bridge).  Based upon these facts, the Eighth Circuit concluded that the assertion that the executive "might have taken over and acted . . . 'in relation to an employee' is beside the point as long as he did not do so."  Wirtz, 322 F.2d at 263.  Accordingly, the decision that the majority stockholder could not be held personally liable for unpaid overtime compensation was affirmed.  Id.  See also Wilke, 404 F. Supp. 2d at 1050-51 (granting summary judgment to executive and holding that if the president and owner did not possess control over the actions alleged to have violated the FLSA there was no individual liability, and that despite the president's weekly visit to the employment site and numerous daily conversations with the office manager, being involved generally in operations and setting some policy is not enough);

Johnson, 934 F. Supp. 625 (noting that the term "employer" has been interpreted to include individuals "with substantial control over the aspect of employment alleged to have been violated . . . but not those who do not control the terms and conditions of employment").

As detailed above in Sections II.C.1,2,3 and 4, it is undisputed that Mr. Catsimatidis had no role whatsoever in the day-to-day operations of any store, and absolutely no involvement in relation to the employees at issue.  JC Decl. ¶ 3-7, 9, 11-12, 14-23; Catsimatidis Dep. 38:7-39:2; Zorn Dep. 53:8-21.  The record evidence is clear and undisputed that numerous other individuals, at varying levels of responsibility, controlled those operations.  Catsimatidis Dep. 38:7-41:24, 121:6-123:13, 244:2-4; Criscuolo Dep. 13:24-14:2; Zorn Dep. 53:8-21; Clusan Dep. 306:6-307:20, 326:20-327:10, 408:22-412:10.  Accordingly, as in Patel, Alvarez-Perez, Wirtz and Wilke, no nexus exists between Mr. Catsimatidis and Plaintiffs, and no basis exists for finding that he acted as an employer "in relation to any employee" at issue in the case. Plaintiffs' motion should, therefore, be denied.

**F.    The Actual, Undisputed Facts Also Cannot Support a Finding of General Operational Control**

In addition to the fact that the ability to impact certain activities in a large corporation that are unrelated to its employees is not the applicable legal standard, and cannot give rise to individual liability, Plaintiffs' entire factual presentation on the existence of some general "operational control" must be summarily rejected as it relies upon exaggerated testimony and other evidence, ignores directly contrary record evidence, and misstates certain positions.

For example, Plaintiffs contend that Mr. Catsimatidis controls Gristede's finances.  Pls. Br. at 8.  To the contrary, however, while the Chief Financial Officer reports up to Mr. Catsimatidis, he still exercises broad discretion and control.  Criscuolo Dep. 77:9-17.  In addition, while, as noted above, Mr. Catsimatidis can sign checks on behalf of the company, there is no evidence in the record that he has ever personally signed a single payroll or employee-related check.  Catsimatidis Dep. 270:16-19; JC Decl. ¶ 20; p.14, supra.

Plaintiffs only other evidence with respect to finances is their blunderbuss contention that Mr. Catsimatidis "controls" banking, real estate, advertising, pricing, merchandising and vendor

relations for Gristede's.  Mr. Catsimatidis does not, however, control these areas.  However, even if such control existed, these areas do not have any "relation to" any employees. For example, while Mr. Catsimatidis may come up with merchandising ideas, he simply communicates them to Charles Criscuolo, Gristede's Chief Operating Officer.  Catsimatidis Dep. 59:3-60:4; JC Decl. ¶ 3, 24.  Specifically, Mr. Catsimatidis testified that he might decide to push Coca-Cola instead of Pepsi-Cola, or to push a name brand chicken instead of a cheaper brand.  Catsimatidis Dep. 59:3-60:10.  He may also give advice on what items to place on front-end displays, or on what items to promote on particular holidays.  Catsimatidis Dep. 63:14-64:20.  None of this, however, has any relation to any employees, or to the Plaintiffs, or to the claims at issue in the case.

It is undisputed that the Plaintiffs had store managers, regional managers, and upper level management all supervising their employment and making all decisions regarding their hiring, firing, discipline, compensation and other terms and conditions of employment.  Catsimatidis Dep. 159:6-16, 217:10-16, 218:5-7, 218:12-13, 219:6-15, 222:23-223:4, 223:12-16, 226:7-25; JC Decl. ¶ 3-6, 11-18, 22.  Given that structure, and given the absence of any evidence that Mr. Catsimatidis involved himself in any of those matters in relation to the co- and department managers, there is no basis to hold Mr. Catsimatidis personally responsible.  Wilke, 404 F. Supp. 2d at 1051 (rejecting liability of owner/president where other managers had the authority to hire and fire, gave orders about the conduct being challenged in the case, and made the decisions to terminate the employees at issue); cf. Herman, 172 F.3d at 136, 140 (finding individual liability where the entire company had only 2 officers, who exercised authority over, and gave direct instructions to, the direct managers of the employees at issue).  As the Second Circuit has noted, "control of employees is central to deciding" if an individual should be deemed an employer, not involvement in real estate, public relations, advertising or other aspects of a business which are wholly unrelated, and not in relation, to the employees at issue.  Herman, 172 F.3d at 135.

Plaintiffs also contend that Mr. Catsimatidis controls the payroll at Gristede's.  Pls. Br. at 3.  However, as detailed above, Mr. Catsimatidis does not exercise any such authority, and is not now, and in the past has not been, involved in any payroll issue of any kind, in any way.  See pp.

13-14, <u>supra</u>.

Plaintiffs also claim that Mr. Catsimatidis controls employment and labor relations at Gristede's, because he allegedly has the power to hire and fire employees.  Pls. Br. at 3.  As noted above, however, no evidence exists in the record to support that position.  <u>See</u> pp. 7-8, <u>supra</u>.  <u>See also</u> Parlo Aff. Ex. 10, Deposition of Christopher Lang 260:14-25; 266:12-267:5.  Plaintiffs' claim that Mr. Catsimatidis controls Human Resources (Pls. Br. at 4) is also specious.  <u>See</u> pp. 8, 10-12, supra.  As Ms. Clusan testified, Mr. Catsimatidis rarely, if ever, interacts with Human Resources personnel.  Clusan Dep. 588:22-589:6.  As to Plaintiffs' reference to compensation related complaints, the record contains <u>no</u> evidence of any such complaints, and if there were any they would be handled by Ms. Clusan or her staff.  Clusan Dep. 588:22-589:6; JC Decl. ¶ 13, 21.  Moreover, Mr. Catsimatidis testified only that <u>if</u> there was a complaint it <u>might</u> filter up to him from union representatives.  Catsimatidis Dep. 236:18-237:7.  There is no record evidence, however, that ever occurred.[13]

Finally, in a general catch all category Plaintiffs contend that Mr. Catsimatidis controls the day-to-day operations at Gristede's.  Pls. Br. at 4.  As evidence, they point to the fact that Mr. Catsimatidis visits Gristede's stores on a regular basis.  Pls. Br. at 4.  Plaintiffs fail to mention, however, that, as noted above, these visits stopped years ago due to Mr. Catsimatidis' health issues.  JC Decl. ¶ 8, 23; Catsimatidis Dep. 74:5-9; <u>see</u> p. 12, supra.  Moreover there is no evidence in the record that in visiting any stores, Mr. Catsimatidis directed any employee in their day-to-day work.  Instead, Mr. Catsimatidis' short (10 minute) visits were limited to dealing with merchandizing and sales.  Catsimatidis Dep. 75:13-76:14; JC Decl. ¶ 8-9.  For example, he would make recommendations regarding what products to promote on a front-end display or for a particular holiday, such as July 4th.  <u>Id.</u>  Beyond that, he would meet and greet customers, and

---

[13] Highlighting how far Plaintiffs have to go to try to show that Mr. Catsimatidis should be deemed an employer, they have cited his testimony about his own personal shopping at Gristede's.  Specifically, one day when he went to buy fish he noticed there was not much variety.  Catsimatidis Dep. 274:19-276:2.  As could any other customer, he sent a note to the Department Manager.  Plaintiffs, however, now seek to rely upon Mr. Catsimatidis desire for more fish choices as evidence of his control over employees through the handling of customer (his own) complaints.

if he noticed an issue with store cleanliness, he might mention that to the store manager.  Id.  In more recent years, Mr. Catsimatidis only visited stores if there was a grand opening or grand re-opening, and then only to serve a public relations function.  Zorn Dep. 136:20-25, 138:17-139:2, 139:11-140:4, 140:17-141:14.  Mr. Catsimatidis did not assign work to employees or otherwise direct them in any way in their jobs.  Catsimatidis Dep. 71:15-72:6; Zorn Dep. 138:11-16.

Accordingly, even if the applicable legal test was the presence of general operational control over some aspect of a business, the factual record here does not support personal liability.

### III.   MR. CATSIMATIDIS CANNOT BE HELD INDIVIDUALLY LIABLE UNDER THE NEW YORK LABOR LAW

Plaintiffs simultaneously seek to hold Mr. Catsimatidis' liable for violations of the New York Labor Law, Section 190 et seq., and Section 650 et seq. ("NYLL").  Third Amended Complaint (Docket 115, ¶¶ 10, 181-86).  Plaintiffs suggest that the determination of individual liability under the NYLL should be the same as that under the FLSA because "[t]he definition of 'employer' [under the FLSA] is similarly expansive under the NYLL."  Pls. Br. at 7 n.3.  However, there are no comparable statutory definitions of "employer" or "employ" in the FLSA and NYLL.  As such, it cannot be that the standards for defining who is an employer for purposes of liability under the respective federal and state bodies of law are automatically identical or applicable.

In addition, while other Sections of the NYLL expressly provide for a private right of action against individuals, no such right is set forth in those sections of the NYLL (§§ 190 and 650), under which Plaintiffs seek to impose liability upon Mr. Catsimatidis.  For instance, while NYLL § 345-a allows private rights of action against apparel industry manufactures and contractors, with appropriate definitions regarding the same in §340, there are no analogous private rights of action, nor accompanying definitions for individual liability of corporate executives, in either § 190 et seq. nor § 650 et seq.

Indeed, in Bullock v. Presbyterian Hospital in City of New York, No. 95 Civ. 3928, 1996 WL 328740 (S.D.N.Y. June 13, 1996), this Court dismissed NYLL claims brought against the individual defendants, noting that the term "employer," as defined in Section 190 of the NYLL,

"did not provide a clue as to whether corporate officers were subject to civil liability under the article." Id. at *4. In finding no liability for corporate executives under the NYLL, the court noted: "we have recently held . . . that the provisions of Section 198-a subjecting corporate officers to criminal sanctions for violation of the article indicates a legislative intent that they not be subject to civil liability." Id. at *4 (citations omitted).

Similarly, in Stoganovich v. Dinolfo, 473 N.Y.S.2d 972 (1984), aff'g 461 N.Y.S.2d 121 (App. Div., 4th Dep't 1983), the court held that, although NYLL Section 198-a provided for criminal penalties against corporate officers, Plaintiff in that case could not maintain a civil action against such individuals because Sections 197 and 198, which provided for civil sanctions against employers, did not expressly include corporate agents or officers. Similarly, Sections 190 and 650 of the Labor Law do not include corporate officers in the definition of "employer," or otherwise suggest that joint and several liability of corporate officers for the actions of a company is permissible.

Accordingly, as neither the text nor the history of the NYLL provides for individual liability of corporate officers, Mr. Catsimatidis cannot be held personally liable.[14]

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment should be denied in its entirety, together with such other and further relief as this Court deems appropriate.

Dated: New York, New York.
       March 26, 2009

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _Amanda M. Slatin_

Christopher A. Parlo (CP-4310)
Amanda N. Slatin (AS-5070)

---

[14] Defendants acknowledge that courts in this Circuit have held that the "economic reality test" under the FLSA should also be applied in determining whether joint liability exists under the NYLL. See, e.g., Chen, 364 F. Supp. 2d 269 (E.D.N.Y. 2005). However, none of those cases has analyzed the issues raised by Defendants in this brief.