**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

CARLOS TORRES, RUBEN MORA, BOBBY
IRIZARRY, LEWIS CHEWNING, GILBERTO
SANTIAGO, WILLIAM HELWIG, ROBERT MISURACA,
JOSEPH CREMA, MARIO DIPRETA, VICTOR PHELPS,
JOSELITO AROCHO, ALFRED CROKER, DANIEL
SALEGNA, FRANK DELEON, and ROBERT
PASTORINO, on behalf of themselves and all others
similarly situated,

                                                  **04 Civ. 3316 (PAC)**

                                                  **JOINT PRE-TRIAL**
                                                  **ORDER**

        -against-

GRISTEDE'S OPERATING CORP.; NAMDOR, INC.;
GRISTEDE'S FOODS, INC.; CITY PRODUCE
OPERATING CORP.; GRISTEDE'S FOODS NY, INC.,
JOHN CATSIMATIDES, JAMES MONOS, and
GALO BALSECA,

                            Defendants.

_____

       Pursuant to the Court's Individual Practices, the parties respectfully submit this

Joint Pre-Trial Order.

## I.      NATURE OF THE CASE

Plaintiffs

       Plaintiffs bring unpaid overtime claims under the Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL") individually and on behalf of a class

of Gristede's Department Managers.  Plaintiffs allege that Defendants denied Plaintiffs

and Class Members their earned wages, some of which are overtime wages.  Plaintiffs

also allege that Defendants engaged in fraud against Plaintiffs and the Class.  Two

individual Plaintiffs, Carlos Torres and Lewis Chewning, seek individual damages for retaliation.

<u>Defendants</u>

This is the remedial phase of the litigation following the Court's decision on partial summary judgment, dated August 28, 2008 (the "Summary Judgment Decision"). The purpose of the trial is three-fold: (i) to determine actual unpaid overtime for co-managers in furtherance of the Summary Judgment Decision finding co-managers to be non-exempt under the FLSA and NYLL, and, therefore, eligible to be paid at time and one-half for hours worked more than 40 per week; (ii) to determine damages for department managers for overtime actually worked beyond 40 hours per week on-the-clock that was not previously authorized and subsequently edited or deducted by Gristede's; and (iii) to determine damages for alleged off-the-clock work performed by all class members, including co-managers and department managers, beyond their regular shifts that was purportedly never recorded by the employees themselves. Damage assessments are complicated by the fact that department managers on a majority of occasions did not comply with Gristede's Four Punch Rule (defined below) of punching in and out of work four times per day. The department managers' failures in this regard, which occurred on thousands of occasions, necessitated that Gristede's make legitimate edits and corrections to time and attendance reports. Thus, not every instance of editing can be said to have been done to deprive Plaintiffs of legitimate overtime.

## II.    JURY / NON-JURY

<u>Plaintiffs</u>

Plaintiffs demanded a jury trial. Plaintiffs estimate that the trial will take 15 days.

<u>Defendants</u>

This is a jury trial. Defendants estimate that they will need 15 minutes per witness for each witness who appears to testify. Therefore, the estimated length of trial will need to be determined based on the number of witnesses the Court permits to testify, the actual appearances among those witnesses, and the amount of time permitted by the Court for each witness.

### III.    STIPULATED FACTS

Plaintiffs propose the following stipulated facts. Defendants' responses are included below.

1.    Defendant Namdor, Inc. operates a grocery store chain in and around New York City under the banner, "Gristede's."

**Defendants:  ADMIT**

2.    Namdor, Inc. is a subsidiary of Gristede's Foods, Inc.

**Defendants:  DENY OR OBJECT**

3.    The relevant period for this lawsuit is April 30, 1998 through the present ("Class Period").

**Defendants:  DENY OR OBJECT**

4.    For each year between 1998 and the present, Gristede's Foods Inc. and Namdor, Inc. have each engaged in commerce and have each had annual gross sales of at least $500,000.

**Defendants:  DENY OR OBJECT**

5.    Gristede's Operating Corp., Namdor, Inc., and Gristede's Foods, Inc., have employed Plaintiffs and the Class Members within the meaning of the FLSA and the NYLL during the Class Period.

**Defendants:  DENY OR OBJECT**

6.	Gristede's Operating Corp., Namdor, Inc., and Gristede's Foods, Inc. have offices at 823 11th Avenue in New York, New York.

**Defendants: ADMIT**

7.	John Catsimatidis is the chairman, president, and CEO of Gristede's Foods, Inc.

**Defendants: ADMIT**

8.	John Catsimatidis is the chief executive officer of Gristede's Operating Corp., Namdor, Inc., and Gristede's Foods, Inc.

**Defendants: DENY OR OBJECT**

9.	John Catsimatidis is the sole owner of Red Apple Group, a holding company which owns United Acquisitions, of which Gristede's Foods, Inc. is a subsidiary.

**Defendants: DENY OR OBJECT**

10.	Plaintiffs and the Class Members were engaged in commerce or in the production of goods for commerce and were employed by an enterprise engaged in commerce or in the production of goods for commerce throughout the Class Period.

**Defendants: DENY OR OBJECT**

11.	The individuals listed in Defendants' Exhibit A (class list, stamped P212480-P212611) worked at Gristede's as Department Managers during the periods listed. The parties agree that these are the Department Manager Class Members.

**Defendants: DENY OR OBJECT**

12.	The number of hours indicated on Co-Managers Class Members' payroll records, for which Defendants paid Co-Manager Class Members, is time that Co-Managers worked for Defendants. Gristede's is liable to Co-Manager Class Members for overtime compensation for these hours. This number of hours for each Class Member is accurately indicated on Defendants' payroll records. This stipulation does not waive Plaintiffs' claim for time not recorded in the pay records or Defendants' defenses to these claims.

**Defendants: DENY OR OBJECT**

13.	Co-Manager Class Members were not required to punch a time clock.

**Defendants: IRRELEVANT**

4

14.     The caption is hereby amended to replace the incorrect spelling of "Catsimatides" with the correct spelling of "Catsimatidis."

**Defendants:  IRRELEVANT**

15.     Asterisks (*) that appear on Defendants' Time & Attendance – Employee Timecard Reports (*see* Exhibits 245 – 355) indicate that Defendants' agents edited the employees' original time punches "in" and "out."

**Defendants:  DENY OR OBJECT**

16.     Exclamation points (!) that appear on Defendants' Time & Attendance – Employee Timecard Reports (*see* Exhibits 245 – 355) indicate that Defendants' agents edited the employees' total daily "reg hours."

**Defendants:  DENY OR OBJECT**

17.     The dates and times listed under column FI/tin_org on Defendants' Time Entry Data (*see* Exhibit 52) are employees' original "in" time punches.

**Defendants:  ADMIT**

18.     The dates and times listed under column FJ/tout_org on Defendants' Time Entry Data (*see* Exhibit 52) are employees' original "out" time punches.

**Defendants:  ADMIT**

19.     The dates and times listed under column AY/tin on Defendants' Time Entry Data (*see* Exhibit 52) are Defendants' accepted or edited "in" time punches.

**Defendants:  DENY OR OBJECT**

20.     The dates and times listed under column AZ/tout on Defendants' Time Entry Data (*see* Exhibit 52) are Defendants' accepted or edited "out" time punches.

**Defendants:  DENY OR OBJECT**

21.     The numbers listed under column M/quantity on Defendants' Payroll Data (*see* Exhibit 51) are the number of hours that Defendants paid Plaintiffs per workweek.

**Defendants:  DENY OR OBJECT**

Defendants propose the following stipulated facts.  Plaintiffs' responses are included below.

1.       Department managers were required as a matter of Gristede's company-wide policy to punch in and out of work, four times per day as follows:  (i) upon starting the work shift; (ii) upon leaving the shift for lunch; (iii) upon returning from lunch; and (iv) upon ending the work shift.

**Plaintiffs: DENY.**

2.       Department managers were afforded a 60-minute lunch break under their respective collective bargaining agreements.

**Plaintiffs: DENY.**

## IV.    PARTIES' CONTENTIONS

Plaintiffs

1.       Gristede's Operating Corp., Namdor Corp., Gristede's Foods, Inc., City Produce Operating Corp., Gristede's Foods NY, Inc. (collectively "Corporate Defendants"), John Catsimatidis, James Monos, and Galo Balseca have been employers and Plaintiffs and the Class Members have been employed by each Defendant within the meaning of the FLSA and the NYLL during the Class Period.

2.       Red Apple Group, Red Apple Companies, Red Apple Supermarkets, Inc and the Corporate Defendants are part of a single integrated enterprise.

3.       Defendants violated the FLSA and NYLL by engaging in a pattern and practice of failing to pay Plaintiffs and the Class Members for time that they worked for Defendants' benefit.  Defendants accomplished this by (1) shaving time from Plaintiffs' and Class Members' time records; (2) allowing Plaintiffs and Class Members to work "off-the-clock" without compensation; (3) failing to pay Plaintiffs and Class Members for compensable work time, including for breaks shorter than 20 minutes; and (4) inserting incorrect start and end times when Class Members failed to punch.  These unlawful

6

practices are consistent with, and pursuant to, Defendants' unlawful policy of failing to pay for overtime work that had not been approved in advance.

4.      Defendants violated the FLSA and NYLL by failing to keep and preserve accurate time records.

5.      Defendants engaged in fraud by presenting Plaintiffs and Class Members with paystubs indicating that Plaintiffs and Class Members had worked fewer hours than they had actually worked.  Plaintiffs and Class Members relied on these paystubs to their detriment and were harmed.

6.      Class Members are entitled to unpaid overtime wages and unpaid non-overtime wages for all hours or partial hours that they worked for Gristede's benefit during the class period.

7.      Class Members are entitled to compensatory damages and damages and punitive damages for Gristede's fraud.

8.      Class Members are entitled to liquidated damages under the FLSA and interest under the NYLL to be calculated in post-trial proceedings.

9.      Class Members are entitled to attorneys' fees and costs to be calculated in post-trial proceedings.

10.     Plaintiffs Torres and Chewning are entitled to punitive damages, emotional distress damages, other compensatory damages, and attorneys' fees and costs for Defendants' violations of the FLSA and NYLL anti-retaliation provisions.

<u>Defendants</u>

**<u>Gristede's Contentions</u>**

**(A)    <u>General Contentions</u>**

Damages remain subject to individualized testimony and cannot be properly established by representative proof for the reasons set forth in Gristede's motion in limine.

**(B)      Co-Manager Contentions**

(1)      Historically, co-managers did not punch in and out for work because of their perceived managerial status.  Thus, there is no documentary evidence indicating that co-managers did not get paid for any hours worked beyond their standard 50 hour workweek, and the Court made no prior finding that it was Gristede's practice or policy for co-managers to work more than 50 hours per week without additional compensation.

(2)      Instead, co-managers were paid a weekly salary predicated upon a standard 50 hour work week (5 days x 10 hours per day), plus certain premium pay for Sundays and other discretionary bonuses and extra compensation.

(3)      Gristede's disputes that there was a policy or practice for co-managers to effectively work "off-the-clock" beyond their standard 50 hour work week without compensation.  Indeed, such a contention is belied by the actual payroll data confirming that co-managers received at least straight-time pay for all hours worked in excess of 50 hours per week.

(4)      All premium payments, discretionary bonuses and extra compensation constitute a credit against Gristede's obligations for unpaid overtime.

(5)      After application of the credits, Gristede's, for the purposes of trial, recognizes a net balance of $469,624 in total unpaid overtime owed to co-managers, liquidated damages of $49,722 for opt-in members, plus accrued interest at a rate to be

8

determined by the Court, all as set forth in the summary of co-managers unpaid overtime referenced below.

(6)    Plaintiffs did not and cannot establish a policy or practice by Gristede's of requiring or allowing co-managers to work off-the-clock beyond their standard 50 hour weeks without compensation.

**(C)    Department Manager Contentions**

(1)    Department managers were union employees, subject to various collective bargaining agreements, and regularly worked a standard 40 hour week.  As per their collective bargaining agreements, department managers were eligible and received overtime at 1 ½ times their hourly rate for work performed in excess of 40 hours per week, excluding their 60 minute lunch breaks.

(2)    Department managers were required as a matter of Gristede's company-wide policy to punch in and out of work, four times per day (the "Four Punch Rule") as follows:  (i) upon starting the work shift; (ii) upon leaving the shift for lunch; (iii) upon returning from lunch; and (iv) upon ending the work shift.

(3)    Gristede's utilized a Novatime hand-swipe operating system which kept track of all punches by the department managers.

(4)    Because of:  (i) department managers' failure to abide by the Four Punch Rule on a majority of occasions [some 58% of the total days worked (105,067 occasions in total) including 12% of the time when department managers made zero or one punch]; and (ii) the fact that department managers did not necessarily punch correctly when they made four punches on only 42% of the total days, Gristede's was required to edit and correct department managers' time and attendance records.

(5)    The most glaring omission regarding violation of the Four Punch Rule involved a dramatic failure on the part of department managers to punch in and out for lunch.

(6)    In fact, there were more occasions when department managers punched only twice per day (47%) as compared to when they punched four times per day (42%). The only way for Gristede's to remedy these deficiencies was to edit and correct these time and management reports.

(7)    Thus, Gristede's contends that most of the editing relates to adjustments for missed lunch punches and not elimination of unauthorized overtime.  In fact, once all missed lunch punches are fully adjusted and reconciled, the data suggests that there were no damages to any Plaintiffs, except for seven (7) class members with total damages of less than $10,000.  To argue otherwise is to effectively contend that on hundreds of thousands of occasions, union employees forfeited their lunch hours to work without any compensation and never once voiced any contemporaneous objection or complaint.  To merely state this contention underscores its absurdity.

(8)    Besides missed lunch punches, there are a multitude of other legitimate reasons for edits, including occasions when department managers had to leave work to attend a doctor's appointment, dental appointment, school or teacher conference or run a personal errand.  The department managers were required to punch in and out of work on such occasions, but, in practice, the data confirms that this did not occur, further necessitating that edits be made.

10

(9)    Also, editing and corrections were necessary to reflect that some department managers did not immediately start working the minute they punched in, and did not necessarily punch-out immediately after completing their shifts.

(10)    Insofar as alleged off-the-clock work is concerned, Gristede's denies that this occurred in any material form, shape or manner.  There is no evidence of a policy or practice by Gristede's of requiring or allowing department managers to work off-the-clock without compensation.  Any allegation to this effect is based upon wholly self-serving testimony that is not credible or believable, particularly since there was never a single complaint or grievance ever filed by any department manager regarding alleged off-the-clock work during the entire class period.

## V.    ISSUES TO BE TRIED

Plaintiffs

### I.    Defendants May Not Take a Credit For an Overtime Overpayment in One Week Against a Deficiency in Another Week.

Gristede's cannot offset overtime deficiencies with overpayments from prior or subsequent weeks.  Even if, from time to time, Gristede's paid a Class Member an amount in excess of what it was required to pay (which Plaintiffs do not concede), the FLSA's "workweek concept" prohibits credits across weeks.

The FLSA uses the single workweek as its standard and does not permit averaging hours over 2 or more weeks, even for weeks falling within the same pay period.  29 C.F.R. § 778.104; *Scott v. City of New York*, 592 F. Supp. 2d 475, 484-85 (S.D.N.Y. 2008) ("surplus overtime premium payments, which may be credited against overtime pay . . . may not be carried forward or applied retroactively to satisfy an

11

employer's overtime pay obligation in future or past pay periods") (citation omitted).  An employee's entitlement to overtime is based on the "workweek concept."  29 U.S.C. § 207(a).  Under this principle, in order to determine overtime hours, an employer simply totals the number of hours an employee has worked in any given week.  29 C.F.R. § 778.103.  If the number is greater than 40, the employee is due overtime compensation for the excess hours.

For example, if an employee works 30 hours one week and 50 hours the next, she must receive overtime compensation for the 10 overtime hours worked in the second week, even if the average number of hours worked in the two weeks is 40.  29 C.F.R. § 778.104.  "An employee's 'workweek' is a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods."  29 C.F.R. § 778.104.

Just as averaging hours worked "would constitute an end-run around the overtime requirement," allowing employers to apply credits no matter when they are paid would accomplish the same result.  *Howard v. City of Springfield*, 274 F.3d 1141, 1149 (7th Cir. 2001).  Consistent with the single workweek concept, the FLSA does not allow an employer to retroactively apply premium payments to a past week's overtime deficiencies.  *See Harold Levinson Assoc., Inc. v. Chao*, No. 01-6105, 2002 U.S. App. LEXIS 9796, at *8 n.3 (2d Cir. May 22, 2002) (declining to award credits for overtime payments throughout a period longer than a workweek).

To allow an employer to do so would provide the employer with a "windfall," and would place it "in a substantially better position than if it had complied with the overtime requirements of the FLSA all along."  *Howard*, 274 F.3d at 1148.  It would also be inconsistent with the protective nature of the statute itself.  *Id.*  Any windfall to the

employee would arise "as a result of [the employer's] own chosen pay practices." *Herman v. Fabri-Centers of Am.*, 308 F.3d 580, 592 (6th Cir. 2002) (holding that an offset across workweeks is not allowed).

The FLSA does provide that certain premium payments are "creditable towards overtime compensation. . . ." 29 U.S.C. § 207(h)(2). This credit provision, however, "must be read in the context of the statute as a whole, which is designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard*, 274 F.3d at 1148 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Courts have long interpreted the FLSA to require the timely payment of overtime. *Id.* (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 703-07 (1945); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993); *Rogers v. City of Troy, New York*, 148 F.3d 52, 55 (2d Cir. 1998)). The "statute is violated even if the employer eventually pays the overtime amount that was due." *Id.*

The single workweek principle is also affirmed by 29 C.F.R. § 778.106, which provides the general rule that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. The argument that an employer should be allowed to satisfy its overtime obligations at a time far removed from when that overtime amount was due is inconsistent with the statutory requirement that overtime payments must be timely made, and would "eviscerate the protection intended by the overtime payment requirement." *Howard*, 274 F.3d at 1148-49; *see also* 29 C.F.R. § 778.202(c) (credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek").

**II.     Off-the-Clock Hours Do Not Decrease the Regular Rate.**

An employee's regular rate of pay is an established hourly rate of pay. It does not fluctuate based on how many hours an employee works "off-the-clock" without compensation. The regular rate is determined by "what happens under the employment contract." 29 C.F.R § 778.108 (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948)). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." *Id.* (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)) (emphasis added).

The general rule for calculating the regular rate is to take the "total remuneration for employment (except statutory exclusions) in any workweek [divided] by the total number of hours actually worked [] in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (emphasis added). In other words, the regular rate is the rate derived by dividing an employee's total wages by the number of hours the wages were intended to compensate.

For example, an employee with a $6.00 hourly rate who works 46 hours in a week must be paid a total weekly wage of $294.00 (46 hours at $6.00 per hour plus 6 hours at $3.00 per hour). "In other words, the employee is entitled to be paid an amount equal to $6.00 an hour for 40 hours and $9.00 an hour for the 6 hours of overtime. 29 C.F.R. § 778.110.

If the same $6.00 per hour employee works 46 hours but is only paid for 40 of them ($240.00), she still earns the same $294.00. If she is forced to sue the employer for the additional 6 hours pay, she should recover $54.00 ($294.00 minus $240.00).

14

Defendants in this case have argued that she should recover less.  According to Defendants, the $6.00 per hour employee's regular rate would be reduced to $5.22 ($240.00 divided by 46 hours) simply because the employer decided not to pay her for some of her work.  This is obviously not the right result.

Here, Defendants intended to compensate Class Members for the number of hours their pay-stubs indicate they worked – usually 50 hours each week for Co-Managers and 40 hours each week for Department Managers.  In other words, Gristede's paid them at a straight-time rate for each hour that was recorded in the payroll system and that Gristede's did not eliminate.  Gristede's did not intend Class Members' wages to compensate them for hours they worked outside of their scheduled shifts and that were not recorded on their paystubs.[1]

Co-Managers worked an average of three to four hours beyond their scheduled shifts each week.  During a certain portion of the class period, Department Mangers worked even more.  Because these hours were entirely unpaid and Gristede's did not intend to compensate Class Members for them, they should not be included in the denominator in the regular rate calculation.

## III.    Defendants are Liable for All Off-the-Clock Hours at One and One-Half Times the Regular Rate.

Gristede's must pay the Class Members one and one-half times their regular rates for the time they worked for which they were not compensated at all, including unscheduled time, off-the-clock time, and time that Gristede's shaved from workers' time records.  Gristede's cannot credibly claim that Class Members' weekly wages were

---

[1] The Court has determined that Gristede's did not pay the Class Members on a salary basis. *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316, 2008 U.S. Dist. LEXIS 66066, at **16-17 (S.D.N.Y. Aug. 28, 2008).

15

intended to compensate them for all hours they worked or that they should be allowed to take advantage of the fluctuating workweek ("FWW") exception to the default damages method calculation.  29 C.F.R. § 778.114.

The FWW method is a narrow exception to the standard method of damage calculations under which an employer may apply a fixed weekly salary to all hours an employee works.  The employer bears the burden of proving all of the requirements of the FWW exception.  *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215, 221-22 (N.D.N.Y. 1998).  The FWW method may not be employed unless "five discrete criteria" are satisfied:

> (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week; (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week.

*Avers v. SGS Control Servs., Inc.,* 03 Civ. 9078, 2007 U.S. Dist. LEXIS 19634, at *30 (S.D.N.Y. Feb. 26, 2007) (citations omitted).

Gristede's cannot demonstrate a clear, mutual understanding that it would pay the Class Members a fixed weekly salary for all hours worked because the Class Members were hourly employees.  *See Torres*, 2008 U.S. Dist. LEXIS 66066, at **16-17.

Gristede's also cannot claim that the weekly wages it paid the Class Members included overtime premiums.  An employer that has taken the position that its employees are exempt from overtime cannot credibly later take the position that there existed an understanding that overtime premiums would be paid.  "If defendant believed that

plaintiff was exempt . . . then it was not possible for it to have a clear mutual understanding with plaintiff that she was subject to a calculation method applicable only to non-exempt employees who are entitled to overtime compensation." *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 101 (D.D.C. 1998).

## IV.    Department Managers' Bonuses Should Be Included in the Regular Rate Calculation.

Department Managers received non-discretionary premium payments that should be included in the numerator when determining the regular rate.  The general rule is that the numerator includes "all remuneration for employment."  29 U.S.C. § 207(e).  This includes bonus and premium payments paid in addition to regular earnings.  29 C.F.R. § 778.208; 29 C.F.R. § 778.211(c).  A payment that is a normal and regular part of an employees' income rather than a true gratuity must be included in the regular rate. *Walling v. Harnischfeger Corp*., 325 U.S. 427, 430-32 (1945).

In some circumstances not present here, an employer may exclude certain discretionary bonuses from the regular rate.  Sections 7(e) (1)-(7) of the FLSA allow employers to exclude certain surprise discretionary bonuses from the regular rate. *See* 29 U.S.C. § 207(e).  Bonuses may only be excluded where the employer retains discretion as to both the fact and the amount of the payment. *Mendez v. Radec Corp*., 232 F.R.D. 787, 89 (W.D.N.Y. 2005) (finding a genuine issue of material fact regarding the type of bonuses the employer awarded).

Bonuses that the employer determines in advance or that it announces to employees in order to induce them to work more steadily, more rapidly, or more efficiently, or to remain with the company, are regarded as remuneration that must be

17

included in the regular rate of pay.  29 C.F.R. § 778.211(c); *see also Walling*, 325 U.S. at 430-31.

Payments for "hazardous, arduous, or dirty work" must also be included in the regular rate.  29 U.S.C. § 778.207(b); *Burke v. Mesta Mach. Co*., 79 F. Supp. 588, 604 (W.D. Pa. 1948) (payment for "undesirable hours or disagreeable work" must be included in regular rate calculation).  Under 29 C.F.R. § 778.211(c), bonuses may not be excluded from the regular rate if they are "paid pursuant to any prior contract, agreement or promise . . . . Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay."  29 C.F.R. § 778.211(c).

Any bonus promised to employees when they are hired that is announced as an incentive for hard work . . . must be included in employees' regular rate.  *See* Ellen C. Kearns, The Fair Labor Standards Act § 10.III.B.1 (Am. Bar Assoc. 1999); *see also Haber v. Americana Corp*., 378 F.2d 854, 856 (9th Cir. 1967) (payments dependent on fixed level of performance did not qualify for exclusion); *Herman v. Anderson Floor Co., Inc*., 11 F. Supp. 2d 1038 (E.D. Wis. 1998) (granting summary judgment to plaintiff employees, finding bonus system nondiscretionary); *McLaughlin v. McGee Bros. Co*., 681 F. Supp. 1117, 1133 (W.D.N.C. 1988) (holding that an employer's incomplete calculation of its employees' regular rate by omission of their production bonuses was a violation of the FLSA).

Here, Gristede's intended the premium payments to compensate Class Members for working undesirable shifts and for performing undesirable work, such as inventory.

18

Many of the payments were provided for in applicable collective bargaining agreements. Accordingly, these bonuses must be included in the computation of the Class Members' regular rate of pay.

The bonuses should not be used as offsets for unpaid overtime compensation owed to the Class Members. Under section 7(h) of the FLSA, Gristede's is prohibited from using these bonus payments as offsets. The prohibition of using these payments as offsets is confirmed by 29 C.F.R. § 778.201(c), which provides that only the few enumerated types of payments (*i.e.*, for hours in excess of eight in one day, for Sundays hours, and for hours worked on holidays) may be excluded from the regular rate and used as an offset. "No other types of remuneration may be so credited." *See also* 29 C.F.R. § 778.207(a); 778.208; 778.211(a).

## V. Employees Must Be Compensated for Their Work Whether or Not They Follow Timekeeping Procedures.

Class Members' purported failure to punch the time-clock properly is not relevant to their entitlement to unpaid wages. An employee must be compensated for all hours worked whether on or off-the-clock. This is true even where the employer has not requested the work be performed or does not desire the work, and even where the employee fails to report the work. *See Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 718 (2d Cir. 2001); 29 C.F.R. §§ 785.11-12.

It was Gristede's obligation to make sure that all work was accurately recorded and compensated. Any failure in this regard should not be held against the Plaintiffs and Class Members. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("it is the employer who has the duty . . . to keep proper records of . . . hours . . . ."); *Reich v. Waldbaum*, Inc., 833 F. Supp. 1037, 1042 (S.D.N.Y. 1993) (rejecting defendant's

argument that it was the plaintiffs' failure to use its time-keeping system properly that caused its records to be inaccurate), rev'd on other grounds, 52 F.3d 35 (2d Cir. 1995); 29 C.F.R. §§ 516.2(a)(7), 516.5(a); 12 N.Y.C.R.R. § 142-2.6(a)(4).

## VI.    The Court Should Calculate Liquidated Damages and Interest After the Trial.

The Court should add liquidated damages and interest to the jury's verdict on lost wages after the trial when Plaintiffs make their post-trial motion.  There is no reason to require the jury to perform these calculations, given that there are no related factual issues for it to decide.

Defendants

**ISSUES TO BE TRIED  * To be revised subject to settlement.**

1.      Whether the bonuses and extra compensation co-managers received from time-to-time:  (1) are discretionary amounts that are excludable from the calculation of regular and overtime rates; and (2) can be applied as a credit to any overtime found by the Court to be due under the FLSA and its implementing regulations.

2.      The number of regular and overtime hours worked by each individual co-manager.

3.      Whether any individual co-manager worked any hours off-the-clock at the request of and/or with the knowledge of Gristedes despite no co-manager ever having reported such work, and, if so, the amount of the hours and the amount of compensation due for those hours.

4.      Whether any individual co-managers actually worked any hours beyond the hours set forth in their schedules, and, if so, whether and what hours were worked without proper compensation.

5.    The amount of the individual damages for each co-manager.

6.    The impact of co-managers failing to record and report any alleged off-the-clock hours.

7.    The number of regular and overtime hours worked by each individual department manager.

8.    Whether any individual department managers worked any hours off-the-clock at the request of and/or with the knowledge of Gristedes despite no department manager ever having reported such work, and if so the amount of the hours and the amount of compensation due for those hours.

9.    Whether any individual department managers actually worked any hours beyond the hours set forth in their schedules and if so whether and what hours were worked without proper compensation.

10.    The amount of the individual damages for each department manager.

11.    The impact of department managers failing to record and report any alleged off-the-clock hours.

12.    Whether and to what extent, each individual department manager actually worked unauthorized overtime without proper compensation, including the impact, if any, of the individual corrections/edits made to the personal time and attendance record of individual department managers by Gristede's.

13.    Whether and to what extent edits and corrections were made to the time and attendance reports of individual department managers for legitimate reasons to adjust for a variety of circumstances, including, inter alia, missed lunch or other punches, taking longer for a meal or rest break than reported by the department manager, leaving a shift

for periods of time during the workday to attend to personal matters, incorrect punches by

the department managers, or to reflect that department mangers did not necessarily start

or end work the minute they punched in or out.

## VI.    PLAINTIFFS' EXHIBITS

Plaintiffs' exhibit list is attached as Exhibit A.

## VII.    DEFENDANTS' EXHIBITS

A. Gristede's Novatime time and attendance records for the Plaintiffs.  Bates Stamped: ETPR000001-ETPR008877 (Plaintiffs' Exhibit 51)

B. Gristede's ABRA payroll records for the Plaintiffs.  Bates Stamped: ETPR200001-ETPR206989 (Plaintiffs' Exhibit 52)

C. Gristede's collective bargaining agreements with Local 342 covering the period from 12/20/02 to 12/21/06.  Bates Stamped: P210524-210539 (Plaintiffs' Exhibit 37)

D. Gristede's collective bargaining agreements with Local 338 covering the period from 10/6/02 to 10/7/06.  Bates Stamped: P210499-210523 (Plaintiffs' Exhibit 39)

E. Gristede's collective bargaining agreements with Local 1500 covering the period from 6/22/02 to 6/24/06. Bates Stamped: P210540-210583 (Plaintiffs' Exhibit 38)

F. Gristede's "General Company Policies and Procedures Issued to All Employees (Revised 12/98)"

G. Red Apple Companies "Company Policy and Procedures" for Red Apple Supermarkets, Pantry Pride/Sun Supermarkets, Gristede's Supermarkets, Charles & Co. Stores."

H. *Co-Manager Summary of Damages

I. Department Managers' Summary of Four Punch Rule Compliance.  Attached to Gristede's Motion in Limine

J. Department Managers' Summary of unreconciled Hours Paid versus Hours Punched (Final version to be supplied)

K. Department Managers' Summary of Hours Paid versus Hours Punched as adjusted for missed lunch punches and other required edits and corrections (Final version to be supplied)

L. Department Managers' Summary of Overtime Pay

M. Audit Trails for the Department Managers who actually appear at trial and testify, as subsequently determined by the Court

N. Personnel file documents relating to job performance, including but limited to records of grievances and Warning Notices for the Department Managers who actually appear at trial and testify, as subsequently determined by the Court

O. Namdor check/direct deposit registers for Plaintiffs

P. Expert Report of David Crawford (Original)

\* Note: This exhibit will not be produced in the event of settlement.

## VIII. STIPULATIONS AND OBJECTIONS TO EXHIBITS

Plaintiffs

The following are Plaintiffs' objections to Defendants' exhibits:

\*DEFENDANTS' EXHIBIT F – Gristede's "General Company Policies and Procedures Issued to All Employees (Revised 12/98)"

Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, completeness, and prejudice.

\*DEFENDANTS' EXHIBIT G – Red Apple Companies "Company Policy and Procedures" for Red Apple Supermarkets, Pantry Pride/Sun Supermarkets, Gristede's Supermarkets, Charles & Co. Stores."

Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, completeness, and prejudice.

\*DEFENDANTS' EXHIBIT H – \*Co-Manager Summary of Damages

Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, and prejudice.

*DEFENDANTS' EXHIBIT I – Department Managers' Summary of Four Punch Rule Compliance.  Attached to Gristede's Motion in Limine

       Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, and prejudice.

*DEFENDANTS' EXHIBIT J – Department Managers' Summary of unreconciled Hours Paid versus Hours Punched (Final version to be supplied)

       Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, and prejudice.

*DEFENDANTS' EXHIBIT K – Department Managers' Summary of Hours Paid versus Hours Punched as adjusted for missed lunch punches and other required edits and corrections (Final version to be supplied)

       Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, and prejudice.

*DEFENDANTS' EXHIBIT L – Department Managers' Summary of Overtime Pay

       Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, completeness, and prejudice.

*DEFENDANTS' EXHIBIT N – Personnel file documents relating to job performance, including but limited to records of grievances and Warning Notices for the Department Managers who actually appear at trial and testify, as subsequently determined by the Court

       Objection on the grounds of relevance, hearsay, authenticity, lack of personnel knowledge, undue delay, waste of time, confusion, misleading, and prejudice.

<u>Defendants</u>

       Defendants' objections are attached as Exhibit B.

## IX.    PLAINTIFFS' WITNESS LIST

1.    Raymond A. Allen;

2.    Abel Alvizuri;

3.    Oscar Amaro;

4.    Joselito Arocho;

5.      Galo Balseca;

6.      Doug Barley;

7.      David Barreto;

8.      Dominick S. Bartone;

9.      Anissa Benjamin;

10.     Nelson Betancourt;

11.     Jose Bonilla-Reyes;

12.     Anthony Brooks;

13.     Mitchell Campanile;

14.     Jane Cassara;

15.     Vicent Cassels;

16.     Vinny Castelo;

17.     John Catsimatides;

18.     Michael V. Cella;

19.     Arthur L. Chavis;

20.     Lewis Chewning;

21.     John Cinquemani;

22.     Deborah Clusan;

23.     Franklyn R. Collado;

24.     Richard Colon;

25.     John Cortino;

26.     Joseph Crema;

27.     Charles Criscoulo;

28.     Alfred Croker;

29.     David L. Crawford, Ph.D.

30.    Mohammed A. Dabash;

31.    Thomas Daly;

32.    Kelvin Damassia;

33.    Ray Davila;

34.    Rodlolfo J. De Lemos;

35.    Jose A. Delacruz;

36.    Carlos J. Delarosa;

37.    Frank DeLeon;

38.    Ousmane Diatta;

39.    Victor Diaz;

40.    Louis G. Difinizio;

41.    Michael Dillon;

42.    Malick Diouf;

43.    Mario Dipreta;

44.    Hector Dominguez;

45.    Kingkay Echevarria;

46.    Tony Fama;

47.    Freddy Familia;

48.    Faustino Ferdinand;

49.    Renee Flores

50.    Juan Llanos Flores;

51.    William R. Fritz;

52.    Angel Garcia;

53.    Anna Garrett;

54.    Eduardo Gonzalez;

55.    Jose M. Gonzalez;

56.    Manuel Gonzalez;

57.    Martin Gonzalez;

58.    Rogelio Gordon;

59.    Mitch Greene;

60.    Michael Groseclose;

61.    Steven Grossman;

62.    Hermogenes A. Grullon;

63.    Elizabeth Guilamo;

64.    Rafael A. Guillen;

65.    Alfred Gumbs;

66.    Robert Hairston;

67.    William Helwig;

68.    Stacy Hilton;

69.    George Holman;

70.    Brian D. Homola;

71.    Lawson Hopkins;

72.    Harold Horn;

73.    Bobby Irizarry;

74.    Louis Jimenez;

75.    Allison E. Joseph;

76.    Glynn St. Juste;

77.    Gabriel Karamanian;

78.    Nicholas Katsoris;

79.    Peter Kidd;

80.    Jimmy Lake;

81.    Yuri A. Lamarche;

82.    Chris Lang;

83.    James G. Laws;

84.    Luis Lopez;

85.    Miguel Manzano;

86.    Miguel Manzano;

87.    Gregory W. Markiewicz;

88.    Carlos I. Martinez;

89.    Jose Martinez;

90.    Robert J. Mastronicola;

91.    Daisy Matteis;

92.    Michael McCormick;

93.    Plinio A. Medina;

94.    Dewin Medrano;

95.    Elvi M. Mendez;

96.    Angelo Mendoza;

97.    Robert Misuraca;

98.    Sandi Molina;

99.    James Monos;

100.    Robert  Montalvo;

101.    Kevin A. Moore;

102.    Mitchell Moore;

103.    Ruben Mora;

104.    Alejandro Morales;

105.    Luis D. Morales;

106.    Candido A. Morel;

107.    Alfonso Nadal;

108.    Kevin Nash;

109.    Peter Newman;

110.    Jose Olan;

111.    Neftali Olan;

112.    Chris Paliophilos;

113.    Emily Pankow;

114.    Robert Pastorino;

115.    Timothy Payea;

116.    Jose Pereyra;

117.    Carlos Perez;

118.    Enrique A. Perez;

119.    Vincent Perez;

120.    David Peters;

121.    Paul Petrosino;

122.    Victor Phelps;

123.    Guillermo F. Pichardo;

124.    Luis M. Ramos;

125.    Deborah Reeves;

126.    Angel Rivera;

127.    Fernando Rodriguez;

128.    Louis Rodriguez;

129.    Tina M. Rodriguez;

130. Ysidro Leo Rodriguez;

131. Hector Rosario;

132. Eugene Rybacki;

133. Santosh Saha;

134. Daniel Salegna;

135. Eugenio Salvador;

136. Ed Selber;

137. Jose Serano;

138. Sam Sharif;

139. Alma Simon;

140. Gary Slade;

141. Richard Smith;

142. Jack Squicciarini;

143. Towana Starks;

144. Elliot R. Stone;

145. Mateo Sullivan;

146. Carl Sumner;

147. Kevin Sutorius;

148. Christian F. Tejada;

149. Carlos Torres;

150. Johnny Torres;

151. Luis Torres;

152. Danny Travesio;

153. Lisandro Ulerio;

154.    Joseph Valvano;

155.    Jose A. Veloz;

156.    Denise Washington;

157.    Richard Wong,

158.    Victor Woods;

159.    Robert Zorn;

160.    Witness regarding assembling exhibits – Outten & Golden LLP paralegal

Plaintiffs' Deposition Designations

| Name of Deponent | Line and Page Numbers |
|---|---|
| Balseca, Galo | 1:1-255:8. |
| Berkman, Mark | 1:1-86:12. |
| Catsimatidis, John | 1:1-304:3. |
| Catsimatidis, John (December 20, 2000) | 75:20-76:4. |
| Chewning, Lewis | 1:1-124:5. |
| Clusan, Deborah | 1:1-639:14. |
| Crema, Joseph | 1:1-131:7. |
| Criscuolo, Charles | 1:1-275:14. |
| Criscuolo, Charles (June 18, 2007) | 23:4-12; 23:16-24:7; 24:22-23. |
| Croker, Alfred | 1:1-72:11. |
| Daly, Thomas | 5:7-20; 28:5-8; 29:11-14; 31:11-32:2; 40:3-4; 40:6-41:2; 41:4-42:17; 43:20-44:10; 44:24-45:23; 48:13-49:20; 50:11-15; 51:15-52:2; 86:15-16; 89:6-90:6; 97:21-98:5; 100:17-19; 124:10-15; 126:23-127:13; 129:13-16; 129:25-132:22; 133:18-22; 134:18-135:7; 137:18-22; 139:4-7; 149:15-21; 150:4-6; 150:20-25; 153:3-4; 154:6-22; 156:7-8; 177:22-178:15; 178:20-179:3; 179:14-15; 179:18-180:2; 181:10-15; 183:7-9; 183:11-14; 185:5-8; 185:10-18; 189:3-13; 190:4-11; 190:19-25; 191:13-25; 192:6-9; 192:11-12; 195:19-196:3. |
| Deleon, Frank | 1:1-122:22. |
| Dipreta, Mario | 1:1-74:7. |
| Ferrantino, Yolanda | 1:1-71:17. |
| Flores, Renee | 1:1-299:4. |
| Helwig, William | 1:1-109:7. |

| Name of Deponent | Line and Page Numbers |
|---|---|
| Hilton, Stacy | 7:17-23; 8:6-10; 8:23-9:7; 13:3-15:3; 15:5-12; 19:12-25; 20:4-8; 20:11-21:9; 21:11-18; 24:16-19; 26:3-13; 28:22-23; 28:25-29:6; 31:11-13; 31:16-17; 34:13-16; 34:25-35:4; 35:21-36:4; 39:8-16; 38:19-40:9; 41:12-15; 42:15-19; 44:12-15; 44:25-45:11; 45:21-24; 46:3-47:13; 47:24-48:3; 48:7-10; 48:18-19; 48:21-24; 49:14-20; 49:22-23; 50:4-10; 51:21-52:5; 528-13; 52:16-20; 52:23-53:4; 53:7-12; 53:15-54:3; 54:14-55:18; 55:20-57:14; 57:16-18; 57:21-2; 58:5; 60:10-13; 60:16-25; 61:3-6;  62:18-24; 63:8; 64:7-11; 69:15-18. |
| Irizarry, Bobby | 1:1-85:17 |
| Lang, Christopher | 8:2-9:14; 13:17-14:10; 14:12-16:9; 16:12-18:10; 19:23-21:4; 26:13-18; 26:20-25; 27:3-21; 29:10-13; 31:10-13; 34:16-37:12; 41:20-21; 41:23-42:4; 42:6-42:16; 42:18-22; 48:25-49:6; 56:9-21; 56:23-57:11; 57:13-21; 57:23-58:6; 62:7-11; 80:5-82:18; 83:15-84:2; 84:4-24; 85:2-7; 85:9-14; 85:16-20; 85:22-86:16; 86:18-87:3; 87:5-8; 87:10-17; 87:21-88:12; 88:14-17; 88:20-89:2; 89:4-25; 90:3-15; 91:24-92:13; 94:12-95:20; 97:4-8; 97:10-12; 110:5-111:2; 111:4; 113:2-7; 113:9-16; 113:18-21; 113:23; 113:25-114:9; 114:11-18; 114:20-116:4; 116:6-24; 117:17-18; 117:20-118:4; 124:23-25; 125:3-13; 125:15-20; 126:3-14; 127:3-6; 128:25-129:5; 129:7-130:11; 130:20-131:12; 131:21-132:7; 132:9-133:5; 133:7-19; 133:21-134:14; 134:16-23; 134:25-135:5; 135:17-19; 135:21-25; 150:25-151:4; 151:6-18; 151:20-24; 152:2-7; 152:9-15; 152:17-22; 219:9-24; 220:2-15; 226:4-21; 228:2-7; 228:9-229:3; 229:5-14; 229:16-230:6; 230:8-13; 230:15-20. |
| McCormick. Michael | 1:1-162:11 |
| Misuraca, Robert | 1:1-101:6 |
| Molina, Sandi | 1:1-179:11 |
| Monos, James | 1:1-155:6 |

| Name of Deponent | Line and Page Numbers |
|---|---|
| Montalvo, Robert | 4:4-6; 4:15-18; 7:6-9:13; 9:15-17; 10:6-8; 10:21-24; 11:7-22; 12:14-15:13; 15:17-16:25; 17:19-19:11; 19:20-21:4; 22:14-17; 23:3-11; 23:22-23; 24:2-25:13; 25:16-17; 28:2-21; 29:24-30:15; 31:18-21; 32:4-6; 33:9-11; 37:22-38:3; 39:2-8; 70:3-7; 70:10-17; 71:23-73:20; 80:18-81:8; 82:25-84:18; 84:20-85:8; 85:10-21; 85:223-86:5; 86:7-87:9; 87:11-15; 87:17-88:7; 88:9; 88:16-19; 89:3-10; 90:3-17; 91:16-22; 92:2-10; 92:12-15; 94:11-23; 94:25-95:11; 95:15-18; 95:20; 96:9-97:2; 97:6-22; 97:24-98:8; 98:10-12; 101:6-105:14; 105:16-106:3; 106:11-18; 106:20-107:13; 107:24-108:9; 108:11-12; 109:4-22; 109:24-110:3; 110:5-6; 111:3-5; 111:7-19; 116:11-23; 116:25-117:2; 121:11-122:6; 123:17-124:20; 125:11-18; 125:20-126:2; 126:13-127:14; 127:23-128:13; 128:15-18; 128:20-21; 128:23-25; 129:3; 129:5; 129:16-21; 144:2-146:8; 147:8-12; 147:14-15; 150:18-151:4; 152:4-19; 160:11-161:7; 161:9-164:18; 164:20-166:6 |
| Moore, Mitchell | 1:1-129:7. |
| Mora, Ruben | 1:1-212:17. |
| Paliophilos, Chris | 4:8-10; 6:13-9:9; 11:20-12:13; 31:22-32:14; 36:5-37:4; 37:15-21; 39:12-21; 42:6-43:9; 44:15-19; 51:20-52:9; 68:2-7; 69:22-70:12; 77:18-25; 79:23-80:21; 86:19-25; 111:21-112:12; 121:18-19; 122:2-9; 123:4-126:14; 132:4-134:12; 134:18-136:24; 138:14-142:24; 156:7-12, 156:14-17; 159:4-9, 159:11-12. |
| Pastorino, Robert | 1:1-52:14. |
| Phelps, Victor | 1:1-74:2. |
| Salegna, Daniel | 1:1-116:18. |
| Schneider, Stephen | 1:1-143:3. |

| Name of Deponent | Line and Page Numbers |
| --- | --- |
| Sharif, Sam | 4:22-5:11; 9:9-14:18; 14:25-16:2; 16:4-17:11; 17:13-17; 20:12-13; 20:15-21:25; 22:3-20; 22:23-23:7; 24:14-15; 24:17-25; 25:4-10; 25:12-20; 27:3-4; 27:14-21; 37:21-22; 37:24-38:15; 38:18-39:6; 39:9-40:10; 40:13-15; 40:17-42:2; 42:14-18; 42:21-43:12; 45:5-7; 45:9-24; 46:2-4; 46:7-23; 47:2-7; 47:10-48:4; 48:7-18; 48:21-49:11; 49:14-16; 55:17-23; 61:13-19; 61:21-62:8; 62:10-18; 62:20-63:9; 63:12-19; 64:2-65:4; 65:7-19; 65:23; 81:16-84:18; 84:20-87:21; 87:23-89:13; 89:15-16; 89:18-19; 90:6; 90:11-24; 91:3-11; 91:14-17; 93:8-96:4; 96:7-14; 96:16-19; 97:5-8; 97:10-98:10; 98:12-99:18; 99:20-25; 100:3-8; 100:10-14; 100:16-102:10; 102:12-15; 102:17-19; 102:21-103:8; 103:10-17; 103:19-21; 103:25; 104:2-17; 104:21-106:11; 106:13-107:9; 108:12-109:15; 109:18-21; 110:22-111:9; 111:12-16; 111:19-23; 112:2-22; 113:2-12; 114:4-115:5; 115:17-116:8; 116:13-14; 116:17-117:3; 117:5-17; 117:19-118:2; 118:4; 118:8-10; 118:12-16; 118:18-19; 118:21-23; 119:2-3; 119:5-6; 119:11-12; 119:14-15; 119:17-120:3; 120:5-9; 120:11; 120:13; 120:15; 120:23; 121:13; 121:23-122:10; 122:14-123:21; 123:23-124:3; 124:5-7; 124:9-13; 124:15-20; 124:22-125:9; 125:15-127:11; 127:16-129:14; 129:17-21; 129:24-130:3; 130:6-10; 160:13-22; 130:24; 130:10-11; 130:14-18; 130:21-132:2; 132:4-12; 134:15-23; 134:2. |
| Squicciarini, Jack | 1:1-237:10, 5:18-24, 16:20-23, 17:6-18:22, 20:13-21, 35:21-36:4, 36:21-25, 38:3-17, 39:2-20, 42:21-43:14, 60:15-20, 63:13-64:3, 64:9-16, 65:5-10, 65:14-18, 73:22-24, 74:4-11, 74:14-76:8, 194:15-24, 202:24-203:5, 203:7-23, 203:25-204:9, 209:16-23, 209:25-210:14, 210:24-211:5, 211:7, 211:17-18, 211:20-23, 214:25-215:5, 215:7-8, 216:24-217:5, 217:22-218:10. |
| Sutorius, Kevin | 1:1-100:9. |
| Torres, Carlos | 1:1-338:14. |
| Washington, Denise | 1:1-213:11. |
| Wong, Richard | 1:1-69:10. |
| Zorn, Robert | 1:1-178:4. |

Plaintiffs inadvertently omitted their deposition designations in correspondence to Defendants on May 22, 2009. As Plaintiffs have just provided their deposition designations to Defendants this afternoon, they have agreed that Defendants may provide objections and/or cross-designations by June 8, 2009.

## X.    DEFENDANTS' WITNESS LIST

1) John Catsimatidis
2) Robert Zorn
3) Renee Flores
4) Deborah Clusan

5)   James Monos
6)   Gallo Balseca
7)   Charles Criscuolo
8)   Chris McCrae
9)   Mitchell Moore
10) Sam Sharif
11) Richard Wong
12) Yolanda Fiorentino
13) Robert Newell (a Local 1500 representative)
14) Daniel Matko
15) Artie Carroway (a Local 338 representative)
16) Rosemary Sweeney

## XI.   MOTIONS IN LIMINE

<u>Plaintiffs</u>

Plaintiffs' herein incorporate their motions *in limine*, which were filed via ECF on June 2, 2009 (*See* Docket Entries 339, 340, 341, 342).   Plaintiffs' have moved for Defendant Gristede's Operating Corp., et al. ("Defendants") to be precluded at trial from: (i) introducing evidence not relevant to the Plaintiffs' claims or the Defendants' defenses, including evidence that Plaintiffs' Counsel has brought other lawsuits against Defendants, evidence regarding arrests or criminal convictions of any Plaintiff or Class Member, evidence regarding Plaintiffs' immigration status, and evidence referencing the outstanding motion or the facts underlying that motion regarding David L. Crawford; (ii) eliciting testimony that Dr. Crawford used an assistant in performing his work; (iii) calling as witnesses persons they have failed to timely identify or disclose; (iv) presenting evidence that they prevented Plaintiffs from obtaining during discovery, including reasons that they made edits to time records, actual handwritten faxed timesheets or references to them, and policies regarding "off-the-clock" work; and (v) introducing evidence that would unnecessarily confuse the jury, including evidence regarding the

35

allegations underlying Defendants' dismissed counterclaim against Plaintiffs Torres and

Chewning, and evidence refuting material issues already decided by the Court.  Plaintiffs

further moved for an Order pursuant to Rule 37(b) of the Federal Rules of Civil

Procedure granting Plaintiffs an adverse inference instruction and awarding Plaintiffs

attorneys' fees and costs.

<u>Defendants</u>

Gristede's motion to preclude representative proof.

<b>XII.    ADDITIONAL REQUIREMENTS IN JURY CASES</b>

Plaintiffs' proposed jury instructions are attached as Exhibit C.

Defendants' proposed jury instructions are attached as Exhibit D.

Plaintiffs' proposed special verdict form is attached as Exhibit E.

Plaintiffs' proposed voir dire questions are attached as Exhibit F.

Defendants' proposed voir dire questions are attached as Exhibit G.

<b>XII.    RELIEF SOUGHT</b>

<u>Plaintiffs</u>

Plaintiffs seek unpaid wages, liquidated damages, attorneys' fees, and other relief

to the extent permitted under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. and

the New York Labor Law Article 6, §§ 190 et seq. and Article 19, §§ 650 et seq.

Plaintiffs intend to use the following computations of damages for department

manager plaintiffs and class members:

(1) Unpaid wages based on eliminated hours found in the comparison of time data
generated by the department manager class members and corresponding
payroll data.  (*See* Revised Expert Report of David L Crawford, Ph.D., dated
May 20, 2009 ("Expert Report") at 15-19 and Tables 9, 10, 11, 14.)

36

(2) Unpaid wages based on evidence of unreported hours worked by the department manager class members. (*See* Expert Report at 17 and Tables 10, 11, 14.)

(3) Estimates of unpaid wages for the department managers for the first half of 2009, all of 2000, all of 1999, and the last 33 weeks of 1998. (*See* Expert Report at 21-22 and Tables 14, 15.)

(4) In addition to the lost wages described in the Expert Report, department manager class members are entitled to lost wages as a result of (1) allowing class members to work "off-the-clock" without compensation between 1998 and 2005; (2) failing to pay department manager class members for other compensable work time, including for breaks shorter than 20 minutes; (3) inserting incorrect start and end times when department manager class members failed to punch; and (4) failing to compensate department manager class members properly when their time clocks were broken.

(5) Liquidated damages for the department managers who opted into the case equal to 100% of their actual damages incurred from 3 years before they opted into the case through the end of the damage period. (*See* Expert Report at 23-24 and Table 19.)

(6) Interest at the statutory rate of 9% on the unpaid wages of the department managers who opted into the case from the later of (a) the date the department manager began working as a department manager and (b) April 30, 1998, through the beginning of the 3-year period before they opted into the case. (*See* Expert Report at 23-24 and Tables 22, 23, 26, 27.)

(7) Interest at the statutory rate of 9% on the unpaid wages of the department managers who did not opt into the case from the later of (a) the date the department manager began working as a department manager and (b) April

37

30, 1998, through the end of the damage period. (*See* Expert Report at 23-24 and Tables 22, 23, 26, 27.)

Plaintiffs intend to use the following computations of damages for co-manager plaintiffs and class members:

(1)    Unpaid wages based on 150% of the product of the hours over 40 hours worked in a week ("overtime hours") and the regular rate.  (*See* Expert Report at 4-65 and Tables 3, 4.)

(2)    Unpaid wages based on unreported hours worked by the co-manager class members from January 2005 to the present.  (*See* Expert Report at 4-65 and Tables 3, 4.)

(3)    Estimates of unpaid wages for the co-managers for the first half of 2009, all of 2000, all of 1999, and the last 33 weeks of 1998.  (*See* Expert Report at 20-21 and Tables 12, 13.)

(4)    Liquidated damages for the co-managers who opted into the case equal to 100% of their actual damages incurred from 3 years before they opted into the case through the end of the damage period.  (*See* Expert Report at 23-24 and Table 20.)

(5)    Interest at the statutory rate of 9% on the unpaid wages of the co-managers who opted into the case from the later of (a) the date the co-manager began working as a co-manager and (b) April 30, 1998, through the beginning of the 3-year period before they opted into the case.  (*See* Expert Report at 23-24 and Tables 20, 21, 24.)

(6)    Interest at the statutory rate of 9% on the unpaid wages of the co-managers who did not opt into the case from the later of (a) the date the co-manager began working as a co-manager and (b) April 30, 1998, through the end of the damage period. (*See* Expert Report at 23-24 and Tables 20, 21, 24.)

Plaintiffs also seek:

(1) Damages for the retaliation claims of Carlos Torres and Lewis Chewning pursuant to Section 15(a)(3) of the FLSA and Section 215 of the NYLL including punitive damages, emotional distress and other compensatory and consequential damages for Defendants' violations of the FLSA and NYLL anti-retaliation provisions.

(2) Plaintiffs and Class Members are entitled to damages, including punitive damages, for fraud.

Defendants

Gristede's seeks the following relief:

Co-Managers: Finding that the aggregate unpaid overtime owed to co-managers after credits for all premium payments and discretionary bonuses and extra compensation, amounts to $469,624, plus liquidated damages of $49,722, and interest at the federal judgment rate in effect in April of 2004.

Department Managers: Finding that the aggregate unpaid compensation for unauthorized overtime for all department managers amounts to less than $20,000, after reconciling for legitimate edits and corrections arising from missed or incomplete punches so as to accurately reflect actual time worked, plus a commensurate amount of liquidated damages, all in accordance with Defendants' Exhibit K, plus any allowed interest at the federal judgment rate in effect in April of 2004.

SO ORDERED

_____
THE HONORABLE PAUL A. CROTTY
United States District Judge

DATED: NEW YORK, NEW YORK
_____, 2009

39