# Exhibit G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARLOS TORRES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 04-CV-3316 (PAC) |
| OSCAR AMARO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-8531 (PAC) |
| DAVID BARRETO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-9627 (PAC) |

This Joint Agreement of Settlement and Release, together with all associated exhibits and attachments (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendants (as hereinafter defined).

## I.  CONDITIONAL NATURE OF THIS AGREEMENT

The Agreement is made for the sole purpose of settling the Litigation on a collective and class-wide basis.  This Agreement is made in compromise of disputed claims.  Because the Litigation was pled as a collective and class action, this Agreement must receive preliminary and final approval by the Court.  Accordingly, the Parties enter into this Agreement on a conditional

basis.  In the event that the associated Settlement does not become a Final Approval by the Court for any reason, this Agreement (except for those provisions relating to the termination of the Agreement set forth in Sections 2.2, 2.13 (and its subsections) and 5.3 below, and those provisions herein relating to the conditional nature and confidentiality of this Agreement, non-admissibility and non-admission of wrongdoing or liability, and the return of the documents) shall be deemed null and void *ab initio*; shall be of no force or effect whatsoever, and shall not be referred to or utilized for any purpose whatsoever.  The negotiation, terms and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence 408 and any similar or analogous federal or state laws or rules.

## II.  THE PARTIES TO THIS AGREEMENT

This Agreement (with the associated exhibits and attachments) is made and entered into by and among the following Settling Parties (each with the assistance of their counsel of choice: (i) the Class Representatives (on behalf of themselves and each of the Settlement Class Members); and (ii) Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., Gristede's Foods NY, Inc., Galo Balseca, James Monos and John Catsimatidis.  This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims and the Released Federal Law Claims upon and subject to the terms and conditions hereof, including all definitions set forth below.

## III. THE LITIGATION

WHEREAS, Plaintiff Carlos Torres filed a Class Action Complaint (hereinafter, the "First Class Action Complaint") on April 30, 2004 (*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316); and

WHEREAS, Plaintiff Torres amended the complaint four times, adding fourteen named Plaintiffs; corporate officers John Catsimatidis, James Monos, and Galo Balseca as Defendants; and causes of action for fraud and retaliation; and

WHEREAS, the First Class Action Complaint asserted class claims under the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA") and sought recovery of unpaid overtime wages, as well as injunctive and declaratory relief under the NYLL; and damages for the fraud and retaliation claims; and

WHEREAS, on September 29, 2006, the Court granted Plaintiffs' motion for class and collective action certification (*see Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. DIST. LEXIS 74039, at *3 (S.D.N.Y. Sept. 29, 2006) ("*Torres I*")); and

WHEREAS, on August 28, 2008, the Court granted in part Plaintiffs' motion for partial summary judgment for FLSA and NYLL violations against the Defendant corporations, Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc. (*see Torres v. Gristede's Operating Corp.*, 04 Civ. 3316, 2008 U.S. Dist. LEXIS 66066, at *5-6, (Aug. 28, 2008) ("*Torres II*"); and

WHEREAS, Plaintiffs Oscar Amaro, Jose Gonzalez, Mark Anthony Lopez, Jose Pereyra, Leo Rodriguez, and Lisandro Ulerio filed a Class Action Complaint on October 6, 2008 (*Amaro v. Gristede's Operating Corp.*, No. 08 Civ. 8531 (PAC)) on behalf of Co-Managers, alleging the same FLSA and NYLL violations as in the First Class Action Complaint; and

WHEREAS, Plaintiffs David Barreto, Richard Colon, Elizabeth Guilamo, Juan Llan Flores, and Angel Rivera filed a Class Action Complaint on November 7, 2008 (*Barreto v. Gristede's Operating Corp.*, No. 08 Civ. 9627 (PAC)) on behalf of Department Managers, alleging the same FLSA and NYLL violations as in the First Class Action Complaint; and

WHEREAS, by Stipulation and Order dated October 21, 2008, the parties engaged in post-summary judgment discovery from the date of the Stipulation and Order through May 1, 2009; and

WHEREAS, a jury trial was scheduled to commence on June 15, 2009.

## IV. THE BENEFITS OF THE SETTLEMENT

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

## V. THE PARTIES' RESPECTIVE POSITIONS

The Class Representatives and the Class counsel believe that the Actions are meritorious based on alleged violations of the Fair Labor Standards Act ("FLSA") and applicable state wage and hour laws under the New York Labor Law ("NYLL"). The Class Representatives and Class Counsel contend that the Defendants denied Plaintiffs and Class Members, co-managers and department managers of Gristede's supermarkets from April 30, 1998 to August 18, 2008, their earned wages, some of which are overtime wages. Plaintiffs also allege that Defendants engaged in fraud against Plaintiffs and the Class. Two individual Plaintiffs, Carlos Torres and Lewis Chewning, seek individual damages for retaliation.

Defendants specifically and generally deny all of the claims asserted in the Litigation, deny any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and make no concessions or admissions of wrongdoing or liability of any kind whatsoever. Defendants maintain that all of its co-managers are and have always been properly classified as exempt employees, that no reimbursement of any type is owed, and that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class or collective action treatment pursuant to Federal Rule of Civil Procedure 23 or 29 U.S.C. §216(b). Defendants also maintain that all of its department managers were members of a union and subject to various collective bargaining agreements and regularly worked a standard 40 hour week; as per their collective bargaining agreements, department managers were eligible and received overtime at 1 ½ times their hourly rate for work performed in excess of 40 hours

per week, excluding their 60 minute lunch breaks. Defendants maintain that no reimbursement of any type is owed, and that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class or collective action treatment pursuant to Federal Rule of Civil Procedure 23 or 29 U.S.C. §216(b).

The parties understand and agree that this Agreement represents a compromise of disputed claims, and have agreed to enter into this Agreement to avoid the risks, costs and delays associated with further proceedings. Nothing contained in this Agreement, nor the fact of the Agreement itself, nor the exhibits thereto, nor any act performed or document executed pursuant to or in furtherance of the Agreement may be construed or be used in this action or in any other proceeding of any kind whatsoever as an admission or evidence of the validity of any claim or allegation asserted by the Class Representatives or of any act, omission, liability or wrongdoing on the part of Defendants. Pursuant to Federal Rule of Evidence 408, and any other analogous rules of evidence that are applicable, this Agreement, and the exhibits and attachments hereto, shall be inadmissible in any proceeding except as necessary to effectuate or enforce the Parties Settlement.

## VI. TERMS OF AGREEMENT AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between Class Representatives (for themselves and the Settlement Class Members) and Defendants with the assistance of their representative counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Class Members, the Litigation and the Released State Law Claims and Released Federal Law Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Agreement and the Judgment.

**1.      DEFINITIONS**
The defined terms set forth herein shall, in this Agreement and in any exhibits and attachments hereto, have the meanings ascribed to them below.

1.1      **Claim Form Deadline** shall be the date one hundred and twenty (120) days after the Class Notice is mailed to the Class Members by the Claims Administrator.

1.2      **Claims Administrator** shall mean Garden City Group, which is the entity jointly selected by the Parties to provide notice to the Class and administer payment of claims submitted by Class Members.

1.3      **Class** shall mean all persons who have worked as Co-Managers and Department Managers for Defendants between May 1, 1998 and April 30, 2009, who are listed on Exhibit A or B and who have not previously opted out. The Class shall exclude any person who was on Defendants' payroll for less than 30 days, including any named Plaintiffs. A member of the Class is a "Class Member."

1.4 **Class Representatives** mean Carlos Torres, Ruben Mora, Bobby Irizarry, Lewis Chewning, Gilberto Santiago, William Helwig, Robert Misuraca, Joseph Crema, Mario DiPreta, Victor Phelps, Joselito Arocho, Alfred Croker, Daniel Salegna, Frank DeLeon, and Robert Pastorino, the named Plaintiffs in this Litigation.

1.5 **Class Representatives' Released Claims** collectively means any and all claims, obligations, demands, actions, rights, causes of action and liabilities against the Defendants/Releasees, of whatever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, including Unknown Claims as defined in Section VI. 1.39 hereof, by a Class Representative arising, for each Class Representative, during the period beginning on May 1, 1998 and ending on the date on which the Court enters the Order Granting Final Approval of Settlement, for any type of relief, including without limitation, claims for wages, damages, reimbursement of expenses, costs, premium pay, penalties (including late payment penalties), liquidated damages, punitive damages, interest, restitution, fraud, retaliation, or equitable relief, excluding attorneys' fees and litigation costs. The Class Representatives Released Claims include, but are not limited to, claims arising from or dependent upon any and all applicable state and local laws and regulations.

1.6 **Class Counsel.** "Class Counsel" shall mean Outten & Golden LLP.

1.7 **Co-Manager Class.** "Co-Manager Class" shall mean all Class Members who have worked as Co-Managers for Defendants between  May 1, 1998 and April 30, 2009 who are listed on Exhibit A and who have not previously opted out.  The Co-Manager Class shall exclude any person who was on Defendants' payroll for less than 30 days.

1.8 **Co-Manager Settlement Fund.** "Co-Manager Settlement Fund" shall mean $1,255,000.

1.9 **Court.** "Court" shall mean the United States District Court for the Southern District of New York, the Honorable Paul A. Crotty presiding.

1.10 **Corporate Defendants.** "Corporate Defendants" shall mean Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc.

1.11 **Covered Period.** "Covered Period" shall mean the period from May 1, 1998 through April 30, 2009.

1.12 **Defendants.** "Defendants" shall mean Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., Gristede's Foods NY, Inc., Galo Balseca, and James Monos.

1.13 **Defendants' Counsel.** "Defendants' Counsel" shall mean Office of Nicholas C. Katsoris, Esq., in house counsel to corporate Defendants, Goldberg Weprin Finkel Goldstein, and Morgan, Lewis & Bockius LLP.  For purposes of providing any notices

required under this Agreement, Defendants' Counsel shall refer to Nicholas C. Katsoris, 823 11th Avenue, New York, New York 10019.

1.14 **Department Manager Class.** "Department Manger Class" shall mean all Class Members who have worked as Department Managers for Defendants between May 1, 1998 and April 30, 2009 who are listed on Exhibit B and who have not previously opted out. The Department Manager Class shall exclude any person who was on Defendants' payroll for less than 30 days.

1.15 **Department Manager Settlement Fund.** "Department Manager Settlement Fund" shall mean $2,235,000.

1.16 **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred

   (A)    30 days after the Court has entered Judgment if there are no appeals; or

   (B)    If appellate review is sought, five days after all avenues of appellate review have been exhausted and no further appellate review is permitted.

1.17 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account created by and controlled by the Claims Administrator.

1.18 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Final Approval.

1.19 **Federal Law Release Period** for each applicable Class Member who properly and timely submits a Consent to Join Settlement Class & Settlement Claim Certification Form, shall mean the period beginning on the first day on which the Class Member became employed by Gristede's and ending on May 20, 2009.

1.20 **Gristede's** means all corporate Defendants, Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., Gristede's Foods NY, Inc.

1.21 **Last Known Address(es)** means the most recently recorded mailing address(es) for a Class Member as such information is contained in Gristede's' personnel records.

1.22 **Litigation.** "Litigation" shall mean *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC); *Amaro v. Gristede's Operating Corp.*, 08 Civ. 8531 (PAC); and *Barreto v. Gristede's Operating Corp.*, 08 Civ. 9627 (PAC), all pending in the United States District Court for the Southern District of New York.

1.23 **Net Co-Manager Settlement Fund and Net Department Manager Settlement Fund.** "Net Co-Manager Settlement Fund and Net Department Manager Settlement Fund" shall mean the remainder of the respective Settlement Funds after court-approved service payments to Plaintiffs are deducted.

1.24 **Notice Response Deadline** shall be the date one hundred and twenty (120) days after the Class Notice is mailed to the Class Members by the Class Administrator.

1.25 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.26 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, inter alia, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.27 **Participating Claimant(s)** means each Member of the Settlement Class who properly and timely submits an executed Consent to Join Settlement Class & Settlement Claim Certification Form.

1.28 **Parties.** "Parties" shall mean Plaintiffs, the Class, and Defendants.

1.29 **Pay Period.** "Pay period" shall mean any weekly period in which an employee was on Defendants' payroll and earned income.

1.30 **Plaintiffs.** "Plaintiffs" shall refer to the named plaintiffs in *Torres v. Gristede's Operating Corp.*, Carlos Torres, Ruben Mora, Bobby Irizarry, Lewis Chewning, Gilberto Santiago, William Helwig, Robert Misuraca, Joseph Crema, Mario DiPreta, Victor Phelps, Joselito Arocho, Alfred Croker, Daniel Salegna, Frank DeLeon, and Robert Pastorino.

1.31 **Released Federal Law Claims** shall collectively mean any and all federal law claims, obligations, demands, actions, rights, causes of action and liabilities against the Defendants/Releasees, of whatever kind and nature, character and description, whether known or unknown and whether anticipated or unanticipated, including Unknown Claims as defined in Section VI. 1.39 hereof, by a Participating Claimant that were raised or could have been raised in the Litigation, under the FLSA for Class Members in Covered Positions that accrued during the Federal Release Period, for any type of relief, including without limitation, claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, off the clock work, liquidated damages, punitive damages, interest, restitution, fraud, retaliation or equitable relief, excluding attorneys' fees and litigation costs. Notwithstanding the generality of the foregoing, this Paragraph releases only claims under the FLSA.

1.32 **Released State Law Claims** shall collectively mean any and all applicable state local law claims, obligations, demands, actions, rights, causes of action and liabilities against the Defendants/Releasees, of whatever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract, statute, or other applicable law, whether known or unknown, and whether anticipated or unanticipated including Unknown Claims as defined in Section VI. 1.39 hereof, by a Class Member based on employment in a Covered Position with Gristede's that accrued during the State Law Release Period, including without limitation, claims for wages, damages, premium pay,

unpaid costs, penalties (including late payment penalties), liquidated damages, punitive damages, interest, restitution, or equitable relief (excluding attorneys' fees and litigation costs) to the extent that such claims are based on one or more of the following categories of allegations: (a) all claims raised or which could have been raised in the Litigation (as defined above and in the Class Notice) relating to the claims set forth in the Litigation; (b) all claims that were raised in the Litigation or could have been raised under applicable state and local laws and regulations for the failure to pay any type of premium pay or other compensation or wages to Class Members in Covered Positions; (c) all claims that were raised in the Litigation or could have been raised under applicable state and local laws and regulations for the failure to provide or pay for meal, break, and/or rest periods for Class Members in Covered Positions; (d) all claims that were raised in the Litigation or could have been raised under applicable state and local laws and regulations stemming from or based on the alleged misclassification of employees in Covered Positions as exempt employees; (e) all claims that were raised in the Litigation or could have been raised under applicable state and local laws and regulations stemming from or based on any alleged failure to compensate for off the clock work (f) all claims that were raised in the Litigation or could have been raised under applicable state and local laws and regulations stemming from or based on wage-related fraud; (g) all claims raised or which could have been raised in *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC); *Amaro v. Gristede's Operating Corp.*, 08 Civ. 8531 (PAC); and *Barreto v. Gristede's Operating Corp.*, 08 Civ. 9627 (PAC), all pending in the United States District Court for the Southern District of New York; and (h) all claims that were raised in the Litigation or could have been raised for penalties and additional damages which allegedly arise from the claims described in (a) through (g) above under any applicable law or regulation, excluding attorneys' fees and litigation costs.  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations or common law, including without limitation state specific wage and hour laws. Notwithstanding the generality of the foregoing, this Paragraph releases only claims under the New York wage and hour laws, rules and regulations, including but not limited to under the New York Labor Law.

1.33   **Releasee(s)** means Defendants, each of their parents, subsidiaries (whether or not wholly-owned), affiliates (including each such affiliate's parents and subsidiaries), divisions, subdivisions, joint ventures, related companies, predecessors, successors and assigns; and each of such entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys and personal or legal representative.  Notwithstanding this, nothing in this Agreement or the settlement process it describes releases: (a) claims against John Catsimatidis until final and full payment of the Settlement Fund Amount, all interest, and all attorneys' fees and costs awarded by the Court or agreed upon by the parties (the "Final Payment") has been made; or (b) any claims for attorneys' fees and costs.

1.34   **Retaliation Plaintiffs.**  "Retaliation Plaintiffs" shall mean Carlos Torres and Lewis Chewning.

1.35   **Retaliation Claims Settlement Fund.** "Retaliation Claims Settlement Fund Amount" shall mean $40,000.

1.36   **Settlement Class** means all of the Class Members who did not already opt out and those who do not opt out of the Settlement by timely submitting Opt Out Forms pursuant to Section 2.4, and thus means all of the Class Members who will become bound by the Released State Law Claims and Released Federal Law Claims portions of the Settlement if the Effective Date occurs.

1.37   **Settling Parties or Parties** means Defendants and the Class Representatives on behalf of themselves and all Settlement Class Members.

1.38   **State Law Release Period** for each applicable Class Member who fails to submit an Opt Out Form shall mean the period beginning on the first day on which the Class Member became employed by Gristede's and ending on May 20, 2009.

1.39   **Total Settlement Fund.** "Total Settlement Fund" shall mean $3,530,000.

1.40   **Unknown Claims** means any Released State Law Claims and/or Released Federal Law Claims arising on or before April 30, 2009, which any Class Representative or any Settlement Class Member (including Participating Claimants) or any Participating Claimant does not know or suspect to exist in his or her favor on the date of entry of the Order of Final Approval, and which, if known by him or her might have affected his or her decision to settle with and release Gristede's and the Defendants/Releasees, or might have affected his or her decision to opt out of the Class or to object to this Settlement, arising out of and/or relating to his or her wages, and/or alleged deductions therefrom, related to their employment with Gristedes.  With respect to any and all Released State Law Claims and Released Federal Law Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall have expressly, knowingly, and intentionally waived for themselves and for all Participating Claimants, the benefits and rights of any federal or state statute, rule, doctrine, or common law principle that provides that a general release does not extend to unknown claims. The Class Representatives, each Settlement Class Member, and each Participating Claimant may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released State Law Claims and Released Federal Law Claims, but they shall, upon the Effective Date, be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released State Law Claims and Released Federal Law Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representatives acknowledge the significance and consequence of this waiver, and the Settlement Class Members (including Participating Claimants) shall be deemed by operation of the Settlement to have acknowledged the

consequence and significance and assume full responsibility for any loss that may be incurred by reason of such waiver. The Class Representatives further acknowledge, and the Settlement Class Members (including Participating Claimants) shall be deemed by operation of the Settlement to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

1.41   **Updated Address** means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member, or any other source.

## 2.   APPROVAL AND CLASS NOTICE

2.1   **Retention of Claims Administrator.**  Within 15 calendar days after the execution of this Agreement, the Parties shall retain Garden City Group to administer the claims process. The Claims Administrator shall be responsible for locating the Class Members, mailing the Change of Name and/or Address Information Form, Election to Opt Out of Settlement and Class Action Form and Consent to Join Settlement Class & Settlement Claim Certification Form, collecting these Forms, responding to Class Member inquiries, resolving disputes relating to Compensable weeks worked, distributing the payments provided herein, reporting the taxes and withholdings pursuant to such payments, and performing such other duties as the Parties may mutually direct or as are specified herein. Both parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the settlement.  Defendants shall pay the Claims Administrator's fees and expenses in addition to the Total Settlement Fund.

2.2   **Preliminary Approval by the Court.**

   (A)   On or before April 22, 2010, Plaintiffs will submit an unopposed Motion for Preliminary Approval of the Class Action Settlement, a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing, and a proposed Order Preliminarily Approving the Settlement.

   (B)   As part of the preliminary approval motion, Plaintiffs will request, and Defendants will not oppose, dismissal of *Amaro v. Gristede's Operating Corp.*, 08 Civ. 8531 (PAC) ("*Amaro*") and *Barreto v. Gristede's Operating Corp.*, 08 Civ. 9627 (PAC) ("*Barreto*") without prejudice, and an order that all named plaintiffs and opt-in plaintiffs in *Amaro* and *Barreto* will be deemed to have joined *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC) on the date they joined *Amaro* or *Barreto*.

   (C)   If the Court denies the Motion for Preliminary Approval of the Class Action Settlement, the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If a mutually agreed-upon class settlement is not approved, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest

the amount of damages being sought by Plaintiffs in the Litigation.  In such a case, the Parties will negotiate and submit for Court approval a date for the commencement of trial.

(D)    The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

## 2.3    Class Notice Process

(A)    At least 10 calendar days before the date scheduled for the Preliminary Approval Hearing, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names, last known addresses, telephone numbers, job titles and dates in job titles, and social security numbers of all Class Members.

(B)    Within 10 calendar days after the Order Granting Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Change of Name and/or Address Information Form, Election to Opt Out of Settlement and Class Action Form, Consent to Join Settlement Class & Settlement Claim Certification Form and Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all Class Members, in English and Spanish (the cost of which will be borne by the Plaintiffs) using each individual's last known address as recorded in Defendants' records.  The notice period shall be 120 days from the date of the mailing.

(C)    The Consent to Join Settlement Class & Settlement Claim Certification Form shall include a release as follows:

1.    I release and discharge Defendants and each of its affiliates (including without limitation parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns; and each of its affiliates (including without limitation parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns; and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, personal or legal representatives (Defendants/Releasees"), from any and all applicable state law wage-and-hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendants/Releasees, of whatever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract, statute or other applicable law, whether known or unknown, and whether anticipated or unanticipated, including claims that I do not know or suspect to exist in my favor at the time of the entry of the Court's Judgment in the Litigation, that accrued prior to May 20, 2009 for any type of relief, including without limitation claims for wages, damages, punitive damages, interest, restitution or equitable relief,

based on the following categories of allegations: (a) all claims raised in the Litigation or could have been raised under the facts alleged therein and/or under applicable state and local laws and regulations; (b) all claims under applicable state and local laws and regulations for the failure to pay any type of overtime pay, premium pay or other compensation or wages to me that were raised in the Litigation or could have been raised; (c) all claims under applicable state and local laws and regulations for the failure to provide or pay for meal, break, and/or rest periods to me that were raised in the Litigation or could have been raised; (d) all claims under applicable state and local laws and regulations stemming from or based on the alleged misclassification of me as an exempt employee; (e) all claims under applicable state and local laws and regulations stemming from or based on an alleged failure to compensate me for off the clock work, that were raised in the Litigation or could have been raised; (f) all claims under applicable state and local laws and regulations stemming from or based on wage-related fraud, that were raised in the Litigation or could have been raised; (g) all claims for penalties or additional damages which allegedly arise from the claims described in the Litigation or could have been raised in (a) through (f) above under any applicable law or regulation (collectively the "Released State Law Claims").  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations or common law, including without limitation allstate specific wage and hour laws.  Notwithstanding the foregoing, this release does not release: (a) any claims against John Catsimatidis until Final Payment has been made; or (b) any claims for attorneys' fees and costs.

2.     I additionally hereby release and discharge the Defendants/Releasees from any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against the Defendants/Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including claims that I do not know or suspect to exist in my favor at the time of the entry of the Court's Judgment in the Litigation, that was raised or could have been raised under the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §201, *et seq.* that accrued prior to May 20, 2009, for any type of relief, including without limitation claims for wages, damages, penalties, (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, restitution, or equitable relief (collectively the "Released Federal Law Claims").

(D)     The parties agree that the Claims Administrator will use all reasonable efforts to reach Class Members including mailing the Consent to Join Settlement Class & Settlement Claim Certification Form after using all reasonable commercially available methods of getting good addresses, using an envelope that clearly indicates that the contents concern a settlement in which the recipient may participate, sending a full copy of the notice if any mailing comes back as undeliverable for any reason, sending a reminder post-card if any individual has not submitted a Consent to Join Settlement Class & Settlement Claim

Certification Form by the date 15 days before the end of the Claim Period and using high quality paper in high quality stamped return envelopes, and making further reasonable efforts to each any individual who has not submitted a Consent to Join Settlement Class & Settlement Claim Certification Form by the date 30 days before the end of the Notice Period (and as discussed further in the section 2.3 herein).

(E)     Unless the Claims Administrator receives a Consent to Join Settlement Class & Settlement Claim Certification Form returned from the United States Postal Service for reasons discussed below in this Section, that Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five (5) days after mailing.  In the event that subsequent to the first mailing of a Class Notice and prior to the deadline for a response, that Notice is returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the notice to that address, the Notice will be deemed mailed as of that date, and the forwarding address shall be deemed the Updated Address for that Class Member.  In the event that subsequent to the first mailing of a Class Notice, and at least fifteen (15) days prior to the Notice Response Deadline, that Notice is returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within seven (7) days of receiving such information; if no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address.  In either event, the Class Notice shall be deemed received five (5) days after the date it is mailed for the second time.

(F)     To the extent a Class Member, whose address has not been deemed unknown by the Claims Administrator, has not submitted to the Claims Administrator some form of written response to the Class Notice by the date that is thirty (30) days before the Notice Response Deadline, the Claims Administrator shall send that Class Member a postcard (a) referencing the name of the Class Action; (b) stating that the Class Member received a Notice in this action; (c) providing the address and contact information, for the Claims Administrator and Class Counsel; (d) stating the Notice Response Deadline, *i.e.*, the deadline to respond to the Class Notice if the recipient desires to do so; and (e) stating that the Class Member can contact the Claims Administrator or Class Counsel to receive an additional copy of the notice.  Nothing in this Section 2.3 (F) shall be construed to extend the Notice Response Deadline or the Claim Certification Deadline for any Class Members.  The postcard shall not contain any additional information or statements.  The reasonable costs expended in association with the preparation and mailing of the postcards contemplated by this Section shall be included as

part of the Administrative Costs and shall be paid by Gristede's in addition to the Settlement Amount.

(G)    Class Members who, for future reference and mailings from the Court or Claims Administrator, if any, wish to change the name or address listed on the envelope in which the Class Notice was first mailed to them, must fully complete, execute, and mail, per the instructions therein, the form entitled "Change of Name and/or Address Information" attached to the Class Notice as Form 1.  The address provided shall be the "Updated Address" for any such Class Member.

## 2.4    Class Member Opt-Out.

(A)    Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Litigation, the Settlement and the Settlement Class.  Class Members who choose to do so must fully complete, properly execute, and timely mail to the Claims Administrator, per the instructions there, the form entitled "Election to Opt Out of Settlement and Class Action" attached to the Class Notice as Form 2.  Class Members who timely submit fully completed and properly executed Opt Out forms shall have no further role in the Litigation, and for all purposes they shall be regarded as if they never were either a party to the Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, this Settlement or Agreement, nor will they have released any claims they may have against Defendants.

(B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 business days after receipt thereof.  The Claims Administrator also shall, within 3 business days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements.  The Claims Administrator shall, within 1 business day of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.  The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

2.5    **Participating Claimants**.  Class Members who do not opt out of the Settlement Class pursuant to Section 2.4 may elect to become Participating Claimants.  Class Members who wish to exercise this option and certify their entitlement to payment under the Settlement must fully and timely complete, execute, and mail, per the instructions therein, the form entitled "Consent to Join Settlement Class & Settlement Claim Certification Form" attached to the Class Notice as Form 3.   If a Participating Claimant disagrees with the number of Compensable Weeks as printed on his or her Consent to Join Settlement Class & Settlement Claim Certification Form, the Participating Claimant must write his or her correct dates of employment during the relevant Class Period on the

Consent to Join Settlement Class & Settlement Claim Certification Form and provide documents (e.g., check stubs, cancelled checks, payroll documents, or registration records) evidencing his or her correct dates of employment. The Compensable weeks listed on the Consent to Join Settlement Class & Settlement Claim Certification Form will be presumed to be accurate unless the Participating Claimant proves otherwise. If a completed and properly executed Consent to Join Settlement Class & Settlement Claim Certification Form is not received by the Claims Administrator from a Class Member and timely postmarked on or before the Consent to Join Settlement Class & Claim Certification Form Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement. However, as long as they do not properly submit an Opt Out Form, Class Members shall be deemed Members of the Settlement Class and shall be subject to the Settlement even if they do not submit a Consent to Join Settlement Class & Settlement Claim Certification Form in a timely and proper fashion. Any Class Members who submit an improperly executed Consent to Join Settlement Class & Settlement Claim Certification Form shall be sent a Cure Letter by the Claims Administrator reminding them that they must submit properly completed forms on a timely basis if they wish to be entitled to a payment pursuant to the Settlement and this Stipulation. Only Class Members who timely and properly complete, execute and submit a Consent to Join Settlement Class & Claim Certification Form shall be Participating Claimants entitled to payment pursuant to the Settlement and this Agreement. In the event of any dispute over a Participating Claimant's Compensable Weeks, or as to the timeliness or completion of a Class Member's Consent to Join Settlement Class & Settlement Claim Certification Form, the Claims Administrator shall promptly notify the Parties of the dispute, and the Parties shall meet and confer in good faith in an attempt to resolve that dispute. If the dispute cannot be resolved, it shall be submitted to the Claims Administrator for its final, non-appealable determination applying the Definitions stated in Section VI.1 and the rules, presumptions and burdens of proof stated above in this Section 2.5 and any other applicable provision of this Agreement. In no event may the Claims Administrator disregard or vary the terms of this Agreement.

2.6    **Class Members Who Fail to Respond.**  Any Class Members who do not submit a timely and properly executed Opt-Out Form or Consent to Join Settlement Class & Settlement Claim Certification Form to the Claim Administer shall not be considered a Participating Claimant and his or her Settlement share shall be reallocated according to Section 3.7.

2.7    **Unidentified Potential Class Members**.  If individuals come forward who claim to be Class Members who have not been identified by Defendants on Exhibits A or B, the statute of limitations for all claims of those individuals will be deemed to be tolled from the date of the filing the First Class Action Complaint, and Defendants will offer to resolve their claims outside of the process created by this Agreement and under the same terms as would have been applied had they been listed on Exhibits A or B and been part of this settlement**.**

2.8     **Objections to Settlement.**

    (A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member 30 days after the Claims Administrator mails such Notice to such Class Member.  The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery not later than 3 business days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 business days after the end of the Opt-Out Period.

    (B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 2.6(A).  Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

    (C)     The Parties may file with the Court written responses to any filed objections before the Fairness Hearing.

2.9     **Motion for Final Approval.**  Not later than 15 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Final Approval which Defendants will not oppose.  The Fairness Hearing shall be held at the Court's convenience.

2.10    **Proceedings.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4(A), (b) dismiss the Litigation with prejudice, "so-order" the injunctive relief, and (d) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement.

2.11    **Order of Final Approval and Timing of Payments to Participating Claimants.**

    (A)     Prior to the Settlement Hearing and consistent with the rules imposed by the Court, the Class Counsel shall move the Court for entry of the Order of Final Approval.  Class Counsel make all reasonable efforts to secure entry of the Order of Final Approval.

(B)     Within forty-five (45) days of and only after Final Approval, the Claims Administrator shall mail any Court approved Service Payments.  The Claims Administrator will mail to each Participating Claimant at his or her Last Known Address, or Updated Address if obtained, his or her three individual payments pursuant to and in accordance with the terms and conditions of Section 3, less tax deductions and withholdings, at intervals evenly spaced throughout the 27-month period, commencing on June 30, 2010, as described in Paragraph 3.1 (C).  The first distribution shall be no more than 45 days after Final Approval of this Agreement.

(C)     Checks issued to Participating Claimants pursuant to this Agreement shall remain negotiable for a period of one hundred and twenty (120) days from the date of mailing. The Settling Parties hereby agree that funds resulting from the Participating Claimants who have not negotiated checks issued to them pursuant to 2.11(B) represent settlement payments for matters disputed in good faith, not uncontested wage payments and that such funds shall not be subject to escheat rules, *cy pres*, or other distribution not provided for in the Agreement. Participating Claimants who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the terms of the Agreement and Settlement, and bound by the Release of Claims in Section 2.12 (and the subparts thereto).

(D)     Following the mailing of the payments to Participating Claimants discussed in Section 2.11(B), the Claims Administrator shall provide counsel for the parties with a written confirmation of this mailing, which shall include a list of all payments sent showing amount paid and naming each Participating Claimant. Upon receipt of this Confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of judgment with the Court in the Litigation on behalf of the Settlement Class.

2.12    **Release of Claims**.

(A)     Upon the Effective Date, the Class Representatives and each of the Settlement Class Members, including all Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Section VI. 1.32 against the Corporate Defendants, Galo Balseca, and James Monos.  Nothing in this Agreement or the settlement process it describes releases: (a) any claims against John Catsimatidis until Final Payment has been made; or (b) any claims for attorneys' fees and costs.

(B)     In addition, upon the Effective Date, the Class Representatives and each of the Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and

by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Section VI. 1.31 against the Corporate Defendants, Galo Balseca, and James Monos.  Nothing in this Agreement or the settlement process it describes releases: (a) any claims against John Catsimatidis until Final Payment has been made; or (b) any claims for attorneys' fees and costs.

(C)     Upon the Final Payment, as defined in Section 1.33, the Class Representatives and each of the Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Section VI. 1.31 against Defendant John Catsimatidis.

(D)     Upon final and full payment of the Settlement Fund Amount, all interest, and all attorneys' fees and costs awarded by the Court or agreed upon by the parties, the Class Representatives and each of the Settlement Class Members, including all Participating Claimants, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Section VI. 1.32 against Defendant John Catsimatidis.

2.13    **Effect of Failure to Grant Final Approval.**  In the event the Court fails to grant Final Approval in accordance with this Agreement, the Parties shall proceed as follows:  The Litigation will resume and the Settlement Payment shall be immediately returned to Defendants unless: (1) a party seeks reconsideration or appellate review of the decision denying entry of Judgment, or (2) the parties attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted.  In such a case, the Parties will negotiate and submit for Court approval a proposed date for the commencement of the trial.

(B)     Notice will be provided to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

3.    **SETTLEMENT TERMS**

3.1    **Settlement Payment.**

    (A)    **Total Payment.** The monetary settlement for the claims (excluding attorneys' fees and litigation costs) of the Co-Manager Plaintiffs, Co-Manager Settlement Class Members, Department Manager Plaintiffs, and Department Manager Class Members shall be $3,530,000 (the Total Settlement Fund Amount), which includes the Co-Manager Settlement Fund, the Department Manager Settlement Fund, and the Retaliation Claim Settlement Fund.  This amount does not include attorneys' fees or costs.

    (B)    **First Payment.** On or before May 31, 2010, Defendants shall make an initial payment of $425,000 into an interest-bearing escrow account to be established and administered by the Claims Administrator ("Escrow Account").

    (C)    **Monthly Payments.** Thereafter, Defendants shall pay the remaining portion of the Settlement Payment in 27 equal payments of One Hundred Fifteen Thousand Dollars ($115,000) into the Escrow Account.  The first payment shall be made on June 30, 2010.  Subsequent payments shall be made on the final day of each month thereafter.  Defendants shall pay any attorneys' fees and costs awarded by the Court or agreed to by the parties directly to Class Counsel in equal monthly payments resulting in full payment no later than the final payment of the Settlement Payment under this paragraph.

    (D)    **Interest.** The amount of the Settlement Payment and any Court-ordered or agreed upon attorneys' fees and costs remaining to be paid shall accrue simple interest at a rate of 2.25% ("Interest Rate") beginning on May 31, 2011.

    (E)    **Penalty for Late Payments.** Each time Defendants fail to make a payment described in Paragraph 3.1(B) or (C) on its due date, Plaintiffs shall provide written notice to Defendants of the missed payment, and shall provide Defendants a period of 20 calendar days following receipt of notice to cure the missed payment.  If Defendants fail to make the payment after written notice and the 20 calendar-day period to cure the missed payment has expired the Interest Rate shall increase by 1%.  For example, if Defendants are late making the May 31, 2010 payment, and if they fail to make the May 31, 2010 payment even after being given written notice of the missed payment and a 20 calendar-day period to cure the missed payment, the Interest Rate for the rest of the payment period will be 3.25%.  If Defendants are then late making the June 30, 2010 payment, and if they fail to make the June 30, 2010 payment even after being given written notice of the missed payment and a 20 calendar-day period to cure the missed payment the Interest Rate for the rest of the payment period will be 4.25%.

(F)   **Timing of Interest Payment.** All interest as a result of Paragraphs 3.1 (E) shall be paid on the last day of the month after the final payment under Paragraph 3.1 (C) is due.

(G)   **Acceleration.** If Defendants have not made a payment set forth in Paragraph 3.1(B), (C), or (F) after being given written notice of the missed payment and a 20 calendar-day period to cure the missed payment, and if Defendants miss a second consecutive payment after a second written notice of the missed payment, along with an additional 20 calendar-day period to cure the second missed payment, the full remaining amount of the Settlement Payment, all remaining interest accrued under Paragraphs 3.1 (D) or (E), and any remaining attorneys' fees and costs awarded by the Court or agreed to by the parties shall become immediately due ("Default Date") and shall accrue interest from the date of the acceleration at the greater of the rate under Paragraph 3.1(E) or 9%.

(H)   **Summary Judgment on Individual Liability.** If Defendants have not made a payment set forth in Paragraph 3.1(B), (C), or (F) after being given written notice of the missed payment and a 20 calendar-day period to cure the missed payment, and if Defendants miss a second consecutive payment after a second written notice of the missed payment, along with an additional 20 calendar-day period to cure the second missed payment, Plaintiffs may request that the Court decide their motion for summary judgment as to John Catsimatidis.  If the Court holds John Catsimatidis to be an employer, John Catsimatidis shall become personally liable for all payments under this Agreement (including but not limited to the Settlement Payment, all interest, and all attorneys fees and costs), which shall be due and payable upon the date established by the Court, which the parties agree shall be no later than 75 days from the date of the order, provided that in the event of an appeal, Defendants may post a bond within the same 75 day period in lieu of payment.

(I)   **Trial on Individual Liability.** If the Court denies Plaintiffs' motion for summary judgment as to John Catsimatidis, and, after a trial, Plaintiffs prove that John Catsimatidis is an employer, John Catsimatidis shall become jointly and severally liable for all payments under this Agreement (including but not limited to the Settlement Payment, all interest, and all attorneys fees and costs), which shall be due and payable upon the date established by the Court, which the parties agree shall be no later than 75 days from the date of the order, provided that in the event of an appeal, Defendants may post a bond within the same 75 day period in lieu of payment.

(J)   Corporate Defendants are jointly and severally liable for all payments.

(K)   Any interest earned in the escrow account shall become part of the Total Settlement Fund.

(L)     Plaintiffs and their counsel (collectively, "Secured Parties") will be granted a security interest (the "Security Interest") in personal property (the "Collateral") of Gristede's Foods, Inc. ("GFI").  The Security Interest in the Collateral will secure the total amount of the monetary obligations of defendants to Secured Parties under this settlement agreement (the "Obligations").  The Security Interest shall be junior and subordinate to (i) all security interests that were granted by GFI in Collateral on or prior to August 31, 2009 (the "Prior Security Interests"), (ii) the extension, modification, amendment, restatement or replacement of the Prior Security Interests or the holders of the Prior Security Interests on or after August 31, 2009; (iii) the refinancing of any existing working capital facility with Debtor's current lender or any replacement lender(s) and the granting of any security interests by Debtor to any such lender(s); and (iv) any purchase money security interests that may have been, or may be, granted by GFI in personal property acquired by GFI subsequent to August 31, 2009.  The Secured Parties will enter into a subordination and/or intercreditor agreement in form and substance satisfactory to the holder of a Prior Security Interest if requested by a holder of a Prior Security Interest.  Upon payment in full of the Obligations, the Secured Parties will promptly execute such documentation as GRI shall request to release and terminate the Security Interest.  The Secured Parties and GFI will enter into a mutually agreed upon security agreement reflecting the foregoing understandings between the Secured Parties and GFI, attached hereto as Exhibit C.

(M)     Settlement of Class Claims

        (1)     **Co-Manager Class Claims**.  The Co-Manager Settlement Fund is One Million Two Hundred Fifty-Five Thousand Dollars ($1,255,000) less service payments to co-manager named plaintiffs.

        (2)     **Department Manager Class Claims**.  The Department Manager Settlement Fund is Two Million Two Hundred Thirty-Five Thousand Dollars ($2,235,000) less service payments to co-manager named plaintiffs.

        (3)     **Retaliation Claims.**  The Retaliation Claims Settlement Fund is Forty Thousand Dollars ($40,000), which will be divided equally between Carlos Torres and Lewis Chewning.

3.2     **Settlement Share and Settlement Share Measurement Period.**  Each Participating Claimant will receive a share of the Settlement Fund Amount set aside for the class, based in part upon how many weeks they worked for Gristede's as a Co-Manager or Department Manager during the measurement period (the "Settlement Share").  The measuring period shall be the period from May 1, 1998 through April 30, 2009.  A list of the Settlement Shares for all Settlement Class Members will be prepared by the Claims Administrator and will be made available to counsel for the parties and the Court at the final settlement approval hearing.  In determining Settlement Shares, the records of

Gristede's with respect to the number of weeks each Settlement Class Member worked will be presumed to be accurate.  In the event any Settlement Class Member raises an issue over the amount of his or her Settlement Share, the dispute shall be resolved by the Claims Administrator through a streamlined process to be agreed upon by the parties (in which Gristede's records will be presumed to be accurate in the absence of evidence by the objecting party about the number of weeks worked).  The Claims Administrator's decisions with respect to such challenges will be final and binding.  Under no circumstances may the allocation formula violate any terms of this Agreement.

3.3     **Service Payments to Plaintiffs.**  At the Fairness Hearing, to the extent that they qualify as a Class Member, Plaintiffs Carlos Torres, Ruben Mora, Bobby Irizarry, Lewis Chewning, Gilberto Santiago, William Helwig, Robert Misuraca, Joseph Crema, Mario DiPreta, Victor Phelps, Joselito Arocho, Alfred Croker, Daniel Salegna, Frank DeLeon, and Robert Pastorino will apply to the Court to receive service payments of no more than $15,000 each, which shall be deducted from the Co-Manager Settlement Fund and Department Manager Settlement Fund before they are distributed.  Defendants will not oppose such applications.  The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, other recovery to which these Plaintiffs might be entitled and other requirements for obtaining such recovery, under other provisions of this Agreement.  The substance of the above-referenced application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.4     **Distribution to Class Members.**

Each Co-Manager Class Member who returns an executed Consent to Join Settlement Class & Settlement Claim Certification Form shall receive a proportionate share of the Net Co-Manager Settlement Fund, and each Department Manager Class Member who returns an executed Consent to Join Settlement Class & Settlement Claim Certification Form shall receive a proportionate share of the Net Department Manager Class Settlement Fund.  The Settlement Shares will be determined by the calculation method set forth below at Section 3.4(A)-(B).  There will be three distributions to Class Members at intervals evenly spaced throughout the 27-month period described in Paragraph 3.1 (C).  The first distribution shall include any Court approved Service Payments and be no more than 45 days after Final Approval of this Agreement.  Notwithstanding the foregoing, Defendants may decide to accelerate the payments made to Class Members, at which point all remaining monies would be promptly paid to the Class Members and interest would cease to accrue.

*Co-Manager Calculation*

(A)     Co-Manager Class Members' proportionate shares of the Net Co-Manager Settlement Fund shall be determined by the Claims Administrator pursuant to the following formula:

    (1)     Co-Manager Class Members shall be assigned points cumulatively, as follows:

        (i)     Three points for each pay period in which the Co-Manager Class Member was employed by Defendants as a co-manager between May 1, 1998 and May 1, 2002.

        (ii)    Two points for each pay period in which the Co-Manager Class Member was employed by Defendants as a co-manager between May 2, 2002 and May 1, 2006.

        (iii)   One point for each pay period in which the Co-Manager Class Member was employed by Defendants as a co-manager between May 2, 2006 and April 30, 2009.

        (iv)    Each Co-Manager Class Member who filed a consent to join *Torres, Baretto,* or *Amaro* shall receive an additional number of points equal to the number they receive pursuant to paragraphs A(1)(i – iii) for each pay period the Class Member was employed by Defendants as a co-manager between three years prior to the date the Co-Manager Class Member opted into the case and April 30, 2009.

    (2)     Calculation:

        (i)     Add all points for all Co-Manager Class Members together to obtain the "Total Co-Manager Denominator."

        (ii)    Divide the number of points for each Co-Manager Class Member by the Total Co-Manager Denominator to obtain each Co-Manager Class Member's "Portion of the Co-Manager Net Settlement Fund."

        (iii)   Multiply each Co-Manager Class Members' Portion of Co-Manager Settlement Fund by the Net Co-Manager Settlement Fund to determine each Co-Manager's Class Members' "Settlement Award."

*Department Manager Calculation*

(B)     Department Manager Class Members' proportionate shares of the Net Department Manager Settlement Fund Amount shall be determined by the Claims Administrator pursuant to the following formula:

    (1)     Department Manager Class Members shall be assigned points, cumulatively, as follows:

        (i)     Four points for each pay period in which the Department Manager Class Member was employed by Defendants as a Department manager between May 1, 1998 and December 31, 2004.

        (ii)    One point for each pay period in which the Department Manager Class Member was employed by Defendants as a Department manager between January 1, 2005 and April 30, 2009.

        (iii)   Each Department Manager Class Member who filed a consent to join *Torres*, *Barreto*, or *Amaro* shall receive an additional number of points equal to the number they receive pursuant to paragraphs B(1)(i – ii) for each pay period the Class Member was employed by Defendants as a Department manager between three-years prior to the date the Department Manager Class Member opted into the case and April 30, 2009.

    (2)     Calculation:

        (i)     Add all points for all Department Manager Class Members together to obtain the "Total Department Manager Denominator."

        (ii)    Divide the number of points for each Department Manager Class Member by the Total Department Manager Denominator to obtain each Department Manager Class Member's "Portion of the Department Manager Settlement Fund."

        (iii)   Multiply each Department Manager Class Members' Portion of Department Manager Settlement Fund by the Net Department Manager Settlement Fund to determine each Department Manager's Class Members' "Settlement Award."

(C)     The Claims Administrator's decisions regarding eligibility to participate in the settlement and calculation of Settlement Shares will be final and binding.

(D)     Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described herein.

(E)     Within 10 days of the Final Settlement Agreement being fully executed, Plaintiffs will file a motion for preliminary approval of the settlement, which Defendants will not oppose, for approval of the form and manner of providing notice to the Settlement Class Members, for the setting of date(s) for the submission of claim forms, opt-outs, and objections, and for a final fairness hearing for final approval of the settlement.  Prior to filing, the parties shall attempt to agree upon the form and content of the notice.  If the parties cannot agree on the form and content of the notice before Plaintiffs file their motion for preliminary approval, the parties will submit competing versions to the Court for a ruling.

(F)     To the extent administratively convenient, the payment to each Participating Claimant shall be made via a single check.

(G)     Any amount paid to Participating Claimants shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any other benefit, pension, or other compensation or benefit plan, policy, program or arrangement provided by Gristede's, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under the Gristede's and/or applicable Union's 401(k) Savings Plan, or any similar plans at Gristede's, or otherwise require any contribution or award under any Gristede's and/or applicable Union plan, or otherwise modify benefits, contributions or coverage under any Gristede's and/or applicable Union plan.

3.5     **Taxation of Settlement Payments.**

Each payment to a Class Member (aside from the service payments and retaliation payments, which shall be reported on a Form 1099) shall be divided  equally between a payment (50% of total) for back wages (from which all appropriate deductions will be made) and a payment (50% of total) for all other amounts, including penalties and interest.  The back wages shall be reported on all applicable forms, including a Form W-2, and the other amounts shall be reported on all applicable forms, including a Form 1099.  It is the intention of the parties that the Claims Administrator shall prepare, file and provide copies of all of the foregoing to counsel for the parties together with proof of payment of all necessary taxes, and prepare and shall file all returns, reports, information references, other reporting and other documents with, and remit all necessary taxes to, the tax authorities in connection with the payments to be made under this settlement so as to

ensure compliance with all federal and state tax laws and related reporting requirements. All parties shall have full access to obtain all information maintained by the Claims Administrator upon written request at least once per quarter. The Claims Administrator reserves the right to implement the settlement using a Qualified Settlement Fund within the meaning of the Treasury regulations under the Internal Revenue Code if needed to accomplish that purpose or otherwise recognize tax benefits.

Gristede's makes no representations and it is understood and agreed that Gristede's has made no representations as to the taxability of any payments pursuant to this Agreement, including payments to Participating Claimants, payments to the Retaliation Plaintiffs, and payments to the Class Representatives.

## 3.6    Employer's Share of Payroll Taxes

The employer's share of all employment taxes on the portion of the Settlement Share payments allocated as wages will be paid as set forth in section 3.7(B) below. If the amount from 3.7(B) does not fulfill the amount of the employer's share of payroll taxes, that additional amount will be paid by Gristede's. Gristede's will provide such amount, if any, 20 business days before the Claims Administrator is scheduled to send out settlement checks, after receipt of written notice by the Claims Administrator directed to Corporate Defendants' in-house counsel, Nicholas C. Katsoris at 823 11th Avenue New York, New York 10019.

## 3.7    Reversionary Amounts from Settlement Fund Amount.

(A)    Any portion of the Total Settlement Fund allocated to individuals who timely and correctly opt-out of the settlement will be paid by the Claims Administrator to Gristede's.

(B)    Any portion of the Total Settlement Fund allocated to individuals who: (1) do not timely submit a fully executed claim form or; (2) do not accept or cash their Settlement Share checks for any reason (the "Remainder Fund"), will first be made available to pay the employer's share of any payroll taxes up to $42,000 for the Co-Manager's payroll taxes and $75,000 for the Department Manager payroll taxes.

(C)    If any amount of the Remainder Fund remains after that tax obligation described in section 3.7(B) has been satisfied, the remainder, up to $200,000, shall be split between the Legal Aid Society Civil Practices Employment Law Project for use in training and for staff development purposes (25%), the National Employment Law Project (25%), the Hellenic Times Scholarship Fund (25%) and the Police Athletic League- PAL (25%). This allocation to charity is not a reversion to Gristede's, but any payment to charity by Gristede's will be made on behalf of Gristede's, with notations to the charities that the payment comes from the remainder fund from the lawsuit *Torres et al. v. Gristede's Operating Corp. et al*, No. 04 Civ. 3316 (SDNY).

(D)     Any Remainder Fund amount remaining after the payments in sections 3.7 (B) – (C) are satisfied shall be distributed to the Settlement Class Members who submit a Consent to Join Settlement Class & Settlement Claim Certification Form by the same formulas as their settlement awards were determined.

(E)     All of the calculations required for section 3.7 shall be made on or before the date 5 (five) days after the Effective Date, at which time the Remainder Fund will be deemed final.

3.8     **Injunctive Relief.**  Defendants will agree to certain non-monetary relief in a side letter to the Final Settlement Agreement, which the parties will request that the Court "So Order." Defendants will request that the Court accept the letter and "So Order" it *in camera* and Plaintiffs reserve the right to oppose this request.  If the parties cannot agree on non-monetary relief, Plaintiffs reserve the right to move for injunctive relief.  No release provided for herein or on the claim forms waives Plaintiffs' right to move for injunctive relief.  The non-monetary relief will be no less than the following:

(A)     Corporate Defendants will pay all Co-Managers who do not meet the requirements to qualify for an exemption from overtime compensation under the FLSA and NYLL at a rate of one-and-one-half times their regular rate for all hours they work, record, and report in excess of 40 in a workweek;

(B)     Corporate Defendants will include in regular and overtime rate calculations, all legally required bonuses and premium payments, as well as all bonuses and premium payments set forth in the applicable collective bargaining agreement(s);

(C)     Corporate Defendants will implement and communicate to the payroll department and store managers a policy under which all time worked and recorded in Gristede's time-keeping system shall be compensated, whether authorized in advance or not;

(D)     Corporate Defendants will put in place, and notify all Plaintiffs and Settlement Class Members of, a simple procedure by which employees can complain about problems with their wages.  Such a procedure will have several alternative reporting channels.  Defendants will keep employees' complaints confidential to the extent possible and not retaliate against an individual who has made a complaint;

(E)     Corporate Defendants will train their store managers, bookkeepers, payroll department employees, and human resources employees on the requirements of the FLSA and state and local wage and hour laws.  The form and amount of the training shall be reasonable, but shall be in Gristede's discretion.

3.9     **Attorneys' Fees.**  Defendants agree that the plaintiffs in *Torres* are prevailing parties in the Litigation and are entitled to an award of attorneys' fees and costs in addition to the Total Settlement Fund.  Defendants also acknowledge that Plaintiffs are entitled to attorneys' fees and costs in addition to the Total Settlement Fund, for the *Amaro* and *Barreto* actions.  The amount of the fees and costs will be determined through an agreement of the parties, if possible.  If the parties cannot reach an agreement, Plaintiffs will submit a fee application to the Court, and Defendants reserve all rights, defenses and objections to the fullest extent possible, except as provided herein.  Plaintiffs agree to provide Defendants with a copy of their contemporaneously reported fee and cost records to assist the parties in attempting to resolve the issue of attorneys' fees and costs pursuant to an appropriate agreement, to be negotiated by the parties and "so ordered" by the Court that will protect any confidential and/or privileged information in these records.  Corporate Defendants agree that they are jointly and severally liable for attorneys' fees and costs in the amount to be determined by settlement or submission of a fee application to the Court, and John Catsimatidis is jointly and severally liable only if he is found by the Court to be individually liable.  Nothing in this Agreement or in the Consent to Join Settlement Class & Settlement Claim Certification Form or in any Order contemplated by this agreement waives or releases Plaintiffs' right to attorneys' fees and costs.

## 4.     RELEASE

4.1     **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law.  Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(A)     This Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense.  The Settling Parties agree that the amounts to be paid pursuant to this Settlement and other terms of the Settlement and this Agreement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

Defendants deny all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief, as well as the class and collective action allegations asserted in the Litigation.  Defendants have agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendants do not waive, but rather expressly reserve all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Litigation upon all procedural and substantive grounds.   The Class Representatives and Class Counsel agree that Defendants retain and reserve these rights, and they agree not to take a position to the contrary.  Specifically, the Class Representatives and Class Counsel agree

that, if the Litigation were to proceed they will not argue or present any argument, and hereby waive any argument that, based on the Settlement or this Agreement or any of the exhibits and attachments hereto, or any act performed or document executed pursuant to or in furtherance of the Settlement or Agreement, that Defendants should be barred from asserting any and all other potential defense and privileges. Neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Federal Law Claims or Released State Law Claims, or any wrongdoing or liability of the Defendants/Releasees, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Defendants/Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

## 5.    MISCELLANEOUS

5.1    **Continuing Jurisdiction of the Court.**  The Court retains jurisdiction over this case for three years from the date of final approval to, *inter alia*, rule on an attorneys' fees and costs application, should Plaintiffs make one, to enforce all of the relief to which the parties have agreed, including injunctive relief, and to rule on issues related to interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall award reasonable fees and costs to the prevailing party in any action to enforce the terms of this Agreement.

5.2    **Confidentiality.**  Other than necessary disclosures made to the Court, the fact of Settlement, the contents of this Agreement and the attachments hereto, the Parties' settlement negotiations and all information related to the negotiations, shall be held strictly confidential by the parties, class members, including Class Representatives and their counsel, and shall not be disclosed to any third parties, including the media.  No party, or Class Representative, or their counsel will publish this settlement on any website or cause it to be published on a third party website.  No party, or Class Representative, or their counsel will hold any press conference or otherwise disclose to any third party, including a member of the media, the existence of this Settlement Agreement.  Class Counsel and the Class Representatives may communicate with Class Members for purposes of implementing, administering and enforcing the Settlement as provided herein, and Class Counsel may respond to inquiries they respectively receive from Class Members.  Nothing herein shall be construed to limit Class Counsel's legal right to communicate with the Class Representatives, or with Class Members who initiate communications with them.  Nothing in this paragraph is intended to prevent Class Counsel from being able to speak with their clients to seek approval of this Settlement or to implement and enforce its terms.  Additionally, nothing herein shall be construed to preclude Class Counsel or Defendants from communicating with governmental authorities about the Settlement if they are required to do so.

5.3     **Option to Void Settlement.**  If more than 10% of the Class Members properly opt-out of the Settlement, Defendants have the right, at their option, to void the Settlement or to ask to negotiate new terms, which Plaintiffs will not oppose.

5.4     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.  All of the exhibits and attachments to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

5.5     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.6     **Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

5.7     **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.8     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.9     **Blue Penciling.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.10    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.11    **Enforcement of this Agreement**.  In the event that any legal action is necessary to enforce any of the terms or provisions of this Agreement or to address a breach or alleged breach of this Agreement (including Section 5.2), the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs and any damages as proven to the Court.

5.12    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or

amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.13  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.

5.14  **Facsimile Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party.  Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

DATED:  _____, 2010       Gristede's Operating Corporation, Namdor, Inc., Gristede's
                          Foods, Inc., City Produce Operating Corp., and Gristede's
                          Foods NY, Inc.,

                          By: _____


                          _____

DATED:  _____, 2010       Galo Balseca

                          _____

DATED _____, 2010         John Catsimatidis

                          _____

DATED:  _____, 2010       James Monos

                          _____

DATED:  _____, 2010       Plaintiffs and the Class


                          By: _____
                          Carlos Torres

DATED: April 29, 2010

Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc.,

By: _____

_____

DATED: _____, 2010

Galo Balseca

DATED: April 29, 2010

John Catsimatidis

DATED: April 29, 2010

James Monos

_____

DATED: _____, 2010

Plaintiffs and the Class

By: _____
Carlos Torres

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

-31-

DATED: _____, 2010      Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc.,

By: _____

DATED: 4-29, 2010      _____

Galo Balseca

_____

DATED _____, 2010      John Catsimatidis

_____

DATED: _____, 2010      James Monos

_____

DATED: _____, 2010      Plaintiffs and the Class

By: _____
Carlos Torres

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.13    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.

5.14    **Facsimile Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party.  Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

DATED: _____, 2010

Gristede's Operating Corporation, Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., and Gristede's Foods NY, Inc.,

By: _____

_____

DATED: _____, 2010

Galo Balseca

_____

DATED _____, 2010

John Catsimatidis

_____

DATED: _____, 2010

James Monos

_____

DATED: 4/24/2010

Plaintiffs and the Class

By: _Carlos A Torres_____
Carlos Torres

- 31 -

DATED: 4/27 2010

_Ruben Mora_ (signature)

Ruben Mora

DATED: _____, 2010

_____

Bobby Irizarry

DATED: _____, 2010

_____

Lewis Chewning

DATED: _____, 2010

_____

Gilberto Santiago

DATED: _____, 2010

_____

William Helwig

DATED: _____, 2010

_____

Robert Misuraca

DATED: _____, 2010

_____

Joseph Crema

DATED: _____, 2010

_____

Mario DiPreta

DATED: _____, 2010

_____

Victor Phelps

DATED: _____, 2010

_____

Joselito Arocho

DATED: _____, 2010

_____

Alfred Croker

DATED: _____, 2010

_____

Daniel Salegna

DATED: _____, 2010

_____

Frank DeLeon

DATED: _____, 2010

_____

Robert Pastorino

- 32 -

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: 4 20, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

    Ruben Mora

DATED: _____, 2010

    Bobby Irizarry

DATED: _____, 2010

    Lewis Chewning

DATED: 4/22, 2010

    Gilberto Santiago

DATED: _____, 2010

    William Helwig

DATED: _____, 2010

    Robert Misuraca

DATED: _____, 2010

    Joseph Crema

DATED: _____, 2010

    Mario DiPreta

DATED: _____, 2010

    Victor Phelps

DATED: _____, 2010

    Joselito Arocho

DATED: _____, 2010

    Alfred Croker

DATED: _____, 2010

    Daniel Salegna

DATED: _____, 2010

    Frank DeLeon

    Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: 4/22, 2010

_____
Gilberto Santiago

_William Helwig_
_____
William Helwig

DATED: _____, 2010

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: 4/23, 2010

_____
William Helwig

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: 4/24, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: 2/ _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: 4-27, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: 21, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: 4/22/2010

_Daniel Salegna_
_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: _____, 2010

_____
Robert Pastorino

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: 5/5, 2010
may, 5, 2010
DATED: _____, 2010

_____
Frank DeLeon

_____
Robert Pastorino

- 32 -

DATED: _____, 2010

DATED: _____, 2010

_____
Ruben Mora

DATED: _____, 2010

_____
Bobby Irizarry

DATED: _____, 2010

_____
Lewis Chewning

DATED: _____, 2010

_____
Gilberto Santiago

DATED: _____, 2010

_____
William Helwig

DATED: _____, 2010

_____
Robert Misuraca

DATED: _____, 2010

_____
Joseph Crema

DATED: _____, 2010

_____
Mario DiPreta

DATED: _____, 2010

_____
Victor Phelps

DATED: _____, 2010

_____
Joselito Arocho

DATED: _____, 2010

_____
Alfred Croker

DATED: _____, 2010

_____
Daniel Salegna

DATED: _____, 2010

_____
Frank DeLeon

DATED: 4/23, 2010

_____
Robert Pastorino

DATED: 4/2(, 2010

_Oscar Amaro_ _(signature)_

Oscar Amaro

DATED: _____, 2010

_____

Jose Gonzalez

DATED: _____, 2010

_____

Mark Anthony Lopez

DATED: _____, 2010

_____

Jose Pereyra

DATED: _____, 2010

_____

Leo Rodriguez

DATED: _____, 2010

_____

Robert Misuraca

DATED: _____, 2010

_____

Lisandro Ulerio

DATED: _____, 2010

_____

David Barreto

DATED: _____, 2010

_____

Richard Colon

DATED: _____, 2010

_____

Elizabeth Guilamo

DATED: _____, 2010

_____

Juan Llanos Flores

DATED: _____, 2010

_____

Angel Rivera

DATED: _____, 2010

DATED: 04/21, 2010

Oscar Amaro

_____

Jose Gonzalez

DATED: _____, 2010

_____

Mark Anthony Lopez

DATED: _____, 2010

_____

Jose Pereyra

DATED: _____, 2010

_____

Leo Rodriguez

DATED: _____, 2010

_____

Lisandro Ulerio

DATED: _____, 2010

_____

David Barreto

DATED: _____, 2010

_____

Richard Colon

DATED: _____, 2010

_____

Elizabeth Guilamo

DATED: _____, 2010

_____

Juan Llanos Flores

DATED: _____, 2010

_____

Angel Rivera

DATED: _____, 2010

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: 05/11, 2010

_____
Jose Pereyra

DATED: _____, 2010

_____
Leo Rodriguez

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: _____, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

DATED: _____, 2010

_____
Angel Rivera

- 33-

DATED: _____, 2010

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: _____, 2010

_____
Jose Pereyra

DATED: _____, 2010

_____
Leo Rodriguez                    11/21/10

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: _____, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

_____
Angel Rivera

DATED: _____, 2010

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: _____, 2010

_____
Jose Pereyra

DATED: 4/21, 2010

_____
Leo Rodriguez

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: _____, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

DATED: _____, 2010

_____
Angel Rivera

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: _____, 2010

_____
Jose Pereyra

DATED: _____, 2010

_____
Leo Rodriguez

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: 5/4, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

DATED: _____, 2010

_____
Angel Rivera

DATED: _____, 2010

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: _____, 2010

_____
Jose Pereyra

DATED: _____, 2010

_____
Leo Rodriguez

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: 4-26, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

_____
Angel Rivera

DATED: _____, 2010

DATED: _____, 2010
_____
Oscar Amaro

DATED: _____, 2010
_____
Jose Gonzalez

DATED: _____, 2010
_____
Mark Anthony Lopez

DATED: _____, 2010
_____
Jose Pereyra

DATED: _____, 2010
_____
Leo Rodriguez

DATED: _____, 2010
_____
Robert Misuraca

DATED: _____, 2010
_____
Lisandro Ulerio

DATED: _____, 2010
_____
David Barreto

DATED: _____, 2010
_____
Richard Colon

DATED: 4/21, 2010
_____
Elizabeth Guilamo

DATED: _____, 2010
_____
Juan Llanos Flores

DATED: _____, 2010
_____
Angel Rivera

DATED: _____, 2010

DATED: _____, 2010

Oscar Amaro

DATED: _____, 2010

Jose Gonzalez

DATED: _____, 2010

Mark Anthony Lopez

DATED: _____, 2010

Jose Pereyra

DATED: _____, 2010

Leo Rodriguez

DATED: _____, 2010

Lisandro Ulerio

DATED: _____, 2010

David Barreto

DATED: _____, 2010

Richard Colon

DATED: _____, 2010

Elizabeth Guilamo

DATED: 4-22-, 2010

Juan Llanos Flores

DATED: _____, 2010

Angel Rivera

DATED: _____, 2010

DATED: _____, 2010

_____
Oscar Amaro

DATED: _____, 2010

_____
Jose Gonzalez

DATED: _____, 2010

_____
Mark Anthony Lopez

DATED: _____, 2010

_____
Jose Pereyra

DATED: _____, 2010

_____
Leo Rodriguez

DATED: _____, 2010

_____
Lisandro Ulerio

DATED: _____, 2010

_____
David Barreto

DATED: _____, 2010

_____
Richard Colon

DATED: _____, 2010

_____
Elizabeth Guilamo

DATED: _____, 2010

_____
Juan Llanos Flores

DATED: 4/21/2010

_____
Angel Rivera

- 33-