UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 21 DEC 2010
```

| | |
|---|---|
| CARLOS TORRES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 04-CV-3316 (PAC) |
| OSCAR AMARO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-8531 (PAC) |
| DAVID BARRETO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-9627 (PAC) |

[~~PROPOSED~~] ORDER GRANTING  *PAC*
PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF
CLASS REPRESENTATIVE SERVICE AWARDS, AND RETALIATION PAYMENT

The plaintiffs in the case are current and former Department Managers and Co-Managers employed by Gristede's, a chain of retail grocery stores in and around New York City. (Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Final Approval of Settlement, dated December 6, 2010 ("Swartz Decl.") ¶ 4.) On April 30, 2004, Plaintiff Carlos

Torres filed a class action wage and hour complaint alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Swartz Decl. ¶ 4; Docket No. 1.) He brought his wage and hour claims as a putative class action under Fed. R. Civ. P. 23 ("Rule 23") and a collective action under 29 U.S.C. § 216(b). (Swartz Decl. ¶ 5.) He amended his complaint three times, adding fourteen additional named Plaintiffs, three corporate officers - John Catsimatidis, James Monos, and Galo Balseca - as Defendants; and additional causes of action for fraud and retaliation. (Swartz Decl. ¶ 6.) Plaintiffs sought unpaid overtime compensation, liquidated damages, interest, compensatory damages, punitive damages, attorneys' fees and costs, and injunctive and declaratory relief. (Swartz Decl. ¶ 7.)

On September 29, 2006, the Court granted Plaintiffs' motion for class and collective action certification, *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *1 (S.D.N.Y. Sept. 29, 2006) (*"Torres I"*), certifying a class consisting of "all persons employed by defendants as Department Managers or Co-Managers who were not paid proper overtime premium compensation for all hours that they worked in excess of forty in a workweek any time between April 30, 1998 and the date of final judgment in this matter." *Id.* at *11. (Swartz Decl. ¶¶ 12-14; Ex B (Class Certification Decision.) Plaintiffs sent Court authorized notice to 482 class members, 56 of whom filed consents to join the FLSA action and 28 of whom opted out of the Rule 23 case. (Swartz Decl. ¶ 15.)

After post-class certification discovery, Plaintiffs moved for partial summary judgment on several issues. (Swartz Decl. ¶ 16.) On August 28, 2008, the Court granted Plaintiffs' motion in part. *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 453-54 (S.D.N.Y. 2008) (*"Torres II"*). (Swartz Decl. ¶ 17; Ex. C (Summary Judgment Decision).)

On October 6, 2008, Plaintiffs Oscar Amaro, Jose Gonzalez, Mark Anthony Lopez, Jose Pereyra, Leo Rodriguez, and Lisandro Ulerio filed a lawsuit (*Amaro v. Gristede's Operating*

*Corp.*, No. 08 Civ. 8531 (PAC) ("*Amaro*")) on behalf of Co-Managers, alleging the same FLSA and NYLL violations as the *Torres* Plaintiffs alleged in their complaint. (Swartz Decl. ¶ 18; Ex. D (*Amaro* Complaint).) On November 7, 2008, Plaintiffs David Barreto, Richard Colon, Elizabeth Guilamo, Juan Llan Flores, and Angel Rivera filed a lawsuit (*Barreto v. Gristede's Operating Corp.*, No. 08 Civ. 9627 (PAC) ("*Barreto*")) on behalf of Department Managers, alleging the same FLSA and NYLL violations as the *Torres* Plaintiffs alleged in their complaint. (Swartz Decl. ¶ 19; Ex. E (*Barreto* Complaint).) The *Amaro* and *Barreto* plaintiffs were individuals who wished to join *Torres* but who did not return their consent forms on time. They filed their lawsuits when Defendants refused to agree to allow them to opt-in to *Torres* late. (Swartz Decl. ¶ 19.)

By Stipulation and Order dated October 21, 2008, the parties engaged in post-summary judgment discovery, which concluded on May 1, 2009. (Swartz Decl. ¶ 20; Ex. F (Stipulation and Order).) On May 14, 2009, Plaintiffs filed another motion for summary judgment as to the individual liability of Defendant John Catsimatidis. (Swartz Decl. ¶ 25.) Defendant Catsimatidis responded on May 29, 2009. (Swartz Decl. ¶ 26.)

The Court scheduled a jury trial to commence on June 15, 2009. (Swartz Decl. ¶ 27.) The parties filed a Joint Pre-trial Statement which included proposed jury instructions and *voi dire*, on June 2, 2009. (Swartz Decl. ¶ 29.) Plaintiffs filed motions in limine on May 28, 2009, which Defendants opposed on June 5, 2009. (Swartz Decl. ¶¶ 30-31.) Defendants also filed a motion in limine on June 2, 2009, which Plaintiffs opposed on June 5, 2009. (Swartz Decl. ¶¶ 32-33.)

During post-summary judgment discovery and trial preparation in early 2009, the parties entered into settlement negotiations. (Swartz Decl. ¶ 34.) At the parties' requests, the Court held settlement conferences on April 29, 2009, May 11, 2009, and June 3, 2009. (Swartz Decl. ¶ 35.)

On June 5, 2009, the parties notified the Court that they had agreed on a settlement amount. (Swartz Decl. ¶ 36.) The Court adjourned the trial date and removed motion for summary judgment as to the individual liability of Catsimatidis from its calendar. (Swartz Decl. ¶ 37.)

The parties continued to negotiate the remaining terms of the settlement, attending four more court-supervised settlement conferences, on October 14, 2009, December 12, 2010, January 19, 2010, and January 25, 2010. (Swartz Decl. ¶ 38.) The parties were unable to reach a resolution on key terms, including the individual liability of John Catsimatidis and the duration of settlement payments. (Swartz Decl. ¶ 39.) On January 25, 2010, the Court returned Plaintiffs' motion for partial summary judgment as to Catsimatidis to the docket. (Swartz Decl. ¶ 40.) At the Court's instruction, on March 1, 2010, the parties submitted letter briefs supplementing their prior submissions on the summary judgment motion. (Swartz Decl. ¶ 41.)

On March 19, 2010, and April 19, 2010, the parties held additional negotiation sessions, which resulted in an agreement on each of the principal terms of the settlement (Swartz Decl. ¶ 42.)

On June 1, 2010, the Court granted preliminary approval of the settlement, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing, which was later adjourned to December 21, 2010. (Swartz Decl. ¶ 45 & Ex. H (Preliminary Approval Orders).) The members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Only one member of the class opted out of the settlement, and no Class Member has objected (Swartz Decl. ¶ 46 & Ex. I (Zuena Dec.) ¶ 8.)

Having considered the Motion for Final Approval, the Motion for Service Awards and Retaliation Payment, and the supporting declarations, and the complete record in this matter, for the reasons set forth therein and stated on the record at the December 21, 2010 fairness hearing,

and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

<u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>

1.      The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

2.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3.      Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.") "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement"); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

4.      "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab*

*Inc.*, 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009).

### *Procedural Fairness*

5. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

6. Class Counsel interviewed hundreds of Class Members to gather information relevant to their claims; took multiple depositions; defended depositions of Opt-in Plaintiffs and Plaintiffs' expert; obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, time and payroll records; engaged in numerous discovery disputes which required court intervention; responded to multiple discovery requests; worked with experts to establish estimates of damages; prepared dozens of witnesses for trial; culled data for use at trial; and selected trial exhibits. (Swartz Decl. ¶¶ 8-11, 20-24.)

7. At the parties' requests, the Court held seven settlement conferences from April 29, 2009 to January 25, 2010. (Swartz Decl. ¶ 38.) On March 19, 2010, the parties held another negotiation session, which resulted in agreement on each of the principal terms of the settlement, except for the provision for a lien to secure the settlement payments. (Swartz Decl. ¶ 42.) On April 19, 2010, the parties resolved this final issue. (*Id.*) These arm's-length negotiations involving counsel well-versed in wage and hour law and the Court raise a presumption that the settlement meets the requirements of due process. *See Clark*, 2010 WL 1948198; *Mohney*, 2009

6

WL 5851465, at *4.

### *Substantive Fairness*

8.  The settlement is substantively fair. All of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

9.  The "*Grinnell* factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

10.  Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

11.  The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and estimated each class member's award. The Notice also informed class members that they could object to or exclude themselves from the settlement, and explained how to do so. No class member objected to the Settlement, and only one class member requested exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted-out). This favorable response recommends final approval. *See deMunecas v. Bold Food, LLC*, 09 CIV. 00440 DAB, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (granting final

approval where no class member objected to the Settlement, and only one class member requested exclusion); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) (finding settlement to be fair, reasonable, and adequate where no class member objected and only one class member opted out). The second *Grinnell* factor weighs in favor of final approval.

12. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The parties' discovery here meets this standard. As discussed above, Class Counsel interviewed hundreds of Class Members to gather information relevant to their claims; took multiple depositions; defended depositions of Opt-in Plaintiffs and Plaintiffs' expert; obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, time and payroll records; engaged in numerous discovery disputes which required court intervention; responded to multiple discovery requests; worked with experts to establish estimates of damages; prepared dozens of witnesses for trial, culled data for use at trial, and selected trial exhibits. (Swartz Decl. ¶¶ 8-11, 20-24.) In addition, the parties attended seven Court-supervised mediation conferences and an additional negotiation session. The third *Grinnell* factor weighs in favor of final approval.

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, a trial on the merits with respect to allegations that Defendants eliminated time worked from Department Managers' time records for the purpose of avoiding overtime payments would involve significant

risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages. To prove liability as to Department Managers, Plaintiffs would have to defeat Defendants' arguments that it removed time from the time records to correct those time sheets because the additional time recorded was time not actually worked. In addition, proving the Class Members' damages at trial is a difficult endeavor that also poses risks, given the nature of the time and payroll records, Defendants' audits of those records, and the inherent difficulty of using representational testimony at trial. The settlement eliminates this uncertainty. *See McMahon v. Olivier Cheng Catering & Events, LLC*, 08 CIV. 8713 (PGG), 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010); *Prasker v. Asia Five Eight LLC*, 08 CIV. 5811(MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010). The fourth *Grinnell* factor weighs in favor of final approval.

13. The risk of maintaining class status throughout trial also weighs in favor of final approval. Defendants would likely move to decertify, requiring another round of briefing. Defendants may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement eliminates the risk, expense, and delay inherent in this process. The fifth *Grinnell* factor weighs in favor of final approval.

14. It is not certain that Defendants could withstand a greater judgment. Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Here, the Settlement Agreement eliminates the risk of collection by requiring Defendants to pay an initial lump sum payment of $425,000 on or before May 31, 2010, followed by 27 monthly payments, commencing on June 30, 2010. (Swartz Decl. Ex. G (Settlement Agreement) ¶ 3.1(B)-(C).) Each month, Defendants

will pay interest at a rate of 2.25% on the amount remaining to be paid and will pay a penalty for late payments in the amount of increased interest rates based on the amount of time the payment is late. (Swartz Decl. Ex. G (Settlement Agreement) ¶ 2.1(D)-(E).) The Settlement Agreement provides for additional penalties if Defendants fail to make two payments, after being given written notice and a 20 calendar-day period to cure each missed payment. (Swartz Decl. Ex. G (Settlement Agreement) ¶ 3.1(I)). In addition, Plaintiffs and their counsel will be granted a security interest (in personal property of Gristede's Foods, Inc. to secure the total amount of the monetary obligations of defendants to Secured Parties under this settlement agreement. This factor also favors final approval. *Prasker*, 2010 WL 476009, at *5 (settlement agreement eliminated risk of collection by requiring payment of settlement fund into escrow).

15. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor favors final approval.

### APPROVAL OF THE FLSA SETTLEMENT

16. The Court hereby approves the FLSA settlement.

17. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *deMunecas*, 2010 WL 3322580, at *6.

18. Courts approve FLSA settlements when they are reached as a result of contested

litigation to resolve *bona fide* disputes. *deMunecas*, 2010 WL 3322580, at *6. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* "If the proposed settlement reflects a reasonable compromise over contested issues," the settlement should be approved. *Id.*

19.     The FLSA settlement meets the standard for approval. The settlement was the result of contested litigation and arm's length negotiation. (Swartz Decl. ¶¶ 8-19.) Recognizing the uncertain legal and factual issues involved, the parties engaged in a 19-hour mediation session with an experienced mediator. (*Id.* at ¶ 15.)

**DISSEMINATION OF NOTICE**

20.     Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices). This Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on December 21, 2010. Class Members were provided the best notice practicable under the circumstances.

21.     The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

22.     The Court confirms The Garden City Group, Inc. ("GCG") as the Claims Administrator.

**AWARD OF SERVICE PAYMENTS TO CLASS REPRESENTATIVES AND RETALIATION PAYMENTS**

23.     The Court finds reasonable service awards of $15,000 each for Carlos Torres, Ruben Mora, Bobby Irizarry, Lewis Chewning, Gilberto Santiago, William Helwig, Robert Misuraca, Joseph Crema, Mario DiPreta, Victor Phelps, Joselito Arocho, Alfred Croker, Daniel Salegna, Frank DeLeon, and Robert Pastorino. These amounts shall be paid from the Settlement

Fund.

24.     Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.  *See Parker*, 2010 WL 532960, at *1 ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Clark*, 2010 WL 1948198, at *9; *Mohney*, 2009 WL 5851464, at *6; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.") *See also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregating claims to protecting civil rights and wage and hour rights).

25.     The Court also finds that the payments to Plaintiffs Torres and Chewning in the amount of $~~40,000~~ $20,000 [handwritten] each from the Fund to settle their retaliation claims are reasonable.  *PAC* [handwritten initials]

## ATTORNEYS' FEES AND COSTS

26.     Plaintiffs in *Torres v. Gristede's Operating Corp.* are prevailing parties in the Litigation and are entitled to an award of attorneys' fees and costs. (Swartz Decl. Ex. G (Settlement Agreement), Section 3.9.) Plaintiffs are entitled to attorneys' fees and costs for the *Amaro v. Gristede's Operating Corp.* and *Barreto v. Gristede's Operating Corp.* actions. (*Id.*)

The amount of the fees and costs will be determined through an agreement of the parties, if possible. Plaintiffs will file a fee application with the Court if the parties cannot reach a resolution on fees and costs.

## CONCLUSION

27. The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be five days after all appeals are finally resolved.

28. Within 15 days of the Effective Date, the Claims Administrator shall mail:

   a. Service Payments of $15,000 each to Plaintiffs Carlos Torres, Ruben Mora, Bobby Irizarry, Lewis Chewning, Gilberto Santiago, William Helwig, Robert Misuraca, Joseph Crema, Mario DiPreta, Victor Phelps, Joselito Arocho, Alfred Croker, Daniel Salegna, Frank DeLeon, and Robert Pastorino;

   b. Retaliation Payments of $~~40,000~~ 20,000 each to Plaintiff Carlos Torres and Plaintiff Lewis Chewning; [handwritten: PAC]

   c. The first of three individual settlement payments to Class Members in accordance with the allocation plan described in the Settlement Agreement.

29. The Claims Administrator will mail the second of three individual settlement payments to Class Members in accordance with the allocation plan described in the Settlement Agreement on or before October 15, 2011.

30. The Claims Administrator will mail the third and final individual settlement payments to Class Members in accordance with the allocation plan described in the Settlement Agreement on or before September 15, 2012.

31. Following the mailing of the payments to Participating Claimants, the Claims Administrator shall provide counsel for the parties with a written confirmation of this mailing, which shall include a list of all payments sent showing amount paid and naming each Participating Claimant. Upon receipt of this Confirmation, Class Counsel will file a notice or

acknowledgement of satisfaction of judgment with the Court in the Litigation on behalf of the Settlement Class.

32. Defendants will continue to pay the remaining portion of the Settlement Payment by making equal payments of One Hundred Fifteen Thousand Dollars ($115,000) on the final day of each month into the Escrow Account, as described in the Settlement Agreement.

33. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Court so orders all terms of the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 21st day of December, 2010.

*Paul A. Crotty*

Honorable Paul A. Crotty
United States District Judge