**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile: (212) 977-4005

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS TORRES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 04-CV-3316 (PAC) |
| OSCAR AMARO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-8531 (PAC) |
| DAVID BARRETO, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRISTEDE'S OPERATING CORP., et al.,<br><br>Defendants. | Case No. 08-CV-9627 (PAC) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

III.   PLAINTIFFS' ATTEMPTS TO SETTLE ......................................................... 6

IV.    ARGUMENT ...................................................................................................... 8

    A.   Plaintiffs Are Entitled to Recover Their Attorneys' Fees and Costs .................... 8

    B.   Plaintiffs' Request for Attorneys' Fees Is Reasonable ......................................... 8

        1.   Plaintiffs Achieved a High Level of Success ............................................. 9

        2.   Plaintiffs' Counsel Expended a Reasonable Amount of Time .................... 9

            a.   Plaintiffs Prosecuted the Case Efficiently ........................................... 9

            b.   Defendants' Conduct, Including Their Refusal to Engage in
                Settlement Talks, Made This Case Costly ...........................................11

            c.   Although Plaintiffs Successfully Turned Back Most of Defendants'
                Attacks, They Should Be Compensated Even in the Rare Instances
                that They Were Unsuccessful ...........................................................12

        3.   Plaintiffs' Requested Hourly Rates Are Reasonable ................................. 13

            a.   Plaintiffs' Counsel Have Significant Experience, a Good Reputation,
                and Proven Ability to Successfully Prosecute Wage and Hour
                Cases ................................................................................................ 14

            b.   Plaintiffs' Counsel Charges Clients the Hourly Rates They Seek .... 15

            c.   Awards in Similar Cases and Market Rates in the SDNY Support
                Plaintiffs' Requested Rates .............................................................. 17

            d.   Plaintiffs' Counsel's Frequent Adversaries, Including Their
                Adversaries in this Case, Charge Higher Rates ................................. 18

e.   Previous Awards to Counsel Support Their Requested Rates .......... 19

f.   Current Rates Are Appropriate ........................................................ 20

4.   Plaintiffs' Voluntary Reductions Are More than Sufficient ...................... 20

5.   Public Policy Favors Compensating Plaintiffs' Counsel Adequately Because Counsel Undertook Numerous Risks ............................................. 21

6.   No "Proportionality" Concept Applies ........................................................ 22

C.   Plaintiffs Are Entitled to Recover Their Out-Of-Pocket Costs ........................... 23

D.   Plaintiffs Are Entitled to Recover Their Fees and Costs Until the End of This Matter ........................................................................................................ 24

V.   CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Allende v. Unitech Design, Inc.*,
    No. 10 Civ. 4256, 2011 WL 891445 (S.D.N.Y. March 15, 2011)................................9, 21, 22

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81, 87 (S.D.N.Y. 2001) ...............................................................................14

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany*
    *County Board of Elections*,
    522 F.3d 182 (2d Cir. 2008)......................................................................................... passim

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
    369 F.3d 91 (2d Cir. 2004), *superseded and amended on other grounds by* 522 F.3d
    182 (2d Cir. 2008)...........................................................................................................24

*Barbour v. City of White Plains*,
    No. 07 Civ. 3014, 2011 WL 2022884 (S.D.N.Y. May 24, 2011).....................................12, 17

*Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite*,
    970 F. Supp. 348 (S.D.N.Y. 1997) .................................................................................18

*Bianco v. Erkins*,
    284 B.R. 349 (S.D.N.Y. 2002).......................................................................................18

*Blue Cross & Blue Shield of New Jersey., Inc. v. Philip Morris, Inc.*,
    190 F. Supp. 2d 407 (E.D.N.Y. 2002), *rev'd on other grounds sub nom. Empire*
    *Healthchoice, Inc. v. Philip Morris, Inc.*, 393 F.3d 312 (2d Cir. 2004) ...............................18

*Blum v. Stenson*,
    465 U.S. 886 (1984).......................................................................................................13

*Cabrales v. County of Los Angeles*,
    935 F.2d 1050 (9th Cir. 1991) .......................................................................................13

*Caruso v. Peat, Marwick, Mitchell & Co.*,
    779 F. Supp. 332 (S.D.N.Y. 1991) .................................................................................21

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986).......................................................................................................12

*Cowan v. Prudential Insurance Co. of America*,
    935 F.2d 522 (2d Cir. 1991)...........................................................................................22

*Damassia v. Duane Reade, Inc.*,
    Nos. 04 Civ. 08819, 04 Civ. 02295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ...............14

*DiFilippo v. Morizio*,
    759 F.2d 231 (2d Cir. 1985)..........................................................................................23

*Duran v. U.S. Bank National Association*,
    No. 2001-035537 (Super. Ct. Cal. Dec. 16, 2010)....................................................18

*In re Enron Corp. Securites, Derivative & ERISA Litigation*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .......................................................................10

*Gierliner v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)..........................................................................................13

*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999).........................................................................................21

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir. 1993) .....................................................................................16

*Harrington Haley LLP v. Nutmeg Insurance Co.*,
    39 F. Supp. 2d 403 (S.D.N.Y. 1999)............................................................................11

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ............................................................................................24

*In re Independent Energy Holdings PLC*,
    No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. 2003) .........................................18

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .......................................................................................13

*Johnson v. University College of University of Alabama in Birmingham*,
    706 F.2d 1205 (11th Cir. 1983) ...................................................................................20

*Kahlil v. Original Old Homestead Restaurant, Inc.*,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009).........................................................................12

*Konits v. Valley Stream Central High School District*,
    350 F. App'x 501 (2d Cir. 2009) .................................................................................20

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)...................................................................................20, 24

*Lewis v. Triborough Bridge & Tunnel Authority*,
    No. 97 Civ. 0607, 2001 WL 1898318 (S.D.N.Y. Aug. 6, 2001) .............................24

iv

*Lilly v. County of Orange,*
    910 F. Supp. 945 (S.D.N.Y. 1996) ................................................................................16

*Malletier v. Apex Creative International Corp.,*
    687 F. Supp. 2d 347 (S.D.N.Y. 2011) ............................................................................18

*Meriwether v. Coughlin,*
    727 F. Supp. 823 (S.D.N.Y. 1989) ................................................................................15

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ......................................................................................................20

*Mitchell v. Metropolitan Life Insurance Co.,*
    No. 01-Civ-2112, 2003 WL 25914312 (S.D.N.Y. Nov. 6, 2003) ...........................19, 20

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
    No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................14

*Morris v. Eversley,*
    343 F. Supp. 2d 234 (S.D.N.Y. 2004) ..........................................................................23

*New York State Association for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir. 1983) ..................................................................................10, 11

*Norwest Financial, Inc. v. Fernandez,*
    121 F. Supp. 2d 258 (S.D.N.Y. 2000) ..........................................................................16

*Perdue v. Kenny A. ex rel. Winn,*
    130 S. Ct. 1662 (2010) .................................................................................................8, 9

*Perez v. Westchester County Department of Correction,*
    587 F.3d 143 (2d Cir. 2009) ..........................................................................................24

*Prasker v. Asia Five Eight LLC,*
    No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ......................................22

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.,*
    818 F.2d 278 (2d Cir. 1987) ..........................................................................................23

*Reiter v. Metropolitan Transportation of Authority of New York,*
    No. 01 Civ. 2762, 2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004) ...............................16

*Reiter v. MTA New York City Transit Authority,*
    457 F.3d 224 (2d Cir. 2006) ..........................................................................................16

*Rodriguez ex rel. Kelly v. McLoughlin,*
    84 F. Supp. 2d 417 (S.D.N.Y. 1999) ............................................................................21

*Ross v. Saltmarsh,*
    521 F. Supp. 753 (S.D.N.Y. 1981) ........................................................................11

*Roussel v. Brinker International, Inc.,*
    No. H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010)................................23

*Rozell v. Ross-Holst,*
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................16, 19, 20, 24

*Sand v. Greenberg,*
    No. 08 Civ 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)..................................22

*Santa Fe Natural Tobacco Co. v. Spitzer,*
    No. 00 Civ 7274, 2002 WL 498631 (S.D.N.Y. Mar. 29, 2002) .............................18

*Skold v. American International Group,*
    No. 96 Civ. 7137, 1999 WL 405539 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324
    (2d Cir. 2000)........................................................................................................18

*Tamazzoli v. Sheedy,*
    804 F.2d 93 (7th Cir. 1986) ..................................................................................16

*In re Telik, Inc. Securities Litigation,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................17, 19

*Top Banana L.L.C. v. Dom's Wholesale & Retail Center., Inc.,*
    No. 04 Civ. 2666, 2008 WL 4925020 (S.D.N.Y. Nov. 10, 2008) ..........................21

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) (*Torres I*) ...........4

*Torres v. Gristede's Operating Corp.,*
    628 F.Supp.2d 447 (S.D.N.Y. 2008) (*Torres II*)............................................2, 5, 8

*Torres v. Gristede's Operating Corp.,*
    Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892 (S.D.N.Y. Dec.
    21, 2010) (*Torres III*)..............................................................................................8

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v.*
    *G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495 (6th Cir. 1984)...................22

*Ursa Minor Ltd. v. Aon Financial Products, Inc.,*
    No. 00 Civ. 2474, 2001 WL 1842042 (S.D.N.Y. May 30, 2001)............................18

*Velez v. Novartis Pharmaceuticals Corp.,*
    No. 04 Civ. 09194, 2010 WL 2010 4877852 (Nov. 30, 2010) ..........................17, 19

*Vilkhu v. City of New York,*
    No. 06 Civ. 2095, 2009 WL 1851019 (E.D.N.Y. June 25, 2009), *vacated by* 372 F.
    App'x 222 (2d Cir. 2010).........................................................................................17

*Weyant v. Okst,*
    198 F.3d 311 (2d Cir. 1999)....................................................................................25

*Willix v. Health First Inc.,*
    No. 07 Civ. 1143, 2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) ..............................4

*Yurman Designs, Inc. v. PAJ, Inc.,*
    125 F. Supp. 2d 54 (S.D.N.Y. 2000).......................................................................18

**STATUTES**

28 U.S.C. §1961(a) ..........................................................................................................24

29 U.S.C. § 216(b) ........................................................................................................2, 8

N.Y. Lab. Law § 198 .....................................................................................................2, 8

## I.   INTRODUCTION

After more than six years of contentious litigation, shortly before trial, Class Counsel negotiated a $3.530 million monetary settlement, plus injunctive relief, on behalf of over 300 grocery store workers.  The settlement deems Plaintiffs "prevailing parties," and for good reason. The average class member recovered $11,194.  Some recovered more than $38,000.

In order to achieve this result, Class Counsel deposed 21 witnesses, interviewed dozens of class members and other witnesses, obtained supportive declarations from over 20 witnesses including former store managers, filed several substantive motions, worked with two experts, analyzed volumes of hard copy and electronic time and payroll records, defended 14 plaintiff and two expert depositions, and prepared witnesses and evidence for what would have been a multi-week trial.  Class Counsel also fended off Defendants' aggressive litigation tactics at every turn of the case—including frivolous motions, retaliatory counterclaims, violation of discovery rules and orders, and rejection of Plaintiffs' suggestions for streamlining the case.

Early in this case, the Court observed that the case should have been "readily settleable." Had Defendants not rejected Plaintiffs' repeated settlement overtures, or had they negotiated in good faith at the Court-ordered settlement discussions in 2004 and 2005, this case would have settled years ago.  In 2006, Defendants' counsel said that he would not negotiate because he wanted to see if Plaintiffs' counsel "can try a case."

Although Plaintiffs are entitled to recover fees for all of the time that their lawyers spent on the case, in an attempt to spare the Court from performing a line-by-line analysis of time records Plaintiffs request a fee award that includes a voluntary 12% reduction.  As explained in more detail below, Plaintiffs seek only $4,652,635.92 of their $5,293,853.00 in fees (for 15,094

hours of work) as well as $507,285.93 in actual out-of-pocket costs and disbursements.[1]

Plaintiffs are entitled to this reasonable award under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 216(b), and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 198.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2004, Plaintiff Carlos Torres filed a class action wage and hour lawsuit

bringing claims under the FLSA and the NYLL. (Declaration of Justin M. Swartz ¶ 3.) He

amended his complaint several times, adding fourteen named Plaintiffs, three corporate officers

as Defendants, and causes of action for fraud and retaliation. (*Id.*) After class certification,

Plaintiffs sent Court-authorized notice to 482 class members, 56 of whom filed consents to join

the FLSA collective and 28 of whom opted out of the Rule 23 class. (*Id.*)

Early in the case, Defendants filed a motion to dismiss and to strike Plaintiffs' class

allegations (Dkt. No. 13) despite Plaintiffs' request that they not do so in light of Plaintiffs'

proposed amended complaint, which cured the purported deficiencies. (Swartz Decl. ¶ 11.)

Plaintiffs incurred substantial fees in opposing the motion. (*Id.*) The Court denied the motion

because Defendants conceded that it was moot due to Plaintiffs' amended complaint. (Swartz

Decl. Ex. 2 (Court Conference Tr. 19:22- 20:7, Sept. 20, 2004).)

On April 22, 2005, Defendants answered the amended complaint and asserted frivolous

"barebones" counterclaims against two Plaintiffs. *See Torres v. Gristede's Operating Corp.*, 628

F. Supp. 2d 447, 465 (S.D.N.Y. 2008) (*Torres II*).  Plaintiffs promptly wrote to Defendants

suggesting that they withdraw the counterclaims. (Swartz Decl. ¶ 13.)  Defendants refused to do

so, telling Plaintiffs, "[i]f you don't like the counterclaim, go to the Court." (*Id.* ¶ 13.)  Plaintiffs

thus filed an application for an order to show cause. (*Id.* ¶ 14.)  Magistrate Judge Peck denied

---

[1]      Attached as Exhibit 1 to the Declaration of Justin Swartz are Plaintiffs' detailed time
records and calculations.

the application but stated that he was "less than thrilled" about the counterclaims, as they appeared to be made for the purpose of "sending a message to people as to opt-in issues, to say hey, you opt in and we will investigate you and bring retaliation claims against you." (Swartz Decl. Ex. 3 (Court Conference Tr. 4:6-8, 13:5-6, Apr. 27, 2005).)[2]

Throughout discovery, Defendants repeatedly failed to fulfill their discovery obligations in a timely manner, if at all, requiring Plaintiffs to engage in numerous meet and confer calls, write dozens of letters to Defendants and the Court, and appear at more than ten discovery conferences at which the Court repeatedly granted Plaintiffs' applications. (Swartz Decl. ¶¶ 17-19.) Even after the Court ordered documents produced, Defendants often failed to produce them or failed to produce them properly, requiring Plaintiffs to seek further court intervention. (*Id.* ¶ 19.) The Court repeatedly warned Defendants, at times threatening sanctions. (*Id.*)

Defendants' counsel also made the depositions prolonged affairs by interjecting lengthy speaking objections, coaching the witnesses, and/or testifying himself at nearly every deposition.[3] (Swartz Decl. ¶ 22-23.) This wasted time and transcript space and sometimes required Plaintiffs to prepare for a second day of questioning. (*Id.* ¶ 25.) The Court reminded Defendants' counsel that it serves little purpose to "get into a long fight on the record." (Swartz Decl. Ex. 4 (Court Conference Tr. 22:5-23:3, May 26, 2005).) Plaintiffs were also required to take breaks during depositions in order to make copies of and review documents that were produced at the depositions (despite the fact that Plaintiffs had been demanding them for months), (Swartz Decl. ¶¶ 26-27), and to prepare for the same deposition multiple times because of repeated last-minute cancellations (the deposition of Deborah Clusan was noticed and

---

[2]    Later in the case, the Court dismissed the counterclaims and also concluded that they were retaliatory. *See infra* at 5.
[3]    For example, at one deposition Defendants' counsel interrupted 65 times, speaking for 27.5 minutes total on the first day and 26.5 minutes total the next day. (Swartz Decl. ¶ 23.)

rescheduled 17 times) (*Id.* ¶ 29.).

On August 22, 2005, Plaintiffs moved for collective action notice and class certification (Dkt. No. 135), as Defendants rejected Plaintiffs' suggestion that the parties negotiate a stipulation "in order to prevent all parties from accruing substantial legal fees and costs through briefing and arguing such a motion." (Swartz Decl. Ex. 5 (Letter from Justin Swartz to Kevin Nash (May 4, 2005); Swartz Decl. ¶ 30.)[4]  The Court granted Plaintiffs' motion on September 29, 2006.  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *1, 6 (S.D.N.Y. Sept. 29, 2006) (*Torres I*).

Defendants also multiplied the fees during the class and collective action notice process. For example, Defendants stalled in providing comments to Plaintiffs' proposed class notice and refused to produce a complete class list with contact information.  (Swartz Decl. ¶¶ 31-32.) Defendants also objected without explanation to the common practice of having class counsel collect exclusion requests, requiring Plaintiffs to apply for Court intervention.  (*Id.* ¶ 33.)  The Court rejected Defendants' position:  "There is no good reason to depart from the arrangement where class counsel functions as the recipient of notices from class members." (Dkt. No. 164.)

On March 16, 2007, Plaintiffs moved for partial summary judgment on several issues including Defendants' executive exemption affirmative defense, other affirmative defenses, overtime claims for co-manager plaintiffs, and Defendants' frivolous counterclaims.  (Dkt. No. 198.)  Defendants rejected Plaintiffs' suggestion, prior to filing, that they withdraw the counterclaims and the affirmative defenses of executive exemption, laches, unclean hands, improper conduct, and waiver and estoppel, forcing Plaintiffs to address all of them in their

---

[4]    In Plaintiffs' counsel's experience, Defendants fairly often stipulate to collective action notice in order to avoid unnecessary motion practice, for this reason.  (Swartz Decl. ¶ 30); *see, e.g.*, *Willix v. Health First Inc.*, No. 07 Civ. 1143, 2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009).

motion. (Swartz Decl. Ex. 6 (Letter from Linda Neilan to Kevin Nash (Nov. 21, 2006))); *see also Torres II*, 628 F. Supp. 2d at 467 n.16 (describing Plaintiffs' efforts to convince Defendants that counterclaims were "patently retaliatory" and failed to state a claim). On August 28, 2008, the Court granted most of Plaintiffs' motion, dismissing the counterclaims as "frivolous and unworthy," *Torres II*, 628 F.Supp.2d at 474, concluding that the counterclaims were retaliatory, *id.* at 465-75, and granting Plaintiffs' motion for summary judgment on Defendants' executive exemption, laches, unclean hands, and waiver and estoppel affirmative defenses. *Id.* at 455-60, 464-65. The Court also granted the rest of Plaintiffs' motion in large part, including on liability on some of Plaintiffs' overtime claims. *Id.* at 453-54, 461-62.

In the fall of 2008, Plaintiffs asked Defendants if they would agree to allow late-filing opt-in plaintiffs to join *Torres* instead of forcing them to file new lawsuits, a common practice in Class Counsel's experience, (Swartz Decl. ¶ 35), warning them that Gristede's would be responsible for attorneys' fees and costs related to any new suits that had to be filed. (Swartz Decl. Ex. 7 (E-mail from Linda Neilan to Kevin Nash et al. (Oct. 2, 2008 14:55 EST)).) Defendants refused, forcing Plaintiffs to file the *Amaro* lawsuit on October 6, 2008, and the *Barreto* lawsuit on November 7, 2008. (Swartz Decl. ¶ 34.)

After summary judgment, the parties engaged in another expensive discovery phase in preparation for the jury trial that was scheduled to commence on June 15, 2009. (Swartz Decl. ¶ 36.) This phase included supplemental discovery requests and responses; additional depositions of trial and expert witnesses; and review of thousands of pages of documents. (*Id.*) As during the earlier discovery period, Defendants refused to produce relevant documents including time records, refused to produce documents in usable, bates-stamped formats, and refused to produce witnesses for depositions, again requiring Plaintiffs to apply for court intervention. (*Id.* ¶ 37.)

During and after this discovery phase, the parties prepared for trial.  (Swartz Decl. ¶¶ 38-39.)  Plaintiffs drafted much of the pre-trial order, as Defendants did not cooperate in this process.  (*Id.* ¶ 39.)  Plaintiffs also prepared more than 600 exhibits and dozens of the 173 individuals on their witness list, drafted numerous trial examinations, culled data for use in demonstrative exhibits, worked with a trial graphics vendor, and filed targeted motions *in limine*. ( Swartz Decl. ¶ 38; Dkt. No. 339.)  Defendants filed a motion *in limine* arguing that parties should be prohibited from using *any* representative evidence (Dkt. No. 327), forcing Plaintiffs to brief the issue and prepare many additional witnesses.  (Swartz Decl. ¶ 38.)  The parties filed competing jury instructions and *voir dire* questions.  (*Id.*)

On May 14, 2009, in an attempt to eliminate an issue for trial, Plaintiffs filed a motion for summary judgment as to the individual liability of Defendant John Catsimatidis.[5]  (Dkt. No. 324.)  The parties updated the briefing in March 2010.  Pursuant to the settlement agreement, the Court is holding this motion in abeyance until Defendants default on a settlement payment.  (*See* Swartz Decl. Ex. 8 at 20 (Settlement Agreement).)

Defendants have now failed to make their May 2011 and June 2011 settlement payments, forcing Plaintiffs to invoke the Settlement Agreement's notice procedures and plan for collection efforts.  (Swartz Decl. ¶ 40.)

## III.   PLAINTIFFS' ATTEMPTS TO SETTLE

Until they hired additional counsel in 2009, Defendants were hostile to settlement.  Plaintiff attempted to settle even before filing suit, but he was forced to initiate the litigation when Defendants rebuffed this effort.  (Swartz Decl. ¶ 4.)  Then, in October 2004, the Court convened several settlement conferences, stating that this case was "readily settleable."  (Dkt.

---

[5]      In order to save resources, Plaintiffs did not move for summary judgment on the liability of the other individual defendants.

No. 73; Dkt. No. 78.). Defendants, however, failed to meet the agreed-upon preconditions for

the negotiations, such as producing adequate time records and payroll data and producing

witnesses for depositions, despite Plaintiffs' repeated requests over an eight-month period.

(Swartz Decl. ¶¶ 6-8.) Moreover, Defendants' only response to Plaintiffs' settlement demand

was that Plaintiffs abandon the class litigation and engage in individual arbitrations—they never

made a class-wide settlement offer or any monetary offer, then nor at any point before the eve of

trial. (*Id.* ¶ 5, 9.)

Throughout the litigation, Plaintiffs frequently broached the topic of settlement. (Swartz

Decl. ¶¶ 41-44.) For example, on October 3, 2006, soon after the Court granted class

certification, Plaintiffs suggested that parties "discuss a resolution to this matter before engaging

in expensive end-stage litigation." (Swartz Decl. Ex. 9 (Letter from Justin Swartz to Kevin Nash,

et al. (Oct. 3, 2006)).) Defendants ignored this overture. In a follow-up call, Defendants'

counsel said Defendants were not willing to talk about settlement because he wanted to see if

Plaintiffs' counsel "can try a case." (Swartz Decl. ¶ 10.) Additionally, after prevailing on

summary judgment Plaintiffs proposed that the parties attempt to settle the case because "given

the Court's liability finding, Defendants are responsible for Plaintiffs' attorneys['] fees, which

are mounting quickly." (*See, e.g.*, Swartz Decl. Ex. 10 (E-mail from Justin Swartz to Kevin

Nash, et al. (Dec. 2, 2008, 23:16 EST)).)

Defendants finally agreed to attempt to settle the case on the eve of trial. (Swartz Decl. ¶

45.) Although the parties agreed on settlement in principle on June 5, 2009, another year and a

half of negotiations ensued. (*Id.*) The parties held many in-person and telephonic settlement

meetings and attended several settlement conferences with the Court. (*Id.*) In April 2010, the

parties finally agreed on all of the settlement terms. (*Id.* ¶ 46.) Plaintiffs moved for preliminary

settlement approval on April 22, 2010 (Dkt. No. 354) and final settlement approval on December

6, 2010 (Dkt. No. 363), which the Court granted on December 21, 2010 (Dkt. No. 369).

On December 6, 2010, after the final approval process and after several attempts to

negotiate fees and costs informally, the Court ordered the parties to attend mediation.  The

mediation failed after a couple of months, however, and Defendants have declined Plaintiffs'

further attempts to negotiate.  (Swartz Decl. ¶ 48.)

## IV.    ARGUMENT

### A.    PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND COSTS.

Plaintiffs are entitled to recover their fees and costs because they prevailed on their FLSA

and NYLL claims.  The FLSA requires courts to award "a reasonable attorney's fee . . . and costs

of the action."  29 U.S.C. § 216(b).  The New York Labor Law also mandates that the court

award "all reasonable attorney's fees."  N.Y. Lab. Law § 198(1-a).  Here, Plaintiffs not only

prevailed on liability on some of their claims through summary judgment, *Torres II*, 628 F.

Supp. 2d at 453-54, 461-62, the Court's December 21, 2010 final approval order entitles them to

attorneys' fees and costs.  *Torres v. Gristede's*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627,

2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (*Torres III*).[6]

### B.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS REASONABLE.

The Court should grant Plaintiffs' request for $4,652,635.92 in attorneys' fees, a 12%

discount from their actual "lodestar" amount of $5,293,853.00.  There is a strong presumption

that the lodestar, which is calculated by multiplying their reasonable hourly rate by the number

of hours reasonably expended on the litigation, is reasonable.  *See Perdue v. Kenny A. ex rel.*

---

[6]    The settlement agreement also states that plaintiffs are prevailing parties and are entitled
to fees and costs in *Torres*, *Amaro*, and *Barreto*. (Swartz Decl. Ex. 8 at 28 (Settlement
Agreement).)

*Winn*, 130 S. Ct. 1662, 1669 (2010); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (adopting

the "presumptively reasonable fee" terminology).  Plaintiffs' lodestar is reasonable because it

was calculated by multiplying the reasonable number of hours worked (which were

contemporaneously recorded) by the actual current hourly rate that Outten & Golden ("O&G")

charges paying clients for that biller's work.  (Swartz Decl. ¶ 49.)  Plaintiffs' 12% voluntary

reduction also weighs heavily in favor of granting their request in its entirety because it accounts

for any possible duplicative billing or excess time.  *See Allende v. Unitech Design, Inc.*, No. 10

Civ. 4256, 2011 WL 891445, at *4 (S.D.N.Y. Mar. 15, 2011) (reducing requested fee award in

wage and hour case by 7% and collecting cases with similar reductions between 5 and 10%).[7]

### 1.    Plaintiffs Achieved a High Level of Success.

Plaintiffs achieved a high level of success in this case.  (Declaration of Samuel Estreicher

¶¶ 9b, d; Declaration of James M. Finberg ¶ 16.)  Plaintiffs prevailed on nearly all of their claims

and obtained a settlement of more than $3.5 million plus injunctive relief, achieving an average

per class member award which exceeds that of many other class or collective action settlements

in wage-hour cases.  (Estreicher Decl. ¶ 9b.)  None of Plaintiffs' claims was dismissed.  The

Class overwhelmingly approved of the settlement.  Only one class member opted out and none

objected.  (Swartz Decl. ¶ 47.)

### 2.    Plaintiffs' Counsel Expended a Reasonable Amount of Time.

#### a.    Plaintiffs Prosecuted the Case Efficiently.

Plaintiffs made strategic choices to prosecute the case in a way that would minimize fees.

---

[7]    Additionally, Plaintiffs do not request a multiplier, although one may well be appropriate here given the high degree of success and Defendants' vexatious conduct. *See Perdue*, 130 S. Ct. at 1675 ("an enhancement may be appropriate where an attorney assumes . . . costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense").

For example, Plaintiffs routinely delegated tasks to the lowest-billing professional who could perform the task well. (Swartz Decl. ¶ 51 (detailing how work was allocated to the lowest-billing professional); Estreicher Decl. ¶ 10b.) As a result, nearly 47% of the hours billed were expended by non-lawyers with low billing rates. (Swartz Decl. Ex. 1 at TOTAL FEES.)

Plaintiffs also used a core group of five lawyers—Adam Klein, Justin Swartz, Linda Neilan, Douglas James, and Molly Brooks—to perform approximately 75% of the attorney work.[8] (Swartz Decl. Ex. 1 at TOTAL FEES; Estreicher Decl. ¶ 10b (staffing was "sensible")); *see In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 788 (S.D. Tex. 2008) ("core team" of attorneys performing 75% of the work was "a most efficient use of staff."). The other 25% of the attorney time was spent by other O&G lawyers as necessary when the litigation became particularly burdensome or to perform discrete tasks while the core team was otherwise engaged.[9] (Swartz Decl. ¶ 54.) This is customary and reasonable in a case of this complexity, duration, and litigiousness, especially because special expertise is required for some tasks and because of natural attrition from the firm. (Estreicher Decl. ¶ 10b.) *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (affirming district court determination that plaintiffs' use of multiple counsel was appropriate in light of the complexity of the litigation).

The Court should reject the argument that Plaintiffs should not be compensated for the

---

[8]    Only two or three of this group performed significant work during any period. (Swartz Decl. ¶ 53.) Mr. Klein was initially the partner in charge of the case, and took a lesser role once Mr. Swartz, who was a senior associate at the inception of the case, became the principal partner on the file. (*Id.*) Ms. Neilan was an associate at the time of filing and became a partner during the course of litigation. (*Id.* ¶ 55.) Douglas James was an associate who worked on the matter during a time of heavy pre-class certification discovery. (*Id.*) When Ms. Neilan left the firm, Ms. Brooks, an associate, took her place as second in command. (*Id.*)

[9]    For example, during the three months leading up to trial, 10 lawyers worked on the case, which is reasonable given that they were deployed strategically to perform discrete tasks for which little or no ramp-up time was necessary. (Swartz Decl. ¶ 54.)

time spent by lawyers conferring and strategizing because, given Plaintiffs' reasonable team approach, such conferences made the litigation more efficient, not less.  (Estreicher Decl. ¶ 10d); *see also Harrington Haley LLP v. Nutmeg Ins. Co.*, 39 F. Supp. 2d 403, 411 (S.D.N.Y. 1999) ("Any joint endeavor requires communication among those involved to ensure that everyone is working toward the same objective, that two people do not independently do the same thing twice . . . . no one reasonably could suggest that the time spent by, for example, General Eisenhower and his officers discussing the invasion of Europe was not time reasonably devoted to the war effort and the national interest.").

Moreover, Plaintiffs have voluntarily reduced their hours in order to remove any doubt about efficient staffing.  They voluntarily eliminated time spent by lawyers who billed fewer than 30 hours on the case.  (Swartz Decl. Ex. 1 at "Reduction 1 – Billers < 30.")  They also voluntarily cut *all time* spent by more than one attorney at depositions and Court conferences, although it would have been reasonable to include some of this time.  (Swartz Decl. Ex. 1 at "Reduction 3 – Multiple Attorney"; Estreicher Decl. ¶ 10c); *see N.Y. State Ass'n for Retarded Children, Inc.*, 711 F. 2d at 1146 (affirming district court's decision to allow compensation for use of multiple counsel); *Ross v. Saltmarsh*, 521 F. Supp. 753, 762 (S.D.N.Y. 1981) ("[A] case of this magnitude often requires more than one attorney for various aspects of the litigation, including depositions, court conferences and hearings.").

Finally, Plaintiffs' voluntary across-the-board reduction more than compensates for any unnecessary time.

                      b.     <u>Defendants' Conduct, Including Their Refusal to Engage in Settlement Talks, Made This Case Costly.</u>

A major reason that Plaintiffs expended 15,094 hours in this case is Defendants' conduct, including their aggressive litigation tactics and their consistent refusal to engage in settlement

negotiations. (Swartz Decl. ¶¶ 4-45; Estreicher Decl. ¶ 9f, 10a.) Defendants took almost every aggressive position they could have taken—even when frivolous or unreasonable. *See supra* Part II. Much of this conduct likely took little of Defendants' time, but caused Plaintiffs to expend significant resources responding responsibly. (*See, e.g.*, Estreicher Decl. ¶ 6.) Plaintiffs offered to attempt to avoid unnecessary motion practice whenever possible, *see supra* Part II.

Courts should compensate plaintiffs for meeting and responding to an aggressive defense. *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (refusing to reduce fees where "opposing counsel wage[d] a tenacious defense which expand[ed] the time required to pursue even straightforward claims"). "[A defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986) (internal quotation marks omitted). This is especially so here, where Plaintiffs repeatedly warned Defendants that their conduct was multiplying fees. (Swartz Decl. ¶ 44.)

Likewise, Defendants' unwillingness to settle until the eve of trial should not be rewarded. *See Barbour v. City of White Plains*, No. 07 Civ. 3014, 2011 WL 2022884, at *7 (S.D.N.Y. May 24, 2011) ("Defendants could have avoided liability for the bulk of the attorney's fees . . . by making a reasonable settlement offer in a timely manner") (quoting *City of Riverside*, 477 U.S. at 580 n.11).

     c.   <u>Although Plaintiffs Successfully Turned Back Most of Defendants' Attacks, They Should Be Compensated Even in the Rare Instances That They Were Unsuccessful.</u>

Plaintiffs were successful in almost all discovery disputes and motion practice but even where they were not, they should be compensated for the time they spent. (*See, e.g.*, Estreicher Decl. ¶ 6.) Plaintiffs ultimately prevailed and "[l]osing is part of winning." *Cabrales v. Cnty.*

*of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir. 1991). A plaintiff's fee award "does not depend on her success at interim stages of the litigation, but rather depends on the ultimate outcome of the litigation." *Gierliner v. Gleason,* 160 F.3d 858, 880 (2d Cir. 1998).

### 3.        Plaintiffs' Requested Hourly Rates Are Reasonable.

The hourly rates Plaintiffs request are reasonable and appropriate. Courts select an hourly rate by determining what a "reasonable, paying client would be willing to pay." *Arbor Hill,* 522 F. 3d at 184. Rates must be consistent with the prevailing rates in the relevant geographic area for "lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895-96 & n.11 (1984). Courts must consider "all of the case-specific variables that [may be] relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974). *See Arbor Hill,* 522 F.3d at 190. The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill,* 522 F.3d at 186 n.3. Courts also frequently consider previous awards to the individual counsel seeking fees. Each of these factors support Plaintiffs' requested rates.

a.    Plaintiffs' Counsel Have Significant Experience, a Good
Reputation, and Proven Ability to Successfully Prosecute Wage
and Hour Cases.

O&G has substantial experience prosecuting wage and hour class and collective actions

and enjoys an excellent reputation in the field of employment law.  (Estreicher Decl. ¶ 8a-b;

Declaration of Barry A. Weprin ¶ 5; Declaration of James M. Finberg ¶¶ 13-14; Declaration of

Robert L. Herbst ¶ 5; Declaration of Laura B. Hoguet ¶ 5); *see, e.g., Mohney v. Shelly's Prime

Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31,

2009) ("O&G's lawyers have substantial experience prosecuting and settling employment class

actions, including wage and hour class actions and are well-versed in wage and hour law and in

class action law.").[10]

Mr. Swartz, lead Plaintiffs' counsel in this case, has served as lead counsel in many of

O&G's successful wage and hour cases.  (Swartz Decl. ¶ 69.)  He has practiced exclusively

plaintiff-side employment law since graduating from law school in 1998, and is the co-chair of

the firm's Class Action Practice Group.  (*Id.* ¶ 70.)  He is also active in bar associations and a

frequent lecturer on employment law topics including class and collective wage and hour

litigation and ethics.  (*Id.* ¶ 71.)  His experience supports his requested hourly rate of $600,

which is discounted from the $675 rate that O&G charges hourly-paying clients for Mr. Swartz's

work.  (*See* Weprin Decl. ¶ 10; Finberg Decl. ¶ 19; Herbst Decl. ¶ 7; Hoguet Decl. ¶ 7.)

O&G's other partners' and associates' experience and skills also warrant their requested

hourly rates.   Mr. Klein is a partner at O&G and co-chair of the Class Action Practice Group.

---

[10]     *See also, e.g., Damassia v. Duane Reade, Inc.*, Nos. 04 Civ. 08819, 2009 WL 5841128, at
*3 (S.D.N.Y. July 27, 2009) (Lynch, J.) (O&G "has substantial experience prosecuting and
settling employment class actions, including wage and hour class actions and are well-versed in
wage and hour law and in class action law"); *Ansoumana v. Gristede's Operating Corp.*, 201
F.R.D. 81, 87 (S.D.N.Y. 2001) (Hellerstein, J.) (O&G is "experienced and well-qualified in the
fields of labor law and class litigation and, in particular, wage-and-hour class litigation").

(Swartz Decl. ¶ 73.)  He has prosecuted numerous wage and hour class and collective actions, including those involving IBM, Whirlpool, JP Morgan Chase, and other Fortune 500 companies, and has been recognized by his peers in Best Lawyers in America and New York's Super Lawyers—Manhattan Edition 2007, 2008, 2009, 2010.  (*Id.* ¶¶ 73-74.)  His experience supports his requested hourly rate of $650, which is discounted from the $740 rate that O&G charges hourly-paying clients for Mr. Klein's work.  (*See* Weprin Decl. ¶10; Finberg Decl. ¶ 19; Herbst Decl. ¶ 7; Hoguet Decl. ¶ 7.)

During her time at O&G, first as an associate and then as a partner, Linda Neilan was a frequent lecturer on employment issues, including at conferences sponsored by the ABA; the New York City Bar Association, Committee on Labor and Employment Law; and NELA/NY. (Swartz Decl. ¶¶ 83-85.)  Since joining O&G in 2008, Molly Brooks has litigated numerous class wage and hour cases in this district and others and is a member of the Labor & Employment Committee of the Association of the Bar of the City of New York.  (*Id.* ¶ 88.)  Other attorneys who worked on this case also almost exclusively practice employment law and many focus their practices on class and collective wage and hour litigation.  (Declaration of Wayne N. Outten  ¶¶ 3-4, 7; Swartz Decl. ¶ 59.)

    b. <u>Plaintiffs' Counsel Charges Clients the Hourly Rates They Seek</u>.

Plaintiffs should recover fees at the rates that their counsel actually charge paying clients. *See Arbor Hill*, 522 F.3d at 184 (in setting the reasonable hourly rate, the district court should consider "what a reasonable, paying client would be willing to pay").  The "usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action."  *Meriwether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989).  Even "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by

the court" because "[l]awyers do not come from cookie cutters." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.); *see also Tamazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm.").

Courts in this district give great weight to counsel's actual hourly rates. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (finding that actual rates charged to clients is "strong evidence of what the market will bear"); *Reiter v. Metro. Transp. Auth. of New York*, No. 01 Civ. 2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) (noting that "the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate"); *Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) (finding that the "actual rate that counsel can command in the market place is evidence of the prevailing market rate").[11]

Here, Plaintiffs' counsel regularly bill their clients at the rates sought here (and higher in Mr. Klein's and Mr. Swartz's cases) and their clients regularly accept and pay those rates. (Outten Decl. ¶¶ 5-10; Swartz Decl. ¶ 58.). *See Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2000) (rejecting challenge to reasonableness of fee request where counsel provided declaration indicating that client was "billed on the basis of services provided at fixed hourly rates which were charged at [counsel's] usual and customary rates"). When the firm's resources and attorney time are tied up in cases like this one, the firm must turn away other business. (Outten Decl. ¶ 7; Swartz Decl. ¶ 60.) By dedicating resources and attorney time to

---

[11]     The *Reiter* court reduced the hourly rates awarded because, unlike Plaintiffs here, counsel failed to document its actual hourly rates. The court also relied on the fact that counsel had reduced their typical fees to what their client could afford to pay. This approach was subsequently rejected by the Second Circuit. *See Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) ("Important public policy considerations dictate that we should not punish an 'under-charging' civil rights attorney.").

this case, O&G bore risk and suffered delay.  (Outten Decl. ¶¶ 7, 13-14; Swartz Decl. ¶¶ 60-68; Weprin Decl. ¶ 6; Finberg Decl. ¶ 15.)

Moreover, during the litigation it became clear that this case would not be profitable for O&G, despite the significant risk.  (Swartz Decl.¶ 68.)  In some class actions, O&G recovers fees at higher than its current hourly rates where it is awarded fees through the common fund approach.  (*Id.* ¶ 67.)  Because of the resources devoted to this case over the past seven years, O&G turned down other class cases from which it might have recovered a multiplier.  (*Id.* ¶¶ 65-67.)  Despite the likelihood that Plaintiffs would recover less than their hourly rates and not be compensated for risk, Class Counsel continued to prosecute this case vigorously and spend the resources necessary to prevail.  (*Id.* ¶ 68.)

     c.     <u>Awards in Similar Cases and Market Rates in the SDNY Support Plaintiffs' Requested Rates</u>.

The rates Plaintiffs request are in line with attorneys' fee awards in the Southern District of New York. *See, e.g., Barbour*, 2011 WL 2022884, at *7 (awarding $625 per hour for an experienced civil rights attorney and finding that the rate is "well within the range of hourly rates for attorneys in civil rights cases in the Southern District and Washington, D.C., area"); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 WL 2010 4877852, at *22 (Nov. 30, 2010) (accepting hourly rates of $400 to $750 per hour for lodestar crosscheck); *Vilkhu v. City of New York*, No. 06 Civ. 2095, 2009 WL 1851019, at *4  (E.D.N.Y. June 25, 2009) ("rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time"), *vacated by* 372 F. App'x 222 (2d Cir. 2010) (vacated because court examined Southern District rates rather than Eastern District rates); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (noting that partner hourly rates of $700 to $750 "fall

within the norm of the rates charged by those attorneys' common adversaries in the defense

bar"); *In re Ind. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, *9 (S.D.N.Y.

2003) (noting that rates of $650 per hour for a partner and $300 to $425 per hour for associates

is "not extraordinary for a topflight New York City law firm").[12]

These rates are in line with rates charged by other lawyers who represent plaintiffs.

(Finberg Decl. ¶¶ 17-18 (rates ranging from $520-$825 for partners and $285-$430 for

associates); Weprin Decl. ¶ 11 (rates ranging from $550-$950 for partners and $350-$525 for

associates); Herbst Decl. ¶¶ 8-9 (rates ranging from $555-$725 for partners and senior counsel,

and $285-$415 for associates); Hoguet Decl. ¶¶8-10 (rate of $675 for partner and $350-$475 for

associates); *see, e.g.*, Swartz Decl. Ex. 11 (Order, *Duran v. U.S. Bank Nat'l Ass'n*, No. 2001-

035537 (Super. Ct. Cal. Dec. 16, 2010) (awarding rates as high as $700)).

    d.   <u>Plaintiffs' Counsel's Frequent Adversaries, Including Their Adversaries in</u>
<u>this Case, Charge Higher Rates.</u>

The rates Plaintiffs seek also "fall within the norm of the rates charged by their common

adversaries in the defense bar," *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 589; (Estreicher

Decl. ¶ 8c), including Defendants' counsel in this case.  In January 2011, in *Banus v. Citigroup*

---

[12]   *See also, e.g., Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361-62
(S.D.N.Y. 2011) ($390.10 per hour is reasonable for associate at a mid-size law firm specializing
in intellectual property law); *Bianco v. Erkins*, 284 B.R. 349, 352 (S.D.N.Y. 2002) (awarding
$535-$595 per hour for partners nine years ago); *Santa Fe Natural Tobacco Co. v. Spitzer*, No.
00 Civ. 7274, 2002 WL 498631, at *9 (S.D.N.Y. Mar. 29, 2002) (awarding $575 per hour for
partner nine years ago); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 190 F.
Supp. 2d 407, 426 (E.D.N.Y. 2002) (awarding $449-$540 for partners nine years ago), *rev'd on
other grounds sub nom. Empire Healthchoice, Inc. v. Philip Morris, Inc.*, 393 F.3d 312 (2d Cir.
2004); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, No. 00 Civ. 2474, 2001 WL 1842042, at *7
(S.D.N.Y. May 30, 2001) (awarding $450-$550 per hour for partners ten years ago); *Yurman
Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (awarding $520.69 per hour
for a partner over a decade ago); *Skold v. Am. Int'l Gr.*, No. 96 Civ. 7137, 1999 WL 405539, at
*7 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) (awarding lead attorney $400
per hour eleven years ago); *Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite*, 970
F. Supp. 348, 351 (S.D.N.Y. 1997) (awarding senior partner $495 per hour fourteen years ago).

*Global Markets*, Morgan Lewis, one of Defendants' law firms, prevailed on a sanctions motion

in an employment case and applied for attorneys' fees at a rate of $713.31 for the lead partner

on the case, Sam Shaulson, a frequent adversary of O&G in wage and hour cases.  (Swartz Decl.

¶ 72, Ex. 12 (Aff. of Samuel S. Shaulson, No. 09-07128 (S.D.N.Y. Jan. 10, 2011), ECF 50)).

Likewise, in April 2010, *In re Chemtura Corp.*, Morgan Lewis applied for a rate as high as $895

for one partner and $625 for Christopher Parlo, Defendants' lead counsel here.  (Swartz Decl.

Ex. 13-14 (First Appl. of Morgan, Lewis & Bockius LLP, Ex. B, No. 09-11233 (Bankr.

S.D.N.Y. Apr. 14, 2010), ECF 2492).)  Plaintiffs should be awarded similar rates as their

adversaries charge for similar work.  *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194,

WL 2010 4877852, at *22 (Nov. 30, 2010) ("[t]he firm's hourly rates are below the rates

charged by firms of this caliber (principally defense firms) that litigate regularly in this

district").

    e. <u>Previous Awards to Counsel Support Their Requested Rates</u>.

   Previous awards to O&G lawyers also support the rates Plaintiffs request.  More than

three years ago, in May 2008, Magistrate Judge Francis awarded O&G over $1 million in fees

and costs in a confidential settlement of a sexual harassment suit.  *Rozell*, 576 F. Supp. 2d at

545.  The Court awarded $600 per hour to O&G partners and of counsel, $350 per hour for

senior associates, and $250 per hour for junior associates.  *Id.* at 547.  Eight years ago, in

*Mitchell v. Metropolitan Life Insurance Co.*, No. 01 Civ. 2112, 2003 WL 25914312 (S.D.N.Y.

Nov. 6, 2003), Judge Pauley awarded O&G and its co-counsel $3.4 million in fees and costs

including $425 per hour for an O&G partner and a $500 per hour rate for a partner in O&G's

co-counsel firm.  Judge Pauley found such rates to be reasonable because "they [we]re

consistent with the market rates of lawyers with comparable skills, experience and reputations

in this community, the Southern District of New York, and nationally among lawyers who litigate complex class action employment cases throughout the country." *Id.* at *2. The higher rates that Plaintiffs now request are justified by the passage of time. *See Rozell*, 576 F. Supp. 2d at 546 (rates awarded to counsel in prior cases "should not necessarily be considered a cap" because attorneys' rates generally increase over time).

f.    <u>Current Rates Are Appropriate.</u>

The Court should apply Class Counsel's current rates to all the time spent prosecuting this case because current rates (not historic rates) are necessary to compensate counsel for the passage of time. *See Konits v. Valley Stream Cent. High Sch. Dist.*, 350 F. App'x 501, 505 n.2 (2d Cir. 2009) (reprimanding district court for use of historic rates instead of current rates); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"). Courts should not use historical rates because doing so "may convert an otherwise reasonable fee into an unreasonably low one." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1210 (11th Cir. 1983); *see also Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (use of current rates warranted because compensation received after services are rendered does not have equivalent dollar value). Current rates are especially important here, where the case has spanned more than seven years and has adversely impacted the firm's opportunities and liquidity. (Outten Decl. ¶¶ 13-14.)

**4.    Plaintiffs' Voluntary Reductions Are More Than Sufficient.**

Although the hours Plaintiffs actually spent prevailing in this case are reasonable, Plaintiffs have voluntarily reduced the time for which they are seeking compensation in an exercise of reasonableness and discretion. (Swartz Decl. ¶¶ 57.) Specifically, Plaintiffs have:

20

(1)     eliminated the hours of the attorneys who spent less than 30 hours on the case, although the use of multiple attorneys was reasonable. *See supra* Part IV.B.2.a. This resulted in a voluntary reduction of $64,874.00.

(3)     eliminated time devoted to media work, although this time is compensable and advanced the case, *see Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999) (affirming award for media and public relations activities); *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 n.7 (S.D.N.Y. 1999) (awarding compensation for public relations work). This resulted in a voluntary reduction of $6,187.50.

(4)     eliminated time billed by second and third lawyers at depositions and Court conferences, although case law does not require this. *See supra* Part IV.B.2.a. This resulted in a voluntary reduction of $113,498.00.

(5)     applied an additional across-the-board 5% reduction.

These discounts, plus the discounted hourly rates for Mr. Klein and Mr. Swartz, *see supra* Part IV.B.3.a, result in a total reduction of 12%. (Swartz Decl. ¶¶ 56-57.) Given that there was very little "fat to trim" to begin with, Plaintiffs' voluntary reductions obviate the need for the Court to reduce the hours more. *See, e.g., Caruso v. Peat, Marwick, Mitchell & Co.*, 779 F. Supp. 332, 335 (S.D.N.Y. 1991) (accepting voluntary 10% reduction for two of the six years billed); *Allende*, 2011 WL 891445, at *4 (reducing legal fees by 7%); *Top Banana L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, No. 04 Civ. 2666, 2008 WL 4925020, at *2 (S.D.N.Y. Nov. 10, 2008) (adopting Magistrate Judge Peck's recommendation to reduce attorney hours billed by 5% to eliminate performance of paralegal-type work and duplicative charges and further reducing the recommended award by approximately 4.25%).

**5.     Public Policy Favors Compensating Plaintiffs' Counsel Adequately Because Counsel Undertook Numerous Risks.**

It is important to adequately compensate lawyers who take wage and hour cases, especially high-risk, low-reward cases like this one. *See Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Adequate compensation for

attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the

NYLL."); (Weprin Decl. ¶ 9).  Such adequate compensation is consistent with the FLSA's

purpose of eliminating "labor conditions detrimental to the maintenance of the minimum

standard living" of workers through private lawsuits and "insur[ing] effective access to the

judicial process" by removing the significant barrier of paying legal fees and costs out of pocket.

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307* v.

*G&M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501-02 (6th Cir. 1984) (internal quotations

omitted).  Fee shifting provisions "encourage members of the bar to provide legal services to

those whose wage claims might otherwise be too small to justify the retention of able, legal

counsel.  But for the separate provision of legal fees, many violations . . .  would continue

unabated and uncorrected."  *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *9

(S.D.N.Y. Jan. 7, 2010) (Crotty, J.).  "Attorneys who fill the private attorney general role must

be adequately compensated for their efforts.  If not, wage and hour abuses would go without

remedy because attorneys would be unwilling to take on the risk."  *Prasker*, 2010 WL 476009, at

*6; *see also Allende*, 2011 WL 891445, at *1 ("the award of attorneys' fees . . . encourages the

vindication of Congressionally identified policies and rights.").

### 6.    No "Proportionality" Concept Applies.

Defendants may argue that the Court should reduce Plaintiffs' fee award because it

exceeds the monetary value of the settlement award to the class.  This would be contrary to the

law.  It is "of no matter" that that Plaintiffs' lodestar amount surpasses the amount of their

recovery.  *Allende*, 2011 WL 891445, at *1.  A fee award should not be compared to the amount

of damages awarded.  *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 526 (2d Cir. 1991);

*DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (reversing district court's decision to

reduce the lodestar figure because of the low damages award). "[T]he unique nature of a claim

under FLSA renders attorneys' fee requests that exceed judgment awards by multiples not

uncommon." *Roussel v. Brinker Int'l, Inc.*, No. H-05-3733, 2010 WL 1881898, at *11 (S.D.

Tex. Jan. 13, 2010) (awarding attorneys' fees six times the amount of the judgment in a FLSA

case).

      Applying a proportionality restriction would also ignore the value of the changes in

Gristede's payroll practices that this lawsuit caused. Specifically, Defendants agreed to

compensate all non-exempt co-managers at time-and-a-half for all hours worked over forty in a

given week and to include in those calculations all bonuses and other premiums, to compensate

all time worked regardless of whether previously authorized, to implement a procedure by which

employees can complain about problems with their wages, and to train their staff on the

requirements of the FLSA and state and local labor laws. (Swartz. Decl. Ex. 8 at 27-28

(Settlement Agreement)). Defendants also made additional changes as a result of the lawsuit.

(*See, e.g.*, Swartz Decl. Ex. 15 (Renee Flores Deposition 39:8-18, Apr. 15, 2009) (following the

Court's summary judgment decision Defendants stopped docking co-managers' pay for partial

day absences).) Such changes add to the value of the settlement. *Morris v. Eversley*, 343 F.

Supp. 2d 234, 246 (S.D.N.Y. 2004) (Chin, J.) ("the degree of monetary success . . . is only one

factor to be considered. Courts must also consider whether the plaintiff has achieved some other

measure of success" such as equitable or declaratory relief).

## C.    PLAINTIFFS ARE ENTITLED TO RECOVER THEIR OUT-OF-POCKET COSTS.

      As prevailing parties under the FLSA and NYLL, Plaintiffs are entitled to "reasonable

out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying

clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)

(internal quotation marks and citations omitted); *see also LeBlanc-Sternberg*, 143 F.3d at 763

(abuse of discretion not to award plaintiff reasonable out-of-pocket costs).  Plaintiffs' litigation

costs and disbursements of $507,285.93 are detailed in Exhibit 1 to Mr. Swartz's declaration.

Plaintiffs are also entitled to interest on the costs they incurred in the litigation.  *See* 28 U.S.C.

§1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district

court.").

The costs Plaintiffs seek are reasonable and of the type "normally charged [to] fee-paying

clients" of O&G.  (*See* Outten Decl. ¶ 5 n.1; Ex. A.)  *See Rozell*, 576 F. Supp. 2d at 547

(awarding computerized legal research costs to O&G because retainer agreements showed that

such costs were billed to clients).  These costs are also of the type routinely awarded by courts.

*See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98  (2d

Cir. 2004), *superseded and amended on other grounds by* 522 F.3d 182 (2d Cir. 2008) ("[I]n the

context of a fee-shifting provision, the charges for such online research may properly be included

in a fee award"); *LeBlanc-Sternberg*, 143 F.3d at 763 (holding that expenses such as

photocopying, telephone, computerized legal research are recoverable whether as costs or fees);

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (upholding award of costs in a Section 1983

action for service of summons and complaint, postage, copying costs, hotel bills, meals, and

messenger service, among other items); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 Civ.

0607, 2001 WL 1898318, at *10 (S.D.N.Y. Aug. 6, 2001) (awarding plaintiffs hotel and meal

costs and court reporter fees in Title VII and NYSHRL action).

### D.   PLAINTIFFS ARE ENTITLED TO RECOVER THEIR FEES AND COSTS UNTIL THE END OF THIS MATTER.

Under the well-settled law of the Second Circuit, Plaintiffs are entitled to recover all of

their reasonable fees and costs for the entire litigation until it is over. *Perez v. Westchester Cnty.*

*Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (remanding for district court to determine fees

on fees); *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (plaintiffs entitled to recover fees for

post-judgment motions and time spent on fee application).  Plaintiffs' time records, current

through June 26, 2011, include some of the time spent recovering fees, but does not include all of

the time that will be spent wrapping up this matter, including monitoring the settlement process,

answering class member questions, attempting to collect the settlement payment from

Defendants, otherwise assisting in settlement administration, and otherwise ensuring that

Defendants live up to their obligations.  Plaintiffs respectfully reserve the right to file a

supplemental fee application.

## V.      CONCLUSION

Plaintiffs seek $4,652,635.92 in fees and $507,285.93 in costs.  The fee request

represents over a 12% reduction from the fees calculated by multiplying the actual number of

hours spent on the case, as evidenced by contemporaneous records, with the hourly rates actually

charged to paying clients.  For all the reasons herein, Plaintiffs respectfully ask the Court to grant

their motion in full.

Dated: July 1, 2011
       New York, New York

                                  Respectfully submitted,

                                   /s/ Justin M. Swartz
                                  _____
                                  Justin M. Swartz

                                  **OUTTEN & GOLDEN LLP**
                                  Justin M. Swartz
                                  Molly Brooks
                                  Mariko Hirose
                                  3 Park Avenue, 29th Floor
                                  New York NY 10016
                                  (212) 245-1000